UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLOCKCHAIN MINING SUPPLY AND SERVICES LTD., <br><br> Plaintiff, <br><br> –against– <br><br> SUPER CRYPTO MINING, INC., and DPW HOLDINGS, INC., <br><br> Defendants. | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> Civil Action No. <u>1:18-cv-11099</u> |

Plaintiff Blockchain Mining Supply and Services Ltd. ("Blockchain"), by its attorneys Cowan, Liebowitz & Latman, P.C., complaining of the Defendants, respectfully alleges as follows:

**SUMMARY OF CLAIMS**

1. This is an action for breach of contract and promissory estoppel based on the acts and omissions of Defendants Super Crypto Mining, Inc. ("Super Crypto") and its controlling parent DPW Holdings, Inc. ("DPW").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because of diversity of citizenship, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the parties are subject to personal jurisdiction in this district, and the Asset Purchase Agreement at issue (the "Agreement") provides that the parties consent and irrevocably submit to jurisdiction and venue in this Court.

2539048

## PARTIES

4. Plaintiff is a corporation organized under the laws of Ontario, Canada, with its principal place of business at 200-345 Wilson Avenue, Toronto, Ontario, Canada M3H 5W1.

5. Upon information and belief, Defendant DPW is a corporation organized under the laws of Delaware, with its principal place of business at 201 Shipyard Way, Suite E, Newport Beach, California 92663.

6. Upon information and belief, Super Crypto is a wholly-owned subsidiary of DPW organized under the laws of Delaware, with its principal place of business at the same address as DPW, 201 Shipyard Way, Suite E, Newport Beach, California 92663.

## STATEMENT OF FACTS

<u>The Agreement</u>

7. On or around March 8, 2018, Plaintiff entered into an Asset Purchase Agreement with Defendant Super Crypto.

8. Pursuant to the Agreement, Plaintiff Blockchain agreed to sell, and Defendant Super Crypto agreed to buy, a total of 1,100 Bitmain Antminer S9 model cryptocurrency mining machines and 1,100 power supply units (together, the "Machines") for a total purchase price of $3,272,500.

<u>The Initial 500 Machines</u>

9. By payments made on March 9 and 13, 2018, Super Crypto paid a deposit totaling $163,625 for the 1100 Machines.

10. On March 29 and April 17, 2018, Defendants' attorneys, Sichenzia Ross Ference LLP, transmitted to Plaintiff a total of $1,487,500, the full amount due for the first 500 Machines, leaving the $163,625 on deposit towards payment for the remaining 600 Machines.

The payment was marked, "DPW Disbursements." Plaintiff thereupon released the first 500 Machines from Plaintiff's storage facility.

The Remaining 600 Machines

11. Defendants were to pick up the remaining 600 Machines after they made full payment of the $1,621,375 due, less the $163,625 deposit.

12. Defendants agreed to pay storage charges beginning April 13, 2018, and DPW made several payments towards those charges.

13. Defendants repeatedly informed Plaintiff of their continuing intention to purchase the remaining Machines, gave Plaintiff repeated assurances that they would pay the full balance, and DPW made a series of payments to Plaintiff for the Machines.

14. During their communications with Plaintiff, both Super Crypto and DPW made clear that it was DPW, and its Chairman and Chief Executive Officer, Milton "Todd" Ault III ("Ault"), who were controlling the discussions and negotiations.

15. In giving his assurances of compliance and payment, Mr. Ault referred to Super Crypto and DPW without making any distinction between them or otherwise indicating that the companies were independently organized, capitalized or managed.

Defendants' Assurances and Partial Payments

16. Throughout the months of April to October 2018, Defendants continued to assure Plaintiff that their payment for the remaining 600 Machines was imminent, to induce Plaintiff to maintain the Machines in storage for eventual delivery to them.

17. Defendants' promises included the following (emphasis added):

18. On April 20, "we will have the funds to make the final purchase **next week.**"

19. On April 24, "we are working on finalizing timing for the last 600 Machines. It appears that we are looking at **later this week at the earliest**." **"We are anxious to make the payment so we can receive the machines and get them running."**

20. On April 27, "I have power and rack space to start them immediately so **I want them right away.**"

21. On April 30, we "hope to make the final payment **this week**."

22. On May 2, "we will get the machines **by the end of this week or early next week.**"

23. On May 9, "**I really want the machines** and have open racks ready to take them ASAP."

24. In addition to giving these assurances, DPW made several payments on account of the balance due for the remaining 600 Machines and the accumulating storage charges.

