

**COWAN LIEBOWITZ LATMAN**

Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036-1525

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Ronald W. Meister**
(212) 790-9255
rwm@cll.com

February 7, 2019

**Via ECF and E-Mail to ALCarterNYSDChambers@NYSD.uscourts.gov**

Hon. Andrew L. Carter, U.S.D.J.
Southern District of New York
40 Foley Square, Courtroom 1306
New York, NY 10007

    Re:    Blockchain Mining v. Super Crypto and DPW Holdings – 18-cv-11099-ALC
              Plaintiff's Response to Defendants' Request for Pre-Motion Conference

Dear Judge Carter:

      We represent Plaintiff in this action, in which Defendants seek leave to move to dismiss. For the reasons discussed below, Defendants' letter does not make out a case for dismissal, and their proposed motion is without merit.

      The Complaint alleges a breach of contract for failure to pay over $ 1.5 million. Defendants' proposed motion admits the validity of the contract and does not dispute that claim as against Super Crypto.

      The Complaint alleges further that both Defendants induced plaintiff to hold the unpaid-for machines for delivery to Defendants. Facts supporting both the breach of contract and the promissory estoppel claims are pleaded with specificity. For purposes of a Rule 12(b)(6) motion, "the Court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *Ali v. Ramos*, 2018 U.S. Dist LEXIS 42489 at *4-5 (S.D.N.Y. Mar. 14, 2018) (denying motion to dismiss; internal quotations and citation omitted). The Complaint must "provide factual allegations sufficient to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Berrio v. City of New York*, 2017 U.S. Dist. LEXIS 3759 at *6-7 (S.D.N.Y. Jan. 9, 2017) (denying motion to dismiss; internal quotations and citation omitted).

      The Complaint alleges further that Defendant DPW is Super Crypto's sole shareholder, that they are located at the same address, share common office space, and have the same attorneys. It alleges that Super Crypto was incorporated shortly before entering the contract, with no retained earnings, and that DPW paid the obligations of Super Crypto – to the extent they were paid – and it pleads at least nine such payments by DPW. It alleges that DPW's Chairman and Chief Executive Officer, Milton ("Todd") Ault III, controlled the discussions and negotiations, made numerous promises of impending payment, repeatedly assured Plaintiff that he "still plan[ned] to honor the agreement," urged Plaintiff to "Hang tight," and went so far as to

2579120.1

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
February 7, 2019
Page 2

write, "Why would I be wiring you if I intended not to pay." Those communications reflect DPW's complete control over the negotiations. Mr. Ault never distinguished between Super Crypto and DPW. Neither did Defendants' own attorneys, who in transmitting the amounts due for the initial 500 machines, marked the payment as "DPW disbursements."

This control over the contractual obligations is far more than a "desire" to tender payment, or "isolated instances," as Defendants characterize them in their letter. Nor are these merely "conclusory allegations ... plead [sic] upon information and belief," as Defendants contend. At this preliminary stage, there are facts that Plaintiff can know about Defendants' business operations, and things it cannot yet know. Its present knowledge is limited by the fact that Super Crypto, newly incorporated in 2018, has not filed an annual report with the Delaware Division of Corporations. What we do know, however, and what can be inferred from that knowledge, make a strong case in support of holding DPW liable as Super Crypto's controlling parent.

Plaintiff alleges that, in Super Crypto's short, unhappy, and likely judgment-proof life, its principal activity was to enter into this contract with Plaintiff, have its obligations paid by DPW, default on the contract, and then change its name. From these facts, it is a fair, if not unavoidable, inference that Super Crypto was inadequately capitalized, was insolvent, and was dominated by its corporate parent, all factors relied upon by the courts. The details of Super Crypto's record-keeping (if any), payment of dividends (if any), and observation of corporate formalities (if any), are within the knowledge of Defendants, and should emerge promptly during discovery. "Whether Plaintiff can ultimately prove its allegations is not a consideration in determining a motion to dismiss. Furthermore, a fact-laden claim to pierce the corporate veil is unsuited for resolution on a pre-answer, pre-discovery motion to dismiss." *Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 47 (2018). It is "sufficient at the pleading stage that the alleged facts and the inferences drawn from them establish the basic elements of the doctrine of piercing the corporate veil." *Id.* at 49.

