UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

································································X

BLOCKCHAIN MINING SUPPLY AND
SERVICES LTD.,                                    Case No. 18-CV-11099-ALC-BCM

                Plaintiff,

    -against-

DIGITAL FARMS, INC. (F/K/A/ SUPER
CRYPTO MINING, INC.) and DPW HOLDINGS, INC.,

                Defendants.

································································X

**DEFENDANTS DIGITAL FARMS, INC. (F/K/A SUPER CRYPTO MINING, INC.)
AND DPW HOLDING, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
<u>PURSUANT TO FRCP 12(B)(2) AND 12(B)(6)</u>**

WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP
34 Willis Avenue, Suite 106
Mineola, New York 11501
(516) 320-6945

*Attorneys for Defendants Digital Farms, Inc.
(f/k/a Super Crypto Mining, Inc.) and DPW Holdings, Inc.*

<u>On the Brief:</u>
Robert B. Volynsky, Esq. (RV-7076)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES... ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ...............................................................................................2

ARGUMENT ...................................................................................................................4

I.  This Court Lacks Personal Jurisdiction Over DPW .................................................. 4

II. Legal Standard for FRCP 12(b)(6) ......................................................................... 6

III. The Complaint Fails to Adequately Allege that DPW
    Is the Alter-Ego of Super Crypto Under Delaware Law.........................................7

    A. Delaware Law Controls the Veil-Piercing Analysis ....................................... 8

    B. The Complaint Fails to Assert Sufficient
       Factual Allegations to Pierce DPW's Corporate Form.....................................9

IV. The Promissory Estoppel Claim is
    Duplicative of the Breach of Contract Claim… .................................................. 16

V.  Alternatively, the Court Should Dismiss the Promissory Estoppel Claim
    Against DPW Because the Complaint Fails to Adequately Allege
    Each Required Element.........................................................................................18

    A. Plaintiff Does Not Allege a Clear and Unambiguous Promise ....................... 18

    B. The Complaint Does Not Adequately
       Allege Reasonable and Foreseeable Reliance...............................................20

    C. The Complaint Does Not Plead an Injury Stemming
       From Its Reliance Upon a Clear and Unambiguous Promise ......................... 22

CONCLUSION.................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Allison v. Clos-Ette Too, LLC.,*
    2014 U.S. Dist. LEXIS 143517 (S.D.N.Y. Sep. 12, 2014) ............................................... 16

*AmTrust Fin. Servs., Inc. v. Lacchini,*
    260 F. Supp. 3d 316 (S.D.N.Y. 2017) ................................................................................4

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .......................................................................................................... 6

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,*
    968 F.2d 196 (2d Cir. 1992) .............................................................................................. 4

*Barberan v. Nationpoint,*
    706 F.Supp.2d 408 (S.D.N.Y. 2010) .................................................................................7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 554 (2007) .......................................................................................................... 7

*Bd. Of Managers of Trump Tower at City Ctr. Condo v. Palazzolo,*
    346 F.Supp.3d 432 (S.D.N.Y. 2018) ...............................................................................19

*Chrysler Capital Corp. v. Bankers Trust Co.,*
    810 F.Supp. 74 (S.D.N.Y. 1992) .....................................................................................21

*Care Envtl. Corp. v. M2 Techs., Inc.,*
    2006 U.S. Dist. LEXIS 2934 (E.D.N.Y. Jan. 18, 2006) ................................................12

*Canario v. Lidelco,*
    782 F. Supp. 749 (E.D.N.Y. 1992) .................................................................................12

*DDCLAB Ltd. v. E.I. du Pont de Nemours & Co.,*
    No. 03-CV-3654, 2005 U.S. Dist. LEXIS 2721 (S.D.N.Y. Feb. 18, 2005) ................ 20-21

*Dong Chul Kim v. Harte Hanks, Inc.,*
    No. 19-CV-1920-KPF, 2019 U.S. Dist. LEXIS 209162 (S.D.N.Y. Dec. 4, 2019) ........... 4

*EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.,*
    2008 Del. Ch. LEXIS 127 (Del. Ch. Sep. 2, 2008) ........................................................10

*EB Ink Techs., LLC v. Lamocu Holdings, LLC,*
    2016 N.Y. Misc. LEXIS 4413 (Sup Ct. N.Y. Cty. Nov. 28, 2016) ...................................9

**Cases**                                                                    **Page(s)**

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,*
    343 F.3d 189 (2d Cir. 2003)..................................................................20

*Fletcher v. Atex, Inc.,*
    68 F.3d 1451 (2d Cir. 1995)................................................................. 10

*Fries v. Northern Oil & Gas, Inc.,*
    354 F.Supp.3d 384 (S.D.N.Y. 2018)........................................................7

*Hall v. Earthlink Network, Inc.,*
    396 F.3d 500 (2d Cir. 2005)................................................................17

*Healy v. Williams,*
    30 A.D.3d 466 (2d Dep't 2006) ........................................................... 17

*Hedspeth v. Citicorp Individual Bank Ret. Plan,*
    1993 U.S. Dist. LEXIS 7595 (S.D.N.Y. Jun. 3, 1993) ............................... 22-23

*Henneberry v. Sumitomo Corp. of Am.,*
    415 F.Supp.2d 423 (S.D.N.Y. 2006)........................................................20

*Holmes v. Lorch,*
    329 F.Supp.2d 516 (S.D.N.Y. 2004)........................................................18

*In re Currency Conversion Fee Antitrust Litig.,*
    265 F.Supp.2d 385 (S.D.N.Y. 2003)........................................................7

*In re Sunstates Corp. S'holder Litig.,*
    788 A.2d 530 (Del. Ch. 2001)..............................................................14

*Ixe Banco, S.A. v. MBNA Am. Bank, N.A.,*
    2008 U.S. Dist. LEXIS 19806 (S.D.N.Y. Mar. 7, 2008) .................................21

*Kalin v. Xanboo, Inc.,*
    526 F.Supp.2d 392 (S.D.N.Y. 2007)........................................................13

*Kelly v. Chase Manhattan Bank,*
    717 F.Supp. 227 (S.D.N.Y. 1989)..........................................................19

*Konig v. Chanin,*
    2011 N.Y. Misc. LEXIS 7059 (Sup. Ct. N.Y. Cty. Aug. 5, 2011) ....................13

*Liafail, Inc. v. Learning 2000,*
    2002 U.S. Dist. LEXIS 22620 (D. Del. Nov. 25, 2002) ...............................14

**Cases**                                                                                            **Page(s)**

*Mabron, Nugent & Co. v. Tex. Am. Energy Corp.,*
    1990 Del. Ch. LEXIS 46 (Del. Ch. Apr. 12, 1990) ........................................................12

*Marine Transport Lines, Inc. v. International Organization of Masters, Mates & Pilots,*
    636 F.Supp. 384 (S.D.N.Y. 1986).......................................................................................19

*MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.,*
    87 A.D.3d 836 (1st Dep't 2011) ........................................................................17

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical,*
    2004 Del. Ch. LEXIS 21 (Mar. 4, 2004).......................................................................14

*Microstrategy Inc. v. Acacia Research Corp.,*
    2010 Del. Ch. LEXIS 254 (Del. Ch. Dec. 30, 2010) ........................................................14

