

Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY  10036-1525

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Ronald W. Meister**
(212) 790-9255
rwm@cll.com

May 15, 2020

**Via ECF and E-Mail to ALCarterNYSDChambers@NYSD.uscourts.gov**

Hon. Andrew L. Carter, U.S.D.J.
Southern District of New York
40 Foley Square, Courtroom 1306
New York, NY 10007

Re:    Blockchain Mining Supply v. Digital Farms et ano.
Case No. 1:18-CV-l 1099 (ALC)
<u>Joint Status Report</u>

Dear Judge Carter:

Pursuant to Your Honor's direction at the pretrial conference of March 5, 2020, the parties have met and conferred about the discovery appropriate in this case, and hereby submit their status report, separately expressing their views.

<u>Plaintiff's Report</u>

<u>The Complaint</u>

Plaintiff commenced this action in November 2018, alleging a breach of contract against Super Crypto, Inc. (which has since changed its name to Digital Farms, Inc.) for failure to pay over $ 1.3 million for the purchase of machinery.  Digital Farms admits the validity of the contract, and we believe there is no credible defense to the contract claim.  The Complaint alleges further that defendant DPW Holdings, Super Crypto's (and now Digital Farms's) sole shareholder, dominated its affairs in connection with the contract, paid its obligations under the contract (to the extent they were paid), and acted throughout the transaction as Super Crypto's alter ego.  Finally, the Complaint alleges that by a series of explicit promises on which Plaintiff reasonably relied, both Defendants induced Plaintiff to hold the unpaid-for machines for delivery to them.

<u>The March 5, 2020 Conference</u>

Following Defendants' expression of unwillingness to settle this matter on behalf of the subsidiary alone, and an unsuccessful mediation session, the Court summoned the parties to a conference on March 5, 2020.  There, the Court expressed the hope that resolution of the breach of contract claim might be simpler and quicker than resolving the remaining claims, and directed that (1) Digital Farms answer the Complaint; (2) Defendants file their motion to dismiss the veil piercing claims against DPW, and dismiss both claims against DPW for lack of personal jurisdiction; (3) the parties meet and confer to discuss the scope of discovery to be provided to

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
May 15, 2020
Page 2

Plaintiff prior to its response to the motion; and (4) the parties submit a status report by May 15, 2020.  This is the required report.

<u>Digital Farms' Answer</u>

Although Super Crypto/Digital Farms never expressed any defense to the breach of contract claim; although both Defendants prior to litigation repeatedly acknowledged their obligation to pay, in such statements as, "We still plan to honor the agreement," and "We would like to proceed by paying the current outstanding balance," and "Why would I be wiring you if I intended not to pay;" and although the Court expressed its hope at the March 5 conference that resolution of the breach of contract claim would be simple and swift, Digital Farms' Answer denies the material allegations of the Complaint, and goes to great lengths to avoid responding to facts it cannot in good faith contest.  For example, Digital Farms responds to factual allegations setting forth a series of communications in which Defendants acknowledged their contractual obligations and made partial payments towards them, by characterizing them as "legal conclusions" to which no response is required, or merely referring to communications without responding directly to whether they were sent, as required by Fed. R. Civ. P. 8(b)(4).  *See*, Answer to First Amended Complaint ¶¶ 26-47.  Accordingly, Plaintiff proposes, below, a narrowly-focused and straightforward plan of discovery that should require Digital Farms to admit the elements of the breach of contract claim.

<u>Defendants' Motion to Dismiss</u>

Defendants' motion to dismiss contends, *inter alia*, that the Complaint does not sufficiently allege jurisdiction over the parent, DPW, and does not sufficiently allege DPW's actions as Super Crypto's alter ego.  In response to the jurisdiction argument, Plaintiff filed a First Amended Complaint adding detailed factual allegations about DPW's contacts with New York, including its Chief Executive Officer's meetings in New York on multiple occasions with bankers, investors, and New York Stock Exchange officials in connection with Defendants' performance under the contract, and his boasting to Plaintiff about his presence in New York for that purpose.  *See*, First Amended Complaint ¶¶ 7-14.  As the Court contemplated at the March 5 conference, Plaintiff proposes, below, targeted discovery with regard to these jurisdiction and veil piercing issues.

<u>Plaintiff's Proposed Discovery</u>

Plaintiff considers the following subjects of discovery to be appropriate and non-controversial.

