

**WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP**
170 OLD COUNTRY ROAD | SUITE 310
MINEOLA, NEW YORK 11501

T: (516) 320-6945
F: (516) 855-8776
WWW.WELTZ.LAW

August 31, 2020

<u>Via ECF and Electronic Mail</u>
Hon. Andrew L. Carter, Jr.
United States District Court Judge
Southern District of New York
40 Foley Square, Courtroom 1306
New York, New York 10007

Re:    Blockchain Mining Supply and Services, Ltd. v. Digital Farms, Inc. (f/k/a Super
Crypto Mining, Inc.) and DPW Holdings, Inc., No. 18-CV-11099-ALC-BCM

Dear Judge Carter:

The undersigned represents Defendants Digital Farms, Inc. (f/k/a Super Crypto Mining, Inc.) ("DF") and DPW Holdings, Inc. ("DPW" and with "DF" collectively, "Defendants") in the above-referenced matter.  Please allow this letter to serve as Defendants' response to Plaintiff's Status Report, dated August 25, 2020 ("Plaintiff's Status Report").[1]

As a threshold matter, during the parties' various meet and confer telephonic conferences, Plaintiff agreed to withdraw the formal discovery requests that it served on DPW.  Thus, at the outset, to the extent that Plaintiff seeks any formal discovery against DPW in its Plaintiff's Status Report, Defendants contend that such a request would be inappropriate and should be immediately denied by the Court.

<u>General Jurisdiction</u>

Plaintiff's Status Report cavalierly ignores the fact that Plaintiff did not allege any basis for jurisdiction over DPW in its initial Complaint and thereafter, filed the First Amended Complaint ("FAC") (after Defendants filed a motion to dismiss based upon, *inter alia*, lack of jurisdiction over DPW) wherein it asserted that "***[i]n connection with the claims at issue,*** Defendants engaged in numerous purposeful activities in New York…" [DE 35, at ¶ 7] (Emphasis supplied).  Thus, on the face of the FAC, Plaintiff has attempted to confer specific jurisdiction over DPW (not general jurisdiction).

The distinction here is important and was addressed during the June 17 conference, *to wit*, the case law is clear that absent some extraordinary circumstance, a corporation is deemed to be a citizen of its state of incorporation and the state in which its principal place of business is located

---

[1] As an initial matter, and although Defendants find it inappropriate to divulge confidential settlement discussions that are subject to FRE 408, Plaintiff's assertion that "defendants ultimately declined to settle on behalf of the subsidiary alone" is simply not true.

Hon. Andrew L. Carter, Jr., U.S.D.J.
August 31, 2020
Page 2

for general jurisdiction purposes. DPW is a Delaware corporation with its principal place of business in California and Plaintiff has not even attempted to present a colorable argument that this is an extraordinary circumstance to warrant burdensome and costly discovery for Plaintiff to engage in a wide-ranging fishing expedition concerning general jurisdiction.

More than that, it should not be lost on the Court that beyond a governing law provision in the Agreement, which DPW is not a party to, this case has no nexus to New York – Plaintiff is not a New York company; Plaintiff's officer resides in Canada; Defendants are not New York corporations and do not have principal places of business in New York; and the Machines were not shipped from or delivered to New York.

<u>Search Terms</u>

In any event, during the June 17 conference, Defendants agreed to meet and confer, in good faith, with Plaintiff's Counsel to discuss e-mail search terms based on Plaintiff's allegation that DPW/Mr. Ault allegedly travelled to New York for the purpose of obtaining funding to pay Plaintiff. Thus, based on those strictures, Defendant proposed the following search terms – Blockchain Mining, Willy, Tencer – with a temporal limitation of January 1, 2018 through November 20, 2018 (the date the Initial Complaint was filed)[2] ("DPW's Proposed Limitation") – parameters that are proportionate to the needs of the case.[3]

Plaintiff, however, is insistent that it is entitled to an exponentially greater universe of e-mails with broader search terms in connection with this narrow issue and has, at points, even suggested that it is entitled to discovery to establish general jurisdiction over DPW. More than that, Plaintiff has also remarkably insinuated that it is entitled to jurisdictional discovery beyond November 20, 2018, the date this action was commenced, despite the fact that jurisdiction must be established against a party as of the date of filing and not as of some later date.

DPW is still willing to conduct an e-mail search based on DPW's Proposed Limitation and thereafter produce any non-privileged documents, if any, that relate to DPW/Mr. Ault's purported travel to New York for the purposes of obtaining funding to pay Plaintiff. Plaintiff's dissatisfaction that scope of DPW's Proposed Limitation may not capture documents that Plaintiff *speculates might* exist, is not a sufficient basis to seek wide-ranging discovery.

---

[2] Upon information and belief, Willy Tencer is the Chief Executive Officer of Plaintiff.

