

**WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP**
170 OLD COUNTRY ROAD | SUITE 310
MINEOLA, NEW YORK 11501

T: (516) 320-6945
F: (516) 855-8776
WWW.WELTZ.LAW

October 16, 2020

<u>Via ECF and Electronic Mail</u>
Hon. Andrew L. Carter, Jr.
United States District Court Judge
Southern District of New York
40 Foley Square, Courtroom 1306
New York, New York 10007

  Re: Blockchain Mining Supply and Services, Ltd. v. Digital Farms, Inc. (f/k/a Super
    Crypto Mining, Inc.) and DPW Holdings, Inc., No. 18-CV-11099-ALC-BCM

Dear Judge Carter:

  The undersigned represents Defendants Digital Farms, Inc. (f/k/a Super Crypto Mining,
Inc.) ("DF" or "Super Crypto") and DPW Holdings, Inc. ("DPW" and with "DF" collectively,
"Defendants") in the above-referenced matter. Pursuant to the Court's Order, dated October 13,
2020 [DE 51], Defendants hereby respond to the two (2) status reports filed by Plaintiff on October
2, 2020 and October 12, 2020 (collectively, "Plaintiff's Status Report").

  Plaintiff's proposed disclosure demands are improper on the grounds that, *inter alia*, the
interrogatories are violative of Local Rule 33.3 and the bulk of Plaintiff's proposed interrogatories
and document requests contain no temporal limitation and, as set forth below, in some instances,
explicitly seek the production of privileged communications.[1]

  Notably, and notwithstanding Plaintiff's repeated submissions to the Court, Plaintiff
continues to pronounce its entitlement to wide-ranging discovery that, as presented, will
necessarily require Defendants to utilize search terms that will likely hit on tens of (if not hundreds
of) thousands of e-mail communications, that will then need to be reviewed (and possibly stored
with an e-discovery vendor), based on nothing more than Plaintiff's purported "reasonable belief"
that such burdensome discovery will confirm Plaintiff's conjecture concerning its conclusory alter-
ego allegations and is attenuated jurisdictional theory.

  Plaintiff's shotgun-approach to discovery is not proportionate to the needs of the case and
the Court should, instead, adopt DPW's Proposed Limitation (defined below). *See, e.g., Esso
Exploration & Prod. Nig. v. Nigerian Nat'l Petro. Corp.*, No. 14-CV-8445, 2017 U.S. Dist. LEXIS

---

[1] By submitting this response to Plaintiff's Status Report, Defendants are not waiving and expressly reserve all of their
rights and objections to the proposed interrogatories and document requests to the extent that Plaintiff later propounds
same as formal discovery requests, irrespective of whether Defendants have raised such objections in this response or
not. Additionally, to the extent that Defendants have not addressed a specific interrogatory or document request in
the response, Defendants do not waive and expressly reserve all of their right and objections to such interrogatories
and document requests to the extent that Plaintiff later propounds same as formal discovery requests.

Hon. Andrew L. Carter, Jr., U.S.D.J.
October 16, 2020
Page 2

90051, at *12 (S.D.N.Y. May 15, 2017) ("But Esso's position that 'NNPC is in a better position to identify documents which would be relevant to [Esso's] theories' is misplaced. Esso may request documents regarding the purported alter ego relationship between NNPC and the Nigerian government, but such requests must be narrowly tailored to cull only the '*specific facts crucial*' to the alter ego issue." (Internal citations omitted.) (Emphasis added.))

Defendants address each of Plaintiff's issues, in turn, below.

Discovery Related to Specific Jurisdiction over DPW

Throughout the course of this litigation, Plaintiff has been grasping at straws to establish this Court's jurisdiction over DPW in this action. First, Plaintiff relied on the contractual provision in the Agreement – which DPW is not a party to – to attempt to confer jurisdiction over DPW in this action. Next, Plaintiff located piecemeal e-mails referencing Milton C. Ault III's ("Ault") (DPW's Chief Executive Officer and a director of DF) travels to New York and alleged that these e-mails, coupled with the fact that a wire payment was sent from a New York bank and Defendants' retention of a New York law firm, demonstrate this Court's jurisdiction over DPW.

Thereafter, during the June 17th conference with the Court, Plaintiff emphasized its belief that this Court has jurisdiction over DPW based on Ault's purported travel to New York for the purpose of obtaining financing in connection with DF's obligations under the Agreement. By the conclusion of the conference, Defendants agreed to confer, in good faith, to discuss e-mail search terms based on Plaintiff's allegation that Ault, in his capacity as Chief Executive Officer of DPW, allegedly travelled to New York for the purposes of obtaining funding to pay Plaintiff.

Based on those strictures, DPW has proposed the following search terms – Blockchain Mining, Willy, Tencer (and by this letter, represents that it will add "Bitmain", "Antminer", and "Kalfa" as well) – with a temporal limitation of January 1, 2018 through November 20, 2018 (the date the initial Complaint was filed)[2] ("DPW's Proposed Limitation") – which DPW believes is more in line with the proportionality requirement under FRCP.[3] DPW *is still* willing to compile and review such documents in accordance with DPW's Proposed Limitation and to produce non-privileged documents, if any, that would relate to Ault's purported travel to New York for the purpose of obtaining funding to pay Plaintiff.

