# WELTZLAW

WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP
170 OLD COUNTRY ROAD | SUITE 310
MINEOLA, NEW YORK 11501

T: (516) 320-6945
F: (516) 855-8776
WWW.WELTZ.LAW

<u>Via ECF and Electronic Mail</u>                                                    March 1, 2021
Hon. Andrew L. Carter, Jr.
United States District Court Judge, S.D.N.Y.
40 Foley Square, Courtroom 1306
New York, New York 10007

      Re:    <u>Blockchain Mining Supply and Services, Ltd. v. Digital Farms, Inc. (f/k/a Super Crypto Mining, Inc.) and DPW Holdings, Inc., No. 18-CV-11099-ALC</u>

Dear Judge Carter:

      Pursuant to the Court's Order, dated February 25, 2021 [DE 64], Defendants hereby submit their response to Plaintiffs' letter motion for a conference regarding Defendants' document production, dated February 24, 2021 [DE 63] ("Plaintiff's Motion"). For the reasons set forth below, the Court should deny Plaintiff's Motion and direct the parties submit a briefing schedule in connection with Defendants' motion to dismiss the First Amended Complaint (the "FAC"). [1]

      On December 4, 2020, the Court issued an Order (the "December 4th Order" [DE 56]) noting that "Plaintiff is entitled to **limited** jurisdictional discovery regarding personal jurisdiction and alter ego status" (emphasis added) and that such disclosure requests would be circumscribed to "'verify[ing] the allegations of specific facts crucial' to establishing Plaintiff's personal jurisdiction and alter ego theory." The December 4th Order further directed Defendant to proceed with its proposed search terms that were previously outlined to the Court ("DPW's Proposed Limitation"). *See id.* In accordance therewith, Defendants conducted a comprehensive search of the e-mail accounts of both Mr. Ault and Mr. Magot and further included three additional search terms beyond DPW's Proposed Limitation in a good-faith effort to capture additional potentially responsive documents – Asset Purchase; Escrow; and S9. Thus, Defendants made a fulsome production comprised of approximately 3,367 pages (the "Supplemental Production").

      The Supplemental Production was comprised of, *inter alia*, discrete e-mails that contain a periodic summary of monies purportedly owed by DF to various of its vendors (which e-mails also reference Plaintiff), as well as unrelated expense reimbursements (the "Exhibit C E-mails", attached as Ex. C to Plaintiff's Motion). As Defendants represented to Plaintiff during their meet and confer: (i) the redactions contained in the Exhibit C E-mails are comprised of, *inter alia*, bank account numbers, as well as the identities of others and other vendors of DF that had sent invoices and expense reimbursements to DF; and (ii) that the identities of a majority of these vendors and the descriptions of services contained in the invoices constitute confidential and sensitive business information. Notwithstanding, any references to Plaintiff are unredacted.

---

[1] Since the Parties' last appearance with the Court, DPW Holdings, Inc. has since changed its name to Ault Global Holdings, Inc. and has relocated its principal place of business from California to Nevada.

Plaintiff did not at that time and does not now make any viable showing to an entitlement to this information. The mere fact that this information was contained in a document that otherwise references Plaintiff does not change this salient point. *See Topps Co. v. Koko's Confectionary & Novelty*, No. 16-CV-5954-GBD-KNF, 2018 U.S. Dist. LEXIS 158261, at *30 (S.D.N.Y. Sep. 17, 2018) ("Topps does not make citation to any authority for the proposition that Koko's is prohibited from redacting irrelevant information contained along with the relevant information in any document produced by Koko's. Nor does Topps identify any good-faith basis for believing that the redacted information is relevant."); *see also Steven Madden, Ltd. v. Jasmin Larian LLC*, 2019 U.S. Dist. LEXIS 130658, at *10-11 (S.D.N.Y. Jul. 8, 2019) (same). This is especially true at this early juncture of the case where, as the Court noted in the December 4th Order, discovery was permitted "'only to verify the allegations of specific facts crucial' to establishing Plaintiff's personal jurisdiction and alter ego theory." *See* [DE 56].

