UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

.........................................................................X

BLOCKCHAIN MINING SUPPLY AND
SERVICES LTD.,                                                    Case No. 18-CV-11099-ALC-BCM

              Plaintiff,

    -against-

SUPER CRYPTO MINING, INC. N/K/A DIGITAL
FARMS, INC. AND DPW aHOLDINGS, INC.
N/K/A AULT GLOBAL HOLDINGS, INC.,

              Defendants.

.........................................................................X


**DEFENDANTS SUPER CRYPTO MINING, INC. N/K/A DIGITAL FARMS, INC.
AND DPW HOLDING, INC. N/K/A AULT GLOBAL HOLDINGS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(2) AND 12(B)(6)**


WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP
170 Old Country Road, Suite 310
Mineola, New York 11501
(516) 320-6945

*Attorneys for Defendants Super Crypto Mining, Inc.
n/k/a Digital Farms, Inc. and DPW Holdings, Inc.
n/k/a Ault Global Holdings, Inc.*


<u>On the Brief:</u>
Robert B. Volynsky, Esq. (RV-7076)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES... ..................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ...........................................................................................3

ARGUMENT .................................................................................................................5

I.   This Court Lacks Personal Jurisdiction Over DPW ............................................ 5

     A. DPW Is Not Bound to the Forum Selection Clause in the Agreement ............... 6

     B. DPW Is Not Subject to New York's Long-Arm Jurisdiction
        in Connection with Plaintiff's Claims ......................................................... 7

II.  Legal Standard for FRCP 12(b)(6) ................................................................... 12

III. The Complaint Fails to Adequately Allege that DPW
     Is the Alter-Ego of Super Crypto Under Delaware Law ....................................13

     A. Delaware Law Controls the Veil-Piercing Analysis ..................................... 13

     B. The Complaint Fails to Assert Sufficient
        Factual Allegations to Pierce DPW's Corporate Form. ................................14

IV.  The Promissory Estoppel Claim is
     Duplicative of the Breach of Contract Claim… ..................................................22

V.   DPW's Purported Promise to Answer for Super
     Crypto's Alleged Debt is Barred by the Statute of Frauds ..................................23

VI.  Alternatively, the Court Should Dismiss the Promissory
     Estoppel Claim Against DPW Because the Complaint
     Fails to Adequately Allege the Required Elements .............................................25

     A. Plaintiff Does Not Allege a Clear and Unambiguous Promise ........................ 25

     B. Plaintiff Does Not Allege Reasonable and Foreseeable Reliance ...................26

     C. The Complaint Does Not Plead an Injury Stemming From
        Plaintiff's Reliance Upon a Clear and Unambiguous Promise .........................28

CONCLUSION.............................................................................................................30

## **TABLE OF AUTHORITIES**

**Cases**                                                                  **Page(s)**

*Akzona, Inc. v. E.I. Du Pont de Nemours & Co.*,
    607 F. Supp. 227 (D. Del. 1984) ...............................................................18-19

*AmTrust Fin. Servs., Inc. v. Lacchini*,
    260 F. Supp. 3d 316 (S.D.N.Y. 2017) ...................................................5

*Aquiline Capital Partners LLC v. Finarch LLC*,
    861 F. Supp. 2d 378 (S.D.N.Y. 2012) ...................................................10

*Art Assure Ltd., LLC v. Artmentum GmbH*,
    No. 14-CV-3756, 2014 U.S. Dist. LEXIS 15621 (S.D.N.Y. Nov. 4, 2014)...........5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................12

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
    968 F.2d 196 (2d Cir. 1992) ................................................................5

*Barberan v. Nationpoint*,
    706 F.Supp.2d 408 (S.D.N.Y. 2010) ....................................................13

*Barrett v. Tema Dev. (1988), Inc.*,
    463 F.Supp. 2d 423 (S.D.N.Y. 2006) ...................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007) ............................................................................13

*Bentivoglio v. Event Cardio Grp., Inc.*,
    No. 18-CV-2040-PKC, 2019 U.S. Dist. LEXIS 206381
    (S.D.N.Y. Nov. 27, 2019)................................................................15-16

*Bd. Of Managers of Trump Tower at City Ctr. Condo v. Palazzolo*,
    346 F.Supp.3d 432 (S.D.N.Y. 2018) ....................................................26

*Bondoc v. Sklar*,
    No. 152178/2015, 2017 N.Y. Misc. LEXIS (Sup. Ct. N.Y. Cty. Jan. 12, 2017) ...............29

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1995) ..........................................................................7

*Capital Records, LLC v. VideoEgg, Inc.*,
    611 F. Supp.2d 349 (S.D.N.Y. 2009) ...............................................7-8

**Cases**                                                                                                    **Page(s)**

*Capmark Fin. Grp., Inc. v. Goldman Sachs Credit L.P.*,
    491 B.R. 335 (S.D.N.Y. 2013) ......................................................................................15

*Care Envtl. Corp. v. M2 Techs., Inc.*,
    No. CV-05-1600, 2006 U.S. Dist. LEXIS 2934 (E.D.N.Y. Jan. 18, 2006) .......................17

*Castelloti v. Free*,
    138 A.D.3d 198 (1st Dep't 2016) ..................................................................................24

*CMC Transaction Servs., LLC v. IDEX Corp.*,
    No. 18-CV-4925, 2019 U.S. Dist. LEXIS 129083 (S.D.N.Y. Aug. 1, 2019)....................24

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ....................................................................................................... 7

*DDCLAB Ltd. v. E.I. du Pont de Nemours & Co.*,
    No. 03-CV-3654, 2005 U.S. Dist. LEXIS 2721 (S.D.N.Y. Feb. 18, 2005).............26-27, 28

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)........................................................................................... 3

*DirecTV Latin Am., LLC v. Park 610, LLC*,
    691 F. Supp. 2d 405 (S.D.N.Y. 2010)............................................................................ 11

*Dong Chul Kim v. Harte Hanks, Inc.*,
    No. 19-CV-1920-KPF, 2019 U.S. Dist. LEXIS 209162 (S.D.N.Y. Dec. 4, 2019)............ 7

*Dumont v. Litton Loan Servicing, LP*,
    No. 12-CV-2677-ER-LMS, 2014 U.S. Dist. LEXIS 26880 (S.D.N.Y. Mar. 3, 2014)........ 20

*EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*,
    Civil Action No. 3184, 2008 Del. Ch. LEXIS 127 (Del. Ch. Sep. 2, 2008)....................... 16

*EB Ink Techs., LLC v. Lamocu Holdings, LLC*,
    No. 650078/2016, 2016 N.Y. Misc. LEXIS 4413 (Sup Ct. N.Y. Cty. Nov. 28, 2016)......... 14

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
    343 F.3d 189 (2d Cir. 2003) ...............................................................................27

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995) ................................................................................ 15, 17

*Fries v. Northern Oil & Gas, Inc.*,
    354 F.Supp.3d 384 (S.D.N.Y. 2018)........................................................................ 9, 12-13

**Cases**                                                                                      **Page(s)**

*Gonzalez v. Scalinatella,*
    112 F. Supp.3d 5 (S.D.N.Y. 2015) ...................................................................... 4

*Hall v. Earthlink Network, Inc.,*
    396 F.3d 500 (2d Cir. 2005) ...........................................................................23

*Healy v. Williams,*
    30 A.D.3d 466 (2d Dep't 2006) ..................................................................... 27

*Hedspeth v. Citicorp Individual Bank Ret. Plan,*
    No. 91-CV-1471, 1993 U.S. Dist. LEXIS 7595 (S.D.N.Y. Jun. 3, 1993)...................28, 29

*Henneberry v. Sumitomo Corp. of Am.,*
    415 F.Supp.2d 423 (S.D.N.Y. 2006) ...............................................................26

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.,*
    331 F. Supp. 3d 130 (S.D.N.Y. 2018) ...............................................................7

*Holmes v. Lorch,*
    329 F.Supp.2d 516 (S.D.N.Y. 2004) ...............................................................25

*In re Currency Conversion Fee Antitrust Litig.,*
    265 F.Supp.2d 385 (S.D.N.Y. 2003) ...............................................................13

*In re Terrorist Attacks on Sept. 11, 2001,*
    295 F. Supp. 3d 416 (S.D.N.Y. 2018) ............................................................... 3

*Kalin v. Xanboo, Inc.,*
    526 F.Supp.2d 392 (S.D.N.Y. 2007) ...............................................................17

*Kirschner v. CIHLP LLC,*
    No. 15-CV-8189-RA, 2017 U.S. Dist. LEXIS 162719
    (S.D.N.Y. Sep. 30, 2017).........................................................................20-21

*Konig v. Chanin,*
    No. 100822/2009, 2011 N.Y. Misc. LEXIS 7059 (Sup. Ct. N.Y. Cty. Aug. 5, 2011).......20

*Landau v. New Horizon Partners, Inc.,*
    No. 02-CV-6802-JGK, 2003 U.S. Dist. LEXIS 15999
    (S.D.N.Y. Aug. 22, 2003).........................................................................11

*L.F. Rotschild & Co. v. Van Meter,*
    No. 89-CV-1182, 1989 U.S. Dist. LEXIS 10648 (S.D.N.Y. Sept. 11, 1989) ...................12

**<u>Cases</u>**                                                                                                    **<u>Page(s)</u>**

*Liafail, Inc. v. Learning 2000,*
    No. 01-599, 2002 U.S. Dist. LEXIS 22620 (D. Del. Nov. 25, 2002) ..............................20

*Lopez v. Shopify, Inc.,*
    No. 16-CV-9761-VEC-AJP, 2017 U.S. Dist. LEXIS 77708 (S.D.N.Y. May 23, 2017) ..... 7

*MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.,*
    87 A.D.3d 836 (1st Dep't 2011) ...........................................................................................22

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical,*
    No. 19760, 2004 Del. Ch. LEXIS 21 (Mar. 4, 2004) .........................................................21

