UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
BLOCKCHAIN MINING SUPPLY AND
SERVICES LTD.,                                    Case No. 18-CV-11099-ALC-BCM

        Plaintiff,

  -against-

SUPER CRYPTO MINING, INC. N/K/A DIGITAL
FARMS, INC. AND DPW aHOLDINGS, INC.
N/K/A AULT GLOBAL HOLDINGS, INC.,

        Defendants.
----------------------------------------X

**DEFENDANTS SUPER CRYPTO MINING, INC. N/K/A DIGITAL
FARMS, INC. AND DPW HOLDING, INC. N/K/A AULT GLOBAL
HOLDINGS, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER
<u>SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

**[PUBLIC – REDACTED]**

WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP
170 Old Country Road, Suite 310
Mineola, New York 11501
(516) 320-6945

*Attorneys for Defendants Super Crypto Mining, Inc.
n/k/a Digital Farms, Inc. and DPW Holdings, Inc.
n/k/a Ault Global Holdings, Inc.*

<u>On the Brief:</u>
Robert B. Volynsky, Esq. (RV-7076)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES... ................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT................................................................................................................................1

I.  DPW and Super Crypto are Separate Legal Entities and Plaintiff Does Not Allege a Legally Cognizable Injustice Such that the Court Should Disrupt Defendants' Corporate Structure.... 1

II. Even Under the Four-Factor "Mere Department" Test,
    There Exists No Basis to Pierce Super Crypto's Corporate Veil .............................................6

III. This Court Lacks Personal Jurisdiction Over DPW ................................................................ 7

IV. Plaintiff Still Fails to Allege a Written Agreement Between Itself
    And DPW Containing All the Material Terms of DPW's Purported
    Promise to Answer for Super Crypto's Alleged Debt ............................................................ 10

V.  Plaintiff's Effort to Recast a Promissory Estoppel Claim Cannot Stand...............................11

CONCLUSION..........................................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Bentivoglio v. Event Cardio Grp., Inc.*,
    No. 18-CV-2040-PKC, 2019 U.S. Dist. LEXIS 206381
    (S.D.N.Y. Nov. 27, 2019)..................................................................................................2

*Castelloti v. Free*,
    138 A.D.3d 198 (1st Dep't 2016) ...................................................................................... 11

*Doe v. NYU*,
    No. 20-CV-01343-GHW, 2021 U.S. Dist. LEXIS 62985 (S.D.N.Y. Mar. 31, 2021)......... 12

*Dorfman v. Marriott Int'l Hotels, Inc.*,
    99-CV-10496-CSH, 2002 U.S. Dist. LEXIS 72 (S.D.N.Y. Jan. 3, 2002).............................4

*Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.*,
    804 F.2d 787 (2d Cir. 1986) ............................................................................................... 12

*Fed. Deposit Ins. Corp. v. Knostman*,
    966 F.2d 1133 (7th Cir. 1992) ..............................................................................................2

*Fischbarg v. Doucet*,
    38 A.D.3d 270 (1st Dep't 2007) ........................................................................................8-9

*Gabriel Capital, Ltd. P'Ship v. NatWest Fin., Inc.*,
    122 F. Supp. 2d 407, 435 (S.D.N.Y. 2000) ..........................................................................6

*Hall v. Earthlink Network, Inc.*,
    396 F.3d 500 (2d Cir. 2005) ...............................................................................................12

*Hoffritz for Cutlery Inc. v. Amjac, Ltd.*,
    763 F.2d 55 (2d Cir. 1985) ...................................................................................................9

*Kirschner v. CIHLP LLC*,
    No. 15-CV-8189-RA, 2017 U.S. Dist. LEXIS 162719
    (S.D.N.Y. Sep. 30, 2017)......................................................................................................5

*Liafail, Inc. v. Learning 2000*,
    No. 01-599, 2002 U.S. Dist. LEXIS 22620 (D. Del. Nov. 25, 2002).................................3

*Miami Prods. & Chem. Co. v. Olin Corp.*,
    No. 19-CV-00385-EAW, 2021 U.S. Dist. LEXIS 118137 (W.D.N.Y. June 24, 2021) ........2

**Cases**   **Page(s)**

*Nieves v. Insight Bldg. Co., LLC*,
  No. 2019-0464-SG, 2020 Del. Ch. LEXIS 256 (Ch. Aug. 4, 2020) ...................................... 3

