USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  8/8/22_____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x

BLOCKCHAIN MINING SUPPLY AND SERVICES,:
LTD.,     :
    :
                **Plaintiff,**     :     **18-CV-11099(ALC)(BCM)**
    :
        **-against-**     :     <u>**OPINION & ORDER**</u>
    :
SUPER CRYPTO MINING, INC. N/K/A DIGITAL:
FARMS, INC. AND DPW HOLDINGS, INC. N/K/A:
AULT GLOBAL HOLDINGS INC.,     :
    :
              **Defendants.**     :
------------------------------------------------------------------ x

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Blockchain Mining Supply and Services, LTD. ("Blockchain") brought suit against Super Crypto Mining, Inc. ("Super Crypto") and DPW Holdings, Inc. ("DPW") for breach of contract and promissory estoppel. Defendants now move to dismiss Plaintiff's claims. For the reasons that follow, Defendants' motion is DENIED.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's First Amended Complaint ("FAC"), ECF No. 35, and are presumed true.

Blockchain alleges that on or about March 8, 2018, Blockchain entered into a purchase agreement with Defendant Super Crypto in which Super Crypto agreed to buy from Blockchain "a total of 1,100 Bitmain Antminer S9 model cryptocurrency mining machines and 1,100 power supply units" ("Machines") for the total price of $3,272,500. FAC ¶ 16. The agreement includes a forum selection clause, which provides that the parties to the agreement consent to jurisdiction and venue in this forum. Super Crypto is a wholly-owned subsidiary of DPW, and as of the filing of

the First Amended Complaint, DPW is organized under Delaware law with a principal place of business in California.

In March 2018, Super Crypto made an initial payment of $163,625. On March 29 and April 17, 2018, Super Crypto made transfers totaling $1,487,500 to Plaintiff for the first 500 Machines and used the $163,625 as a deposit for the remaining 600 Machines. Plaintiff then released the first 500 machines. Defendants were to receive the remaining 600 Machines in April 2018 after paying the remaining balance of $1,621,375 less the deposit amount. On April 13, 2018, Defendant DPW began to pay storage charges for the 600 Machines.

Blockchain alleges that it relied on the assurances of Defendants that they intended to purchase the remaining 600 Machines and that they would remit the full balance. Blockchain alleges that between April 2018 and October 2018, Defendants made multiple assurances that payment was imminent. Such assurances included statements promising to complete the purchase as well as wire payments towards the purchase. Blockchain also alleges that Defendants "made clear" that DPW and DPW Chief Executive Officer Milton "Todd" Ault III were "controlling the discussions and negotiations" for the Machines, and that no distinction was made between Super Crypto and DPW. FAC ¶ 22.

On October 23, 2018, Plaintiff notified Defendants that Plaintiff would take legal action unless Defendants made the payments owed. On October 25 and 26, 2018, after receiving no response, Plaintiff informed Defendants that Plaintiff intended to resell the remaining Machines and recover from Defendants any difference between the resale and contract prices. On November 9, 2018, Plaintiff sold the remaining 600 Machines for the fair market price of $168,000, a low price, which reflects the decline in the cryptocurrency market from the time the parties' agreement was signed.

## PROCEDURAL HISTORY

On November 28, 2018, Plaintiff commenced this action by filing a complaint against Super Crypto and DPW, alleging breach of contract and promissory estoppel claims. Plaintiff filed a First Amended Complaint on April 29, 2020. Plaintiff brings a breach of contract claim (Count I), claiming damages in the amount of $1,388,495, the difference between the resale price and the purchase price, plus reasonable attorney's fees. Plaintiff also brings a promissory estoppel claim for $1,388,495, in the alternative (Count II).

On June 2, 2021, Defendants filed a Motion to Dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim. Plaintiff filed opposition papers on July 8, 2021. On July 23, 2021, Defendants filed a reply brief in support of their motion. Accordingly, the Court considers the motion fully submitted.

## LEGAL STANDARD

### I. Fed. Civ. P. Rule 12(b)(2) Standard

When deciding a motion to dismiss for lack of personal jurisdiction, courts may rely on pleadings and affidavits, in which case "the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (internal quotation marks and citations omitted). When deciding whether plaintiffs have made such a showing, the Court must "construe the pleadings and affidavits in the light most favorable to [the plaintiffs], resolving all doubts in [their] favor." *Id.* "This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation marks and citations

omitted). As the parties have conducted jurisdictional discovery, Blockchain's showing "must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (internal quotation marks and citations omitted).

