Case 1:18-cv-11099-ALC   Document 109   Filed 04/06/23   Page 1 of 3



Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY  10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Richard S. Mandel**
(212) 790-9291
rsm@cll.com

April 6, 2023

**VIA ECF**

Hon. Andrew L. Carter, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

      Re:    *Blockchain Mining Supply v. Super Crypto Mining et ano.*, Case No. 1:18-CV-l 1099 (ALC)

Dear Judge Carter:

      We represent Plaintiff Blockchain Mining Supply and Services Ltd. ("Blockchain"), and we write in response to Defendants' pre-motion letter of April 4, 2023.

Defendants' Motion on Count I for Breach of Contract

      Defendants' contemplated motion for summary judgment on the breach of contract count fails for the reasons fully developed in Blockchain's own prior pre-motion letter of March 2, 2023 (ECF No. 106).  Indeed, as set forth therein, the undisputed facts not only require denial of Defendants' motion, but fully support granting summary judgment in Blockchain's favor.  As the parties at least agree that the case can be appropriately resolved by summary judgment, and fact discovery has been completed since January 20, 2023 with no experts subsequently being identified by either side, Blockchain respectfully requests that the Court set a briefing schedule requiring the parties to file their respective cross-motions for summary judgment simultaneously by May 5, 2023.

      The evidence shows that Defendants unmistakably agreed to waive the provision in Article 3 otherwise permitting them to walk away from the purchase of the remaining 600 Machines as of April 15, 2018.  Immediately upon completing payment for the first 500 Machines on April 17, 2018 (nearly a month after the payment date set in the contract and *after* the April 15, 2018 date in Article 3), Super Crypto entered into an escrow agreement with Blockchain covering the remaining 600 Machines.  In the period leading up to the delayed payment on the first 500 Machines and continuing for months thereafter, Defendants repeatedly reiterated their desire to complete the transaction and obtain the remaining 600 Machines pursuant to the parties' agreement.

31592/000/4311321

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
April 6, 2023
Page 2

Defendants' claim that they were somehow able to limit their exposure to the deposit payments made in March 2018 ignores the fact that they paid an additional $87,000 to be applied toward the purchase of the 600 Machines between May and August 2018 (in addition to another $32,000 applied toward storage charges). As Mr. Ault, DPW's CEO, testified at his deposition, "[t]here would be no other reason to wire him than to show him our intention to pay." Ault Dep. at 215-216. Mr. Magot, Super Crypto's CEO, agreed that the intention in continuing to make payments was to show there was still a commitment to finalize the payment on the remaining 600 Machines. Magot Dep. at 186-187, 210-211.

Although Defendants now assert that Article 3 allowed them to avoid paying for the 600 Machines, Defendants never took such a position either in writing or orally during the parties' entire course of dealing. Indeed, their internal communications consistently refer to an ongoing obligation to pay Blockchain for the final 600 Machines without any suggestion they were somehow permitted to avoid that obligation. At his deposition, Mr. Magot acknowledged believing that Super Crypto owed Blockchain for the 600 Machines well after the date in Article 3, including as late as just a few weeks before Blockchain eventually sold the Machines to another party in November 2018. Magot Dep. at 56-58, 70, 75-79. 81-84, 159-161, 196-197, 233-234.

Defendants' pre-motion letter claims that proceeding to buy the 600 Machines would have been commercially unreasonable after April 15, 2018. However, their witnesses testified to the contrary. Mr. Ault could not recall even considering whether to invoke Article 3; he "just remember[ed] wanting the machines" and being concerned that Blockchain might sell them to someone else after April 15, 2018. Ault Dep. at 177-179. Mr. Magot testified that internal consideration was given to invoking Article 3, but he "made the business decision to try continue purchasing equipment." He knew that the cryptocurrency market was volatile and "that the fluctuations in this new market aren't predictable…." He remained hopeful that prices would increase again, and Defendants thus made the business decision that they still wanted the Machines in the hope that the market would turn around. Magot Dep. at 59-65, 67-68, 186.

Every piece of objective evidence, including the testimony of Defendants' own witnesses, makes clear that the parties eliminated Article 3 so that Defendants could complete the purchase of the 600 Machines at the agreed price set in the contract.

Personal Jurisdiction

Defendants' attempt to reassert the same failed personal jurisdiction ground rejected by the Court in denying DPW's motion to dismiss is baseless. The Court concededly has personal jurisdiction over Super Crypto with regard to the breach of contract claim pursuant to the forum selection clause in the parties' agreement. Where a district court already has personal jurisdiction over a defendant as to one claim in a diversity action, the Second Circuit has long held that the court will have pendent personal jurisdiction over all other claims that arise from the same nucleus of operative fact. *See, e.g., Hanly v. Powell Goldstein, L.L.P.*, 290 F. App'x 435, 438 (2d Cir. 2008) (holding irrelevant whether substantial nexus with New York existed as to one claim, since it was "based on the same factual predicate" as other claims on which

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
April 6, 2023
Page 3

defendant already subject to personal jurisdiction); *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 718-21 (2d Cir. 1980) ("The district court, having acquired personal jurisdiction over defendant [as to the first claim], has power to determine all of the claims asserted in the complaint," where these were based on "essentially the same facts" as the first claim.). Because the breach of contract claim and promissory estoppel claim are alternative claims arising out of the same transaction and facts, the Court has jurisdiction to decide both claims.

 Moreover, even if a separate jurisdictional basis were required with respect to the promissory estoppel claim, there are sufficient contacts with New York to support personal jurisdiction. Mr. Ault repeatedly traveled to New York seeking funding to meet Defendants' ongoing promises to pay for the Machines, and the promises to pay underlying the promissory estoppel claim were often coupled with informing Plaintiff that Ault was in New York in connection with meeting such promises. Such purposeful activity creates a sufficient nexus with New York for personal jurisdiction purposes. *See*, *e.g.*, *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.3d 55, 60 (2d Cir. 1985); *Newmont Mining Corp. v. AngloGold Ashanti Ltd.*, 344 F. Supp. 3d 724, 741 (S.D.N.Y. 2018).

 Finally, as this Court held in denying Defendants' motion to dismiss, Super Crypto's status as DPW's alter ego establishes personal jurisdiction over DPW. ECF No. 92 at 5 (citing *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)). Although Defendants try to minimize the decision as reflecting a "preliminary stage" of the case, the Court rendered its decision based not only on the allegations in the pleading, but facts adduced through jurisdictional discovery. Moreover, as detailed in Blockchain's prior pre-motion letter, additional discovery in this case has only strengthened the evidence that Super Crypto is an alter ego of DPW. *See* ECF No. 106 at 3. Accordingly, the Court's ability to exercise personal jurisdiction over Super Crypto also permits it to exercise jurisdiction over DPW.

<p align="center">*  *  *</p>

 We are available to address the various arguments set forth in the parties' respective pre-motion letters and oppositions in further detail at a pre-motion conference, or alternatively, are prepared to proceed with briefing on simultaneous cross-motions starting with opening briefs on May 5, 2023, if the Court prefers.

<div align="right">Respectfully,

*/s/ Richard S. Mandel*

Richard S. Mandel</div>

cc: All Counsel of Record (Via ECF)