25. On May 17, DPW wired $50,000 to Plaintiff on account of the balance due.

26. On May 29, DPW wired an additional $5000 to Plaintiff on account of the balance due.

27. June 1, Mr. Ault wrote "to make it clear that SCM will **honor our obligation to finalize the purchase of the last 600 Machines.**"

28. On June 13, DPW wired an additional $5000 to Plaintiff on account of the balance due.

29. On June 14, Mr. Ault wrote to Plaintiff, **"We still plan to honor the agreement."**

30. On June 28, Defendants' attorneys wrote to Plaintiff, "Our clients did reaffirm to us, and asked us to convey to you, their **intention to consummate the agreement.**"

31. On July 11, Mr. Ault, knowing of Plaintiff's frustration, wrote to Plaintiff, **"Hang tight Willy."**

2539048

32. On July 17, Mr. Ault wrote to Plaintiff that he was sending "$1000 today and it will increase daily."

33. On July 19, Mr. Ault wrote to Plaintiff, "We think Friday we will wire you $100,000."

34. On July 26, DPW wired, instead, $10,000 to Plaintiff on account of the balance due.

35. On July 31, DPW wired an additional $5,000 to Plaintiff on account of the balance due.

36. On August 7, DPW wired an additional $5,000 to Plaintiff on account of the balance due.

37. On August 9, Mr. Ault wrote to reassure Plaintiff, saying, **"Why would I be wiring you if I intended not to pay."**

38. On August 17, Mr. Darren Magot of Super Crypto wrote to Plaintiff, "Todd [Ault] wired $5K that can be applied as you see fit and will have **more to share next week.**"

39. On September 14, Defendants wrote to Plaintiff that "we got approval to raise $23.50 million and we have begun that process to repay all outstanding debts," adding that, **"We would like to proceed by paying the current outstanding balance"** as early as the following week.

Defendants' Breach and Plaintiff's Reliance

40. No further payment was made the following week or at any other time.

41. In October 2018, DPW proposed to pay the balance owing to Plaintiff in the form of DPW stock. As with its other promises and assurances, DPW did not follow through with this proposal.

2539048

42. On October 11, Defendants wrote to Plaintiff, calculated the outstanding balance to be $1,566, 375, and stated they wanted to **"Pay the outstanding balance, avoid any legal action, and we are anxious to receive the machines so we can place them to work."**

43. In reasonable reliance on Defendants' multiple assurances and payments, Plaintiff maintained the remaining Machines in storage for anticipated delivery.

44. Despite those repeated assurances and payments, defendants did not pay the balance due for the remaining 600 Machines.

Plaintiff's Resale of the Goods

45. On October 23, 2018, Plaintiff, by its attorneys, informed the attorneys for Super Crypto and DPW that Plaintiff would be taking legal action if the payments owing and promised to Plaintiff were not promptly forthcoming.

46. Receiving no response from Defendants' attorneys, Plaintiff on October 25, 2018, by its attorneys, gave formal notice to Defendants' attorneys of Plaintiff's intent to resell the remaining Machines, and to recover from them the difference between the resale price and the contract price.

47. In addition, Plaintiff wrote directly to Messrs. Ault and Magot on October 26, 2018, giving them notice that Plaintiff intended to resell the remaining Machines, and to recover from them the difference between the resale price and the contract price.

48. On or around November 9, 2018, Plaintiff resold the remaining 600 Machines to a third party for the fair market price of $168,000, a price that reflected the decline in the cryptocurrency market between the time that the Agreement was signed and the time that Plaintiff resold the Machines.

DPW's Control of Super Crypto

49. On information and belief, DPW is the sole shareholder of Super Crypto.

2539048

50. On information and belief, Defendants DPW and Super Crypto are located at the same address, share common office space, and have the same attorneys.

51. On information and belief, Super Crypto was incorporated in 2018, with no retained earnings, and was insufficiently capitalized to perform its obligations under the Agreement.

52. Throughout their negotiations with Plaintiff, DPW and Super Crypto made no distinction between themselves regarding their obligations to Plaintiff.

53. Throughout their negotiations with Plaintiff, Super Crypto made clear that the decisions with regard to the Agreement were made by Mr. Ault as President and CEO of DPW.

54. On information and belief, throughout their negotiations with Plaintiff, Super Crypto displayed no independent business judgment.

55. On information and belief, throughout their negotiations with Plaintiff, Super Crypto and DPW did not deal with each other at arms-length.

56. Throughout their negotiations with Plaintiff, DPW paid for and asserted its authority to pay the debts of Super Crypto.