The authorities on which Defendants rely present far different facts than those here.[1] *Canario v. Lidelco* was decided on a motion for summary judgment, on allegations that had survived the pleading stage. *Phoenix Canada Oilo Ltd. v. Texaco, Inc.,* was decided on an agency theory, not a claim of piercing the corporate veil. Plaintiff in *Microstrategy Inc. v. Acacia Research Corp.* merely pleaded a conclusion that the defendants were alter egos, without

---

[1] Defendants are almost certainly wrong in relying on Delaware authorities, because the Agreement provides that it "shall be governed by and construed in accordance with the internal laws of the State of New York without reference to principles of conflicts of laws." We do not devote the limited space of this letter to a full discussion of the conflicts issue, except to note that, under New York law, a party seeking to pierce the corporate veil must show that "(1) the owners exercised complete domination of the corporation in respect of the transaction attacked; and (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiffs' injury." *Mtr. of Morris v. N.Y.S. Dep't of Taxation of Finance*, 82 N.Y.2d 135, 141 (1993). That is what Plaintiff alleges here.

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
February 7, 2019
Page 3

any specific allegations; and plaintiff in *Care Environmental Corp. v. M2 Techs, Inc.*, pleaded a single allegation, on information and belief, that the corporate defendant was undercapitalized, combined with a conclusory allegation of dominion or control. Similarly, in *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, plaintiff, which sought to assert jurisdiction over a foreign corporation on an alter ego theory, failed to allege sufficient facts even after discovery. The allegations here are far more detailed, and show a greater control by the parent with regard to the transaction at issue.

In contrast to those cases, Delaware courts have found complaints sufficient to sustain an alter ego theory when plaintiffs, like Plaintiff here, pleaded detailed allegations from which corporate control could be inferred, and "the Complaint fairly put Defendants on notice that [Plaintiff] seeks to pierce the corporate veil." *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 Del. Ch. LEXIS 196 at *15 (2008). "Under Delaware law, deliberately undercapitalizing a company to keep it judgment proof while operating the business through another alter-ego company is a textbook example of when veil piercing is appropriate." *Id.* at *5.

Finally, as to the promissory estoppel claim, it is important to recognize, as Defendants do not, that it is asserted against DPW directly, not merely on an alter ego theory, and it is pleaded in the alternative to the contract claim. It is valid, important, and separate from the breach of contract claim for three reasons: (1) it states a claim against DPW Holdings independent of the claim based upon piercing the corporate veil; (2) it forecloses any potential argument that Defendants were not obligated to purchase the remaining 600 machines; and (3) it rebuts any potential argument that Plaintiff failed promptly to mitigate damages. As to DPW, it is not duplicative of a claim for breach of a contract to which DPW is not formally a party; and as to Super Crypto, it is an alternative basis for relief. "In this state, where a litigant fails to establish the right to recovery upon an express contract, he may, in the same action, recover in quantum meruit. If warranted by the pleadings and proof, the case may be submitted to a jury on both theories and an election need not be made." *Smith v. Kirkpatrick*, 305 N.Y. 66, 73-74 (1953) (citations omitted), *overruled, in part, on other grounds, O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358 (1981).[2]

In sum, Defendants' motion, if made, is likely to be wasteful and unsuccessful. Whatever application Defendants may seek to make, if any, at the close of discovery, this pleading and all the inferences from the facts alleged, are more than sufficient to proceed.

Very respectfully,

Ronald W. Meister (RWM@cll.com)
Attorney for Plaintiff

cc: Robert Volynsky, Esq. (via ECF and e-mail)

---

[2] *Smith* remains good law and continues to be cited for the relevant point. *E.g., Joseph Sternberg, Inc. v. Walber 36th St. Assocs.*, 187 A.D. 225, 228 (A.D. 1st Dept. 1993).

3

2579120.1