*MMA Meadows at Green Tree, LLC v. Millrun Apartments, LLC,*
    130 A.D.3d 529 (1st Dep't 2015) .......................................................................8

*Mobil Oil Corp. v. Linear Films, Inc.,*
    718 F.Supp. 260 (D. Del. 1989)........................................................................... 14

*Official Comm. Of Unsecured Creditors v. Bay Harbour Mater Ltd.,*
    420 B.R. 112, 134 (Bankr. S.D.N.Y. 2009).......................................................................7, 13

*NAMA Holdings, LLC v. Related WMC LLC,*
    2014 Del. Ch. LEXIS 232, No. 7934-VCL (Del. Ch. Nov. 17, 2004)...........................8, 15

*Narayanan v. Sutherland Global Holdings,*
    2018 U.S. Dist. LEXIS 82629 (W.D.N.Y. May 16, 2018) ................................................ 8

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys. LLC,*
    975 F.Supp.2d 392 (S.D.N.Y. 2013).......................................................................8-9

*NetJets Aviation, Inc. v. LCH Communications, LLC,*
    537 F.3d 168 (2d Cir. 2008)........................................................................9

*Nypl v. JPMorgan Chase & Co.,*
    2018 U.S. Dist. LEXIS 47960 (S.D.N.Y. Mar. 22, 2018) .........................................9, 15

*Pauley Petroleum, Inc. v. Continental Oil Co.,*
    239 A.2d 629 (Del. 1968) ........................................................................15

*Penguin Grp. (USA) Inc. v. Am. Buddha,*
    609 F.3d 30 (2d Cir. 2010)........................................................................5

**Cases**                                                                                                      **Page(s)**

*Promotora de Navegacion, S.A.v. Sea Containers Ltd.,*
    131 F. Supp. 2d 412 (S.D.N.Y. 2000)........................................................................15

*Radiancy, Inc. v. Viatek Consumer Prods. Grp.,*
    138 F.Supp.3d 303 (S.D.N.Y. 2014)........................................................................10

*RSL COM Primecall v. Beckoff,*
    2003 Bankr. LEXIS 1635 (Bankr. S.D.N.Y. Dec. 11, 2003)........................................12

*R.F.M.A.S., Inc. v. So.,*
    619 F.Supp.2d 39 (S.D.N.Y. 2009) ........................................................................9-10

*Silver v. Mohasco Corp.,*
    94 A.D.2d 820 (3d Dep't 1983) ..............................................................................22

*Tate & Lyle Ingredient Ams., Inc. v. Whitefox Tech. USA, Inc.,*
    98 A.D.3d 401 (1st Dep't 2012) .............................................................................. 5

*Thayil v. Fox Corp.,*
    2012 U.S. Dist. LEXIS 13669 (S.D.N.Y. Feb. 2, 2012)......................................... 5

*Trodale Holdings LLC v. Bristol Healthcare Inv'rs, L.P.,*
    2017 U.S. Dist. LEXIS 196150 (S.D.N.Y. Nov. 29, 2017)........................................ 16

*Tronox Inc. v. Andarko Petro. Corp.,*
    549 B.R. 21, 44 (S.D.N.Y. 2016)............................................................................10

*U.S. West Financial Services, Inc. v. Tollman,*
    786 F.Supp. 333 (S.D.N.Y. 1992)...........................................................................20

*United States v. Paccione,*
    1995 U.S. Dist. LEXIS 16597 (S.D.N.Y. Nov. 7, 1995).................................. 21

*Walnut Hous. Assocs. 2003 L.P. v. MCAP Walnut Hous. LLC,*
    136 A.D.3d 403 (1st Dep't 2016) ...........................................................................8

*Wenske v. Blue Bell Creameries, Inc.,*
    2018 Del. Ch. LEXIS 530 (Del. Ch. Nov. 13, 2018)................................................ 12

*Wilson v. Dantas,*
    746 F.3d 530 (2d Cir. 2014)...................................................................................19

*Wolf v. AVX Corp.,*
    No. 08-CV-934-WHP, 2008 U.S. Dist. LEXIS 49197 (S.D.N.Y. Jun. 27, 2008) .............. 5

**<u>Statute</u>**                                                                                          **<u>Page(s)</u>**

N.Y. U.C.C.§§2-706(1), (2) ..................................................................................... 4, 23

## PRELIMINARY STATEMENT

This case is a straight forward breach of contract claim based upon an Asset Purchase Agreement (the "Agreement") entered into between Plaintiff and Defendant Digital Farms, Inc. f/k/a Super Crypto Mining, Inc. ("Super Crypto").[1] Plaintiff alleges that Super Crypto failed to pay amounts that were due and owing to it under the Agreement. Defendant DPW Holdings, Inc. ("DPW", together with Super Crypto, the "Defendants") is a separate legal entity that is not a party to the Agreement, and more importantly, is a Delaware corporation, with its principal place of business in California, and did not avail itself of this Court's jurisdiction in connection with the underlying transaction. Indeed, for this latter reason alone the Court should dismiss the Complaint against DPW outright for lack of jurisdiction.

Substantively, Super Crypto does not dispute the validity or enforceability of the Agreement and the case law is clear that, where, as here, the parties to the underlying contract do not dispute the validity or enforceability of the contract, a plaintiff is precluded from asserting both a breach of contract claim and promissory estoppel claim in the same action.

Further, assuming, *arguendo* that the Court determines that it has jurisdiction over DPW, which it does not, the Complaint's breach of contract claim against DPW must also fail. It is uncontroverted that DPW is not a party, signatory, or guarantor of the Agreement. By naming DPW as a Defendant, Plaintiff is effectively asking this Court to ignore well-settled law which unambiguously provides that a parent corporation is a separate legal entity from its subsidiaries,

---

[1] The Complaint failed to attach a copy of the Agreement; consequently, a true and correct copy of Exhibit 10.1 to the Form 8-K filed by DPW, on or about March 9, 2018, which reproduces the terms of the Agreement in full is annexed to accompanying Declaration of Robert B. Volynsky, Esq., dated April 13, 2020 (hereinafter, the "Volynsky Decl."), as Exhibit A.

Furthermore, although Super Crypto Mining, Inc. is now known as Digital Farms, Inc. for ease of reference, the instant motion shall use the same defined term as the Complaint (*i.e.*, Super Crypto).

and absent a strong showing that the corporate fiction was employed to execute a fraud or injustice upon the plaintiff, Courts are loathe to disrupt the corporate form. The Complaint does not come close to meeting this high pleading burden. Rather, Plaintiff is improperly seeking the Court's assistance in rewriting the terms of the Agreement – an Agreement that was negotiated at arms-length by *two* sophisticated parties – to force DPW, a stranger to the Agreement, to honor Super Crypto's obligations thereunder. This the law does not allow. Accordingly, for the reasons set forth below, Defendants respectfully request the Court to dismiss the first cause of action for breach of contact asserted against DPW and the second cause of action for promissory estoppel asserted against Super Crypto and DPW.

**STATEMENT OF FACTS**

DPW is a Delaware corporation. Compl. ¶5. Super Crypto is also a Delaware corporation, and it is a wholly-owned subsidiary of DPW. *Id.* ¶6.