<u>As to the Breach of Contract Claim Against Digital Farms</u>

The validity and enforceability of the Asset Purchase Agreement (which Super Crypto/ Digital Farms has admitted) and associated Escrow Agreements

The payments made pursuant to the Asset Purchase Agreement and in connection with storage fees and the balance due

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
May 15, 2020
Page 3

Defendants' statements admitting liability

<u>As to Personal Jurisdiction Over DPW</u>

DPW's officers' and agents' physical presence in New York

DPW's and its CEO Todd Ault's communications with service providers, funders, regulatory agencies, and others in New York

The transmission of funds from New York by or on behalf of DPW

<u>As to Piercing the Corporate Veil</u>

Defendants' address and corporate structure, officers and directors, attorneys and service providers

The creation and incorporation of Super Crypto and its name change to Digital Farms

Super Crypto's observation of corporate formalities, including filings, minutes and resolutions; and Defendants' relevant general ledger, books of account and bank records

Super Crypto/Digital Farms assets, earnings and dividends

Transactions between defendants

Records regarding negotiation of the contract

With regard to these topics of discovery, it is Plaintiff's hope that significant progress can be made through the use of interrogatories, requests to admit, and, particularly with regard to piercing, review of corporate records.[1]  Plaintiff also seeks documents regarding Defendants' payments in connection with the contract.  With regard to DPW's arguments regarding personal jurisdiction, Plaintiff proposes narrowly-targeted interrogatories and document requests.  If satisfactory responses are not forthcoming, depositions may be necessary.  Regarding the piercing issue, Plaintiff hopes that, in the first instance, it can be resolved by document discovery of the relevant corporate records.  While Defendants have agreed to produce certain documents voluntarily, these are far from sufficient, because they do not include board minutes and resolutions, general ledgers, books of account and bank records, or records of intercorporate

---

[1] We recognize the limitations generally imposed on interrogatories by Local Rule 33.3, but submit that, because of the long pendency of this case, and the desire to resolve the contract claim expeditiously, narrowly-targeted interrogatories regarding the existence, breach, and partial payments under the contract, and about Mr. Ault's travels to New York, are "a more practical method of obtaining the information sought than a request for production or a deposition," and ask that they be permitted by the Court.

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
May 15, 2020
Page 4

transactions, all of which are at the heart of the issue of DPW's dominance of the affairs of its subsidiary, and the subsidiary's observance or non-observance of corporate formalities.

To move this case expeditiously, Plaintiff is prepared to submit formal requests for discovery within fifteen days of the Court's response to this report.

<u>Response to Defendants' Arguments</u>

Defendants suggest, *infra*, that it is premature to seek discovery on the contract claim. To the contrary, that was the claim that was intended to proceed most quickly. The parties have already appeared before the Court to discuss scheduling, have met and conferred, and now submitted two status reports. It is past time, in this eighteen-month-old case, on a claim to which there is no credible defense, to move forward with the discovery necessary to resolve it.

Defendants object specifically to discovery regarding the series of communications in which Defendants admitted liability and made partial payments under the contract. If Defendants had admitted sending these communications in their Answer, instead of characterizing them as "legal conclusions" and otherwise evading a direct response, less would remain for discovery. The discovery we propose is directly related to the central facts on a contract claim: the contract's validity and enforceability, and Defendants' admissions and partial payments.

Defendants' arguments regarding jurisdiction rest on their characterization, which is also made in their motion to dismiss, of their connections to New York relating to this very transaction as "tangential," "fortuitous," and "random." By contesting the jurisdictional significance of those connections, they put squarely in issue their purpose, frequency, and connection to the claims pleaded. Where Defendants' Chief Executive Officers informed Plaintiff on multiple occasions that Defendants were working in New York to arrange payment under the very contract at issue, and where Mr. Ault even sent Plaintiff a photograph of one of his meetings to persuade Plaintiff of the importance of his visit, Defendants' present belittling characterizations of the contacts are hard to credit, but that will be a matter for resolution on Defendants' motion.[2] In the meantime, as the Court contemplated at the March 5 conference, Plaintiff is entitled to jurisdictional discovery, especially since Defendants have now put those facts squarely in issue.