[3] Notwithstanding DPW's willingness to provide some limited jurisdictional discovery before Plaintiff files its opposition to Defendants' Motion, DPW posits that, based on the allegations in the FAC, Plaintiff has all the documents it needs to support its argument for specific jurisdiction, *to wit*, based on the allegations in the FAC (which, with limited exception, must be accepted as true for purposes for a motion to dismiss), the FAC alleges travel to New York for the purpose of obtaining funding to pay Plaintiff, payments made from a bank located in New York, and a New York law firm. Indeed, solely for purposes of Defendants' motion to dismiss ("Defendants' Motion"), DPW did not refute these discrete allegations – rather, DPW's argument in Defendants' Motion is that, even taking all of these allegations as true, they are insufficient to support a finding of specific jurisdiction over DPW in this action.

Hon. Andrew L. Carter, Jr., U.S.D.J.
August 31, 2020
Page 3

<u>Mr. Ault's Personal E-mails</u>

Plaintiff's contention that "defendants have refused to even search for those terms in personal e-mail accounts that [Mr. Ault] used" is misleading. Mr. Ault, in his individual capacity, is not a party to this litigation and as such, neither Defendant has the authority to produce Mr. Ault's personal e-mails. The undersigned does not represent Mr. Ault in his individual capacity in this litigation and, to the undersigned's knowledge, there have been no subpoenas issued to Mr. Ault, in his individual capacity, to date.

<u>Discovery Regarding Alter-Ego Claims</u>

DF has provided sufficient documentation to Plaintiff that unequivocally demonstrates DF and DPW's separate corporate existence. Plaintiff now has in its possession – DF's unanimous written consents; a commercial insurance policy that was issued to DF; a separate bank account that was held by DF; name change filings; and has identified DF's address, corporate officers, and directors. The fact that Plaintiff feels that this production is inadequate merely because such documents undermine its alter ego argument does not provide a legal basis to license a wide-ranging discovery into Defendants' financial affairs and Plaintiff's unfounded reliance on *Cortland St.* (a fraudulent conveyance case) is inapposite and of no moment. [4]

Relatedly, based on Plaintiff's protestation that "[DF's] very limited production supports" (Plaintiff's Status Report, p. 2) its alter ego claim, Defendants further submit that Plaintiff, by its own admission, can and should now proceed with filing its opposition papers to Defendants' Motion as that would be the appropriate mechanism for the Court to review the parties' respective legal arguments and determine whether Plaintiff's alter-ego claim survives dismissal and warrants further discovery. This is especially true, where, as here, there are significant issues concerning this Court's jurisdiction over DPW, in the first instance.

<u>Interrogatories and Promissory Estoppel Claim</u>

Based on the Court's directive during the June 17 conference, wherein the Court permitted the parties to engage in formal discovery solely with regard to the breach of contract claim against DF, DF had subsequently asked Plaintiff whether the proposed interrogatories relate to that claim or to the promissory estoppel claim.

This latter question is only further compounded by the parties' fundamental disagreement as to whether the promissory estoppel claim against DF remains properly before the Court. As DF has now stated that it does not dispute the validity or enforceability of the Agreement, the case law

---

[4] Here, unlike in *Cortland St.*, the FAC merely alleges, in purely conclusory fashion, the elements of an alter-ego claim and is bereft of any factual allegations to support any of those legal elements. Thus, taking Plaintiff's argument to its logical extreme, there would never be a situation where a party could move to dismiss an alter-ego claim as a plaintiff would simply need to insert the legal elements into its pleading and proceed immediately to discovery to strong-arm a resolution. This however is belied by other decisions in this Court and in New York state court which have granted dismissal of an alter-ego claim at the pleadings stage.

Hon. Andrew L. Carter, Jr., U.S.D.J.
August 31, 2020
Page 4

is clear that a promissory estoppel claim cannot be pled in the alternative to a breach of contract claim, and Plaintiff has not provided any contrary legal authority to rebut this salient point.

Notwithstanding, the time to interpose responses to the interrogatories is not yet due. Thus, DF submits that Plaintiff's request here is premature and it should be afforded an opportunity to proffer its responses and objections to the interrogatories (which are not yet due), and, at that juncture, Plaintiff can seek a pre-motion conference (in accordance with Local Rule 37) with the Court to file the appropriate motion that it deems necessary and appropriate, at that time.

Timing

Defendants agree with Plaintiff's memorialization of the parties' agreement in connection with Defendants' Motion as described in the June 23rd Status Report, but further note that discovery in connection with Defendants' Motion commenced on July 13, 2020 when DF served its document production on Plaintiff.

Notwithstanding, and for the reasons set forth herein, Defendants believe that, at this juncture, briefing on Defendants' Motion can and should proceed without further delay.

Defendants' Availability

To the extent that the Court intends to schedule a telephonic conference in connection with the parties' crossing status reports, Defendants respectfully request that the Court not schedule such conference between September 3, 2020 and September 11, 2020.

Conclusion

For the foregoing reasons, Defendants respectfully request that the Court deny the relief sought in Plaintiff's Status Report in its entirety.

Sincerely,

*/s/ Robert Volynsky*

Robert B. Volynsky

cc:    Ronald W. Meister, Esq.