Plaintiff now, with its third bite at the apple, seeks to significantly expand upon the scope of its jurisdictional requests, without any factual basis aside from Plaintiff's own unsupported "belief" and "confidence" that further discovery will confirm its suppositions. Thus, Plaintiff

---

[2] Upon information and belief, Willy Tencer is the Chief Executive Officer of Plaintiff.

[3] Notwithstanding DPW's willingness to provide some limited jurisdictional discovery before Plaintiff files its opposition to Defendants' Motion, DPW posits that, based on the allegations in the FAC, Plaintiff has all the documents it needs to support its argument for jurisdiction, *to wit*, the FAC alleges travel to New York for the purpose of obtaining funding to pay Plaintiff, payments made from a bank located in New York, and a New York law firm. Indeed, solely for purposes of Defendants' motion to dismiss ("Defendants' Motion"), DPW did not refute these discrete allegations – rather, DPW's argument in Defendants' Motion is that, even taking all of these allegations as true, they are insufficient to support a finding of specific jurisdiction over DPW in this action.

Hon. Andrew L. Carter, Jr., U.S.D.J.
October 16, 2020
Page 3

seeks documents related to ***any agent*** of DPW (which, in and of itself is objectionable and well beyond the allegations in the First Amended Complaint which relate exclusively to Ault's travels to New York) (*see* Interrogatory No. 1); communications between DPW and, *inter alia*, its attorneys (*see* Request No. 2), the majority of which (if not all) would likely be privileged; communications that were sent ***from New York by or on behalf*** of DPW or Ault that relate, in whole or in part, to Plaintiff or obligations to Plaintiff (*see* Request No. 3), which would necessarily require significant time and resources to prune through all the communications first, and then, make a determination as to the location where each discrete communication was sent from – an onerous and unduly burdensome task that would not be proportionate to the needs of this case, especially in light of the fact that Plaintiff should already have the e-mails related to Ault's alleged travel to New York for the purpose of obtaining funding to pay Plaintiff.[4]

DPW submits that DPW's Proposed Limitation is more narrowly tailored to capture documents that would potentially be responsive to Plaintiff's jurisdictional inquiry (*i.e.*, whether Ault travelled to New York for the purpose of obtaining funding to pay Plaintiff) and is proportionate to the needs of the case. Plaintiff's contention that there may, possibly, be responsive documents beyond DPW's Proposed Limitation is merely speculative and, in any event, does not, in and of itself, provide Plaintiff with a license to force DPW to expend significant time and resources searching for the proverbial "needle in the haystack" – *that* is not proportionate to the needs of the case as the burden and expense of such discovery at this early juncture does not outweigh any likely benefit, and Plaintiff has not proffered any arguments to the contrary.[5]

Discovery Related to Veil-Piercing Claims

As regards to Plaintiff's veil-piercing claims, it should not be lost on the Court that the only allegations in the First Amended Complaint concerning veil-piercing are a recitation of the factors that Courts generally consider in connection with veil-piercing claims, without any nexus to any specific factual allegations. (*See* FAC, ¶¶ 57-69). Indeed, Plaintiff "make[s] no allegations showing there was any fraud or similar injustice inherent in the use of the corporate forms, separate from the alleged unfairness or injustice arising from this transaction. ***This is not enough to pierce the corporate veil.***" *VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 384 (S.D.N.Y. 2014) (emphasis added) (dismissing defendants' breach of contract claim founded upon veil piercing without leave to amend and noting that defendants were not entitled to discovery related to their veil piercing claim); *see also Waite v. Schoenbach*, No. 10-CV-3439-RMB, 2010 U.S. Dist.

---

[4] As to Request No. 1, Defendants submit that Plaintiff would necessarily already have such documents in its possession as the Request effectively seeks information related to payments that were made to Plaintiff. Thus, such documents are equally accessible to Plaintiff and for purposes of a limited discovery, Defendants object to such Request on the grounds that, *inter alia*, it is unduly burdensome.

[5] As an aside, Plaintiff's unilateral determination that the mere fact that Mr. Ault and Mr. Magot's e-mails generated over 10,000 hits for the terms "New York" and "NY" somehow serves as "evidence that defendants were regularly doing business in New York" is baseless. As Plaintiff knows, DPW is a publicly traded company listed on the ***New York*** stock exchange and DPW's outside corporate counsel during the relevant time period was a New York law firm which would necessarily have the term "New York" (or even "New York, NY") in its email signature block. Thus, the fact that a search for e-mails generated significant hits on "New York" and "NY" is of no moment and further illustrates the outrageous hoops that Plaintiff has determined to go through to try to salvage its claims against DPW in this Court.