Notwithstanding, Plaintiff attempts to continue to cast as a wide net as possible to obtain information which the Court otherwise declined to authorize Plaintiff to seek disclosure of. Plaintiff does not contend that the redacted information is needed to verify any ***specific factual*** allegations in the FAC – rather, Plaintiff's Motion merely cites to a consortium of cases that stand for the ***general*** proposition that redactions based on relevancy are disfavored and bootstraps same to a self-serving argument that Plaintiff is entitled to disclosure of the redacted information to confirm its conjecture that DF operated as "mere department" of DPW.

Thus, as to jurisdictional discovery, Plaintiff speciously contends, ***for the first time***, that Plaintiff seeks to establish personal jurisdiction over DPW based on its unstated and unarticulated "'mere department' personal jurisdiction theory.'" [DE 63, p. 2]. However, the only bases for jurisdiction in the FAC relate to Plaintiff's efforts to confer ***specific*** personal jurisdiction over DPW – *i.e.*, Mr. Ault's alleged travels and communications from New York concerning Plaintiff; payments that were made by Defendants' former law firm to Plaintiff; and payments that were allegedly made by Defendants to Plaintiff from a New York bank account.[2] Indeed, and as has been addressed repeatedly in prior conferences and submissions, Plaintiff has put forth no allegations to demonstrate an extraordinary circumstance to confer general jurisdiction over DPW – a Delaware corporation with its principal place of business in Nevada. Thus, the identifies of DF's ***other*** vendors and the services they provided have no relevance to the FAC's allegations concerning ***specific*** personal jurisdiction over DPW, and Plaintiff has not proffered any contrary argument. *See e.g., Trellian Pty, ltd. v. adMarketplace, Inc.*, 2021 U.S. Dist. LEXIS 20657 (S.D.N.Y. Feb. 3, 2021) (permitting redactions of "customer lists, pricing structures, specific price quotations, pricing-derivative information and revenue projections for former current and potential future customers" in otherwise responsive documents).

The same holds true with regards to Plaintiff's manufactured necessity for this information to oppose DPW's forthcoming motion to dismiss the alter-ego claims. Indeed, Plaintiff is not

---

[2] In this regard, it is also worth noting that the Supplemental Production makes clear that no payments to Plaintiff were initiated from a New York based bank account held in either Defendant's name, further undermining Plaintiff's efforts to confer jurisdiction over DPW in this Court. Indeed, the FAC's allegation concerning a $5,000 wire payment that was purportedly made "from the debit account of DPW Holdings Inc. via JP Morgan Chase Bank, which is located in New York, New York" (SAC, ¶12) is belied by the instructions provided by Plaintiff directing payments to be made, in the first instance, to a New York based intermediary bank in New York. *See* Ex. B. This allegation should be stricken and is further illustrative of the lengths that Plaintiff will apparently go to try to hail DPW into this Court.

seeking information concerning corporate structure as it relates to Plaintiff. Rather, Plaintiff is admittedly seeking information concerning *other* vendors based on an untenable position that Plaintiff is entitled to unredacted versions of any document that references Plaintiff. Plaintiff's motives here are transparent – the Court has already determined that Plaintiff is not permitted, at this juncture, to seek discovery of, *inter alia*, the identities of Defendants' vendors (Ex. A, Interrogatory 3) or communications between Defendants and their service providers and vendors (*id.*, Request 4). *See* [DE 56]. Thus, Plaintiff seeks an end run this restriction but does not, and cannot, provide a credible basis for doing so.[3]