*Microstrategy Inc. v. Acacia Research Corp.,*
    No. 5735, 2010 Del. Ch. LEXIS 254 (Del. Ch. Dec. 30, 2010) .........................................20

*MMA Meadows at Green Tree, LLC v. Millrun Apartments, LLC,*
    130 A.D.3d 529 (1st Dep't 2015) ........................................................................................14

*Morgenweck v. Vision Capital Advisors, LLC,*
    410 F. App'x 400 (2d Cir. 2011) ........................................................................................24

*Official Comm. Of Unsecured Creditors v. Bay Harbour Mater Ltd.,*
    420 B.R. 112 (Bankr. S.D.N.Y. 2009) ........................................................................ 13, 13

*NAMA Holdings, LLC v. Related WMC LLC,*
    No. 7934, 2014 Del. Ch. LEXIS 232 (Del. Ch. Nov. 17, 2004) ........................... 14,

*Narayanan v. Sutherland Global Holdings,*
    No. 15-CV- 6165, 2018 U.S. Dist. LEXIS 82629 (W.D.N.Y. May 16, 2018) .................. 13

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys. LLC,*
    975 F.Supp.2d 392 (S.D.N.Y. 2013) .................................................................... 13, 15, 16

*New World Capital Corp. v. Poole Truck Line, Inc.,*
    612 F. Supp. 166 (S.D.N.Y. 1985) ................................................................................... 10

*Nieves v. Insight Bldg. Co., LLC,*
    No. 2019-0464-SG, 2020 Del. Ch. LEXIS 256 (Ch. Aug. 4, 2020) ............................ 19, 20

*Nypl v. JPMorgan Chase & Co.,*
    No. 15- cv-9300, 2018 U.S. Dist. LEXIS 47960 (S.D.N.Y. Mar. 22, 2018) .............. 15, 21

*Official Comm. Of Unsecured Creditors v. Bay Harbour Master Ltd.,*
    420 B.R. 112 (Bankr. S.D.N.Y. 2009) .............................................................................. 19

**Cases**                                                                                                      **Page(s)**

*Orlando v. Nxt-ID, Inc.*,
    No. 20-CV-1604-MKV, 2021 U.S. Dist. LEXIS 55677
    (S.D.N.Y. Mar. 23, 2021) ........................................................................................................9

*Painewebber, Inc. v. Westgate Group, Inc.*,
    748 F. Supp. 115 (S.D.N.Y. 1990) .............................................................................11-12

*Pauley Petroleum, Inc. v. Continental Oil Co.*,
    239 A.2d 629 (Del. 1968) ...................................................................................................18

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010)...................................................................................................5

*Promotora de Navegacion, S.A.v. Sea Containers Ltd.*,
    131 F. Supp. 2d 412 (S.D.N.Y. 2000) ..............................................................................21

*Pryor, Cashman, Sherman & Flynn v. Haisfield*,
    No. 90-CV-3586-RWS, 1990 U.S. Dist. LEXIS 14197 (S.D.N.Y. Oct. 25, 1990)...........10

*Radiancy, Inc. v. Viatek Consumer Prods. Grp.*,
    138 F.Supp.3d 303 (S.D.N.Y. 2014)..................................................................................16

*Richstone Design Group, LLC v. Live Art, Inc.*,
    No. 12-CV-7652-JFK, 2013 U.S. Dist. LEXIS 157781 (S.D.N.Y. Nov. 4, 2013)...............8

*Ridenhour v. Bryant*,
    No. 19-CV-2587-ALC, 2020 U.S. Dist. LEXIS 55772 (S.D.N.Y. Mar. 29, 2020) ...........24

*RSL COM Primecall v. Beckoff*,
    Nos. 01-11457, 01-11469, 03-2176, 2003 Bankr. LEXIS 1635
    (Bankr. S.D.N.Y. Dec. 11, 2003)........................................................................................17

*R.F.M.A.S., Inc. v. So.*,
    619 F.Supp.2d 39 (S.D.N.Y. 2009) ....................................................................................15

*SARN Energy LLC v. Tatra Defense Vehicles AS*,
    No. N17-C-06-355-EMD-CCLD, 2018 Del. Super. LEXIS 1156
    (Super. Ct. Nov. 5, 2018)....................................................................................................21

*Sikhs for Justice v. Nath*,
    893 F. Supp.2d 598 (S.D.N.Y. 2012) ...................................................................................5

*Silver v. Mohasco Corp.*,
    94 A.D.2d 820 (3d Dep't 1983)..........................................................................................28

**Cases**                                                                                      **Page(s)**

*S.J. Berwin & Co. v. Evergreen Entertainment Group,*
    No. 92-CV-6209-WK, 1995 U.S. Dist. LEXIS 15155
    (S.D.N.Y. Oct. 12, 1995) ................................................................................ 14

*Taman v. Fransabank Sal,*
    677 F. Supp. 2d 720 (S.D.N.Y. 2010) .......................................................... 5-6

*Tate & Lyle Ingredient Ams., Inc. v. Whitefox Tech. USA, Inc.,*
    98 A.D.3d 401 (1st Dep't 2012) ..................................................................... 6

*Thayil v. Fox Corp.,*
    No. 11-CV-4791, 2012 U.S. Dist. LEXIS 13669 (S.D.N.Y. Feb. 2, 2012) ...................... 13

*Trodale Holdings LLC v. Bristol Healthcare Inv'rs, L.P.,*
    No. 16-CV-4254, 2017 U.S. Dist. LEXIS 196150 (S.D.N.Y. Nov. 29, 2017) .................. 22

*Trevino v. Merscorp, Inc.,*
    583 F. Supp. 2d 521 (D. Del. 2008) ............................................................... 21

*Tulczynska v. Queens Hosp. Ctr.,*
    No. 17-CV-1669-DAB, 2019 U.S. Dist. LEXIS 23751 (S.D.N.Y, Feb. 12, 2019) .............. 9

*United States v. Paccione,*
    No. 89-cr-446, 1995 U.S. Dist. LEXIS 16597 (S.D.N.Y. Nov. 7, 1995) ...................... 27-28

*Unterberg v. ExxonMobil Oil Corp.,*
    203 F. Supp. 3d 324 (S.D.N.Y. 2016) ............................................................ 17

*Walden v. Fiore,*
    571 U.S. 277 (2014) .................................................................................... 11

*Wenske v. Blue Bell Creameries, Inc.,*
    No. 2017-0699, 2018 Del. Ch. LEXIS 530 (Del. Ch. Nov. 13, 2018) ..................... 17, 19

*Wilson v. Dantas,*
    746 F.3d 530 (2d Cir. 2014) .......................................................................... 26

*Wolf v. AVX Corp.,*
    No. 08-CV-934-WHP, 2008 U.S. Dist. LEXIS 49197 (S.D.N.Y. Jun. 27, 2008) .............. 6-7

**Statute**                                                                                    **Page(s)**

N.Y. General Obligations Law § 5-701...................................................................... 23, 24

N.Y. General Obligations Law § 5-703...................................................................... 24

**Rules**                                                                                      **Page(s)**

CPLR § 302....................................................................................................... 8

FRCP 12(b) ............................................................................................... 1, 3, 5, 12

Defendants Super Crypto Mining Inc. n/k/a Digital Farms, Inc. ("Super Crypto") and DPW Holdings, Inc. n/k/a Ault Global Holdings, Inc. ("DPW" and with "Super Crypto" collectively, "Defendants"), by and through their undersigned counsel, Weltz Kakos Gerbi Wolinetz Volynsky LLP, hereby submit Defendants' Memorandum of Law in support of their Motion to Dismiss the First Amended Complaint ("Complaint" or "Compl.") filed by Plaintiff Blockchain Mining Supply and Services Ltd. ("Plaintiff"), in its entirety, pursuant to Federal Rules of Civil Procedure, Rules 12(b)(2) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

The gravamen of this dispute is centered upon a garden-variety breach of contract claim based upon an Asset Purchase Agreement (the "Agreement") entered into between Plaintiff and Super Crypto.[2]  Simply, Plaintiff and Super Crypto are the only parties to the Agreement, Plaintiff alleges that Super Crypto failed to pay amounts that were allegedly due and owing to it under the Agreement and, Super Crypto has already admitted that the Agreement is valid in its partial Answer.  *See* [DE 36, ¶71].  In such instances, the case law is clear that a plaintiff is precluded from asserting both a breach of contract claim and promissory estoppel claim in the same action and therefore the duplicative promissory estoppel claim against Super Crypto should be dismissed.

Further, Plaintiff also improperly thrusts DPW, a non-party to the Agreement, into this dispute based on conclusory allegations that DPW is the alter-ego of Super Crypto.  However, this

---

[1] Although Super Crypto Mining, Inc. is now known as Digital Farms, Inc. and DPW Holdings, Inc. is now known as Ault Global Holdings, Inc., for ease of reference, the instant motion uses the same defined term as the First Amended Complaint (*i.e.*, Super Crypto and DPW), a copy of which is annexed to the accompanying Declaration of Robert B. Volynsky, Esq., dated June 2, 2021 (hereinafter, the "Volynsky Decl."), as Exhibit A.

[2] The First Amended Complaint failed to attach a copy of the Agreement; consequently, a true and correct copy of Exhibit 10.1 to the Form 8-K filed by DPW, on or about March 9, 2018, which reproduces the terms of the Agreement in full, is annexed to the Volynsky Decl. as Exhibit B.

Court lacks general and specific personal jurisdiction over DPW, a non-party, non-signatory, and non-guarantor to the Agreement, as it is a Delaware corporation with its principal place of business in Nevada and DPW did not avail itself of this Court's jurisdiction in connection with the underlying transaction. [3]

Notwithstanding, assuming, *arguendo*, that the Court determines that it has jurisdiction over DPW, which it should not, the Complaint's breach of contract claim against DPW should nonetheless fail. It is uncontroverted that DPW is not a party, signatory, or guarantor of the Agreement. By naming DPW as a Defendant, Plaintiff is effectively asking this Court to ignore well-settled corporate law that parent corporations are separate legal entities from their subsidiaries, and absent a strong showing that the corporate fiction was employed to execute a fraud or injustice upon the plaintiff, Courts are loathe to disrupt the corporate form. The Complaint does not come close to meeting this stringent standard. Rather, Plaintiff is improperly seeking the Court's assistance in rewriting the terms of the Agreement – an Agreement that was negotiated at arms-length by *two* sophisticated parties – to force DPW, a stranger to the Agreement, to honor Super Crypto's obligations thereunder. This the law does not allow.