*Orlando v. Nxt-ID, Inc.*,
  No. 20-CV-1604-MKV, 2021 U.S. Dist. LEXIS 55677
  (S.D.N.Y. Mar. 23, 2021) ........................................................................................................ 8

*P&G Auditors & Consultants, LLC v. Mega Int'l Commer. Bank Co.*,
  No. 18-CV-9232-JPO, 2019 U.S. Dist. LEXIS 169750 (S.D.N.Y. Sep. 30, 2019) ............ 12

*Painewebber, Inc. v. Westgate Group, Inc.*,
  748 F. Supp. 115 (S.D.N.Y. 1990) ..................................................................................... 8-9

*Ridenhour v. Bryant*,
  No. 19-CV-2587-ALC, 2020 U.S. Dist. LEXIS 55772 (S.D.N.Y. Mar. 29, 2020) ........ 10-11

*SARN Energy LLC v. Tatra Defense Vehicles AS*,
  No. N17-C-06-355-EMD-CCLD, 2018 Del. Super. LEXIS 1156
  (Super. Ct. Nov. 5, 2018) ....................................................................................................... 6

*Stroud v. Tyson Foods, Inc.*,
  91 F. Supp. 3d 381 (E.D.N.Y. 2015) ..................................................................................... 8

*Three Five Compounds, Inc. v. Scram Techs., Inc.*,
  2011 U.S. Dist. LEXIS 134530 (S.D.N.Y. Nov. 21, 2011) ................................................... 9

*Trevino v. Merscorp, Inc.*,
  583 F. Supp. 2d 521 (D. Del. 2008) ...................................................................................... 6

*Unterbeg v. ExxonMobil Oil Corp.*,
  203 F. Supp. 3d 324 (S.D.N.Y. 2016) ................................................................................... 4

*Wilder v. News Corp.*,
  No. 11-CV-4947, 2015 U.S. Dist. LEXIS 137158 (S.D.N.Y. Oct. 6, 2015) ..................... 6-8

*Yousef v. Al Jazeera Media Network*,
  No. 16-CV-6416-CM, 2018 U.S. Dist. LEXIS 49614 (S.D.N.Y. Mar. 22, 2018) ................. 4

*Zim Integrated Shipping Servs. v. Bellwether Design Techs. LLC*,
  No. 19-CV-3444-VSB, 2020 U.S. Dist. LEXIS 166319 (S.D.N.Y. Sep. 10, 2020) ........... 10

**Rule**   **Page(s)**

CPLR § 302 ............................................................................................................................. 7-8

## PRELIMINARY STATEMENT[1]

Following its requested jurisdictional discovery, which this Court had to limit so as to not permit Plaintiff to embark on an "unfounded fishing expedition," Plaintiff's Opposition only further serves to highlight the frailty of its arguments. Simply put, Plaintiff wants a "do over" and seeks to have the Court re-write the Agreement between Plaintiff and Super Crypto to include a written guarantee of performance from DPW and a forum selection clause binding DPW to jurisdiction in this Court. In the absence of those contractual provisions, Plaintiff strains and ultimately fails, as it must: (i) to manufacture jurisdiction over non-resident, non-domiciliary DPW, (ii) to sufficiently allege alter-ego in a vein effort to do an end run around the Agreement and a garden variety parent-subsidiary relationship, and (iii) to adequately plead a duplicative promissory estoppel claim by cobbling together strands of indefinite communications which nonetheless fail to establish the elements of the claim and which are also barred by the Statute of Frauds. In the end, Plaintiff got what it bargained for – a contract with Super Crypto, the purported breach of which has resulted in a breach of contract claim against Super Crypto (for damages beyond the $1,487,500 already paid for the Machines, which Plaintiff's principals joked about being wildly overvalued (*see infra*, fn. 6)) for which Super Crypto has filed a partial Answer to.