## II. Fed. Civ. P. Rule 12(b)(6) Standard

Rule 12(b)(6) allows the Court to dismiss a claim if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Claims should be dismissed when a plaintiff has not pled enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

**DICUSSION**

Defendants argue that Plaintiff has failed to demonstrate that Super Crypto is an alter ego for DPW, that this Court lacks personal jurisdiction over DPW, and that Plaintiff fails to state a claim for promissory estoppel. The Court disagrees.

## I. Plaintiff Establishes that DPW is an Alter Ego of Super Crypto Under Delaware Law.

The parties agree that Defendant Super Crypto is subject to this Court's jurisdiction due to the forum selection clause to which it is a party. Defendants dispute, however, that this Court may exercise jurisdiction over DPW, a Delaware corporation with a principal place of business in Nevada

Plaintiff alleges that Super Crypto is an alter ego for its parent DPW. If Plaintiff's allegations are credited, then they would establish personal jurisdiction over DPW. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) ("SNET alleges that each of the appellants was an 'alter ego' of Global, a fact that, if established, would clearly support a finding of personal jurisdiction."). Thus, if the Court finds that Blockchain alleged sufficient facts to establish that Super Crypto is an alter ego for DPW, then the jurisdictional challenge is resolved in favor of Blockchain. The Court concludes that Blockchain did so, and therefore this Court has jurisdiction over DPW.

In order to establish whether a subsidiary is an alter ego of a parent company under Delaware law, the Plaintiff must show: "(1) that the parent and the subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness . . . [is] present.'"[1] *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (quoting *Harper v. Delaware Valley*

---

[1] While the parties agree that Delaware law governs the veil-piercing inquiry, the Court also notes that "New York and Delaware veil-piercing law do not materially differ." *LaCourte v. JP Morgan Chase & Co.*, No. 12-CV-9453 (JSR), 2013 WL 4830935, at *6 n.2 (S.D.N.Y. Sept. 4, 2013).

*Broadcasters, Inc.*, 743 F. Supp. 1076, 1085 (D. Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991)).

Plaintiff need not show fraud; rather, Plaintiff must only demonstrate a "mingling of the operations

of the entity and its owner plus an overall element of injustice or unfairness." *NetJets Aviation,*

*Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008).

The analysis under the first element requires an examination of factors relating to the

company's operation and the relationship between the defendants. *Id.* These factors include:

"whether the corporation was adequately capitalized for the corporate undertaking; whether the

corporation was solvent; whether dividends were paid, corporate records kept, officers and

directors functioned properly, and other corporate formalities were observed; whether the

dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply

functioned as a facade for the dominant shareholder." *Id*. at 177 (quoting *United States v. Golden*

*Acres, Inc*., 702 F. Supp. 1097, 1104 (D. Del. 1988), *aff'd*, 879 F.2d 857 & 879 F.2d 860 (3d

Cir.1989). While "[n]o single factor can justify a decision to disregard the corporate entity . . .

some combination of them is required. *Id*. at 177 (internal quotation marks and citations omitted).

The factual allegations in Blockchain's complaint, reinforced by the jurisdictional

discovery, if proven true, would demonstrate that Super Crypto is an alter ego of DPW. First,

Plaintiff established that Super Crypto and DPW operated as a single economic entity. Plaintiff

established that Super Crypto was not adequately capitalized for the contract because their debts

outweighed their assets, and they received "loans" from DPW that they were not obligated to pay

back. Plaintiff also established that Super Crypto was never solvent because their balance sheets

showed negative balances in 2018, its first year of existence, through 2020, its last year of

existence. Moreover, Super Crypto maintained its own bank account for only a short while, after

which it appears that DPW assumed full control of Super Crypto's finances. Indeed, all payments

made pursuant to the agreement were either directly remitted by DPW or with DPW's funds, with DPW depositing those funds into Super Crypto's account shortly before Super Crypto made its payments.

Further, Blockchain has demonstrated that Ault, and DPW, was the final decision maker for the negotiations and deals under the agreement. Communications from Super Crypto show that Ault provided the final sign offs on payments, facilitated the wire payments, and directed Super Crypto's interactions with Blockchain. Blockchain adduced facts showing that Ault was heavily involved in the negotiations and discussions with Blockchain, such that his involvement exceeded the participation of a mere shareholder.