57. On information and belief, Super Crypto was inadequately capitalized to fulfill its obligations to Plaintiff.

58. On information and belief, Super Crypto did not maintain the formalities that are essential features of corporate existence.

59. On information and belief, DPW exercised complete domination over Super Crypto with regard to the Agreement.

60. On information and belief, DPW acted as the alter ego of Super Crypto with regard to the Agreement.

61. On information and belief, DPW used its domination over Super Crypto to commit wrongs against Plaintiff, resulting in damages and injury to Plaintiff.

## COUNT I: BREACH OF CONTRACT

62. Plaintiff repeats and realleges all of the facts and allegations set forth in Paragraphs 1 to 61 hereof as if fully set forth herein.

63. The Agreement is a valid, binding and enforceable contract.

64. Under the Agreement, Super Crypto agreed to pay to Plaintiff a total of $3,272,500.00 for the delivery of 1,100 Machines.

65. Defendants paid for only 500 Machines.

66. Plaintiff was, at all relevant times, ready, willing, and able to deliver the remaining 600 Machines contemplated by the Agreement.

67. Super Crypto breached the Agreement by failing to pay Plaintiff for the remaining 600 Machines.

68. After it became apparent that Defendants would not pay for the remaining 600 Machines, Plaintiff resold them to a third-party buyer, as authorized by N.Y. U.C.C. §§ 2-706(1) and (2).

69. Prior to the resale, and as required by N.Y. U.C.C. § 2-706(3), Plaintiff gave Defendants reasonable, written, and explicit notice of its intention to resell the remaining Machines.

70. Plaintiff's resale of the Assets was done in good faith and in a commercially reasonable manner.

2539048

71. As a result of Defendants' material breach of the Agreement, Plaintiff was damaged in the amount of $1,388,495.00, representing the difference between the contract price and the resale price.

72. By virtue of DPW's dominance over the affairs of Super Crypto, both generally and specifically in connection with the performance of the Agreement, the use of DPW's funds and assets to satisfy the obligations of Super Crypto, the inadequate capitalization of Super Crypto, their overlap in ownership, officers, and attorneys, and other indicia of its control over Super Crypto, DPW acted as Super Crypto's alter ego in connection with the Agreement, and is jointly and severally liable for the obligations under the Agreement.

73. Under the terms of the Agreement, Plaintiff is also entitled to its reasonable attorneys' fees and costs incurred in connection with the Agreement, including prior to the filing of the instant suit.

## COUNT II: PROMISSORY ESTOPPEL

74. Plaintiff repeats and realleges all of the facts and allegations set forth in Paragraphs 1 to 73 hereof as if fully set forth herein.

75. If the Agreement is found to be null, void, or unenforceable in whole or in part, Plaintiff is entitled to recover, in the alternative, on the basis of promissory estoppel under the theory of detrimental reliance.

76. Defendants repeatedly made clear and unambiguous promises, orally and in writing, to pay Plaintiff the outstanding balance of the contract price.

77. Defendants made those promises to induce Plaintiff to retain the Machines in storage for eventual delivery to them.

2539048

78. Defendants made numerous payments toward the balance owed to Plaintiff in further confirmation of their promise to pay the outstanding balance, and to induce Plaintiff to maintain the Machines in storage for eventual delivery to them.

79. Plaintiff reasonably and foreseeably relied on Defendants' repeated promises to pay and Defendants' continued payments, to its detriment.

80. In reliance on Defendants' frequent and consistent promises, Plaintiff did not resell the remaining Assets until a time when the market for cryptocurrency had sharply declined, thereby greatly reducing the fair market value of the assets.

81. As a direct result of its reasonable reliance on Defendants' promises and assurances, Plaintiff was injured in an amount to be determined at trial, but in any event no less than $1,388,495, representing the difference between the contract price and the resale price.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court issue judgment in favor of Plaintiff and against Defendants, and grant Plaintiff the following relief:

1. Monetary damages in an amount no less than $1,388,495;

2. Plaintiff's reasonable attorneys' fees and costs incurred in connection with its dispute with Defendants; and

3. Such other and further relief as to this Court seems just and proper.

Dated:  New York, New York
        November 28, 2018                COWAN, LIEBOWITZ & LATMAN, P.C.

                                         By: */s/ Ronald W. Meister*
                                             Ronald W. Meister (rwm@cll.com)
                                             Dasha Chestukhin (dxc@cll.com)
                                         114 West 47th Street
                                         New York, New York 10036
                                         (212) 790-9200
                                         *Attorneys for Plaintiff*

10

2539048