The Complaint alleges that, in or around March 8, 2018, Plaintiff entered into the Agreement with Super Crypto, whereby Plaintiff agreed to sell, and Super Crypto agreed to buy, a total of 1,100 Bitmain Antminer S9 model cryptocurrency mining machines and 1,100 power supply units (the "Machines"), for a total purchase price of $3,272,500. *Id*. ¶¶7-8.

Super Crypto paid the initial deposit of $163,625 (the "Initial Deposit") for the Machines over two (2) installment payments on March 9 and 13, 2018. *Id.* ¶9.

On March 29 and April 17, 2018, the law firm of Sichenzia Ross Ference LLP ("SRF") transmitted additional payments totaling $1,487,500 to Plaintiff, which sum represented the total purchase price for 500 Machines. *Id.* ¶10. These discrete payments were allegedly marked "DPW Disbursements." *Id*. Upon receipt of the $1,487,500, Plaintiff released the first 500 Machines to Super Crypto. *Id*. The Initial Deposit was left on deposit to be applied towards the purchase price

of the remaining 600 Machines. *Id.* The purchase price for the remaining 600 Machines was $1,621,375 and Super Crypto was required to take possession of the remaining 600 Machines upon remittance of this amount, less the Initial Deposit. *Id.* ¶11; Agreement §2(a)(3). Super Crypto agreed to pay the storage fees for the Machines, from April 13, 2018 forward, and DPW made several unidentified payments towards these storage fees. *See* Compl. ¶12; Agreement §4.

The Complaint asserts that "[t]hroughout the months of April to October 2018, Defendants continued to assure Plaintiff that their payment for the remaining 600 Machines was imminent, to induce Plaintiff to maintain the Machines in storage for eventual delivery to them." Compl. ¶16. In support thereof, the Complaint cites to portions from a scattershot of e-mails that were allegedly sent by "Defendants" (*Id.* ¶¶18-23, 39, 42), non-party Todd Ault ("Ault") (Chief Executive Officer of DPW and a Director of Super Crypto) (*Id.* ¶¶27, 29, 31-33), non-party Darren Magot (Chief Executive Officer of Super Crypto) (*Id.* ¶38; *see* Agreement at p. 7), and SRF (*Id.* ¶30) expressing Defendants' desire to tender payment to Plaintiff, and also references numerous payments made by DPW purportedly "on account of the balance due." *See id.* ¶¶25- 26, 28, 34-36.

The Complaint further asserts that in October 2018, DPW proposed to pay the balance owed by Super Crypto to Plaintiff under the Agreement in the form of DPW stock, however, DPW did not follow through with this proposal.[2] *Id.* ¶41.

Thereafter, on October 23, 2018, Plaintiff's counsel informed Defendants' counsel "that Plaintiff would be taking legal action if the payments owing and promised to Plaintiff were not promptly forthcoming." *Id.* ¶45. On October 25, 2018, Plaintiff's counsel provided notice to

---

[2] Defendants note that this allegation concerning an offer of compromise to accept stock in lieu of payment and Plaintiff's reference to these confidential settlement discussions is inappropriate, improper, and should not be considered by this Court. *See Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, at fn. 2 (S.D.N.Y. Jun. 12, 2015) ("Plaintiff rightfully chastises defendants for disclosing the course of these negotiations – including specific monetary demands— as '[c]onfidential communication[s] during settlement discussions subject to FRE 408'")).

Defendants' counsel of Plaintiffs' intention to sell the remaining 600 Machines and recover the difference between the resale price and the contract price. *Id.* ¶46. And, on October 26, 2018, Plaintiff wrote to Messrs. Ault and Magot and provided them with the same notice. *Id.* ¶47.

Recognizing that the Machines were fungible goods under the Uniform Commercial Code, on or about November 9, 2018, Plaintiff resold the remaining 600 Machines to a third party for $168,000 "as authorized by N.Y. U.C.C.§§2-706(1) and (2)." *Id.* ¶48, 69.

For good measure, the Complaint also injects ten (10) additional allegations pled "upon information and belief" and uncorroborated by any particularized factual allegations, that purport to recite the factors that Courts generally consider in veil-piercing analyses. *Id.* ¶¶49-51, 54-55, 57-61.

Based on these sparse allegations, the Complaint asserts causes of action for breach of contract and promissory estoppel against the Defendants.

## ARGUMENT

### I.   This Court Lacks Personal Jurisdiction Over DPW

Initially, this Court lacks personal jurisdiction over DPW, a Delaware corporation with its principal place of business in California. *See Dong Chul Kim v. Harte Hanks, Inc.*, No. 19-CV-1920-KPF, 2019 U.S. Dist. LEXIS 209162, at *16-17 (S.D.N.Y. Dec. 4, 2019) ("***Aside from 'an exceptional case,'*** a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state of its: (i) incorporation or (ii) principal place of business." (emphasis added)).

Plaintiff bears the heavy burden of establishing that this Court has personal jurisdiction over a non-resident Defendant, like DPW. *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 326 (S.D.N.Y. 2017). "Such a showing 'entails making 'legally sufficient allegations of

jurisdiction,' including, 'an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010); *see also Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) ("[A]rgumentative inferences favorable to the party asserting jurisdiction should not be drawn.").

Here, this Court's jurisdiction over the instant action stems from a contractual provision in the Agreement which provides, in pertinent part, that "[t]he ***parties*** hereto [i.e., Plaintiff and Super Crypto] irrevocably submit to the exclusive jurisdiction of" this Court. Ex. A, §13(h) (emphasis supplied). Indeed, the Complaint concedes same and does proffer any other basis for jurisdiction over the Defendants aside from this contractual provision. *See* Compl., ¶3. Notwithstanding, this proffered basis for jurisdiction is inconsistent with "[t]he general rule under New York law [ ] that parent corporations may not enforce, ***or have enforced against them***, terms of a contract, ***including forum selection clauses***, signed by their separate existing subsidiaries." *See Tate & Lyle Ingredient Ams., Inc. v. Whitefox Tech. USA, Inc.*, 98 A.D.3d 401, 401 (1st Dep't 2012) (emphasis added).

DPW, however, is ***not*** a party, signatory, or guarantor of the Agreement and does not otherwise consent to jurisdiction in this Court. *See Wolf v. AVX Corp.*, No. 08-CV-934-WHP 2008 U.S. Dist. LEXIS 49197, at *6-7 (S.D.N.Y. Jun. 27, 2008). Thus, DPW ***did not*** irrevocably submit to the jurisdiction of this Court by virtue of its non-New York subsidiary's Agreement with a third-party non-New York entity, and which was not executed in New York. *Id.*

*Wolf* is particularly instructive on this salient point. In that case, this Court granted the parent corporation's motion to dismiss based on improper venue, finding that:

> AVX and ATC remained distinct corporate entities after AVX's subsidiary merged with ATC. Wolf's only evidence to support

> piercing AVX's corporate veil is that AVX acquired almost all of ATC's shares, that AVX's counsel was also a director and officer of ATC, and that AVX's counsel informed Wolf by the non-compete clause in the Agreement. Because Wolf has not established that AVX and ATC should be treated as a single entity, the forum selection clause in the Agreement is irrelevant to whether this district is the proper venue for Wolf to sue AVX.