Discovery of facts relating to veil-piercing was also part of the Court's plan at the March 5 conference. The piercing claim is not speculative: Plaintiff has already alleged, and will prove, significant facts showing DPW's domination of Super Crypto with regard to this transaction. The discovery Plaintiff seeks on this issue is as to facts that are exclusively within the knowledge of Defendants, and which are customary areas of inquiry in a "fact-laden claim to pierce the corporate veil [,which] is unsuited for resolution on a pre-answer, pre-discovery motion to dismiss." *Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 47 (2018). It is

---

[2] These meetings were not, as Defendants suggest, "post-breach," but took place in the course of Defendants' partial performance of the contract, their payments, and their actionable promises of payment.

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
May 15, 2020
Page 5

no response to decry this as a "fishing expedition."  Plaintiff seeks no general inquiry into the parent's business affairs, but rather into such targeted areas as Super Crypto's record-keeping (if any), payment of dividends (if any), observation of corporate formalities (if any), and Defendants' transactions with each other.

Defendants' Report

Defendants respectfully disagree with certain of Plaintiff's characterizations of the Complaint.  Rather than address those discrepancies in this Status Report, Defendants respectfully refer the Court to the arguments set forth in their recently submitted motion to dismiss.

Further, Defendants generally agree with Plaintiff's recollection of the March 5, 2020 conference, with two exceptions.  *First*, Digital Farms was ordered to answer the Complaint only with respect to the breach of contract claim, and not the promissory estoppel claim, as Digital Farms would be filing (and now has filed) a motion to dismiss that claim.  *Second*, the Court ordered the parties to meet and confer concerning the scope of discovery regarding Plaintiff's alter-ego claim – which was the basis of Plaintiff's letter to the Court, dated February 24, 2020 [DE 27].

Since the March 5, 2020 Conference, the parties engaged in a good-faith telephonic conference concerning the scope of discovery contemplated at the Mach 5, 2020 conference; an Amended Complaint has been filed; and, on May 13, 2020, Defendants filed their Motion to Dismiss the Amended Complaint and Defendant Digital Farms filed its partial Answer with regards to the Amended Complaint's breach of contract claim.

Digital Farm's Answer

Although Digital Farms previously admitted (and does so again in its Answer) to the validity of the Agreement, by no means could, or should, that admission be extrapolated to preclude Digital Farms from asserting defenses related to, *inter alia*, other elements of Plaintiff's breach of contract claim, Plaintiff's promissory estoppel claim, or other of the Complaint's allegations.[3]

Further, although Digital Farms emphatically disagrees that it "goes to great lengths to avoid responding to facts it cannot in good faith contest," Digital Farms is compelled to address its responses to ¶¶ 18-23, 27, 29-33, 37-39 of the initial Complaint (¶¶ 26-31, 35, 37-41, 45-47 of the Amended Complaint.

Specifically, those allegations are part and parcel of a list of a series of communications and events that are qualified by Paragraph 25 of the Amended Complaint as "promises."  (*See* Amended Complaint, ¶25 ("Defendants' promises included the following (emphasis added):…).

---

[3] As an aside, based on this admission alone, Defendants posit that Plaintiff should have dismissed its duplicative promissory estoppel claim to obviate the need for unnecessary motion practice in connection with that claim.

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
May 15, 2020
Page 6

Thus, Plaintiff is not asking Digital Farms to admit or deny a factual allegation – by its own pleading, Plaintiff is asking Digital Farms to admit to a legal element of a claim that Defendants are seeking to dismiss in their Motion to Dismiss.  To that end, Digital Farms stands on its responses to the Amended Complaint.[4]

Defendants' Motion to Dismiss

The Amended Complaint infuses seven (7) additional allegations concerning DPW's alleged contacts with New York that purportedly stem from the Agreement.  The balance of the initial Complaint's allegations are unchanged in the Amended Complaint.

Discovery Related to Personal Jurisdiction Over DPW

Although Defendants disagree with Plaintiff's contention that the Court contemplated any discovery concerning jurisdiction at the March 5, 2020, Defendants submit that no discovery is necessary, or warranted, based on Plaintiff's supplemental allegations concerning jurisdiction.