Hon. Andrew L. Carter, Jr., U.S.D.J.
October 16, 2020
Page 4

LEXIS 115470, at *11 (S.D.N.Y. Oct. 29, 2010) (dismissing plaintiff's veil piercing claims and noting that "mere allegations of fraud in a complaint are insufficient to justify piercing the corporate veil." The distinction here is important because the FAC does not contain *any* allegations of fraud, let alone mere, conclusory allegations of fraud. Nor can it – Plaintiff *knew*, or reasonably could have known, from the outset, that it was entering into an Agreement with a newly formed entity which, as can be gleaned for its former name (Super Crypto Mining, Inc.) was seeking to enter the then-burgeoning cryptocurrency space. *See Pauley Petroleum, Inc. v. Continental Oil Co.*, 239 A.2d 629, 633 (Del. 1968) ("There is nothing to put this case within the framework required to disregard corporate entities and treat the two separate corporations as one. As a matter of fact, as far as the record before us shows, *the separate existence of [the wholly-owned subsidiary] serves a most legitimate business purpose.*" (emphasis added)); *see also NAMA Holdings, LLC v. Related WMC LLC*, 2014 Del. Ch. LEXIS 232, No. 7934-VCL, at *110-111 (Del. Ch. Nov. 17, 2004) ("To the extent a counterparty is uncomfortable with a subsidiary-level contract, that party can insist on a parent entity or another affiliated corporation becoming a party to the agreement or providing a contractual guarantee.").

To that end, Plaintiff's proposed requests and interrogatories make clear that Plaintiff is not seeking any targeted discovery related to Defendants' alleged misuse of the corporate form to perpetuate a fraud on Plaintiff. Rather, as Plaintiff concedes, it is casting a wide net for documents under the guise that these categories of documents, generally speaking (and not specific to the facts of this case) are "areas regularly recognized as probative" on veil piercing claims. Thus, without any categorical limitation, Plaintiff seeks, *inter alia*, Super Crypto's general ledger, books of account, bank records, and other documents sufficient to show the assets, liabilities, revenues and expenditures of, as well as dividends (if any) paid by Super Crypto (*see* Request No. 5). That Request, in and of itself, effectively seeks a documented history of each and every transaction that Super Crypto has entered into, without a temporal limitation, which, on its face, is well beyond the scope of Plaintiff's breach of contract and promissory estoppel claims.

Plaintiff takes its kitchen sink requests even further by seeking communications between DPW and Digital Farms and its attorneys (*see* Request No. 4); the identity of each defendants' "landlords," which cannot possibly have any relevance to the narrow issues asserted in the FAC (*see* Interrogatory No. 3); and two requests (*see* Request Nos. 6-7) for documents sufficient to show DPW's involvement or participation in Super Crypto's marketing and operational policies, as well as in the selection and assignment of Super Crypto's executive personnel, which are inherently vague and overly broad as to, *inter alia¸* the terms "marketing and operational policies" and "selection" and "assignment" of unspecified "executive personnel." Simply put, irrespective of the number of status reports that Plaintiff has lodged with the Court, Plaintiff still fails to advance any factual predicate for its invasive requests beyond its self-serving "reasonable belief," and against that backdrop, Plaintiff's wholesale requests are not proportionate to the needs of the case.

Notwithstanding, to date, DF has provided sufficient documentation to Plaintiff that unequivocally demonstrates DF and DPW's separate corporate existence. Plaintiff now has, in its possession – DF's unanimous written consents; an insurance policy that was issued to DF; a separate bank account that was held by DF; name change filings; DF has identified DF's address,

Hon. Andrew L. Carter, Jr., U.S.D.J.
October 16, 2020
Page 5

corporate officers, and directors[6]; and a record of the dates and amounts of payments that were tendered to Plaintiff. Furthermore, to the extent that any documents and communications would exist related to Defendants' purported misuse of the corporate form in connection with the transactions at issue in this litigation, such communications would necessarily be ensnared in DPW's Proposed Limitation.[7]

For the foregoing reasons, Defendants respectfully request that Court deny the relief sought in Plaintiff's Status Report in its entirety. Alternatively, to the extent the Court is inclined to permit further discovery on the alter-ego and jurisdictional issues in connection with Plaintiff's opposition to Defendants' Motion, Defendants respectfully request that the Court circumscribe such discovery based on DPW's Proposed Limitation.

We thank the Court for its time and consideration.

Sincerely,

*/s/ Robert Volynsky*

Robert B. Volynsky

cc:    Ronald W. Meister, Esq.

---

[6] Defendants posit that with respect to Interrogatory No. 2, which seeks this same information with regard to DPW, the requested information is readily available in DPW's public filings, which filings Plaintiff has had access to since the inception of this litigation in November 2018.

[7] Defendants acknowledge that with respect to discovery related to Plaintiff's veil-piercing claims, the proposed temporal limitation for DPW's Proposed Limitation may need to be expanded and Defendants would be willing to confer with Plaintiff, in good-faith, to reach a resolution with regard to that discrete limitation.