Indeed, disclosure of the redacted information would not provide further context of the substance of the Exhibit C E-mails. Plaintiff also does not need the identities of other vendors to verify specific allegations in the FAC as the FAC makes no mention of any other such third-parties. Nor does the FAC even reference a "mere department" theory. Rather, the FAC exclusively relies on allegations, pled on information and belief, concerning DF and DPW's corporate structure related to the underlying transaction. *See* FAC, ¶¶ 67-68 ("On information and belief DPW exercised complete domination over [and acted as the alter ego of] Super Crypto with regard to the Agreement."). Thus, Plaintiff's contentions that this discovery concerning unrelated dealings with third-parties is necessary (or even relevant) to prop up its non-existent "mere department" theory is merely a smokescreen for Plaintiff's unilateral determination that it is entitled to obtain wholesale discovery of Defendants' back offices in derogation of the December 4th Order. *See Mitre Sports Int'l v. HBO*, No. 08-CV-9117-GBD-HBP, 2010 U.S. Dist. LEXIS 162104, at *48 (S.D.N.Y. Oct. 14, 2010) (denying a motion to compel production of unredacted documents based on the Court's prior rulings "permitting HBO to redact irrelevant information, coupled with HBO's representation that it has not redacted information relevant to the Segment at issue.").[4]

Succinctly, Plaintiff now has in its possession, *inter alia*: DF's unanimous written consents; a separate bank account that was held by DF; name change filings; the identities of Defendants' officers, and directors; a record of the dates, amounts, and accounts from which payments were tendered to Plaintiff by Defendants; and, subject to the redactions set forth in the Exhibit C E-mails, e-mails that were produced after a thorough review from a universe of documents that was more expansive than that which was ordered by the Court. Plaintiff therefore has every document that exists after a reasonable search that could relate to Plaintiff and or the purported obligations owed to Plaintiff and Plaintiff cannot seriously state that it is unable to respond to a motion to dismiss because it is still searching for the proverbial "needle in the haystack." Plaintiff is free to raise these and other arguments in its opposition to Defendants' motion to dismiss and Defendants will respond accordingly in accordance with FRCP 12.

---

[3] Taken to its logical extreme, Plaintiff's position would lead to an absurd result – any entity party would be required to produce entire spreadsheet files containing years of unrelated transactions or records if one cell were responsive.

[4] As to Plaintiff's argument of burden, Defendants respond that, against this backdrop, re-reviewing the Exhibit C E-mails to specifically locate and redact PCI would be unduly burdensome and disproportionate to the needs of the case.

      For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion and direct the Parties to submit a briefing schedule for Defendants' anticipated motion to dismiss by a date certain.[5]  We thank the Court for its time and consideration.

                                                   Respectfully submitted,

                                                 */s/ Robert Volynsky*

                                                 Robert B. Volynsky

Encls.

cc:     Counsel of Record

---

[5] Defendants further respectfully request an enlargement of additional five (5) pages for their motion to dismiss so that they can adequately address the documents that have been produced to Plaintiff in the Supplemental Production and during the Parties' previous voluntary discovery exchange.  Defendants further represent that, prior to submitting this response, and in accordance with Your Honor's Individual Practices, Defendants confirmed that this response does not exceed three pages, exclusive of letterhead and signature block.

# **EXHIBIT A**



Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Ronald W. Meister**
(212) 790-9255
rwm@cll.com

October 12, 2020

**Via ECF and E-Mail to: ALCarterNYSDChambers@NYSD.uscourts.gov**

Hon. Andrew L. Carter, U.S.D.J.
Southern District of New York
40 Foley Square, Courtroom 1306
New York, NY 10007

      Re:    Blockchain Mining Supply v. Digital Farms et ano.
               Case No. 1:18-CV-l 1099 (ALC)
               <u>Status Report re Discovery</u>

Dear Judge Carter:

      In compliance with the Court's order of October 5, 2020, plaintiff Blockchain Mining Supply and Services Ltd. ("Plaintiff") submits herewith the discovery requests it seeks to serve with respect to the jurisdiction and alter ego/veil-piercing issues in the above-entitled matter.  Plaintiff proposes to serve eight interrogatories and ten document requests, which we attach to this letter.  We believe that, for the discrete information sought by the interrogatories, they are a more practical method of obtaining the information than a request for production or a deposition, and may in any case be ordered by the Court, and that they thereby comply with Local Rule 33.3.  If the Court prefers not to authorize these interrogatories at this stage in the proceeding, Plaintiff proposes to serve instead requests for documents sufficient to show the information sought, in addition to its other proposed requests for production.