Finally, Plaintiff's promissory estoppel claims against DPW also fails for a number of reasons: (i) the claim is duplicative of Plaintiff's breach of contract claim; (ii) the alleged promise to pay for Super Crypto's debt is unenforceable under New York's Statute of Frauds; (iii) Plaintiff fails to allege a clear and unambiguous promise; (iv) Plaintiff fails to adequately allege that it reasonably relied on any such promise; and (v) Plaintiff fails to allege that it sustained an injury that stems ***directly from*** any such reliance, *to wit*, Plaintiff's damages for promissory estoppel

---

[3] For the sake of transparency, from the date of the filing of the initial Complaint in this matter until in or about January 19, 2021, DPW's principal place of business was located in California. Furthermore, at the time this action was filed in November 2018, DPW *did not* have an office in New York.

mirror the relief requested in its breach of contract claim.

Accordingly, and for the reasons set forth below, Defendants respectfully request that the Court grant the relief sought in Defendants' motion to dismiss, in its entirety, with prejudice.

## STATEMENT OF FACTS[4]

DPW is a Delaware corporation, with is principal place of business in Nevada. Super Crypto is also a Delaware corporation and is a wholly-owned subsidiary of DPW. Compl. ¶¶3-4.

The Complaint alleges that, in or around March 8, 2018, Plaintiff entered into the Agreement with Super Crypto, whereby Plaintiff agreed to sell, and Super Crypto agreed to buy, a total of 1,100 Bitmain Antminer S9 model cryptocurrency mining machines and 1,100 power supply units (collectively, the "Machines"), for a total purchase price of $3,272,500. *Id*. ¶¶15-16.

Super Crypto paid the initial deposit of $163,625 (the "Initial Deposit") for the Machines over two (2) installment payments on March 9 and 13, 2018. *Id*. ¶17. On March 29 and April 17, 2018, the law firm of Sichenzia Ross Ference LLP ("SRF") transmitted additional payments totaling $1,487,500 to Plaintiff, which sum represented the total purchase price for 500 Machines. *Id*. ¶18. These discrete payments were allegedly marked "DPW Disbursements." *Id*.

Upon receipt of the $1,487,500, Plaintiff released the first 500 Machines to Super Crypto. *Id*. The Initial Deposit was left on deposit to be applied towards the purchase price of the remaining 600 Machines. *Id*. The purchase price for the remaining 600 Machines was $1,621,375 and Super Crypto was required to take possession of the remaining 600 Machines upon remittance

---

[4] For purposes of this motion to dismiss, the material factual allegations set forth in the Complaint are assumed to be true only for those portions of the brief concerning Defendants' arguments with respect to their Rule 12(b)(6) motion and will form the basis for the statement of facts herein. *See DiFolco v. MSNBC Cable L.L.C*., 622 F.3d 104, 111 (2d Cir. 2010). However, with regards to those portions of the brief concerning DPW's Rule 12(b)(2) motion, the Court is not required to apply the same standard. *See In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d 416, 424 (S.D.N.Y. 2018) ("In assessing personal jurisdiction on a Rule 12(b)(2) motion, the court is neither required to 'draw argumentative inferences in the plaintiff's favor, nor must it 'accept as true a legal conclusion couched as a factual allegations." (Internal citations and quotations omitted)).

of this amount, less the Initial Deposit. *Id.* ¶19; Agreement §2(a)(3). Super Crypto agreed to pay the storage fees for the Machines, from April 13, 2018 forward, and DPW made several unidentified payments towards these storage fees. *See* Compl. ¶20; Agreement §4.

The Complaint asserts that "[t]hroughout the months of April to October 2018, Defendants continued to assure Plaintiff that their payment for the remaining 600 Machines was imminent, to induce Plaintiff to maintain the Machines in storage for eventual delivery to them." Compl. ¶24. In support thereof, the Complaint cites to portions from a scattershot of e-mails that were allegedly sent by, "Defendants" (*Id.* ¶¶26-31, 47, 50), Milton C. Ault, III ("Ault") (the then-Chief Executive Officer of DPW and a Director of Super Crypto) (*Id.* ¶¶27, 29, 31-33), Darren Magot ("Magot") (Chief Executive Officer of Super Crypto) (*Id.* ¶46), and SRF (*Id.* ¶38) expressing Defendants' desire to tender payment to Plaintiff. The Complaint further references numerous payments made by DPW purportedly "on account of the balance due." *See id.* ¶¶33-34, 36, 42-44.

The Complaint further asserts that in October 2018, DPW proposed to pay the balance owed by Super Crypto to Plaintiff under the Agreement in the form of DPW stock, however, DPW did not follow through with this proposal.[5] *Id.* ¶49.

Thereafter, on October 23, 2018, Plaintiff's counsel informed Defendants' counsel "that Plaintiff would be taking legal action if the payments owing and promised to Plaintiff were not promptly forthcoming." *Id.* ¶53. On October 25, 2018, Plaintiff's counsel provided notice to Defendants' counsel of Plaintiff's intention to sell the remaining 600 Machines and recover the difference between the resale price and the contract price. *Id.* ¶54. And, on October 26, 2018,

---

[5] Defendants note that this allegation concerning an offer of compromise to accept stock in lieu of payment and Plaintiff's reference to these confidential settlement discussions is inappropriate, improper, and should not be considered by this Court. *See Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, at fn. 2 (S.D.N.Y. Jun. 12, 2015) ("Plaintiff rightfully chastises defendants for disclosing the course of these negotiations – including specific monetary demands— as '[c]onfidential communication[s] during settlement discussions subject to FRE 408'").

4

Plaintiff wrote to Messrs. Ault and Magot and provided them with the same notice. *Id.* ¶47.

Thus, on or about November 9, 2018, Plaintiff resold the remaining 600 Machines to a third party for $168,000. *Id.* ¶56, 77.   For good measure, the Complaint also injects ten (10) additional allegations pled "upon information and belief" and uncorroborated by any particularized factual allegations, that purport to recite the factors that Courts generally consider in veil-piercing analyses.   *Id.* ¶¶57-59, 62-63, 65-69.   Based on these sparse allegations, the Complaint asserts causes of action for breach of contract and promissory estoppel against Defendants.[6]

## ARGUMENT

## I.    This Court Lacks Personal Jurisdiction Over DPW

In order to survive a Rule 12(b)(2) motion to dismiss for lack of jurisdiction, Plaintiff bears the heavy burden of establishing that this Court has personal jurisdiction over a non-resident defendant, like DPW.   *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 326 (S.D.N.Y. 2017).   "Once a defendant has raised a jurisdictional defense on a Rule 12(b) motion… the plaintiff bears the burden of proving sufficient contacts with the relevant forum." *Sikhs for Justice v. Nath*, 893 F. Supp.2d 598, 622 (S.D.N.Y. 2012).   "Such a showing entails making 'legally sufficient allegations of jurisdiction,' including, 'an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010); *see also Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) ("[A]rgumentative inferences favorable to the party asserting jurisdiction should not be drawn."); *see also Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14-CV-3756, 2014 U.S. Dist. LEXIS 15621, at *2 (S.D.N.Y. Nov. 4, 2014) ("[A] plaintiff may not rely on conclusory statements… to confer jurisdiction."). "A *prima facie* showing of jurisdiction does not mean that

---

[6] On or about May 5, 2020, the Court So-Ordered the parties' joint status report which contained, *inter alia*, a request for an enlargement of five (5) additional pages for the instant Motion to Dismiss.  *See* [DE 71].

plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Taman v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (internal quotations and citations omitted). Here, Plaintiff asserts two bases for this Court's jurisdiction over DPW in this action. *First*, a forum selection clause in the Asset Purchase Agreement between Plaintiff and Super Crypto. Compl. ¶6. *Second*, that "[i]n connection with the claims at issue, Defendants engaged in numerous purposeful activities in New York." *Id.*¶7.

A.    *DPW Is Not Bound to the Forum Selection Clause in the Agreement*

Initially, insomuch as Plaintiff asserts that this Court's jurisdiction over DPW stems from the forum selection clause in the Agreement which provides that "[t]he **parties** hereto [i.e., Plaintiff and Super Crypto] irrevocably submit to the exclusive jurisdiction of" this Court (*See* Ex. B, §13(h) (emphasis supplied)), the Court need look no further than the Agreement itself to disavow that argument – particularly, DPW is **not** a party, signatory, or guarantor of the Agreement. On this basis alone, and absent a showing that DPW is the alter-ego of Super Crypto, which it is not, Plaintiff is without basis to enforce the terms of the terms of the Agreement against DPW. *See Tate & Lyle Ingredient Ams., Inc. v. Whitefox Tech. USA, Inc.*, 98 A.D.3d 401, 401 (1st Dep't 2012) ("The general rule under New York law [ ] that parent corporations may not enforce, **or have enforced against them**, terms of a contract, **including forum selection clauses**, signed by their separate existing subsidiaries." (Emphasis added)); *see also Wolf v. AVX Corp.*, No. 08-CV-934-WHP 2008 U.S. Dist. LEXIS 49197, at *6-7 (S.D.N.Y. Jun. 27, 2008). Thus, DPW **did not** irrevocably submit to the jurisdiction of this Court by virtue of its non-New York subsidiary's Agreement with Plaintiff, a non-New York domiciliary, and which Agreement was not executed in New York.