## ARGUMENT

### I. DPW and Super Crypto are Separate Legal Entities and Plaintiff Does Not Allege a Legally Cognizable Injustice Such that the Court Should Disrupt Defendants' Corporate Structure

Even after obtaining extensive documentation through Limited Discovery, Plaintiff still fails to satisfy either of the elements required to allege alter-ego claims under Delaware law. Indeed, without any citation to legal authority, Plaintiff entirely misconstrues the documents that

---

[1] Unless otherwise stated herein, defined terms shall have the same meanings ascribed to them in Defendants' memorandum of law in support of their motion to dismiss (the "Motion").

were provided during Limited Discovery in a last-ditch effort to meet its heavy burden. *See Bentivoglio v. Event Cardio Grp., Inc.*, No. 18-CV-2040-PKC, 2019 U.S. Dist. LEXIS 206381, at *15 (S.D.N.Y. Nov. 27, 2019) ("Operating as a 'single [economic] entity' requires showing the parent entity's 'complete domination and control' to such an extent that the subsidiary entity 'no longer has legal or independent significance of its own.'").

Thus, Plaintiff initially contends that Super Crypto's balance sheets reflect negative net assets to buttress the FAC's conclusory allegation that Super Crypto was inadequately capitalized. Opp., p. 15. However, a closer look at those balance sheets (which, themselves, are independent of DPW's books and records) demonstrate that Super Crypto's fixed assets (***without adjustment for impairment and depreciation***) for the 2018 (the same year in which Plaintiff entered into the Agreement with Super Crypto and subsequently commenced this lawsuit) and 2019 calendar years ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Chestukhin Decl., at Ex. D; *see also Fed. Deposit Ins. Corp. v. Knostman*, 966 F.2d 1133, 1141 (7th Cir. 1992) (noting that generally accepted accounting principles ("GAAP") are "technical" and insufficient to create issues "of material fact as to the cash flow shortfalls and Manning Production's performance."); *Miami Prods. & Chem. Co. v. Olin Corp.*, No. 19-CV-00385-EAW, 2021 U.S. Dist. LEXIS 118137, at *28-29 (W.D.N.Y. June 24, 2021) ("Plaintiffs have improperly compared Shin-Etsu's operating income to Shintech's gross profits in making their comparisons, leading Plaintiffs to grossly overstate the significance of Shintech's caustic soda sales to Shin-Etsu's overall business.").[2]

The Opposition then stresses that "neither Ault nor Magot distinguished between [Super Crypto] and DPW in referring to both entities" in a further effort to salvage the deficient FAC.

---

[2] In that same vein, DPW's Form 10-K/A for the fiscal year ended December 31, 2018 (*i.e.*, the relevant time period) further supports a finding that Super Crypto was not set up merely as a sham entity, *to wit*, Super Crypto reported revenues of $1,675,549 during that discrete time period. *See* Reply Declaration of Robert B. Volynsky (hereinafter, "Volynsky Reply Decl."), dated July 23, 2021, at Ex. E, at p. 45.

Opp., p. 15.  Here, Plaintiff is effectively asking this Court to hold each entity liable because Magot and Ault did not, at the beginning of each e-mail or correspondence, identify the capacity in which he was speaking.  Plaintiff's argument here is non-sensical and not supported by Delaware law. *See Nieves v. Insight Bldg. Co., LLC*, No. 2019-0464-SG, 2020 Del. Ch. LEXIS 256, at *18 (Ch. Aug. 4, 2020) ("[T]he bare assertion that personnel use email accounts associated with one entity while conducting the business of another does not indicate fraud and cannot by itself support an allegation that [the principals] were using [their entity] to perpetrate fraud.").

Plaintiff also avers that Super Crypto was financially dependent on DPW because it "had no bank account for most of its existence" and on the additional ground that "DPW paid for all of [Super Crypto's] obligations, almost always directly."[3]  Opp., p. 15.  However, the "mere making of payments and transfers alone does not create alter ego liability." *Liafail, Inc. v. Learning 2000*, No. 01-599, 2002 U.S. Dist. LEXIS 22620, at *37-38 (D. Del. Nov. 25, 2002).

Similarly unavailing are Plaintiff's insinuations that Super Crypto received intercompany money transfers as loans that it allegedly was not expected to pay back.  *See* Opp., p. 15.  Indeed, without even addressing the veracity of this purely speculative assertion, Plaintiff's bare attestation fails as a matter of law.  *See Liafail, Inc.*, 2002 U.S. Dist. LEXIS 22620, at *37) ("With regard to Liafail's statement that Story 'was repaid his initial $ 100,000' loan to L2K, the court is unclear as to how this fact entitles Liafail to pierce L2K's corporate veil. Were Liafail's theory to be correct, no corporation could pay its debts without running into the risk of alter ego liability.").