Second, Plaintiff has satisfied the injustice element. In order to prove unfairness or injustice, Plaintiff must "present evidence of an 'overall element of injustice or unfairness' that would result from respecting the two companies' corporate separateness." *Fletcher*, 68 F.3d. at 1458.The injustice "must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit. . . . But nothing prevents a court, in determining whether there is sufficient evidence of fraud or unfairness, from taking into account relevant evidence that is also pertinent to the question of whether the two entities in question functioned as one." *NetJets,* 537 F.3d at 183.

"Allegations of undercapitalization and siphoning of funds are sufficient to satisfy the 'injustice or unfairness' element." *Essar Steel Algoma Inc. v. Nevada Holdings, Inc*., No. 17-MISC-360-AT-RWL, 2020 WL 2539031, at *4 (S.D.N.Y. May 18, 2020*); see also  McBeth v. Porges*, 171 F. Supp. 3d 216, 234 (S.D.N.Y. 2016) (holding that complaint adequately alleged operation as a single entity and element of injustice based on allegation that defendant was undercapitalized such that it lacked funds to cover its reasonably anticipated expenses); *De Sole v. Knoedler Gallery, LLC*, 139 F. Supp. 3d 618, 669 (S.D.N.Y. 2015) (holding that jury could find

the requisite element of injustice based on the evidence that one corporate entity siphoned millions of dollars from another corporate entity). Plaintiff alleged that Super Crypto was "insufficiently capitalized to perform its obligations under the Agreement." FAC ¶ 59. The Complaint also alleges that DPW and Super Crypto gave assurances of compliance and payments without distinguishing between the two entities with regard to their obligations to Blockchain. *See id.* ¶¶ 23, 60. Thus, drawing all necessary inferences in favor of Plaintiff, Plaintiff alleges an overall element of unfairness and injustice.

As Plaintiff has established that Super Crypto is the alter ego of DPW, the Court next considers whether the forum selection clause also applies to DPW. "In order to bind a non-party to a forum selection clause . . . the party must be closely related to the dispute such that it becomes foreseeable that it will be bound." *GlaxoSmithKline LLC v. Laclede, Inc.,* No. 18-CV-4945 (JMF), 2019 WL 293329, at *4 (S.D.N.Y. Jan. 23, 2019) (cleaned up). Courts in this district have found that a non-signatory is closely related "(1) where the non-signatory had an active role in the transaction between the signatories, or (2) where the non-signatory had an active role in the company that was the signatory." *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 351 (S.D.N.Y. 2020) (internal quotation marks and citations omitted). Thus, "courts have enforced forum-selection clauses against non-signatory alter-egos," finding that non-signatories are closely related to the dispute when involved in an alter-ego relationship with a signatory. *Melwani v. Amazon.com*, Inc., No. 20-CV-09739 (AJN), 2021 WL 4429604, at *4 (S.D.N.Y. Sept. 27, 2021) (internal quotation marks and citations omitted); *see also Elec. Mobile Cars, LLC v. Elec. Mobile Cars*, Inc., No. 12-CV-5202 (JSR), 2012 WL 5264454, at *1 (S.D.N.Y. Oct. 17, 2012). Here too, having

found that Super Crypto is the alter ego of DPW, the Court holds that the forum selection clause applies to DPW and the Court may exercise jurisdiction over DPW.[2]

## II. Plaintiff's Promissory Estoppel Claim is Not Duplicative of the Breach of Contract Claim.

Under New York Law, relief on quasi-contract theories like promissory estoppel are barred when a plaintiff alleges a breach of contract claim. *See Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 157 (2d Cir. 2012) ("Under New York law, quasi-contractual ... relief is unavailable where [as here] an express contract covers the subject matter." (quotation marks and citations omitted)). However, the law bars simultaneous recovery for both breach of contract and a quasi-contract theory, not recovery in the alternative. *See P&G Auditors & Consultants, LLC v. Mega Int'l Com. Bank Co.*, No. 18-CV-9232 (JPO), 2019 WL 4805862 (S.D.N.Y. Sept. 30, 2019) at *5. Importantly, promissory estoppel claims and breach of contract claims can coexist in the pleading state. *Id.* (citing *DFP Mfg. Corp. v. Northrop Grumman Corp.*, 97-CV-4494, 1999 WL 33458384 (JS) at *8 (E.D.N.Y. Mar. 23, 1999)). Plaintiff is able to *plead* both claims, but is barred from recovery on both claims. *Id*.