*Id.* DPW is the parent company of Super Crypto and, as in *Wolf*, the Court cannot, and should not, confer jurisdiction over DPW based on a contractual provision in an Agreement to which DPW is not a party, signatory, or guarantor of.

As the Complaint does not assert any other basis for jurisdiction aside from the contractual provision in the Agreement, the Court should dismiss the Complaint against DPW, in its entirety, for lack of personal jurisdiction.

## II.    <u>Legal Standard for FRCP 12(b)(6)</u>

Assuming, *arguendo*, that the Court determines that it has jurisdiction over DPW in this action, which it should not, the Court should nonetheless dismiss the Complaint in its entirety as against DPW and the promissory estoppel claim as against Super Crypto.[3]

The Court must dismiss a complaint when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss, the complaint must contain sufficient "factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain specific factual allegations that, if true, "permit the court to infer more than mere possibility of misconduct." *Id.* The Court, however, is not constrained to accept as true allegations contradicted by statements in the complaint or by documents in which the complaint incorporated

---

[3] Pursuant to this Court's Order, dated  March 5, 2020 [DE 29], contemporaneous with the filing of the instant motion to dismiss, Super Crypto is filing its Answer to the Complaint, solely with regards to Plaintiff's cause of action for breach of contract as against Super Crypto.

by reference or relies, or by facts that the Court may take judicial notice of. *Fries v. Northern Oil & Gas, Inc.*, 354 F.Supp.3d 384, 388-89 (S.D.N.Y. 2018); *Barberan v. Nationpoint*, 706 F.Supp.2d 408, 413 (S.D.N.Y. 2010).[4]  The Court need not, and should not, accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" in determining the plausibility of Plaintiff's claims.  *See Thayil v. Fox Corp.*, No. 11- cv-4791, 2012 U.S. Dist. LEXIS 13669, at *7 (S.D.N.Y. Feb. 2, 2012). "[A] plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than label and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys. LLC*, 975 F.Supp.2d 392, 398 (S.D.N.Y. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  This is especially true, where, as here, Plaintiff seeks to pierce the corporate veil in order to hold a parent company liable for its subsidiary's alleged contractual breach. *See In re Currency Conversion Fee Antitrust Litig.*, 265 F.Supp.2d 385, 416 (S.D.N.Y. 2003) ("Purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard."); *see also Official Comm. Of Unsecured Creditors v. Bay Harbour Mater Ltd.*, 420 B.R. 112, 134 (Bankr. S.D.N.Y. 2009) ("[A]t the motion to dismiss stage, it is insufficient to make conclusory '[a]llegations of mere domination or control by one entity over another.").

Against this standard, the Complaint fails to assert a breach of contract claim against DPW and it fails to assert promissory estoppel claims.

### III.    The Complaint Fails to Adequately Allege that DPW Is the Alter-Ego of Super Crypto Under Delaware Law

Assuming that the Court finds that it has jurisdiction over DPW, which it should not, it

---

[4] The Complaint cites, makes reference to, or is based upon the Agreement. *See e.g.,* Compl. ¶7- 8, 63-64. Accordingly, the Court may consider the Agreement on a Motion to Dismiss. *See Fries*, 354 F.Supp.3d at 388-89.

should nonetheless dismiss the First Cause of Action for breach of contract against DPW because it is not a party to the Agreement.

Recognizing that DPW is not a party to the Agreement, Plaintiff seeks to hold DPW liable for the alleged debt due under the Agreement by alleging, "upon information and belief," that DPW is the alter-ego of Super Crypto. The Complaint, however, fails to set forth sufficient factual allegations that would pierce DPW's corporate form to impose liability upon it for its subsidiary. *See NAMA Holdings, LLC v. Related WMC LLC*, 2014 Del. Ch. LEXIS 232, No. 7934-VCL, at *110-111 (Del. Ch. Nov. 17, 2004) ("A party that has contracted with a subsidiary should not later be able to assert a claim for tortious interference to secure rights it did not bargain for. ***Nor should a defendant that entered into a transaction based on a set of contractual rights and obligations be exposed unnecessarily to the potentially different liabilities of law***." (emphasis added)).

A.    *Delaware Law Controls the Veil-Piercing Analysis*

As a federal court sitting in diversity in New York, the substantive law of New York applies, including its choice of law rules. *Narayanan v. Sutherland Global Holdings*, No. 15-cv-6165, 2018 U.S. Dist. LEXIS 82629, at *25 (W.D.N.Y. May 16, 2018). It is well-settled under New York law that the law governing veil-piercing claims is the law of the state of incorporation of the corporation of whose veil plaintiff seeks to pierce. *See MMA Meadows at Green Tree, LLC v. Millrun Apartments, LLC*, 130 A.D.3d 529, 530-531 (1st Dep't 2015) (applying Delaware law to veil-piercing analysis notwithstanding that the underlying partnership agreement was governed by Indiana law); *see also Walnut Hous. Assocs. 2003 L.P. v. MCAP Walnut Hous. LLC*, 136 A.D.3d 403, 404 (1st Dep't 2016) (same). Here, DPW and Super Crypto are both Delaware corporations. Compl. ¶¶6-7. As a result, under New York law, Delaware's standard for veil-piercing governs this dispute. *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975

F.Supp.2d 392, 401 (S.D.N.Y. 2013) (noting that Delaware law governs "Plaintiff's veil-piercing attack" because "Plaintiff seeks to disregard the [Delaware] subsidiary's… corporate form and hold the parent… liable."); *see also NetJets Aviation, Inc. v. LCH Communications, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (noting that Delaware law governs veil-piercing claims involving Delaware LLCs); *EB Ink Techs., LLC v. Lamocu Holdings, LLC*, No. 650078/2016, 2016 N.Y. Misc. LEXIS 4413, at n.12 (Sup Ct. N.Y. Cty. Nov. 28, 2016) (noting that "[t]he First Department also recognizes and enforces the strict manner in which Delaware courts apply the Delaware veil piercing standard.").

Therefore, the Court must apply Delaware law to Plaintiff's efforts to pierce DPW's corporate form to make it liable for the debt allegedly owed by its subsidiary under the Agreement.[5]

> B.    *The Complaint Fails to Assert Sufficient*
> *Factual Allegations to Pierce DPW's Corporate Form*

The Complaint seeks an end around to the settled principle that parent corporations are separate and distinct from their subsidiaries and as such, Courts are reluctant to disregard the corporate form absent an extraordinary showing.  *See Nypl v. JPMorgan Chase & Co.*, No. 15-cv-9300, 2018 U.S. Dist. LEXIS 47960, at *20 (S.D.N.Y. Mar. 22, 2018) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation… is not liable for the acts of its subsidiaries.").  Specifically, "[a] plaintiff seeking to persuade a Delaware court to disregard corporate structure faces 'a difficult task.'" *R.F.M.A.S., Inc. v. So.*,

---

[5] To the extent Plaintiff counters that New York law should govern the Court's veil-piercing analysis, Defendants posit that such an argument is of no moment given the decisional authority in this Court fining that "Delaware law seems hardly distinguishable from the pertinent law of New York" with respect to veil-piercing analyses.  *See, e.g., S.J. Berwin & Co. v. Evergreen Entertainment Group*, No. 92-CV-6209-WK, 1995 U.S. Dist. LEXIS 15155, at *3 (S.D.N.Y. Oct. 12, 1995).  Thus, irrespective of which state's law this Court applies, the Court should still find that the Complaint fails to adequately assert a veil-piercing claim.