Indeed, Plaintiff's additional allegations, on their face, can only be narrowly construed as an attempt to invoke this Court's specific personal jurisdiction over DPW (a Delaware corporation with its principal place of business in New York) with regard to the promissory estoppel claim.[5] *See Dong Chul Kim v. Harte Hanks, Inc.*, No. 19-CV-1920-KPF, 2019 U.S. Dist. LEXIS 209162, at \*16-17 (S.D.N.Y. Dec. 4, 2019) *citing Daimler AG v. Bauman* , 571 U.S. 117 (2014) ("***Aside from 'an exceptional case,'*** a corporation is at home (and thus subject to ***general jurisdiction***, consistent with due process) only in a state of its: (i) incorporation or (ii) principal place of business." (emphasis added)); *see also Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 141 (S.D.N.Y. 2018) ("[W]hen a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an exceptional case.'").

Plaintiff has not alleged that this is such an exceptional case, and as such, the categories of documents that Plaintiff seeks concerning this discrete issue – documents which relate to extraneous activities and may contain sensitive confidential and proprietary information – would have no bearing on Plaintiff's argument that "***[i]n connection with the claims at issue***, Defendants

---

[4] Digital Farms interposes this response to solely to address Plaintiff's improper attack on its responses to these discrete paragraphs.  Digital Farms is solely addressing these allegations, as they were pled in the Amended Complaint, and expressly reserves all of its enumerated defenses in the Amended Complaint.

[5] Aside from a single allegation that non-party Milton C. Ault, III (a director of Digital Farms and Chief Executive Officer of DPW) informed Plaintiff that all wires and closing would go through Digital Farm's counsel, who is located in New York (*See* Am. Compl. ¶ 8), the balance of Plaintiff's jurisdictional allegations concern ***post-breach*** (as alleged in the Amended Complaint) communications and events, and consequently, can only relate to Plaintiff's promissory estoppel claim (*i.e., not* its breach of contract claim).  *See id.*, ¶ 75 (alleging that the breach occurred when ***Super Crypto*** failed to pay Plaintiff for the remaining 600 Machines (emphasis added)).

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
May 15, 2020
Page 7

engaged in numerous purposeful activities in New York." (*See* Am. Compl.,¶7 (emphasis added)).[6]  Conversely, any documents related to Plaintiff's jurisdictional argument (*i.e.*, communications ***between Plaintiff and Defendants*** that purport to state that DPW's purported travel to New York ***directly*** related to the transaction at issue) would necessarily already be in Plaintiff's possession, custody, or control and Plaintiff could submit those communications in opposition to the motion to dismiss and allow the documents to speak for themselves.  Any tenuous inferences that Plaintiff attempts to draw beyond such communications are purely conjecture and cannot serve as an anchor for wide-ranging discovery.[7]

Notwithstanding, to the extent the Court is inclined to permit discovery concerning Plaintiff's jurisdictional arguments at this juncture, DPW submits that such documents should be limited to the transactions and events alleged in the Complaint and should be temporally limited to the time period between March 1, 2018 (the month the Agreement was executed) and November 28, 2018 (the date the initial Complaint was filed), as this Court would need to have had personal jurisdiction over DPW when this action was commenced.

Discovery Related Plaintiff's Alter-Ego Claims

As regards to Plaintiff's requests for documents concerning its alter-ego allegations, the undersigned has already represented to Plaintiff's counsel, in writing, that, subject to the execution of a confidentiality order, Digital Farms agrees to produce: its Articles of Incorporation, name change filings, bylaws, relevant pages from Digital Farm's commercial insurance policy, balance sheets (2018 and 2019), UWCs (*i.e.*, "Unanimous Written Consents" from the Board), and also represented that Digital Farms would identify its address, corporate officers, and directors.  In addition to these categories of documents, Digital Farms agrees to produce its bank statements, subject to redactions of account numbers and any non-intercorporate transactions between DPW and Digital Farms or any other transactions beyond those between Digital Farms and Plaintiff (collectively, "Digital Farm's Proposed Production").

---

[6] Defendants further emphasizes that, at base, aside from the contractual provision in the Agreement between Digital Farms and Plaintiff (*i.e.*, not DPW), this case has no connection to New York – none of the parties are from New York; the Agreement was not executed in New York; and the Machines were not shipped from or delivered to New York.  The connection to New York, if any (there is none), is tenuous, at best.