      Plaintiff's proposed requests are limited to the jurisdiction and alter ego issues raised by defendants' motion to dismiss.  In that motion, defendant DPW asserts that its contacts with the jurisdiction were "random," "coincidental," and "tangential."  Plaintiff is entitled to show, and confident that the discovery sought will leave no doubt, that DPW had multiple contacts with New York that were directly related, and indeed essential, to the transactions between the parties; and that DPW had multiple service providers in New York that were engaged in various aspects of the transactions.  Plaintiff also has reason to believe that DPW's CEO and other agents were physically present in New York on multiple occasions in connection with the contract at issue.  We have also been informed by defendants' counsel

3576260.1

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
October 12, 2020
Page 2

that there are over 10,000 emails from the accounts of the defendants' CEOs in 2018 alone that contain the terms "New York" or "NY," which in itself is evidence that the defendants were regularly doing business in New York.

These discovery requests also inquire into the relationship between DPW and its wholly-owned subsidiary, defendant Super Crypto, Inc./Digital Farms, Inc. Plaintiff reasonably believes that its requested discovery will show that Super Crypto operated as a mere department of DPW, a factor relevant to both the jurisdiction and alter ego issues, and showing both that DPW is subject to personal jurisdiction in New York based on Super Crypto's actions in the forum state, and that piercing its corporate veil is justified.[1] Plaintiff's requests are limited to those areas regularly recognized as probative on these issues: overlapping offices, officers, directors, executives, and service providers; the subsidiary's financial position and circumstances, including its capitalization, solvency, assets, liabilities, dividend payments (if any), lines of credit, and bank records; transfers between the subsidiary and the parent; payment of the subsidiary's obligations by the parent; the subsidiary's observation of corporate formalities; the parent's involvement in the subsidiary's operational policies and executive management; and communications between parent and subsidiary relating to the transaction at issue.

Plaintiff respectfully requests that the Court authorize it to proceed with formal service of these requests, on the schedule initially agreed by the parties of 90 days to complete discovery, with Plaintiff to respond to Defendants' motion 30 days thereafter.

Very respectfully,

*/s/ Ronald W. Meister*
Ronald W. Meister (RWM@cll.com)
Attorney for Plaintiff

cc: Robert Volynsky, Esq. (via ECF)

---

[1] "Establishing the exercise of personal jurisdiction over an alleged alter ego requires application of a less stringent standard than that necessary to pierce the corporate veil for purposes of liability." *Storm LLC v. Telenor Mobile Commun's AS*, 2006 U.S. Dist. LEXIS 90978, at *39 n.8 (S.D.N.Y. Dec. 15, 2006). In particular, personal "jurisdiction will [] be found where the [parent] company has a subsidiary that is amenable to jurisdiction and is found to be a 'mere department' of the corporate parent.'" *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 318 (S.D.N.Y. 2009).

3576260.1

Plaintiff's specific requests are as follows:

## INTERROGATORIES

**Interrogatory No. 1**

Identify the dates and purposes of any occasion when Milton "Todd" Ault III ("Ault"), or any other officer, director or other agent of DPW, was present in New York for a purpose related, in whole or in part, to Plaintiff or obligations to Plaintiff, including to obtain funding in connection with the Asset Purchase Agreement (the "Agreement"), or the associated escrow agreements effective March 22, 2018 and April 19, 2018.

*[or produce documents sufficient to show that information]*

**Interrogatory No. 2**

State the names and titles of all directors, executives and officers of DPW and of Super Crypto in 2018.

*[or produce documents sufficient to show that information]*

**Interrogatory No. 3**

Identify and provide addresses for all DPW's and Super Crypto's attorneys, accountants, financial advisors and brokers, auditors, insurance carriers, insurance brokers, landlords and vendors in 2018.

*[or produce documents sufficient to show that information]*

**Interrogatory No. 4**

Identify each and every transfer or exchange of funds, property, capital, assets or liabilities between Super Crypto and DPW.