*Wolf* is particularly instructive on this salient point.  In that case, this Court granted the

parent corporation's motion to dismiss, noting, in relevant part, that:

> Wolf's only evidence to support piercing AVX's corporate veil is that AVX
> acquired almost all of ATC's shares, that AVX's counsel was also a director and
> officer of ATC, and that AVX's counsel informed Wolf by the non-compete clause
> in the Agreement.  ***Because Wolf has not established that AVX and ATC should
> be treated as a single entity, the forum selection clause in the Agreement is
> irrelevant to whether this district is the proper venue for Wolf to sue AVX.***

*Id.*  (Emphasis added).  As in *Wolf*, the Court should similarly find that the forum selection clause

in the Agreement does not encompass DPW, a non-party and stranger to the Agreement, and

dismiss this action against DPW, in its entirety, for lack of jurisdiction.

### B.  DPW Is Not Subject to New York's Long-Arm Jurisdiction in connection with Plaintiff's Claims[7]

A district court may exercise ***specific*** long-arm jurisdiction over a non-resident defendant

where the defendant has "'purposefully dictated' its activities at ***residents of the forum***, ***and the

litigation results from alleged injuries that 'arise or relate to these activities***."  *See Lopez*, 2017

U.S. Dist. LEXIS 77708, at \*10 *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1995).

(Emphasis added).    In so doing, the Court must consider "the totality of circumstances"

surrounding the defendant's activities in New York to determine if there is "a *direct* relation

between the cause of action and in-state conduct."  *See Capital Records, LLC v. VideoEgg, Inc.*,

---

[7] Notably, the Complaint appears to allege only that this Court has ***specific*** personal jurisdiction over DPW, a Delaware corporation with its principal place of business in Nevada – ***not general*** personal jurisdiction.  *See Dong Chul Kim v. Harte Hanks, Inc.*, No. 19-CV-1920-KPF, 2019 U.S. Dist. LEXIS 209162, at \*16-17 (S.D.N.Y. Dec. 4, 2019) *citing Daimler AG v. Bauman* , 571 U.S. 117 (2014) ("***Aside from 'an exceptional case,'*** a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state of its: (i) incorporation or (ii) principal place of business." (emphasis added)); *see also Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 141 (S.D.N.Y. 2018) ("[W]hen a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an exceptional case.'").  To the extent that Plaintiff contends otherwise, DPW posits that the Complaint fails to assert sufficient factual allegations to distinguish the instant matter as an "exceptional case."  *See Lopez v. Shopify, Inc.*, No. 16-CV-9761-VEC-AJP, 2017 U.S. Dist. LEXIS 77708, at \*16-17 (S.D.N.Y. May 23, 2017) (applying New York law and finding that allegations that the defendant trades on the New York Stock Exchange; has multiple customers in New York; ran several promotional events in New York; and had an office located in New York, were insufficient to invoke the Court's general jurisdiction over the non-resident defendant).

611 F. Supp.2d 349, 361 (S.D.N.Y. 2009) (Emphasis in original).  "[A] connection or nexus that is 'merely coincidental' or, 'at best, tangential,' is insufficient to support jurisdiction." *Id.*  As set forth below, Plaintiff's sparse, attenuated allegations of Defendants' alleged New York contacts fall woefully short of establishing specific jurisdiction over DPW under New York's long-arm statute.  *See* CPLR § 302(a)(1).[8]

In support of its jurisdictional argument, Plaintiff relies on the fact that Super Crypto retained SRF, a New York based law firm, to represent it in connection with the underlying transaction and that payments were made from SRF's bank account to Plaintiff (Compl., ¶¶8-9); that, on three (3) separate occasions (all post-Agreement), non-party Ault, allegedly travelled to New York to meet with an unrelated third-party to obtain financing and that a portion of such financing would allegedly be paid to Plaintiff for the Machines (*Id.*¶¶10, 13-14); that non-party Magot made a similar representation, post-Agreement, regarding non-party Ault (*Id.*¶11); and that, on July 20, 2018 Magot sent a confirmation e-mail (the "July 20th E-mail") to Plaintiff indicating that a $5,000 wire payment had been made from the "debit account of [DPW] via JPMorgan Chase Bank, which is located in New York, New York."  (*Id.*¶12).

Addressing the latter point first, the Court should disregard all allegations concerning any purported payments made to Plaintiff from a New York bank account allegedly held in the name of DPW because the July 20th E-mail (which was part of the limited discovery that was provided

---

[8] Because Plaintiff is a non-New York domiciliary, no tort claims are asserted in the Complaint, and there are no allegations that DPW derives "substantial revenue" from its contacts in New York, Plaintiff can only rely on CPLR § 302(a)(1) in its efforts to invoke specific jurisdiction over DPW.  *See* CPLR § 302(a)(1) (conferring jurisdiction over a non-resident defendant that "transacts any business within the state or contracts anywhere to supply goods or services in the state.").  Additionally, Plaintiff must also establish that such long-arm jurisdiction comports with federal due process requirements.  *See, e.g. Richstone Design Group, LLC v. Live Art, Inc.*, No. 12-CV-7652-JFK, 2013 U.S. Dist. LEXIS 157781, at *20-21 (S.D.N.Y. Nov. 4, 2013) (noting that a determination of adequate due process rests on "whether the defendant 'has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction' and whether 'the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice – that is, whether it is reasonable under the circumstances of the particular case.").

to Plaintiff, both, voluntarily and in connection with this Court's Order, dated December 4, 2020 [DE 56] (hereinafter, "Limited Discovery") *See* <u>Volynsky</u> <u>Decl.</u>, Ex. C),[9] clearly shows that the "Receiver Bank" for such transaction was located in New York, New York and that the "Beneficiary Bank" was Plaintiff's bank account located in Canada. *See id.* Importantly, this "Receiver Bank" was an intermediary bank that Plaintiff instructed Super Crypto to send funds to, in the first instance. *See id.*, Ex. D. Thus, it is duplicitous for Plaintiff to contend that such an account was the "debit account of DPW Holdings Inc… located in New York, New York" (*see* Compl., ¶12) – that is simply not true and further evidences the lengths that this Plaintiff will go to try to confer jurisdiction over DPW in this Court.[10]

Relatedly, SRF's alleged wire payment to Plaintiff that purportedly bears the notation "DPW-DISBURSEMENT" (*see* Compl., ¶9) is similarly insufficient to confer ***specific*** personal jurisdiction over DPW. *See Orlando v. Nxt-ID, Inc.*, No. 20-CV-1604-MKV, 2021 U.S. Dist. LEXIS 55677, at *15 (S.D.N.Y. Mar. 23, 2021) ("[H]iring an attorney who happens to be based in New York, but who could have performed the same services from an office somewhere else, by itself, is not enough for personal jurisdiction under Section 302(a)"); *see also Barrett v. Tema Dev. (1988), Inc.*, 463 F.Supp. 2d 423, 433 (S.D.N.Y. 2006) ("At most, Tema entered into a contract (the IUA) with a New York resident under which the only New York contacts that have any connections with that transaction are a single meeting in New York between the parties where the

---

[9] The Complaint makes reference to the July 20th E-mail and as such, the Court may consider the July 20th E-mail in connection with the Motion to Dismiss. *See Fries v. Northern Oil & Gas, Inc.*, 354 F.Supp.3d 384, 388-89 (S.D.N.Y. 2018).

[10] The document annexed as Exhibit D to the Complaint is an attachment from an e-mail that originated from Plaintiff and as such, the Court may consider this exhibit in connection with this Motion to Dismiss. *See Tulczynska v. Queens Hosp. Ctr.*, No. 17-CV-1669-DAB, 2019 U.S. Dist. LEXIS 23751, at *14 (S.D.N.Y, Feb. 12, 2019) ("As a general matter, extrinsic documents should not be considered on a motion to dismiss, but if the plaintiff knows about a document, and intentionally chooses to disregard it, and avoids mentioning it in the pleading, but relied on the document's information in framing their pleading, a defendant moving to dismiss may still rely on that document in a motion to dismiss.").

IUA was discussed, a New York bank account referenced in the IUA, and the use of a New York law firm in connection with negotiating an investment deal outside of New York that allegedly arose out of the IUA. Tema's connections with New York through the IUA are considerably more 'fortuitous' and 'random' than they are purposefully directed at New York as required for jurisdiction under CPLR 302(a)(1)."); *see also Pryor, Cashman, Sherman & Flynn v. Haisfield*, No. 90-CV-3586-RWS, 1990 U.S. Dist. LEXIS 14197, at *5-6 (S.D.N.Y. Oct. 25, 1990) (dismissing claims for lack of jurisdiction where defendant's contact were "limited to two meetings, numerous telephone calls and correspondence with Pryor Cashman in New York and the retention of Pryor Cashman, a New York law firm").

Plaintiff's allegations concerning Ault's presence in New York for the purpose of meeting with unrelated third-party financiers coupled with allegations that Ault purportedly sent correspondence to Plaintiff from New York also do not demonstrate "a direct relation" between Plaintiff's claims and Ault's purported New York conduct. *See New World Capital Corp. v. Poole Truck Line, Inc.*, 612 F. Supp. 166, 173 (S.D.N.Y. 1985) ("By answering the phone calls and receiving the correspondence [in New York], [defendant] did not purposefully avail itself of the opportunity of doing business in [New York]. **To hold otherwise would offend "traditional notions of fair play and substantial justice**." (Emphasis added)); *see also Aquiline Capital Partners LLC v. Finarch LLC*, 861 F. Supp. 2d 378, 387 (S.D.N.Y. 2012) ("'Temporary, random, or tenuous relationships with New York' does not constitute a continued business relationship.").