Finally, and for good measure, Plaintiff injects a conclusory allegation that "[Super Crypto's] nominal executive had to get approval from DPW to run day-to-day operations." Opp., p. 16.  In support thereof, Plaintiff cites to Exhibits J, K, L and M to the Chestukhin Declaration.

---

[3] Plaintiff bizarrely contends that Super Crypto was dissolved in 2020. *See* Opp., p. 15.  This assertion is demonstrably false and the filing on which Plaintiff relies makes no reference to a dissolution.

3

*Id.* However, each of those Exhibits, on their face, reference an approval for a financial expenditure, which, as set forth in *Dorfman v. Marriott Int'l Hotels, Inc.*, 99-CV-10496-CSH, 2002 U.S. Dist. LEXIS 72 (S.D.N.Y. Jan. 3, 2002) (a case relied on by Plaintiff) cites to a string of cases that stand for the proposition that a subsidiary is not a mere department of the parent company where the parent company was required to approve major expenditures and major financial decisions for the subsidiary. *See id.*, at \*30; *see also Yousef v. Al Jazeera Media Network*, No. 16-CV-6416-CM, 2018 U.S. Dist. LEXIS 49614, at \*17 (S.D.N.Y. Mar. 22, 2018) ("AJMN's involvement in AJAM's major financial decisions 'does not show that the parent exercises more control than is inherent in its role as a stockholder.'").

In fact, almost every communication between Super Crypto and DPW that relates to Plaintiff either generally seeks business advice from DPW (the sole shareholder of Super Crypto), or, where approval is necessary, such approval is limited to major expenditures and major financial decisions. Not surprisingly, and despite obtaining significant discovery from Defendants, Plaintiff does not, because it cannot, cite to any communication or document demonstrating DPW's domination and control of any other aspect of Super Crypto's day-to-day operations, as is required under Delaware law. *See Unterbeg v. ExxonMobil Oil Corp.*, 203 F. Supp. 3d 324, 329 (S.D.N.Y. 2016) (not "enough that parent corporation have the same officers or that the parent corporation owns all of its subsidiary's stock, or even that a parent and subsidiary hold themselves out as being a single integrated operation, controlled and managed from the parent's offices.").[4]

---

[4] Defendants reiterate their position that the allegation concerning an offer of compromise to accept stock in lieu of payment (which was transmitted on October 11, 2018) and Plaintiff's repeated references to these confidential settlement discussions (*see* Opp. pp., 8, 9, 11, 15, 25) are inappropriate, improper, and should not be considered by this Court. Plaintiff contends that this communication is a "red herring… because these discussions occurred before any claim had been made by Plaintiff." Opp., p. 8, fn. 7. Putting aside that Defendants may invoke the protections of FRE 408 prior to any formal claims being made, Plaintiff's argument here is belied by a June 14, 2018 correspondence from Plaintiff wherein Plaintiff explicitly threatened legal action and informed that it had already retained legal counsel – namely, Plaintiff's counsel in this case. *See* Volynsky Reply Decl., at Ex. F (p. 2, e-mail dated Jun. 14, 2018). Thus, it is disingenuous for Plaintiff and its counsel to suggest that correspondence dated four months after

4

Furthermore, Plaintiff's argument concerning the second element (*i.e.*, the overall element of injustice or unfairness) is similarly unavailing. To satisfy this element, Plaintiff must plead factual allegations "showing that the corporation is a sham and exists for no other purpose than as a vehicle for fraud." *Kirschner v. CIHLP LLC*, No. 15-CV-8189-RA, 2017 U.S. Dist. LEXIS 162719, at *19 (S.D.N.Y. Sep. 30, 2017). The "claimed injustice must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit." *Id.*, at *11-12.

Notwithstanding, the only paragraph in the Opposition addressing the supposed "claimed injustice" confirms that Plaintiff is merely rehashing the claims that form the basis of its lawsuit:

> Further, contrary to Defendants' arguments, Plaintiff has sufficiently alleged that Defendants abuse of [Super Crypto's] corporate form was undertaken to perpetrate an injustice upon Plaintiff, namely, to evade their obligations under the Agreement and deprive Plaintiff of the payments to which it was rightfully entitled under the Agreement's terms. Despite acting like [Super Crypto] was entirely backed by DPW prior to this lawsuit, Defendants would now pretend that DPW and [Super Crypto] are separate entities, leaving Plaintiff with no means to recover the money owed it under the Agreement.