Here, Defendants concede that the Agreement is a valid contract between the parties. However, as Plaintiff notes, Defendants may seek to rely on Article 3 of the Agreement (which voids the contract if Super Crypto did not pay the final balance on April 18, 2018) to evade any accountability for their actions after April 18, 2018. In that scenario, a quasi-contract may exist

---

[2] Since the Court finds that Plaintiff has established that Super Crypto is an alter ego of DPW, the Court does not address Plaintiff's mere department and contacts arguments for personal jurisdiction. Additionally, the Court need not discuss Defendants' personal jurisdiction arguments because "[w]here an agreement contains a valid and enforceable forum selection clause . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." *Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*, No. 09-CV-3573(PGG), 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010).

from April 20, 2018 when Defendants began promising Plaintiff that they would make the final payment. Therefore, Plaintiff alleges an alternative promissory estoppel claim for the remaining balance for the 600 Machines. Plaintiff's promissory estoppel claim is thus properly alleged as an alternative theory.

### III. Plaintiff's Promissory Estoppel Claim is Not Barred by the New York Statute of Frauds.

Defendants also argue that Plaintiff's promissory estoppel claim is barred by the New York Statute of Frauds. Under the New York Statute of Frauds, a "special promise to answer for the debt, default or miscarriage of another person" must be in signed writing. N.Y. Gen. Oblig. Law § 5-701(a)(2). However, the Court has determined that Super Crypto and DPW are not separate entities and that Super Crypto is an alter ego of DPW. *See Roldan v. Second Dev. Servs., Inc.*, No. 16-CV-2364 (DLI)(PK), 2018 WL 1701938, at *8 (E.D.N.Y. Mar. 30, 2018) ("Logically . . . no writing is required if the promise is to pay one's own debt. . . . A court can infer a non-signatory's intent to be bound by the existence of an alter ego relationship between a signatory and the non-signatory."); *Tchernichova Prods., Inc. v. Ballet Int'l N.A., Inc.*, 1987 WL 16364, at *1 (S.D.N.Y. Aug. 25, 1987) (finding that an individual promoter's promise to provide funds to its alleged alter ego to enable it to meet its obligations to plaintiff "does not fall within the statute of frauds"). Therefore, the Statute of Frauds does not apply.

Since the Court has established that the Statute of Frauds does not apply, the Court does not address Defendants' remaining Statute of Frauds arguments.

### IV. Plaintiff has Properly Plead a Promissory Estoppel Claim.

In order to properly plead promissory estoppel in New York, plaintiff must allege the following three elements: (1) "a clear and unambiguous promise; (2) "a reasonable and foreseeable

reliance by the party to whom the promise is made;" and (3) "an injury sustained by the party asserting the estoppel by reason of the reliance." *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) (internal quotation marks and citations omitted).

First, Plaintiff properly outlined Defendants' promises to purchase the 600 Machines. These promises were clear and unambiguous. Defendants assured Plaintiff that they were securing funding for the 600 Machines from April 2018 to May 2018. Defendants then wired payments to Plaintiff towards the remaining balance from May 2018 to June 2018 in order to assure Plaintiff that they intended to complete the purchase. Defendants explicitly stated via email that they "will honor our obligation to finalize the purchase of the last 600 Machines." FAC ¶ 35. Additionally, in June 2018, Defendants assured Plaintiff that they received approval to raise funding and intended to pay the current balance on the Agreement. These are clear and unambiguous promises to pay the balance for the Machines.

Second, Plaintiff reasonably relied on these promises because they were consistent with Defendant's obligations under the Agreement to pay the remaining balance and purchase the remaining 600 Machines. *Cf. Doe v. NYU*, 1:20-cv-01343-GHW, 2021 WL 1226384, at *23 (S.D.N.Y. Mar. 31, 2021) ("Under New York law, a party cannot reasonably rely on an oral promise that is contrary to the provisions of a written contract.").

Third, Plaintiff was directly injured by Defendant's reliance because Plaintiff had to resell the Machines at a price below the contract prices amounting to significant loss.

As noted above, "because it is difficult to determine the validity or scope of the contract at the pleading stage, courts routinely reject arguments [against quasi-contract claims] as premature." *Vertex Const. Corp. v. T.F.J. Fitness L.L.C.*, No. 10-CV-683, 2011 WL 5884209, at

*4 (E.D.N.Y. Nov. 23, 2011). Accordingly, the Court upholds the promissory estoppel claim at this stage.

**CONCLUSION**

For the reasons above, Defendants' motion is DENIED. The parties shall submit a status report to the Court within two weeks of this Order. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 73.

**SO ORDERED.**

**Dated: August 8, 2022**
     **New York, New York**

_____
     **ANDREW L. CARTER, JR.**
     **United States District Judge**