619 F.Supp.2d 39, 68 (S.D.N.Y. 2009) (citations omitted).  To prevail on an alter-ego theory of parent liability for the acts of its subsidiaries, Delaware law dictates that the Complaint must show "(1) that the parent and the subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness… [is] present.'" *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (citations omitted) (analyzing Delaware law); *see also Radiancy, Inc. v. Viatek Consumer Prods. Grp.*, 138 F.Supp.3d 303, 316 (S.D.N.Y. 2014) (analyzing Delaware law) ("In order to succeed on an alter-ego theory of liability, plaintiffs must essentially demonstrate that, in all aspects of the business, the corporations actually functioned as a single entity and should be treated as such.").  In determining the viability of an alter-ego claim, Delaware courts scrutinize several factors:

> [W]hether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Tronox Inc. v. Andarko Petro. Corp.*, 549 B.R. 21, 44 (S.D.N.Y. 2016); *see also EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, No. 3184, 2008 Del. Ch. LEXIS 127, at *49 (Del. Ch. Sep. 2, 2008) (noting that no single factor is dispositive in analyzing a veil-piercing claim).

Here, Plaintiff seeks to hold DPW, a non-party and non-signatory to the Agreement, liable for Super Crypto's alleged breach based on Plaintiff's unilateral determination that "DPW acted as Super Crypto's alter-ego in connection with the Agreement."  Compl. ¶72.  In support thereof, the Complaint merely regurgitates the above legalese under the heading "DPW's Control of Super Crypto," without any factual allegations to buttress these purely conclusory assertions. *See id.* ¶¶49-61.  As a matter of law, Plaintiff utterly fails to adequately allege any of the stringent elements for veil-piercing under Delaware law.  *See Radiancy, Inc.*, 138 F. Supp.

at 316 (analyzing Delaware law) ("The alter-ego [ ] allegations are conclusory and are therefore not accepted as factual allegations.").

Indeed, the Complaint's only allegations are as follows:

- "On information and belief, DPW is the sole shareholder of Super Crypto." Compl. ¶49;

- "On information and belief, Defendants DPW and Super Crypto are located at the same address, share common office space, and have the same attorneys." *Id.* ¶50;

- "On information and belief, Super Crypto was incorporated in 2018, with no retained earnings, and was insufficiently capitalized to perform its obligations under the Agreement." *Id.* ¶51;

- "Throughout their negotiations with Plaintiff, DPW and Super Crypto made no distinction between themselves regarding their obligations to Plaintiff." *Id.* ¶52;

- "Throughout their negotiations with Plaintiff, Super Crypto made clear that the decisions with regard to the Agreement were made by Mr. Ault as President and CEO of DPW." *Id.* ¶53;

- "On information and belief, throughout their negotiations with Plaintiff, Super Crypto displayed no independent business judgment." *Id.* ¶54;

- "On information and belief, through their negotiations with Plaintiff, Super Crypto and DPW did not deal with each other at arms-length." *Id.* ¶55;

- "Throughout their negotiations with Plaintiff, DPW paid for and asserted its authority to pay the debts of Super Crypto." *Id.* ¶56;

- "On information and belief, Super Crypto was inadequately capitalized to fulfill its obligations to Plaintiff." *Id.* ¶57;

- "On information and belief, Super Crypto did not maintain the formalities that are essential features of corporate existence." *Id.* ¶58;

- "On information and belief, DPW exercised complete domination over Super Crypto with regard to the Agreement." *Id.* ¶59;

11

- "On information and belief, DPW acted as the alter-ego of Super Crypto with regard to the Agreement." *Id.* ¶60; and

- "On information and belief, DPW used its domination over Super Crypto to commit wrongs against Plaintiff, resulting in damages and injury to Plaintiff." *Id.* ¶61.[6]

Even assuming, *arguendo*, the Court accepts these threadbare allegations as true, which it need not do, it should still dismiss Plaintiff's claims against DPW since these unsubstantiated allegations, the majority of which are pled upon information and belief, are woefully insufficient to carry Plaintiff's heavy burden here. *See Wenske v. Blue Bell Creameries, Inc.*, No. 2017-0699, 2018 Del. Ch. LEXIS 530, at *10-11 (Del. Ch. Nov. 13, 2018) ("[C]onclusory allegations that the parent's management exclusively dominated and controlled the subsidiary's management [is insufficient] to state a claim for veil-piercing."); *Care Envtl. Corp. v. M2 Techs., Inc.*, No. 05-cv-1600, 2006 U.S. Dist. LEXIS 2934, at *42 (E.D.N.Y. Jan. 18, 2006) (holding that conclusory allegations that "the individual defendant exercised complete dominion or control over [the Delaware corporation]" coupled with a singular allegation, plead upon information and belief, that the Delaware corporation was undercapitalized, was "an insufficient basis to pierce the corporate veil."); *Canario v. Lidelco*, 782 F.Supp. 749, 759-60 (E.D.N.Y. 1992) (finding that allegations that the principal of a corporation used corporate funds for personal tax deductions and to fund the purchase price of a private plane and its upkeep "[do] not rise to the level necessary to pierce the corporate veil"); *RSL COM Primecall, Inc. v. Beckoff*, 2003 Bankr. LEXIS 1635, at *53 (Bankr. S.D.N.Y. Dec. 11, 2003) ("If lack of adequate capitalization were alone enough to justify piercing the corporate veil, the veil of every insolvent subsidiary or failed start-up corporation could be pierced."); *Mabron, Nugent & Co. v. Tex. Am. Energy Corp.*, No. 8578, 1990 Del. Ch.

---

[6] It defies common sense that DPW or Super Crypto sought to "commit wrongs against Plaintiff," when, in fact, Plaintiff acknowledges that Super Crypto entered into the Agreement and partially performed thereunder by paying $1,487,500 for the first delivery of the Machines. *See* Compl. ¶10.

LEXIS 46, at *14 (Del. Ch. Apr. 12, 1990) (noting that a showing "that the parent owned all the stock of the subsidiary" is insufficient to pierce the corporate veil); *Kalin v. Xanboo, Inc.*, 526 F.Supp.2d 392, 404 (S.D.N.Y. 2007) (allegations of a common address, common ownership and common principals are insufficient to plead veil-piercing).

The rest of the Complaint's threadbare allegations fare no better and offer nothing to rectify its pleading deficiencies. For example, while Plaintiff argues that DPW, through Ault, made several assurances of payment to Plaintiff, the email first cited in the Complaint makes it plain that Ault was acting ***on behalf of Super Crypto.***   Specifically, the Complaint alleges that, "[o]n June 1, Mr. Ault wrote "to make it clear that <u>SCM</u> will **honor our obligations to finalize the purchase of the last 600 Machines.**" Compl. §27 (underscore added; bold in original). "SCM" stood for <u>S</u>uper <u>C</u>rypto <u>Mi</u>ning – not DPW Holdings.  *See, e.g., Official Comm. Of Unsecured Creditors v. Bay Harbour Mater Ltd.*, 420 B.R. 112, 137-38 (Bankr. S.D.N.Y. 2009) ("'Since courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for their subsidiary… it cannot be enough to establish liability here that dual officers and directors made policy decisions and supervised activities at the facility.")   The following allegations reference back to this assurance and do not identify DPW.  *Id.* ¶¶27, 29, 31-33, 37.[7]  Plaintiff's self-serving interpretation that Ault was acting in different roles does not change this salient point.