[7] Although Plaintiff suggests that it is proposing "targeted discovery with regard to its jurisdictional argument," the latter portion of Plaintiff's status report suggests otherwise.  Indeed, Plaintiff seeks discovery of DPW ***and*** non-party Ault's "communications with service providers, funders, regulatory agencies, and others in New York," without any categorical limitation, as well as an opportunity to propound interrogatories, documents requests, and potentially, depositions, ***in connection with an opposition to a motion to dismiss***.  The breadth of discovery that Plaintiff seeks is disproportionate to the needs of the case and is tantamount to a fishing expedition.  *See Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp.3d 301, 315 (S.D.N.Y. 2015) ("Discovery need not be granted to allow a plaintiff to engage in an unfounded fishing expedition for jurisdictional facts.").

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
May 15, 2020
Page 8

These documents sufficiently demonstrate Digital Farm's independent existence and nothing more can be gained by burdening DPW, a publicly traded company, to swift through voluminous documents that have no bearing whatsoever on the underlying transaction (*see e.g., Supra*, fn. 7), *to wit*, if Digital Farm's production demonstrate that it observed corporate formalities, then it cannot be argued that DPW is Super Crypto's alter-ego and Plaintiff should not be granted a fishing license to pursue its wholly-conclusory allegations, which are pled upon information and belief.

To that end, and mindful that the Amended Complaint is to be liberally construed at this juncture, Defendants note that, although Plaintiff has, throughout this proceeding, made much ado about the nomenclature of Digital Farm's former name, "Super Crypto," and that such entity was only established for the purpose of entering into this transaction (it was not), Plaintiff's business is called "Blockchain Mining Supply Ltd.," which can only to lead one to conclude that Plaintiff was well aware of the volatile market and regulatory conditions surrounding blockchain and cryptocurrency at the time it entered into the Agreement with Digital Farms.

Simply put, Plaintiff knew that it was entering into an Agreement with a newly formed entity, did not require DPW to be a party or guarantor to such Agreement, and cannot now seriously assert alternative facts that it reasonably believed that it was dealing with the parent company, and not the subsidiary. To accept this about face, and grant unfettered discovery, would allow any third-party that enters into a transaction with a subsidiary that shares at least one director with a parent company, to disregard the corporate form and unnecessarily burden the parent company, by expending costs and resources, to defend itself in a litigation that it has no connection to.

Accordingly, Defendants request that the Court limit Plaintiff's discovery concerning its veil-piercing claims to Digital Farm's Proposed Production, compel Plaintiff to produce documents in its possession, custody, or control related to the Agreement, as such documents would necessarily be relevant to Plaintiff's claims and Defendants' defenses, and require Plaintiff to file its opposition to the Motion to Dismiss on a date certain. Defendants are prepared to propound formal requests for discovery within fifteen (15) days of the Court's response to this Report.

Notwithstanding, to the extent that the Court is also inclined to compel DPW to produce documents related to the alter-ego claims, Defendants posit that such requests should be narrowly limited to documents related to the underlying transaction, as alter-ego claims hinge on whether the corporate fiction was employed to execute a fraud or injustice on the party seeking to pierce a corporation's veil. *See Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 270 (D. Del. 1989).

<u>Discovery Related to Plaintiff's Breach of Contract Claim Against Digital Farms</u>

Digital Farms filed its partial Answer to the Amended Complaint on May 13, 2020 and the parties have not yet conducted their Rule 26(f) conference.

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
May 15, 2020
Page 9

In light of the foregoing, Digital Farms submits that Plaintiff's request concerning these categories of documents is premature and entirely ignores the fact that Digital Farms, who has now filed an Answer with regard to the breach of contract claim, would also be entitled to discovery in connection with that claim.

Thus, Digital Farms submits that the Court need not address this issue at this juncture and submits that the parties should first conduct a Rule 26(f) conference, and thereafter, propound discovery requests and responses and objections pursuant to the scope and time limits set forth in the Federal Rules of Civil Procedure.

Finally, to the extent that Plaintiff seeks documents from DPW related to its breach of contract claim, DPW notes that this request is also premature. Plaintiff must, in the first instance, establish its veil-piercing/alter-ego claim, *to wit*, if the Court finds that Plaintiff has not adequately alleged that DPW is Digital Farm's alter-ego, then, at minimum, the breach of contract claim against DPW must be dismissed.

Very respectfully,

*/s/ Ronald W. Meister*
Ronald W. Meister (RWM@cll.com)
Attorney for Plaintiff


*/s/ Robert Volynsky*
Robert Volynsky, Esq. (rvolynsky@weltz.law)
Attorney for Defendants