*[or produce documents sufficient to show that information]*

**Interrogatory No. 5**

Identify each and every payment made by either defendant to Plaintiff in connection with the Agreement, including the amount paid, the date on which the payment was initiated and/or completed, the account from which the payment was made, the source(s) of the funds and the named payor.

*[or produce documents sufficient to show that information]*

**Interrogatory No. 6**

State the initial capitalization of Super Crypto at the time of its incorporation, and the source(s) of those funds.

*[or produce documents sufficient to show that information]*

**Interrogatory No. 7**

Identify all obligations of Super Crypto paid by DPW.

*[or produce documents sufficient to show that information]*

**Interrogatory No. 8**

Identify, by institution, date(s) and amount(s), any line of credit obtained or maintained by Super Crypto in 2018.

*[or produce documents sufficient to show that information]*

3576260.1

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**Request No. 1**

Documents sufficient to show the amount, date, originating account and named payor for each and every payment made by or on behalf of DPW that originated in New York and relate, in whole or in part, to Plaintiff or obligations to Plaintiff, including the Agreement.

**Request No. 2**

All communications between DPW or Milton "Todd" Ault III ("Ault") on one hand, with attorneys, banks or other financial institutions, funders, regulatory agencies, service providers and others located in New York, on the other hand, that relate, in whole or in part, to Plaintiff or obligations to Plaintiff, including the Agreement.

**Request No. 3**

All communications sent from New York by or on behalf of DPW or Ault that relate, in whole or in part, to Plaintiff or obligations to Plaintiff, including the Agreement.

**Request No. 4**

All communications between DPW and/or Super Crypto, on one hand, and service providers or other entities engaged or otherwise paid by DPW and/or Super Crypto, including attorneys, accountants, financial advisors, auditors, insurance carriers, insurance brokers, landlords and vendors, on the other hand, that relate, in whole or in part, to Plaintiff or obligations to Plaintiff, including the Agreement.

**Request No. 5**

Super Crypto's general ledger, books of account, bank records and other documents sufficient to show the assets, liabilities, revenues and expenditures of as well as dividends (if any) paid by Super Crypto.

**Request No. 6**

Documents sufficient to show DPW's involvement or participation in the selection and assignment of Super Crypto's executive personnel.

**Request No. 7**

Documents sufficient to show DPW's involvement or participation in Super Crypto's marketing and operational policies.

**Request No. 8**

All documents and communications in the possession, custody or control of DPW that relate, in whole or in part, to Plaintiff or obligations to Plaintiff, including the Agreement.

**Request No. 9**

All communications between Super Crypto, on one hand, and DPW or Ault, on the other hand, concerning the Agreement, including the 1,100 Bitmain Antminer S9 model cryptocurrency mining machines and 1,100 power supply units that Plaintiff agreed to sell, and Super Crypto agreed to buy, pursuant to the Agreement.

**Request No. 10**

All communications between Super Crypto and DPW concerning each and every payment to Plaintiff.

3576260.1

# **EXHIBIT B**

345 Wilson Ave., #200
Toronto, ON M3H 5W1
Tel. 416 398 1198
Fax 416 398 0878

# Blockchain Mining Supply & Services Ltd.

When wiring any currency other than U.S. do not include Section 1.

Wiring Instructions:

**SECTION 1**    Corresponding Bank:    JPMORGAN CHASE BANK
1 Chase Manhattan
New York City, NEW YORK
ABA: ▮
SWIFT: ▮
UID: 014897

**SECTION 2**    BENEFICIARY BANK:    ▮
NATIONAL BANK OF CANADA
343 WILSON AVENUE
TORONTO, ON M3H 1T1
CANADA
TEL. 416 633 0161
FAX 416 633 9153

SWIFT CODE    ▮
BENEFICIARY ACC'T #:    ▮
BENEFICIARY NAME:    Blockchain Mining Supply & Services Ltd.
BENEFICIARY ADDRESS:    345 WILSON AVENUE, SUITE 200
TORONTO, ON M3H 5W1
CANADA
TEL. 416 398 1198
FAX 416 398 0878

Reason For Wire: _____