Indeed, even viewing these threadbare allegations in a light most favorable to Plaintiff would not rectify these deficiencies because the communications were clearly directed outside of New York towards a non-New York Plaintiff and the center of gravity for the underlying transaction is also outside of New York, *to wit*, neither of the parties to the Agreement are New

York entities; the Agreement was not negotiated or executed in New York; and the Machines were neither shipped from nor delivered to New York. *See Landau v. New Horizon Partners, Inc.*, No. 02-CV-6802-JGK, 2003 U.S. Dist. LEXIS 15999, at *18 (S.D.N.Y. Aug. 22, 2003) ("[E]ven if the correspondence or phone call was directed towards the plaintiff, the fact that the ultimate transaction, contract or activity by Spar2000 took place outside of New York and was purposefully directed towards Connecticut, the center of gravity of the transactions were outside of New York, and therefore Spar2000's alleged phone conversation and correspondence could not subject it to jurisdiction under § 302(a)(1)"); *Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *see also DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405 (S.D.N.Y. 2010). Succinctly, there is no alleged injury directed to or causing harm to any person or entity from or in New York.

Thus, in *DirecTV Latin Am., LLC*, the Court granted the defendant's motion for lack of jurisdiction, noting, in relevant part, that:

> [T]he center of gravity of the transaction at issue was indisputably outside New York. The defendants here are four foreign nationals, all of whom live in Argentina. Park 610 is incorporated in Delaware with its principal place of business in Florida. ***The agreement which DirecTV bases its claims on was negotiated by an Argentinian subsidiary of DirecTV.*** DirecTV engaged Avila because he had a 'long history of developing sports programming in Argentina.' The finalized LAS LLC agreement appears to have been entered into in Argentina, since it was negotiated by Pratola in 'a lead role' and by Avila. LAS is a Delaware, not a New York limited liability company. Most significantly, the purpose of the venture was to broadcast the channel in Latin American countries. Thus, no part of the contract was to take place in New York.

*Id.*, at 420-421 (emphasis added) (internal quotations and citations omitted). At best, the communications relied upon by Plaintiff were merely coincidental to the primary purpose of Ault's alleged visits with the lenders, bankers, and third-party funders in New York, which is insufficient to invoke this Court's jurisdiction over DPW. *See Painewebber, Inc. v. Westgate Group, Inc.*,

748 F. Supp. 115, 120-21 (S.D.N.Y. 1990) ("Westgate's desire to get a big 'New York' Investment [bank] is not a purposeful availment of New York as a forum…Westgate did not hire a New York [investment] bank because it sought to do business in New York").

Further, Plaintiff's self-serving argument is untenable and taken to its logical extreme would lead to absurd results – any officer of a company (or any person for that matter) that travels to New York (the financial capital of the world) to meet with private equity firms or investment banks (the majority of which are also located in New York), would be subject to personal jurisdiction in New York in connection with *any* lawsuit commenced by *any* third-party so long as they answer phone calls or respond to e-mails while they are in New York. ***That*** result would not comport with traditional notions of fair play and substantial justice. *See L.F. Rotschild & Co. v. Van Meter*, No. 89-CV-1182, 1989 U.S. Dist. LEXIS 10648, at *2-3 (S.D.N.Y. Sept. 11, 1989) ("[D]ue process requires that a defendant have sufficient minimum contacts with the forum state 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'").

As such, the Court should dismiss the Complaint against DPW, in its entirety.

## II.    <u>Legal Standard for FRCP 12(b)(6)</u>

To a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient "factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must contain specific factual allegations that, if true, "permit the court to infer more than mere possibility of misconduct." *Id.*   The Court is not constrained to accept as true allegations contradicted by statements in the complaint or by documents in which the complaint incorporated by reference or relies, or by facts that the Court may take judicial notice of. *Fries*, 354 F.Supp.3d

at 388-89; *Barberan v. Nationpoint*, 706 F.Supp.2d 408, 413 (S.D.N.Y. 2010).[11]  The Court need

not, and should not, accept "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements" in determining the plausibility of Plaintiff's claims.  *See Thayil v.*

*Fox Corp.*, No. 11-CV-4791, 2012 U.S. Dist. LEXIS 13669, at *7 (S.D.N.Y. Feb. 2, 2012). "[A]

plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more

than label and conclusions, and a formulaic recitation of the elements of a cause of action will not

do."  *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys. LLC*, 975 F. Supp.2d 392, 398

(S.D.N.Y. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  This is especially

true, where, as here, Plaintiff seeks to pierce the corporate veil in order to hold a parent company

liable for its subsidiary's alleged contractual breach. *See In re Currency Conversion Fee Antitrust*

*Litig.*, 265 F.Supp.2d 385, 416 (S.D.N.Y. 2003) ("Purely conclusory allegations cannot suffice to

state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading

standard."); *see also Official Comm. Of Unsecured Creditors v. Bay Harbour Mater Ltd.*, 420 B.R.

112, 134 (Bankr. S.D.N.Y. 2009) ("[A]t the motion to dismiss stage, it is insufficient to make

conclusory '[a]llegations of mere domination or control by one entity over another.").

### III.    The Complaint Fails to Adequately Allege that DPW
###         Is the Alter-Ego of Super Crypto Under Delaware Law

*A.    Delaware Law Controls the Veil-Piercing Analysis*

As a federal court sitting in diversity in New York, the substantive law of New York

applies, including its choice of law rules.  *Narayanan v. Sutherland Global Holdings*, No. 15-CV-

6165, 2018 U.S. Dist. LEXIS 82629, at *25 (W.D.N.Y. May 16, 2018).  It is well-settled under

New York law that the law governing veil-piercing claims is the law of the state of incorporation

---

[11] The Complaint cites, makes reference to, or is based upon the Agreement. *See e.g.,* Compl. ¶¶15-16, 71-72. Accordingly, the Court may consider the Agreement on a Motion to Dismiss. *See supra*, fn. 10.

of the corporation of whose veil plaintiff seeks to pierce. *See MMA Meadows at Green Tree, LLC v. Millrun Apartments, LLC*, 130 A.D.3d 529, 530-531 (1st Dep't 2015) (applying Delaware law to veil-piercing analysis notwithstanding a contractual Indiana governing law provision).  Since DPW and Super Crypto are both Delaware corporations, Delaware's standard for veil-piercing governs this dispute. *See Nat'l Gear & Piston, Inc.*, 975 F.Supp.2d at 401 (noting that Delaware law governs "Plaintiff's veil-piercing attack" because "Plaintiff seeks to disregard the [Delaware] subsidiary's… corporate form and hold the parent… liable."); *EB Ink Techs., LLC v. Lamocu Holdings, LLC*, No. 650078/2016, 2016 N.Y. Misc. LEXIS 4413, at n.12 (Sup Ct. N.Y. Cty. Nov. 28, 2016) (noting that "[t]he First Department also recognizes and enforces the strict manner in which Delaware courts apply the Delaware veil piercing standard.").[12]

### B.     The Complaint Fails to Assert Sufficient Factual Allegations to Pierce DPW's Corporate Form

The Complaint fails to set forth sufficient factual allegations that would pierce DPW's – a non-party and non-signatory to the Agreement – corporate form to impose liability upon it for its subsidiary's purported contractual obligations.  *See, e.g., NAMA Holdings, LLC v. Related WMC LLC*, No. 7934-VCL, 2014 Del. Ch. LEXIS 232, at *110-111 (Del. Ch. Nov. 17, 2004) ("A party that has contracted with a subsidiary should not later be able to assert a claim for tortious interference to secure rights it did not bargain for.  Nor should a defendant that entered into a transaction based on a set of contractual rights and obligations be exposed unnecessarily to the potentially different liabilities of law.").  Thus, the Complaint seeks an end run to the settled principle that parent corporations are separate and distinct from their subsidiaries and as such,

---

[12] To the extent Plaintiff counters that New York law should govern the Court's veil-piercing analysis, Defendants posit that such an argument is of no moment since "Delaware law seems hardly distinguishable from the pertinent law of New York" with respect to veil-piercing analyses. *See, e.g., S.J. Berwin & Co. v. Evergreen Entertainment Group*, No. 92-CV-6209-WK, 1995 U.S. Dist. LEXIS 15155, at *3 (S.D.N.Y. Oct. 12, 1995).  Thus, even if the Court applies New York law, which it should not, it should still find that Plaintiff fails to adequately allege a veil-piercing claim.

Courts are reluctant to disregard the corporate form absent an extraordinary showing. *Nypl v. JPMorgan Chase & Co.*, No. 15- cv-9300, 2018 U.S. Dist. LEXIS 47960, at *20 (S.D.N.Y. Mar. 22, 2018) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation… is not liable for the acts of its subsidiaries.").

"A plaintiff seeking to persuade a Delaware court to disregard corporate structure faces 'a difficult task.'" *R.F.M.A.S., Inc. v. So.*, 619 F.Supp.2d 39, 68 (S.D.N.Y. 2009) (citations omitted); *see also National Gear & Pitson, Inc.,* 975 F. Supp. 2d at 401-402 (S.D.N.Y. 2013) ("'Delaware courts' especially 'take the corporate form very seriously and will disregard it only in the exceptional case.'"). Thus, to prevail on an alter-ego theory of parent liability for the acts of its subsidiaries, Delaware law requires that the plaintiff establish that "(1) that the parent and the subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness… [is] present.'" *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (citations omitted). Specifically, the plaintiff must allege facts sufficient to show that the subsidiary had no "legal independent significance of its own." *See Capmark Fin. Grp., Inc. v. Goldman Sachs Credit L.P.*, 491 B.R. 335, 347 (S.D.N.Y. 2013).

"Operating as a 'single [economic] entity' requires showing the parent entity's 'complete domination and control' to such an extent that the subsidiary entity 'no longer has legal or independent significance of its own.'" *Bentivoglio v. Event Cardio Grp., Inc.*, No. 18-CV-2040-PKC, 2019 U.S. Dist. LEXIS 206381, at *15 (S.D.N.Y. Nov. 27, 2019). Courts consider the following factors (colloquially referred to as the *Fletcher* factors) when determining whether a parent and subsidiary are a single entity for veil-piercing purposes:

> [W]hether the corporation was adequately capitalized…; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in

general, the corporation simply functioned as a facade for the dominant shareholder.