Opp., pp. 16-17 (internal citations omitted). Thus, Plaintiff's sole grievance appears to be that it, a sophisticated party, entered into an Agreement with a newly-formed subsidiary called "Super Crypto Mining"; it sold cryptocurrency mining machines to Super Crypto pursuant to the Agreement; it did not require the parent company, DPW, to sign as a guarantor or as party to the Agreement;[5] and now seeks to collect the purported amounts owed under the Agreement from DPW because Super Crypto, the party that Plaintiff actually contracted with, was unable to pay the purported amounts owed under the Agreement.[6] These are precisely the types of allegations

---

this threat was nothing more than the parties "still simply exploring approaches to fulfilling Defendants' [purported] payment obligations under the Agreement." *See* Opp., p. 8, fn. 7.

[5] Insomuch as Plaintiff now contends that it relied on supposed representations from DPW prior to the execution of the Agreement, such arguments are barred by the parole evidence rule and the Agreement's merger clause.

[6] Although the Opposition touts that Super Crypto was set up as a "mere department" of DPW, it should not be lost on the Court that Super Crypto entered into the Agreement with Plaintiff during a tumultuous period in which the

that Delaware law disallows as the basis for a claimed injustice under an alter-ego analysis.[7] *See, e.g., Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) ("Delaware courts have held that the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil"); *see also SARN Energy LLC v. Tatra Defense Vehicles AS*, No. N17-C-06-355-EMD-CCLD, 2018 Del. Super. LEXIS 1156, at *16 (Super. Ct. Nov. 5, 2018) ("The injustice must be more than a breach of contract."). As such, the Court should dismiss the FAC against DPW, in its entirety, with prejudice.

## II. Even Under the Four-Factor "Mere Department" Test, There Exists No Basis to Pierce Super Crypto's Corporate Veil

For the reasons set forth in the previous section, Plaintiff is also unable to establish that Super Crypto is a "mere department" of DPW for jurisdictional purposes. Indeed, this Court has already applied the four-factor "mere department" test to a parent-subsidiary relationship which involved an even closer business relationship between the two entities than is present here. *See Wilder v. News Corp.*, No. 11-CV-4947, 2015 U.S. Dist. LEXIS 137158 (S.D.N.Y. Oct. 6, 2015).

Thus, the *Wilder* Court noted that: (1) there was common and overlapping membership among the boards of directors; (2) the parent and subsidiary filed consolidated financial statements; (3) there were shared banking arrangements between the entities; (4) the parent guaranteed the

---

price of cryptocurrency was precipitously declining. Indeed, even Plaintiff's own internal e-mails demonstrate that, in or around the time that the payment for the first 500 Machines was made, Super Crypto could have "[bought] the same item now for $1,070 now [*sic*] from Bitmain, that we sold them for $2,975!!! Here is a link in case you think im [*sic*] nuts HAA." *See* Volynsky Reply Decl., at Exhibit G. Thus, it is disingenuous for Plaintiff to assert, on the one hand, that Super Crypto was set up as a sham entity because of its inability to turn a profit in the volatile cryptocurrency space, while simultaneously conceding that it had effectively handicapped this nascent company from the start.

[7] The sole case that Plaintiff cites to support its "injustice" argument, *Gabriel Capital, Ltd. P'Ship v. NatWest Fin., Inc.*, 122 F. Supp. 2d 407, 435 (S.D.N.Y. 2000), does not help Plaintiff's cause. Indeed, the Court in *Gabriel* allowed the plaintiffs' alter ego claim to survive a dismissal motion noting that the plaintiffs there "were unaware of the role of NatWest Bank when they purchased the Notes" at issue. *Id.* The *Gabriel* decision goes on to note that, where, as here, a plaintiff is "aware of corporate arrangements before entering contract [*sic*]", a plaintiff cannot allege any unfairness or injustice. *See id.* Based on this decisional authority (borne out of Plaintiff's own Opposition) coupled with Plaintiff's repeated assertions that DPW and Super Crypto purportedly held themselves out as one and in the same throughout the negotiations for the Agreement, Plaintiff is unable to allege the requisite injustice element.

subsidiary's liabilities; (5) the parent appointed key executives, including the Chief Executive Officer; and (6) the operating budget of the subsidiary was subject to approval by the parent (*see id.*, at *23) and ultimately held that "[t]he[se] allegation ***do not demonstrate*** that [the parent company] has disregarded the separate corporate existence of [the subsidiary] that [the subsidiary] is a 'mere department' of [the parent company]. *See id.*, at *23-24 (emphasis added). The *Wilder* Court reasoned that:

> The officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to New York jurisdiction. Moreover, the officers of a parent normally control the board of directors of a subsidiary in their capacity as representatives of the controlling stockholder. It is only when the parent officers extend their control beyond that normally exercised by boards of directors that their behavior supports an inference that the subsidiary is not an independent entity.