Further, without differentiating between Super Crypto and DPW, the Complaint sprinkles

---

[7] It is unclear whether the Complaint asserts these "factual" allegations in support of Plaintiff's breach of contract claim or in support of its promissory estoppel claim. To the extent Plaintiff contends that these allegations support both causes of action, then, as a matter of law, the Court must dismiss the promissory estoppel claim. *See e.g., Konig v. Chanin*, No. 100822/2009, 2011 N.Y. Misc. LEXIS 7059, at *15 (Sup. Ct. N.Y. Cty. Aug. 5, 2011) (dismissing defendant's promissory estoppel counterclaim on the grounds that it was "based upon promises allegedly made to [defendant] in the Agreement and [is] essentially duplicative of [defendant's] first counterclaim for breach of contract.").

in several communications between Plaintiff and "Defendants" that purport to underscore "Defendants'" "desire" to tender payment to Plaintiff. *Id.* ¶¶18-23, 39, 42.    Finally, the Complaint's allegations that DPW purportedly made payments to Plaintiff on behalf of Super Crypto, *see id.* ¶¶12, 24-26, 28, 34-36, are insufficient under Delaware law to pierce DPW's corporate form. *See Liafail, Inc. v. Learning 2000*, No. 01-599, 2002 U.S. Dist. LEXIS 22620, at *37-38 (D. Del. Nov. 25, 2002) ("[T]he mere making of payments and transfers alone does not create alter-ego liability").

Notwithstanding the myriad of "upon information and belief" allegations or the quoted email that directly contradicts such allegations, the Complaint's remaining allegations do not even remotely come close to a showing that Defendants "employ[ed] the corporate fiction to execute a fraud or injustice upon [Plaintiff]" as required by Delaware Courts.[8]  *See Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 270 (D. Del. 1989); *In re Sunstats Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) ("[T]o pierce the corporate veil based on an [] 'alter- ego' theory, 'the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.'").

Indeed, the Complaint's most glaring deficiency is its failure to allege ***any*** wrongdoing undertaken by DPW – an incurable failing that Plaintiff cannot escape.  *See Microstrategy Inc. v. Acacia Research Corp.*, No. 5735, 2010 Del. Ch. LEXIS 254, at *46-48 (Del. Ch. Dec. 30, 2010) (granting defendant's motion to dismiss the breach of contract claim where the Complaint "merely pleads that two corporations took actions that allegedly constitute breaches of contract and fraud without asserting any facts suggesting that such wrongs arose out of a "misuse of the corporate

---

[8] "Any breach of contract… is, in some sense, an injustice. ***Obviously this type of 'injustice' is not what is contemplated by the common law rule that piercing the corporate veil is appropriate only upon a showing of fraud or something like fraud***… To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping." *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, No. 19760, 2004 Del. Ch. LEXIS 21, at *16, n.30 (Mar. 4, 2004) (emphasis added).

structure.").

Plaintiff cannot escape these inconvenient facts by now improperly seeking the Court's assistance in rewriting the terms of the Agreement – an Agreement that was negotiated at arms-length by *two* sophisticated parties – to force DPW, a stranger to the Agreement, to honor Super Crypto's obligations thereunder.  *See Promotora de Navegacion, S.A. v. Sea Containers Ltd.*, 131 F. Supp. 2d 412, 417 (S.D.N.Y. 2000) ("The parties before me are as sophisticated as they come… Thus, an argument (by either side) that one party was somehow led to believe that another party was (or was not) a party to the arbitration proceeding, in the face of the plain terms of the [underlying agreement], must be supported by some compelling evidence.").  Simply put, Plaintiff knew, or should have known through a cursory review of the State of Delaware's Division of Corporation website, that it was entering into the Agreement with a newly-formed entity and could have negotiated a guarantee from DPW if it had grave concerns about Super Crypto's prospects.  *See Pauley Petroleum, Inc. v. Continental Oil Co.*, 239 A.2d 629, 633 (Del. 1968) ("There is nothing to put this case within the framework required to disregard corporate entities and treat the two separate corporations as one.   As a matter of fact, as far as the record before us shows, ***the separate existence of [the wholly-owned subsidiary] serves a most legitimate business purpose.***" (emphasis added));  *see also NAMA Holdings, LLC*, 2014 Del. Ch. LEXIS 232, at *110-111 ("To the extent a counterparty is uncomfortable with a subsidiary-level contract, that party can insist on a parent entity or another affiliated corporation becoming a party to the agreement or providing a contractual guarantee.").  That it did not, does not serve as a catalyst for the Court to abdicate from the "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation… is not liable for the acts of its subsidiaries."  *See Nypl v. JPMorgan Chase & Co.*, No. 15- cv-9300, 2018 U.S. Dist. LEXIS 47960, at *20 (S.D.N.Y. Mar. 22, 2018).

15

Accordingly, since the crux of the Complaint's First Cause of Action for breach of contract against DPW is dependent on the unsubstantiated contention that DPW is the alter-ego of Super Crypto, the Court should dismiss this claim in its entirety against DPW with prejudice.

### IV.    The Promissory Estoppel Claim is Duplicative of the Breach of Contract Claim

The Complaint pleads, in the alternative, that Plaintiff is entitled to recovery under a theory of promissory estoppel, against both Defendants, "if the Agreement is found to be null, void, or unenforceable in whole or in part."  Compl. ¶75.  The Court should dismiss this claim because it is duplicative of the breach of contract claim that is based on the Agreement between Plaintiff and Super Crypto.

Super Crypto does not dispute the validity or enforceability of the Agreement, which is annexed hereto as Exhibit A.  Consequently, the law mandates dismissal of the promissory estoppel claim against Super Crypto because it is duplicative of the breach of contract claim. *Trodale Holdings LLC v. Bristol Healthcare Inv'rs, L.P.*, No. 16-cv-4254, 2017 U.S. Dist. LEXIS 196150, at *40 (S.D.N.Y. Nov. 29, 2017) (noting that a claim for promissory estoppel cannot "stand as an alternative to a breach-of-contract claim… [where] Defendants do not contest the validity of the contract"); *see also Allison v. Clos-Ette Too, LLC*, No. 14-cv-1618, 2014 U.S. Dist. LEXIS 143517, at *20 (S.D.N.Y. Sep. 12, 2014) ("Plaintiffs who allege the existence of a valid contract may nonetheless plead the alternative theories of promissory estoppel and breach of contract when the defendant does not concede the enforceability of such contract.").