*Id.*, at *16; *see also EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, No. 3184, 2008 Del. Ch. LEXIS 127, at *49 (Del. Ch. Sep. 2, 2008) (noting that no single factor is dispositive in analyzing a veil-piercing claim).  "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Nat'l Gear & Piston, Inc.*, 975 F.Supp.2d at 406.

Thus, without any supporting factual allegations, the Complaint baldly alleges under the self-serving heading "DPW's Control of Super Crypto":

• "On information and belief": (i) DPW is the sole shareholder of Super Crypto; (ii) Defendants are located at the same address, share common office space, and have the same attorneys; (iii) Super Crypto was incorporated in 2018, with no retained earnings, and was insufficiently capitalized to perform its obligations under the Agreement (iv) throughout Defendants' negotiations with Plaintiff, Defendants did not deal with each other at arms-length; (v) Super Crypto did not maintain the formalities that are essential features of corporate existence; (vi) DPW exercised complete domination over Super Crypto with regard to the Agreement; (vii) DPW acted as the alter-ego of Super Crypto with regard to the Agreement; (viii) DPW used its domination over Super Crypto to commit wrongs against Plaintiff, resulting in damages and injury to Plaintiff. [13]  Compl. ¶¶57-59, 63, 65-69; and

• Throughout their negotiations with Plaintiff: (i) Defendants made no distinction between themselves regarding their obligations to Plaintiff; (ii) Super Crypto made clear that the decisions with regard to the Agreement were made by Mr. Ault as President and CEO of DPW; (iii) Super Crypto displayed no independent business judgment; and (iv) DPW paid for and asserted its authority to pay the debts of Super Crypto. *Id.* ¶¶60-62, 64.

However, merely echoing the *Fletcher* factors in a Complaint does not satisfy Plaintiff's burden.

*See Radiancy, Inc. v. Viatek Consumer Prods. Grp.*, 138 F. Supp. at 316 (analyzing Delaware law) ("The alter-ego [ ] allegations are conclusory and are therefore not accepted as factual allegations.").

---

[13] It defies common sense that DPW or Super Crypto sought to "commit wrongs against Plaintiff," when, in fact, Plaintiff acknowledges that Super Crypto entered into the Agreement and paid a significant sum ($1,487,500) for the first delivery of the Machines. *See* Compl. ¶18.

Indeed, Courts routinely grant dismissal motions where a Complaint contains no or minimal factual allegations to buttress an unadorned recitation of the *Fletcher* factors. *See e.g., National Gear*, 975 F. Supp. 2d at 404 (analyzing Delaware law and noting that "allegations of mere shared management, shared corporate principles, or a parent's ownership and operation of a subsidiary – even exclusively for the parent's gain – do not merit piercing the corporate veil"); *Wenske v. Blue Bell Creameries, Inc.*, No. 2017-0699, 2018 Del. Ch. LEXIS 530, at *10-11 (Del. Ch. Nov. 13, 2018) ("[C]onclusory allegations that the parent's management exclusively dominated and controlled the subsidiary's management [are insufficient] to state a claim for veil-piercing."); *Care Envtl. Corp. v. M2 Techs., Inc.*, No. 05-CV-1600, No. CV-05-1600, 2006 U.S. Dist. LEXIS 2934, at *42 (E.D.N.Y. Jan. 18, 2006) (conclusory allegations that "the individual defendant exercised complete dominion or control over [the Delaware corporation]" coupled with a singular allegation, pled upon information and belief, that the Delaware corporation was undercapitalized, was "an insufficient basis to pierce the corporate veil.").

Here, Plaintiff's bare allegations, on their face, describe nothing more than a "'typical' relationship between parent and subsidiary." *RSL COM Primecall, Inc. v. Beckoff*, Nos. 01-11457, 01-11469, 03-2176, 2003 Bankr. LEXIS 1635, at *53 (Bankr. S.D.N.Y. Dec. 11, 2003) ("If lack of adequate capitalization were alone enough to justify piercing the corporate veil, the veil of every insolvent subsidiary or failed start-up corporation could be pierced."); *see also Unterberg v. ExxonMobil Oil Corp.*, 203 F. Supp. 3d 324, 329 (S.D.N.Y. 2016) (not "enough that parent corporation have the same officers or that the parent corporation owns all of its subsidiary's stock, or even that a parent and subsidiary hold themselves out as being a single integrated operation, controlled and managed from the parent's offices."); *Kalin v. Xanboo, Inc.*, 526 F.Supp.2d 392,

404 (S.D.N.Y. 2007) (allegations of a common address, common ownership and common principals insufficient to plead veil-piercing).

Thus, the Complaint does not demonstrate that Super Crypto lacked a legal independent significance of its own, *to wit*, through Limited Discovery, Plaintiff now has ample documentation demonstrating that Super Crypto was operated as its own separate entity with, *inter alia*, its own discrete balance sheets, vendors, directors, officers, bylaws, and an insurance policy. *See Pauley Petroleum, Inc. v. Continental Oil Co.*, 239 A.2d 629, 633 (Del. 1968) ("There is nothing to put this case within the framework required to disregard corporate entities and treat the two separate corporations as one.   As a matter of fact, as far as the record before us shows, ***the separate existence of [the wholly-owned subsidiary] serves a most legitimate business purpose.***" (emphasis added)); *see also Akzona, Inc. v. E.I. Du Pont de Nemours & Co.*, 607 F. Supp. 227, 228 (D. Del. 1984) ("Even so, since the subsidiary was not a shell but an operating company which independently handled routine, day-to-day operations, maintained separate books and had significant rights and obligations apart from its parent, the court refused to infer an agency relationship.").

In *Akzona, Inc.*, the Delaware District Court was faced with much stronger factual allegations and ultimately granted defendant's motion to dismiss, noting that the following allegations were insufficient, at the pleading stage, to demonstrate alter-ego liability:

> (1) Akzo's 100% ownership of Enka and Akzona; (2) some overlap between the board of directors and Akzo and those of Enka and Akzona; (3) references to Enka and Akzona as divisions of Akzo in the Akzo annual report; (4) deposition of current and former Enka employees in which they referred to Enka as a division of Akzo and stated that the Enka board reported to the Akzo board; (5) the requirement that Akzo approve capital expenditures by Enka and Akzona of amounts exceeding $850,000; (6) references to Akzo's board members' supervision of the "divisions"; (7) references in Akzo board meetings and in corporate reports to the development of advanced fibers as an "Akzo decision" and "Akzo project"; (8) Akzo taking credit for the advanced fiber project in its annual report; (9) Akzo's negotiation with

18

an agency of the Dutch government to set up a joint venture with Enka to manufacture aramid fibers; (10) Akzo's guarantee of 50% of the Dutch government loans to Enka; and (11) Akzo's participation in the decision to bring this declaratory judgment action.

*Id.* at 237. As set forth above, Plaintiff's conclusory allegations are even bleaker than those alleged in *Akzona, Inc.*, *to wit*, Plaintiff does not even allege that Super Crypto was a shell corporation or that Defendants abused the corporate form to effect a fraud on Plaintiff. *See Wenske*, 2018 Del. Ch. LEXIS 530, at *9 ("[T]he true novelty would be to disregard the separateness of parent and subsidiary simply because a plaintiff would prefer to hold both liable for the subsidiary's breach of contract. Our law does not countenance this result."); *Nieves v. Insight Bldg. Co., LLC*, No. 2019-0464-SG, 2020 Del. Ch. LEXIS 256, at *18 (Ch. Aug. 4, 2020) ("Judicial disregard for the corporate form is not a remedy available to plaintiffs who merely wish to hold another entity liable in addition to the one with whom they contracted."). At most, the Complaint alleges that DPW [allegedly] used its domination over Super Crypto to "commit" some unspecified "wrongs" against Plaintiff" (*see* Compl., ¶69), which falls well short of the pleading standard for veil-piercing claims. *Nieves*, 2020 Del. Ch. LEXIS 256, at *17-18 ("To pierce the corporate veil, a plaintiff must allege facts from which the court may conclude that the subsidiary is a 'sham and exists for no other purpose than as a vehicle for fraud."). The balance of the Complaint's allegation fare no better.

Thus, while Plaintiff argues that DPW, through Ault, made several assurances of payment to Plaintiff, the first Ault or DPW e-mail cited in the Complaint makes it plain that Ault was acting **on behalf of Super Crypto.** *See* Compl. ¶35 ("On June 1, Mr. Ault wrote "to make it clear that <u>SCM</u> will **honor our obligations to finalize the purchase of the last 600 Machines.**" (underscore added; bold in original)); *see also, e.g., Official Comm. Of Unsecured Creditors v. Bay Harbour Master Ltd.*, 420 B.R. 112, 137-38 (Bankr. S.D.N.Y. 2009) ("'Since courts generally presume that

the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for their subsidiary… it cannot be enough to establish liability here that dual officers and directors made policy decisions and supervised activities at the facility.").    The purported communications referenced in paragraphs 37, 39-41, and 45 refer back to this e-mail and do not specifically identify DPW as the maker of any such statement.  Plaintiff's unsubstantiated protestation that Ault was acting in his capacity as a DPW officer does not change this salient point.[14]  *See Nieves*, 2020 Del. Ch. LEXIS 256, at *18 ("[T]he bare assertion that personnel use email accounts associated with one entity while conducting the business of another does not indicate fraud and cannot by itself support an allegation that [the principals] were using [their entity] to perpetrate fraud.").[15]  Stated differently, the Complaint fails to allege ***any*** wrongdoing undertaken by DPW. *See Microstrategy Inc. v. Acacia Research Corp.*, No. 5735, 2010 Del. Ch. LEXIS 254, at *46-48 (Del. Ch. Dec. 30, 2010) (granting motion to dismiss a breach of contract claim where the Complaint "merely pleads that two corporations took actions that allegedly constitute breaches of contract and fraud without asserting any facts suggesting that such wrongs arose out of a 'misuse of the corporate structure.'").

Finally, the Complaint's most glaring deficiency is its failure to adequately allege "an overall element of injustice or unfairness" which requires pleading factual allegations "showing that the corporation is a sham and exists for no other purpose than as a vehicle for fraud."