*Id.* (internal quotations omitted). The relationship between DPW and Super Crypto is even less intertwined than that in *Wilder*, and Plaintiff has alleged even less than the plaintiff in *Wilder* despite obtaining jurisdictional discovery in connection with its Opposition. As such, the Court should dismiss this action against DPW, in its entirety, based on lack of jurisdiction.

### III.    This Court Lacks Personal Jurisdiction Over DPW

Plaintiff stubbornly insists that this Court may also exercise jurisdiction over DPW pursuant to CPLR § 302(a)(1) so long as DPW "transacts business with the state."[8] Opp., p. 21.

---

[8] The Opposition heavily relies on pre-*Daimler* decisions in its unwavering effort to improperly keep DPW in this forum based on CPLR § 302(a)(1). Notwithstanding Plaintiff's efforts, Plaintiff's arguments do not demonstrate that the underlying action is an exceptional case warranting an abdication from the ruling by the Supreme Court of the United States in the seminal case *Daimler*. *See Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 141 (S.D.N.Y. 2018) ("[W]hen a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an exceptional case.'"). Indeed, neither Plaintiff nor DPW are New York domiciliaries and the only reason this action was brought in this Court appears to be the forum selection clause in the Agreement that was entered into between Plaintiff and another non-New York domiciliary, Super Crypto. *See, e.g., Stroud*, 91 F. Supp. 3d at 388 ("[T]he *Daimler* Court expressed doubt as to the viability of attributing the contacts of a subsidiary to its parent for personal jurisdiction analysis.").

7

However, CPLR § 302(a)(1) is not a general jurisdiction rule and additionally requires a showing that the "cause of action arises from such business transaction." *See Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 389 (E.D.N.Y. 2015); *see also Wilder*, 2015 U.S. Dist. LEXIS 137158, at *33 ("Only a defendant's 'suit-related conduct' may be used to establish the requisite minimum contacts for specific personal jurisdiction."). Further, since Plaintiff "has been afforded extensive jurisdictional discovery it must establish jurisdiction by a preponderance of the evidence." *Painewebber, Inc. v. Westgate Grp., Inc.*, 748 F. Supp. 115, 118 (S.D.N.Y. 1990). The Opposition advances a baseless two-fold argument concerning jurisdiction over DPW in this action.[9]

*First*, Plaintiff contends that the retention of a New York based law firm in connection with the Agreement, as well as the appointment of such law firm as the escrow agent in connection therewith, somehow, independently, establishes a basis to confer jurisdiction over DPW in this Court. However, the "hiring [of] an attorney who happens to be based in New York, but who could have performed the same services from an office somewhere else, by itself, is not enough for personal jurisdiction under Section 302(a)." *See Orlando v. Nxt-ID, Inc.*, No. 20-CV-1604-MKV, 2021 U.S. Dist. LEXIS 55677, at *15 (S.D.N.Y. Mar. 23, 2021).[10] Plaintiff does not, and cannot, refute this salient point.

*Second*, Plaintiff's assertion that Ault's incidental travels to New York for the purpose of meeting with unrelated third-party financiers **after** the Agreement had been allegedly breached does not demonstrate an "articulable nexus" or "substantial relationship" to the claims at issue or a purposeful availment of New York as a forum. *See Painewebber, Inc.*, 748 F. Supp. at 120-21

---

[9] Notwithstanding the documentary evidence submitted in connection with the Motion, the Opposition fails to address, and no actions were undertaken to rectify the demonstrably false allegation from the FAC that a payment had been made from a New York based bank account that was held in the name of DPW. Thus, it appears that Plaintiff would rather keep a false allegation that fits its narrative in its FAC as opposed to having an accurate record for the Court.