These same hornbook principles undermine Plaintiff's promissory estoppel claim against DPW and warrant dismissal of that claim as well.  The Complaint's factual allegations supporting the promissory estoppel claim against DPW (*i.e.* that DPW made several payments and numerous assurances of future payments), as well as the requested relief (*i.e.*, re-payment of Plaintiff's

16

alleged "cover" damages") are redundant of the factual allegations supporting the companion breach of contract claim against Super Crypto.  *Hall v. Earthlink Network, Inc.*, 396 F.3d 500, 508 (2d Cir. 2005) ("If the allegations do not go beyond the statement of a mere contract breach and relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

Further, the fact that DPW is not a party to the Agreement does not grant a license to Plaintiff to assert an extraneous promissory estoppel claim that is entirely predicated upon, and duplicative of, it's breach of contract claim.  *See MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*, 87 A.D.3d 836, 842 (1st Dep't 2011) (finding that a promissory estoppel claim against a third-party to the contract "is precluded because a breach of contract claim may not give rise to tort liability unless a 'legal duty independent of the contract—i.e., one arising out of circumstances extraneous to, and not constituting elements of, the contract itself— has been violated.").  Nor does it transform Plaintiff's promissory estoppel claim against DPW into an "independent" cause of action.

The Complaint is bereft of any allegations demonstrating any duty, let alone a "legal duty ***independent*** of the contract," on the part of DPW to remunerate payment to Plaintiff for the Machines.  *See generally,* Compl.  This is for good reason, as Plaintiff concedes, in Paragraph 75 of the Complaint, that its promissory estoppel claim is not independent of the Agreement, but rather, is entirely ***interdependent*** on the validity and enforceability of the Agreement.  *Id.* ¶75  ("***If the Agreement is found to be null, void, or unenforceable***, in whole or in part, Plaintiff is entitled to recover, in the alternative, on the basis of promissory estoppel under the theory of detrimental reliance." (emphasis added)).  Plaintiff cannot escape these inconvenient facts borne out of its own

pleadings, and as such, the Court should dismiss Plaintiff's promissory estoppel claim against DPW because it is duplicative of its breach of contract claim against Super Crypto.

**V.      Alternatively, the Court Should Dismiss the Promissory Estoppel Claim Against DPW Because the Complaint <u>Fails to Adequately Allege Each Required Element</u>**

Even if the Court finds that the promissory estoppel claim against DPW is not duplicative of the breach of contract claim, which it should not, the Court should nonetheless dismiss the promissory estoppel claim against DPW because the Complaint's vague, nonspecific allegations of an alleged promise and Plaintiff's purported reliance thereon are insufficient to invoke the doctrine of promissory estoppel.  To state a claim for promissory estoppel under New York law, a party must allege: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by the party asserting the estoppel as a result of its reliance. *Holmes v. Lorch*, 329 F.Supp.2d 516, 527 (S.D.N.Y. 2004). As set forth below, the Complaint fails to adequately plead any of these elements.

A.      *Plaintiff Does Not Allege a Clear and Unambiguous Promise*

At the outset, the Complaint lumps together piecemeal segments of various disconnected e-mail communications that were purportedly authored by one or both "Defendants", Defendants' prior attorneys (SRF), non-party Darren Magot (Super Crypto's Chief Executive Officer), or non-party Todd Ault (DPW's Chief Executive Officer and a Director of Super Crypto) (Compl. ¶¶18-23, 27, 29-33, 37-39, 42), with the hope that the Court, on its own accord, will find that these fragmented snapshots, without further context, constitute a clear and unambiguous promise.[9]

---

[9] Tellingly, the Complaint does not differentiate communications originating from DPW – as opposed to Super Crypto; consequently, the Complaint cannot possibly constitute a clear and unambiguous promise, as a matter of law. *See generally*, Restatement of Contracts 2d, § 2 (defining a promise as a manifestation of intention **made by the promisor** (emphasis added)). Indeed, the only communication that the Complaint quotes that is from a specific party is a communication made on behalf of "SCM" – not DPW. *See* Compl. ¶27.

Specifically, the Complaint alleges that Defendants, or someone acting on their behalf, intimated that: in April 2018, Defendants "were ***anxious*** to make the payment" (*Id.* ¶19) (emphasis added) and "***hope*** to make the final payment ***this week***" (*Id.* ¶20) (emphasis added); "S̲CM̲ [not DPW] will honor [S̲uper C̲rypto M̲ining's] obligation to finalize the purchase of the last 600 Machines (*Id.* ¶27) (emphasis added); in June 2018, Defendants "inten[ded to] consummate the [A]greement" (*Id.* ¶31) (emphasis added); in September 2018, non-party Ault wrote to Plaintiff that "**[w]e *would like* to proceed by paying the current outstanding balance**" (*Id.* ¶39) (italics added) (bold in original); and in October 2018, stated they wanted to "**Pay the outstanding balance, avoid any legal action, and we are *anxious* to receive the machines so we can place to work**." (*Id.* ¶42)." (italics added) (bold in original).

Affording all favorable inferences to Plaintiff, these allegations, at best, show an ambitious "desire" by the undefined promisor to tender payment to Plaintiff for the Machines, which, as a matter of law, does not constitute a "clear and unambiguous promise." *Bd. Of Managers of Trump Tower at City Ctr. Condo v. Palazzolo*, 346 F.Supp.3d 432, 469 (S.D.N.Y. 2018) ("A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel; the alleged promise must be clear and unambiguous."); *see also Wilson v. Dantas*, 746 F.3d 530, 538 (2d Cir. 2014) (upholding district court's dismissal of the Complaint and noting that Plaintiff's allegation that "[i]n reliance upon Citibank's judgment and assurances that Plaintiff would receive the compensation promised in writing by Dantas, Plaintiff relocated . . . to Brazil," was neither clear nor unambiguous); *Marine Transport Lines, Inc. v. International Organization of Masters, Mates & Pilots*, 636 F.Supp. 384, 391 (S.D.N.Y. 1986) (noting that statements of "we're partners" and "we look forward to growing together" are insufficient to invoke promissory estoppel); *Kelly v. Chase Manhattan Bank*, 717 F.Supp. 227, 236 (S.D.N.Y. 1989) ("[G]eneral assurances of

longevity with the company… cannot form the basis of a promissory estoppel [claim.]");
*Henneberry v. Sumitomo Corp. of Am.*, 415 F.Supp.2d 423, 450 (S.D.N.Y. 2006) ("SCOA's
intention to make an investment is not an unequivocal promise to make an investment.").

Finally, to the extent that Plaintiff contends that DPW's remittance of a handful of discrete
payments toward the balance owed for the Machines is proof positive of a prior course of dealing
(*see* Compl. ¶¶25-26, 34-36), such contentions do not absolve Plaintiff of its requirement to plead
a "clear and unambiguous promise." *U.S. West Financial Services, Inc. v. Tollman*, 786 F.Supp.
333, 344 (S.D.N.Y. 1992) ("Regardless of any previous course of dealing and any actions taken in
reliance, without a clear and unambiguous promise there is no promissory estoppel.").

Therefore, the Complaint fails to sufficiently allege a clear and unambiguous promise by
DPW.