---

[14] It is unclear whether the Complaint asserts these "factual" allegations in support of Plaintiff's breach of contract claim or in support of its promissory estoppel claim. To the extent Plaintiff contends that these allegations support both causes of action, then, as a matter of law, the Court must dismiss the promissory estoppel claim. *See e.g.*, *Konig v. Chanin*, No. 100822/2009, 2011 N.Y. Misc. LEXIS 7059, at *15 (Sup. Ct. N.Y. Cty. Aug. 5, 2011) (promissory estoppel claims dismissed on the grounds that it was "based upon promises allegedly made to [defendant] in the Agreement and [is] essentially duplicative of [defendant's] first counterclaim for breach of contract.").

[15] Moreover, the Complaint also peppers in several communications between Plaintiff and "Defendants" related to purported payments that were to be made to Plaintiff.  *See* Compl., ¶¶26-31, 47, 50.  The Court should not be tasked with deciphering which of these vague allegations concern which Defendant and in any event, such communications are not demonstrative of an abuse of the corporate form.  *See Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677-ER-LMS, 2014 U.S. Dist. LEXIS 26880, at *91 (S.D.N.Y. Mar. 3, 2014); *see also Liafail, Inc. v. Learning 2000*, No. 01-599, 2002 U.S. Dist. LEXIS 22620, at *37-38 (D. Del. Nov. 25, 2002) ("[T]he mere making of payments and transfers alone does not create alter-ego liability").

*Kirschner v. CIHLP LLC*, No. 15-CV-8189-RA, 2017 U.S. Dist. LEXIS 162719, at \*19 (S.D.N.Y. Sep. 30, 2017). The "claimed injustice must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit." *Id.*, at \*11-12. The Complaint contains no such allegations. Instead, the entirety of Plaintiff's claims are tethered to the purported injury caused to it by virtue of not receiving the payments for the remaining 600 Machines from Super Crypto pursuant to the Agreement. That, however, is precisely the type of "injustice" that Delaware Courts routinely reject when conducting an alter-ego analysis. *See, e.g., Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) ("Delaware courts have held that the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil"); *see also Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, No. 19760, 2004 Del. Ch. LEXIS 21, at \*16, n.30 (Mar. 4, 2004) ("Any breach of contract… is, in some sense, an injustice. ***Obviously this type of 'injustice' is not what is contemplated by the common law rule that piercing the corporate veil is appropriate only upon a showing of fraud or something like fraud***… To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping." (emphasis added)); *see also SARN Energy LLC v. Tatra Defense Vehicles AS*, No. N17-C-06-355-EMD-CCLD, 2018 Del. Super. LEXIS 1156, at \*16 (Super. Ct. Nov. 5, 2018) ("The injustice must be more than a breach of contract.").

Concisely, Plaintiff's dissatisfaction with an Agreement that it negotiated and entered into to sell cryptocurrency mining machines to a newly-formed, wholly-owned subsidiary of a publicly traded company (which new entity was named "Super Crypto Mining, Inc."), just before the cryptocurrency market began a precipitous downturn should not serve as a catalyst for the Court to abdicate from the "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation… is not liable for the acts of its subsidiaries." *See Nypl*,

2018 U.S. Dist. LEXIS 47960, at *20.  The Court should not allow Plaintiff to escape these inconvenient facts and countenance its efforts to rewrite the terms of the Agreement – an Agreement that was negotiated at arms-length by *two* sophisticated parties – to force DPW, a stranger to the Agreement, to honor Super Crypto's obligations thereunder.  *See Promotora de Navegacion, S.A. v. Sea Containers Ltd.*, 131 F. Supp. 2d 412, 417 (S.D.N.Y. 2000) ("The parties before me are as sophisticated as they come… Thus, an argument (by either side) that one party was somehow led to believe that another party was (or was not) a party to the arbitration proceeding, in the face of the plain terms of the [underlying agreement], must be supported by some compelling evidence.").

Accordingly, the Court should dismiss the breach of contract claim against DPW, in its entirety, with prejudice.

### IV.   The Promissory Estoppel Claim is
### _Duplicative of the Breach of Contract Claim_

Plaintiff's promissory estoppel claim should also be dismissed as it is duplicative of Plaintiff's breach of contract claim and, more importantly Super Crypto has already admitted in its Answer that the Agreement is a valid contract.  [DE 36, ¶71].  As such, the promissory estoppel claim against Super Crypto should be dismissed as duplicative of the breach of contract claim. *Trodale Holdings LLC v. Bristol Healthcare Inv'rs, L.P.*, No. 16-CV-4254, 2017 U.S. Dist. LEXIS 196150, at *40 (S.D.N.Y. Nov. 29, 2017) (noting that a claim for promissory estoppel cannot "stand as an alternative to a breach-of-contract claim… [where] Defendants do not contest the validity of the contract").

These same hornbook principles undermine Plaintiff's promissory estoppel claim against DPW and warrant dismissal of that claim as well.  The Complaint's factual allegations supporting the promissory estoppel claim against DPW (*i.e.*, that DPW made several payments and numerous

22

assurances of future payments), as well as the requested relief (*i.e.*, re-payment of Plaintiff's alleged "cover damages") are duplicative of the factual allegations supporting the companion breach of contract claim against Super Crypto, *i.e.*, both claims seek damages of "no less than $1,388,495, representing the difference between the contract price and the resale price." *See* Compl., ¶¶79, 89; *see also Hall v. Earthlink Network, Inc.*, 396 F.3d 500, 508 (2d Cir. 2005) ("If the allegations do not go beyond the statement of a mere contract breach and relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

Further, the fact that DPW is not a party to the Agreement does not grant Plaintiff a license to assert an extraneous promissory estoppel claim entirely predicated upon, and duplicative of, its breach of contract claim. *See MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*, 87 A.D.3d 836, 842 (1st Dep't 2011). Nor does it transform Plaintiff's promissory estoppel claim against DPW into an "independent" claim. *See id.*

Accordingly, the Court should dismiss the promissory estoppel claim in its entirety.

## V. DPW's Purported Promise to Answer for Super Crypto's Alleged Debt is Barred by the Statute of Frauds

Plaintiff's promissory estoppel claim against DPW is, in actuality, a claim that DPW purportedly guaranteed Super Crypto's obligations under the Agreement. *See, e.g.*, Compl., ¶84 ("Defendants repeatedly made clear and unambiguous promises, orally and in writing, to pay plaintiff the ***outstanding balance of the contract price***." (emphasis added)). Thus, for Plaintiff to succeed on such a claim, Plaintiff must establish that DPW's purported promise to answer for the debt of Super Crypto comports with New York's Statute of Frauds. Specifically, N.Y. General Obligations Law § 5-701(a)(2) provides, in relevant part, that "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed

by the party to be charge therewith, or by his lawful agent, if such agreement, promise or undertaking… [i]s a special promise to answer for the debt, default, or miscarriage of another person."

The Complaint, however, does not allege that DPW and Plaintiff entered into any written agreement complete with all material terms and Plaintiff's allegations that DPW purportedly made payments to Plaintiff on account of the balance due change this salient point.  *See Castelloti v. Free*, 138 A.D.3d 198, 203 (1st Dep't 2016) ("[T]he partial performance exception applies only to the statute of frauds provision in section 5-703, and has not been extended to section 5-701."). Plaintiff cannot escape these inconvenient facts by styling its claim against DPW as a promissory estoppel claim.  *See Morgenweck v. Vision Capital Advisors, LLC*, 410 F. App'x 400, 402 n.1 (2d Cir. 2011) ("It is well settled that under New York law a plaintiff may not escape the Statute of Frauds by attaching the label… 'promissory estoppel' to the underlying contract claim." (collecting cases)).  Indeed, to "circumvent the 'statutory bar' on enforcement of unwritten agreements that fall under the Statute of Frauds,… promissory estoppel claims require an injury so egregious that it would be unconscionable to allow a defendant to invoke the Statute of Frauds." *CMC Transaction Servs., LLC v. IDEX Corp.*, No. 18-CV-4925, 2019 U.S. Dist. LEXIS 129083, at *9 (S.D.N.Y. Aug. 1, 2019).  However, where, as here, "Plaintiff alleges no injuries beyond lost monetary compensation, [such allegations] do not qualify as unconscionable under New York law."  *See Ridenhour v. Bryant*, No. 19-CV-2587-ALC, 2020 U.S. Dist. LEXIS 55772, at *23 (S.D.N.Y. Mar. 29, 2020).

Thus, Plaintiff's request for "$1,388,495 representing the different between the contract price and the resale price" (Compl., ¶89) which purportedly stems from DPW's alleged promise to answer for the debts of Super Crypto is precisely the type of "lost fee" that New York courts

have held to be unrecoverable. *See id.*  As such, Plaintiff is prohibited from pleading around the Statute of Frauds through promissory estoppel and the Complaint should be dismissed against DPW, in its entirety.

VI.    **Alternatively, the Court Should Dismiss the Promissory Estoppel Claim Against DPW Because the Complaint Fails to Adequately Allege the Required Elements**

Even if the Court finds that the promissory estoppel claim against DPW is not duplicative of the breach of contract claim or that it is not barred by the Statute of Frauds, which it should not, the Court should nonetheless dismiss the promissory estoppel claim against DPW because the Complaint's vague, nonspecific allegations of an alleged promise and Plaintiff's purported reliance thereon are insufficient to invoke the doctrine of promissory estoppel.  To state a claim for promissory estoppel under New York law, a party must allege: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by the party asserting the estoppel as a result of its reliance. *Holmes v. Lorch*, 329 F.Supp.2d 516, 527 (S.D.N.Y. 2004).