[10] *Fischbarg v. Doucet*, 38 A.D.3d 270 (1st Dep't 2007), a case relied on by Plaintiff (Opp., p. 22), is inapposite as that case involved a New York based solo practitioner that sued a former client for unpaid legal fees.

("Westgate's desire to get a big 'New York' Investment [bank] is not a purposeful availment of New York as a forum…Westgate did not hire a New York [investment] bank because it sought to do business in New York."). Indeed, taken to its logical extreme, Plaintiff's argument here would lead to absurd results, *to wit*, any company representative that meets with New York investment banks to raise capital for general business operations would subject the company to personal jurisdiction in New York in connection with any claims asserted by the company's creditors. *See Three Five Compounds, Inc. v. Scram Techs., Inc.*, 2011 U.S. Dist. LEXIS 134530, at \*35 (S.D.N.Y. Nov. 21, 2011) ("[T]he [New York] Court of Appeals [has] held that these 'contacts' were so infinitesimal . . . that jurisdiction of the New York courts cannot be sustained. Otherwise, every corporation whose officers or sales personnel happen to pass the time of day with a New York customer in New York runs the risk of being subjected to the personal jurisdiction of our courts."). This Court's decision in *Three Five Compounds, Inc.* is instructive.

There, the Court was tasked with determining whether a handful of meetings in New York concerning the subject transaction were sufficient to invoke jurisdiction over the non-domiciliary defendant. *Id.*, at \*32. The *Three Five Court* ultimately found that such meetings were insufficient to invoke this Court's jurisdiction and further distinguished such fortuitous connections from the New York contacts present in two (2) of the cases relied on by Plaintiff in its Opposition – *Hoffritz* (fifty-four meetings over a ten year period in New York) and *Fischbarg* (noting *Fischbarg* as a case that "fit[s] well into a line of decisions emphasizing that 'the purposeful creation of a continuing relationship with a New York corporation."). *Id.*, at \*29, 37.

So too should this Court find that Plaintiff's arguments, **after** the benefit of Limited Discovery, are insufficient to confer jurisdiction over DPW in this action. *See Zim Integrated Shipping Servs. v. Bellwether Design Techs. LLC*, No. 19-CV-3444-VSB, 2020 U.S. Dist. LEXIS

9

166319, at *12 (S.D.N.Y. Sep. 10, 2020) (finding that jurisdiction under CPLR § 302(a)(1) was improper where "none of the contacts PEI identifies has anything to do with this dispute other than generally involving A&A's business, which involves shipping on behalf of clients").

### IV. Plaintiff Still Fails to Allege a Written Agreement Between Itself and DPW Containing All the Material Terms of DPW's Purported Promise to Answer for Super Crypto's Alleged Debt

In an effort to shield its non-compliance with the requirements of the Statute of Frauds, Plaintiff injects a convoluted argument that DPW's purported promise to answer for the debts of Super Crypto was "essentially a promise made by DPW *on DPW's own behalf* because [Super Crypto] and DPW are one and the same" (Opp., p. 25 (emphasis in original)) and, in that same breath, that "DPW also made express promises of its own to Plaintiff" (which are presumably independent of Super Crypto's promises) (*id.*, p. 26). Plaintiff cannot have it both ways.

Indeed, if DPW and Super Crypto are found to be alter-ego (as Plaintiff alleges), and Plaintiff is able to overcome its jurisdictional hurdle, then Plaintiff's promissory estoppel claim must fail since there exists a valid agreement concerning the Machines. If, however, DPW is not deemed to be Super Crypto's alter-ego (which it is not), and Plaintiff is able to overcome its jurisdictional hurdle, then Plaintiff must establish that it entered into a written agreement with DPW, complete with all material terms, that satisfies the Statute of Frauds.