B.      The Complaint Does Not Adequately
        Allege Reasonable and Foreseeable Reliance

The Court should also dismiss the promissory estoppel claim against DPW because it does
not adequately allege reasonable and foreseeable reliance.  "In assessing the reasonableness of a
plaintiff's alleged reliance, [the Court is] to consider the entire context of the transaction, including
factors such as its complexity and magnitude, the sophistication of the parties, and the content of
any agreements between them." *DDCLAB Ltd. v. E.I. du Pont de Nemours & Co.*, No. 03-cv-
3654, 2005 U.S. Dist. LEXIS 2721, at *81 (S.D.N.Y. Feb. 18, 2005) (citing *Emergent Capital Inv.
Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003)).  The Court's holding in
*DDCLAB Ltd.* is instructive.

In *DDCLAB Ltd.*, the plaintiff alleged that the defendant purportedly made certain oral
promises to plaintiff after the parties entered into an investment agreement. *DDCLAB Ltd.*, 2005
U.S. Dist. LEXIS 2721, at *4-5.  In dismissing plaintiff's promissory estoppel claim, the Court

reasoned that:

> [The plaintiff could not] justifiably rely on [defendant's] alleged oral promises made after the Investment Agreement was executed, given the absence of the requisite written consent by [defendant]. The parties are established businesses represented by experienced and sophisticated businesspeople. The parties engaged in nine months of negotiations which ultimately culminated in two comprehensive Written Agreements. Any oral assurances by [defendant's] representatives were not incorporated in the Written Agreements, and are not consistent with the terms of those Written Agreements. Any reliance by [plaintiff] upon the alleged oral promises is simply unreasonable.

*Id.* at *19-20.  Here, the Agreement similarly contains an express provision which provides that "[n]o revisions or modification of this Agreement shall be effective unless in writing and executed by authorized representative of both parties."  *See* Volynsky Decl., Ex. A, §13(e). Any alleged oral modifications or unexecuted revisions or modifications are not enforceable and cannot have been reasonably relied upon by Plaintiff.  *See Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07-cv-0432, 2008 U.S. Dist. LEXIS 19806, at *24-25 (S.D.N.Y. Mar. 7, 2008) (citing *Healy v. Williams*, 30 A.D.3d 466, 467 (2d Dep't 2006)) ("A clause prohibiting oral modification is afforded 'great deference' by New York courts."); *see also Chrysler Capital Corp. v. Bankers Trust Co.*, 810 F.Supp. 74, 76 (S.D.N.Y. 1992 ("If the contract language is 'unambiguous,' the court must enforce the plain, ordinary, and common meaning of those terms ***as a matter of law*** without reference to extrinsic evidence." (emphasis added)).  Here, the Complaint does not, and cannot, allege that Plaintiff and Super Crypto entered into a written modification requiring DPW to bear the responsibility for any payment due under the Agreement and Plaintiff's artful pleading aside, the Court should not countenance Plaintiff's improper attempts to rewrite the plain, unambiguous terms of the Agreement. *See e.g.*, *United States v. Paccione*, No. 89-cr-446, 1995 U.S. Dist. LEXIS 16597, at *12-13 (S.D.N.Y. Nov. 7, 1995) (finding that an oral modification was precluded by a no oral modification clause and noting that "[i]n order to fulfill the express terms of the contract,

[the cross-petitioner] would have to produce written evidence that the government and D'Angelo consented to the subsequent modification, which he has not done. On this ground, the court would deny the cross-petition.").

Moreover, Plaintiff, like the plaintiff in *DDCLAB Ltd.*, is a sophisticated party that engaged in lengthy arms-length negotiations with Super Crypto, which ultimately culminated in the comprehensive Agreement signed by Plaintiff's President.

At the time of the execution of the Agreement, Plaintiff knew, or reasonably should have known, that DPW was the parent company of Super Crypto. Against this backdrop, Plaintiff opted to enter into the Agreement with Super Crypto ***only***.  The Agreement contains ***no*** references to DPW. *See id.* Plaintiff cannot now conjure up excerpts from a hodgepodge of intermittent emails, spread across six months, which only reference "SCM" to support its claim that it detrimentally relied on these communications.  Therefore, the Court should dismiss the promissory estoppel claim asserted against DPW.

C.    *The Complaint Does Not Plead an Injury Stemming*
      *From Its Reliance Upon a Clear and Unambiguous Promise*

The Complaint must plead "an injury stemming from [Plaintiff's] reliance upon a clear and unambiguous promise by [DPW]."  *Silver v. Mohasco Corp.*, 94 A.D.2d 820, 822 (3d Dep't 1983). Specifically, Plaintiff must allege a cognizable injury or a vested right that it lost as a ***direct*** result of its reliance on the alleged promise.  *See Hedspeth v. Citicorp Individual Bank Ret. Plan*, No. 91-cv-1471, 1993 U.S. Dist. LEXIS 7595, at *59 (S.D.N.Y. Jun. 3, 1993).  The Complaint does not come close to satisfying this requisite element.

The Complaint's sole allegation is that Plaintiffs did not resell the Machines "until a time when the market for cryptocurrency had sharply declined, thereby greatly reducing the fair market value of the [Machines.]"  Compl. ¶80.  Notably, Plaintiff does not, and cannot, demonstrate that

it had a buyer that was ready, willing, and able to purchase the Machines for "fair market value" at any point in time prior to Plaintiff's sale in or about November 2018. *See id.* ¶48. Plaintiff's claimed injury is "at best based upon speculative assumptions" devoid of any "vested or clearly identified rights [that] have been lost," and, as such, warrants dismissal of Plaintiff's promissory estoppel claim against DPW. *See Hedspeth*, 1993 U.S. Dist. LEXIS 7595, at *59 ("Hedspeth's claimed injury is at best based upon speculative assumptions. By contrast, promissory estoppel requires that the injury directly result from the reliance, and thus is typically applied where vested or clearly identified rights have been lost.") (collecting cases).

Finally, Plaintiff cannot claim damages as a direct result of its reliance upon any purported promise by DPW because, Plaintiff acknowledges that it sold the Machines "as authorized by N.Y. U.C.C. §§2-706(1) and (2)." Compl., ¶69. As a result of allegedly selling the Machines under U.C.C. §2-706(1), Plaintiff fixed its damages against *Super Crypto* under the Agreement. *See* N.Y. U.C.C. §2-706(1) (2018). Consequently, Plaintiff did not lose any rights or incur any additional damages outside of the Agreement as a result of any purported promises by DPW.[10]

Accordingly, the Court should dismiss the Second Cause of Action asserting a claim for promissory estoppel, with prejudice.

*    *    *

---

[10] As an aside, DPW notes that, as a non-party to the Agreement, it cannot be liable to Plaintiff for its attorneys' fees in connection with litigation.

## CONCLUSION

For the foregoing reasons, Defendants Digital Farms, Inc. (f/k/a Super Crypto Mining, Inc.) and DPW Holdings, Inc. respectfully request that the Court issue an Order dismissing the First Cause of Action against DPW and the Second Cause of Action against DPW and Super Crypto, with prejudice, and awarding Defendants such other and further relief as the Court deems just and proper.

Dated: April 13, 2020

Respectfully submitted,

WELTZ KAKOS GERBI WOLINETZ
VOLYNSKY LLP

By:_____/s/ Robert Volynsky_____
        Robert B. Volynsky
34 Willis Avenue, Suite 106
Mineola, New York 11501
Tel: (516) 320-6945

*Attorneys for Defendants Digital Farms, Inc. (f/k/a
Super Crypto Mining, Inc.) and DPW Holdings, Inc.*