A.    *Plaintiff Does Not Allege a Clear and Unambiguous Promise*

At the outset, the Complaint lumps together piecemeal segments of various disconnected e-mail communications that were purportedly authored by one or both "Defendants," Defendants' prior attorneys (SRF), Magot (Super Crypto's Chief Executive Officer), and Ault (DPW's then-Chief Executive Officer and a Director of Super Crypto) (Compl. ¶¶26-31, 35, 37-41, 45-47, 50), with the hope that the Court, on its own accord, will find that these fragmented snapshots, without further context, constitute a clear and unambiguous promise.[16] Thus, the Complaint alleges that

---

[16] Tellingly, the Complaint does not differentiate communications originating from DPW from those originating from Super Crypto; consequently, the Complaint's allegations cannot possibly constitute a clear and unambiguous promise, as a matter of law. *See generally*, Restatement of Contracts 2d, § 2 (defining a promise as a manifestation of intention ***made by the promisor*** (emphasis added)). Indeed, the only communication that the Complaint quotes that is from a

Defendants, or someone acting on their behalf, intimated that: in April 2018, Defendants "were **anxious** to make the payment" (*Id.* ¶27) (emphasis added) and "***hope*** to make the final payment ***this week***" (*Id.* ¶28) (emphasis added); "<u>SCM</u> [not DPW] will honor [<u>S</u>uper <u>C</u>rypto <u>M</u>ining's] obligation to finalize the purchase of the last 600 Machines (*Id.*¶35) (emphasis added); in June 2018, Defendants "inten[ded to] consummate the [A]greement" (*Id.* ¶39) (emphasis added); in September 2018, non-party Ault wrote to Plaintiff that "**[w]e *would like* to proceed by paying the current outstanding balance**" (*Id.* ¶47) (italics added) (bold in original); and in October 2018, stated that they wanted to "**Pay the outstanding balance, avoid any legal action, and we are *anxious* to receive the machines so we can place to work**." (*Id.* ¶50)." (Italics added) (bold in original).

These allegations, at best, show an ambitious desire by the undefined promisor to tender payment to Plaintiff for the Machines, which, as a matter of law, does not constitute a "clear and unambiguous promise." *Bd. Of Managers of Trump Tower at City Ctr. Condo v. Palazzolo*, 346 F.Supp.3d 432, 469 (S.D.N.Y. 2018) ("A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel; the alleged promise must be clear and unambiguous."); *see also Wilson v. Dantas*, 746 F.3d 530, 538 (2d Cir. 2014) (upholding district court's dismissal of the complaint and noting that the plaintiff's allegation that "[i]n reliance upon Citibank's judgment and assurances that Plaintiff would receive the compensation promised in writing by Dantas, Plaintiff relocated . . . to Brazil," was neither clear nor unambiguous); *Henneberry v. Sumitomo Corp. of Am.*, 415 F.Supp.2d 423, 450 (S.D.N.Y. 2006) ("SCOA's intention to make an investment is not an unequivocal promise to make an investment.").

    B.       *Plaintiff Does Not Adequately Allege Reasonable and Foreseeable Reliance*

---

specific party is a communication made on behalf of "SCM" – not DPW. *See* Compl. ¶35.

Additionally, the Complaint fails to adequately allege reasonable and foreseeable reliance. "In assessing the reasonableness of a plaintiff's alleged reliance, [the Court is] to consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *DDCLAB Ltd. v. E.I. du Pont de Nemours & Co.*, No. 03-CV-3654, 2005 U.S. Dist. LEXIS 2721, at *81 (S.D.N.Y. Feb. 18, 2005) (citing *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003)). The Court's holding in *DDCLAB Ltd.* is particularly instructive.

In *DDCLAB Ltd.*, the plaintiff alleged that the defendant made certain oral promises to plaintiff after the parties entered into an investment agreement. *DDCLAB Ltd.*, 2005 U.S. Dist. LEXIS 2721, at *4-5. In dismissing plaintiff's promissory estoppel claim, the Court reasoned that:

> [The plaintiff could not] justifiably rely on [defendant's] alleged oral promises made after the Investment Agreement was executed, given the absence of the requisite written consent by [defendant]. The parties are established businesses represented by experienced and sophisticated businesspeople. The parties engaged in nine months of negotiations which ultimately culminated in two comprehensive Written Agreements. Any oral assurances by [defendant's] representatives were not incorporated in the Written Agreements, and are not consistent with the terms of those Written Agreements. Any reliance by [plaintiff] upon the alleged oral promises is simply unreasonable.

*Id.* at *19-20. Here, the Agreement similarly contains an express provision which provides that "[n]o revisions or modification of this Agreement shall be effective unless in writing and executed by authorized representative of both parties." *See* Volynsky Decl., Ex. B, §13(e). Thus, any alleged oral modifications or unexecuted revisions or modifications are unenforceable and could not have been reasonably relied upon by Plaintiff. *See Healy v. Williams*, 30 A.D.3d 466, 467 (2d Dep't 2006) ("As a general rule, where a contract has a provision which explicitly prohibits oral modification, such clause is afforded great deference."). To that end, the Complaint does not, and cannot, allege that Plaintiff and Super Crypto entered into a written modification adding DPW as

27

a party to the Agreement and Plaintiff's artful pleading aside, the Court should not countenance Plaintiff's improper attempts to rewrite the plain, unambiguous terms of the Agreement. *See e.g.*, *United States v. Paccione*, No. 89-cr-446, 1995 U.S. Dist. LEXIS 16597, at *12-13 (S.D.N.Y. Nov. 7, 1995) (finding that an oral modification was precluded by a no oral modification clause and noting that "[i]n order to fulfill the express terms of the contract, [the cross-petitioner] would have to produce written evidence that the [parties] consented to the subsequent modification, which he has not done. On this ground, the court would deny the cross-petition.").

Moreover, Plaintiff, like the plaintiff in *DDCLAB Ltd.*, is a sophisticated party that engaged in lengthy arms-length negotiations with Super Crypto, which ultimately culminated in the comprehensive Agreement signed by Plaintiff's President. Plaintiff admits that it knew that DPW was the parent company of Super Crypto at the time it was negotiating the Agreement (*see, e.g.*, Compl., ¶60 ("Throughout their negotiations with Plaintiff, DPW and Super Crypto made no distinction between themselves regarding their obligations to Plaintiff.")), and, notwithstanding, Plaintiff opted to enter into the Agreement with Super Crypto *only*. The Agreement contains ***no*** references to DPW and Plaintiff cannot now conjure up excerpts from a hodgepodge of intermittent emails, spread across six months, which only reference "SCM" to manufacture a claim that it relied on such communications to its detriment.

C.    *The Complaint Does Not Plead an Injury Stemming From Plaintiff's Reliance Upon a Clear and Unambiguous Promise*

Finally, the Complaint fails to allege "an injury stemming from [Plaintiff's] reliance upon a clear and unambiguous promise by [DPW]." *Silver v. Mohasco Corp.*, 94 A.D.2d 820, 822 (3d Dep't 1983). Specifically, Plaintiff must allege a cognizable injury or a vested right that it lost as a ***direct*** result of its reliance on the alleged promise. *See Hedspeth v. Citicorp Individual Bank Ret. Plan*, No. 91-CV-1471, 1993 U.S. Dist. LEXIS 7595, at *59 (S.D.N.Y. Jun. 3, 1993). Plaintiff

fails to meet its burden here for two independent reasons.

*First*, Plaintiff seeks the same damages based on the same purported misconduct for its promissory estoppel claim against DPW as it does for its breach of contract claim against Super Crypto.  Thus, it is impossible for Plaintiff to allege that its injury was a ***direct*** result of its reliance on any purported promise when Plaintiff alleges elsewhere that it sustained such injury when Super Crypto purportedly breached the Agreement.  *See Bondoc v. Sklar*, No. 152178/2015, 2017 N.Y. Misc. LEXIS 136, at *27 (Sup Ct. N.Y. Cty. Jan. 12, 2017) (dismissing promissory estoppel claim where such claim arose from the "same misconduct, and [sought] the same damages, as [plaintiff did] in [its] claim for breach of contract.").

*Second*, Plaintiff also speciously contends that it sustained an injury because it waited to resell the Machines "until a time when the market for cryptocurrency had sharply declined, thereby greatly reducing the fair market value of the [Machines.]"  Compl. ¶88.  But, Plaintiff does not allege that it had a buyer that was ready, willing, and able to purchase the Machines for "fair market value" at any point in time prior to Plaintiff's sale in or about November 2018.  Thus, Plaintiff's claimed injury is "at best based upon speculative assumptions" devoid of any "vested or clearly identified rights [that] have been lost," and, as such, dismissal of Plaintiff's promissory estoppel claim against DPW is also warranted on this basis.  *See Hedspeth*, 1993 U.S. Dist. LEXIS 7595, at *59 (collecting cases) ("Hedspeth's claimed injury is at best based upon speculative assumptions. By contrast, promissory estoppel requires that the injury directly result from the reliance, and thus is typically applied where vested or clearly identified rights have been lost.").

Accordingly, the Court should dismiss the promissory estoppel claim against DPW, in its entirety, with prejudice. [17]

---

[17] As an aside, as a non-party to the Agreement, DPW cannot be liable to Plaintiff for its attorneys' fees and costs.

## **CONCLUSION**

For the foregoing reasons, Defendants Super Crypto Mining, Inc. (n/k/a Digital Farms, Inc.) and DPW Holdings, Inc. (n/k/a Ault Global Holdings, Inc.) respectfully request that the Court issue an Order dismissing the First Amended Complaint against DPW, in its entirety, with prejudice; the Second Cause of Action against DPW and Super Crypto, with prejudice; and awarding Defendants such other and further relief as the Court deems just and proper.

Dated:  June 2, 2021

Respectfully submitted,

WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP

By:___*/s/ Robert Volynsky*_____
    Robert B. Volynsky
170 Old Country Road, Suite 310
Mineola, New York 11501
Tel: (516) 320-6945
E-mail:  rvolynsky@weltz.law

*Attorneys for Defendants Super Crypto Mining, Inc.*
*n/k/a Digital Farms, Inc. and DPW Holdings, Inc.*
*n/k/a Ault Global Holdings, Inc.*