Against this backdrop, neither the FAC nor the Opposition point to any such writings that "contain substantially the whole agreement and all its material terms and conditions." *See Ridenhour v. Bryant*, No. 19-CV-2587-ALC, 2020 U.S. Dist. LEXIS 55772, at *18 (S.D.N.Y. Mar. 29, 2020). Indeed, the e-mails relied upon in the Opposition ("Every thing looks good to pay you down," "we are committed to closing this week," and "Why would I be wiring you if I intended not pay. Clearly I have been wiring" (Opp., 27)) were sent weeks apart and collectively do not

10

identify any material or definite terms, subscribed to by DPW in writing, to answer for the purported debts of Super Crypto. *See id.*, at *21 ("As for the fact that Mrs. Bryant wired Plaintiff money, that is insufficient to establish a definite price term, let alone agreement.").[11] Furthermore, Plaintiff cannot rectify this deficiency by underscoring a handful of payments made by DPW to Plaintiff. *See Castelloti v. Free*, 138 A.D.3d 198, 203 (1st Dep't 2016) ("[T]he partial performance exception applies only to the statute of frauds provision in section 5-703, and has not been extended to section 5-701."). As such, Plaintiff is prohibited from pleading around the Statute of Frauds through promissory estoppel and the FAC should be dismissed against DPW, in its entirety.

## V.     Plaintiff's Efforts to Recast a Promissory Estoppel Claim Cannot Stand

Plaintiff absurdly contends that it is entitled to plead an alternative theory of promissory estoppel because Plaintiff is unsure whether Super Crypto intends to ***invoke a provision in the Agreement*** – an argument articulated and ***raised by Plaintiff*** for the first time in its Opposition (*see* Opp., pp. 24-25). Plaintiff is seeking to horse-trade, which this Court should not countenance.

Thus, Plaintiff has manufactured arguments ***for its adversary*** and asks Super Crypto to "concede that [it] waived" (*id.*, p. 24) a provision in the Agreement in exchange for Plaintiff discontinuing its promissory estoppel claim. There is simply no legal authority for this outrageous request (indeed, Plaintiff points to none) and, in any event, Super Crypto has already conceded the validity of the Agreement. Whether or not Plaintiff is ultimately able to recover the sums that it is believed are owed to it under the Agreement has no bearing on the preclusion of a duplicative promissory estoppel claim.[12] *See Hall v. Earthlink Network, Inc.*, 396 F.3d 500, 508 (2d Cir. 2005)

---

[11] Plaintiff strangely argues that "even e-mails from Magot," (Opp., p. 27) the CEO of the alleged obligor, can be considered writings on behalf of DPW, the alleged guarantor, to satisfy the writing requirement under the Statute of Frauds. Although novel, this argument is illogical.

[12] The Opposition's reliance on *P&G Auditors & Consultants, LLC v. Mega Int'l Commer. Bank Co.*, No. 18-CV-9232-JPO, 2019 U.S. Dist. LEXIS 169750 (S.D.N.Y. Sep. 30, 2019), does not rehabilitate the promissory estoppel

("If the allegations do not go beyond the statement of a mere contract breach and relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."). Accordingly, the Court should dismiss the promissory estoppel claims in their entirety.[13]

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be granted in its entirety.

Dated: July 23, 2021

                                              Respectfully submitted,

                                              WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP

                                              By:   /s/ Robert Volynsky
                                                     Robert B. Volynsky
                                              170 Old Country Road, Suite 310
                                              Mineola, New York 11501
                                              Tel: (516) 320-6945
                                              E-mail: rvolynsky@weltz.law

                                              *Attorneys for Defendants Super Crypto Mining, Inc. n/k/a Digital Farms, Inc. and DPW Holdings, Inc. n/k/a Ault Global Holdings, Inc.*

---

claim as that case involved a singular defendant and the defendant there affirmatively terminated the contract and thereafter advised the plaintiff that it desired to continue using plaintiff's services.

[13] As to the balance of the Opposition's arguments concerning promissory estoppel, Defendants respectfully refer the Court to the arguments raised in their Motion and further note that the two cases which form the crux of Plaintiff's Opposition are inapposite – *Esquire Radio & Elecs. Inc.* (did not involve an underlying written agreement) and *Doe v. NYU*, No. 20-CV-01343-GHW, 2021 U.S. Dist. LEXIS 62985 (S.D.N.Y. Mar. 31, 2021) (promises of lesser sanctions were consistent with the range of sanctions permitted under NYU's Policy and Procedures and plaintiff was entitled to rely on investigator's promise of a lesser imposed sanction). Remarkably, *Doe* actually supports Defendants' arguments that Plaintiff fails to adequately plead an injury stemming from its purported reliance on any alleged promise. *See Doe*, 2021 U.S. Dist. LEXIS 62985, at *76 ("A person claiming promissory estoppel must have suffered unconscionable injury… [which] requires something beyond the expectation damages which flow naturally from the non-performance of the alleged agreement.").

12