

Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Richard S. Mandel**
(212) 790-9291
rsm@cll.com

March 2, 2023

**VIA ECF**
Hon. Andrew L. Carter, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

Re:  *Blockchain Mining Supply v. Super Crypto Mining et ano.*, Case No. 1:18-CV-l 1099 (ALC)

Dear Judge Carter:

We represent Plaintiff Blockchain Mining Supply and Services Ltd. ("Blockchain"). Pursuant to Rule 2A of Your Honor's individual practices, we request a pre-motion conference concerning Blockchain's proposed summary judgment motion on Count I of the First Amended Complaint for breach of contract against Defendants Super Crypto Mining, Inc. n/k/a Digital Farms, Inc. ("Super Crypto") and DPW Holdings, Inc. n/k/a Ault Alliance, Inc. ("DPW"). The undisputed evidence establishes that (1) Super Crypto breached its contract with Blockchain by failing to pay for 600 machines that it purchased; (2) DPW, Super Crypto's parent, is also liable for the breach because it is the alter ego of Super Crypto; and (3) Blockchain is entitled to recover damages of $1,375,955.00 plus pre-judgment interest and its reasonable attorneys' fees.

Breach of Contract

The basic facts are not in dispute. On March 8, 2018, Blockchain and Super Crypto entered into an agreement (the "Agreement") by which Super Crypto purchased 1,100 Bitmain Antminer S9 model cryptocurrency machines and 1,100 power supply units (collectively, the "Machines") for $3,272,500. The purchase price was divided into (a) two deposit payments totaling $163,625 due on March 9, 2018 and March 13, 2018; (b) a payment of $1,487,500 due on or before March 23, 2018 to acquire the first 500 Machines; and (c) a payment of $1,621,375 due on or before April 15, 2018 for the balance due on the remaining 600 Machines.

Although Super Crypto timely paid the deposits (with funds advanced from DPW), it failed to meet any of the contractual deadlines for the remaining payments. DPW paid Blockchain $100,000 toward the first 500 Machines on March 29, 2018 and the remaining $1,387,500 for those Machines on April 17, 2018, nearly a month after payment was due and after the deadline for the payment of the last 600 Machines.

Upon completion of the payment for, and release from escrow of, the first 500 Machines,

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
March 2, 2023
Page 2

Super Crypto immediately entered into a new escrow agreement with Blockchain for the final 600 Machines. Over the next six months, Defendants repeatedly indicated their intention to complete the transaction, and Blockchain worked to accommodate Defendants' cash flow issues. Between May and August 2018, DPW paid Blockchain more than $87,000 toward the purchase of the 600 Machines (in addition to another $32,000 toward storage charges that Defendants had agreed to pay). However, after two months without further payments and repeated unfulfilled promises to complete the purchase, Blockchain notified Defendants in late October 2018 of Blockchain's intention to resell the 600 Machines. In November 2018, Blockchain resold those Machines for a small fraction of the purchase price under the Agreement, and it filed this lawsuit.

There can be no serious dispute that Super Crypto breached the Agreement. Indeed, its CEO, Darren Magot, repeatedly acknowledged in internal communications to DPW that payment was due to Blockchain for the final 600 Machines. However, since being sued, Defendants have attempted to avoid this obligation by apparently deciding that Article 3 of the Agreement relieved them of any further contractual obligations beyond the initial deposit amounts that were applied toward payment of the final 600 Machines. Article 3 of the Agreement provides:

> In the event [Super Crypto] fails to pay the Balance to [Blockchain] on or before April 15, 2018, the Deposit funds shall be forfeited to [Blockchain], and the remainder of this Agreement save and except for Article 2(a)(i) [dealing with the Deposit] and Article 3, shall be null and void and all parties shall be relieved of its [sic] further obligations herein.

As a matter of law, Article 3 is inapplicable because (a) the parties amended the Agreement through exchanged writings or partial performance, or alternatively (b) Defendants are barred from relying on Article 3 by the doctrines of waiver and/or equitable estoppel. Under New York law, made applicable here by the Agreement, parties may modify a contract by another agreement, by course of performance, or by conduct amounting to waiver or estoppel. *Kaplan v. Old Mut. PLC*, 526 F. App'x 70, 72 (2d Cir. 2013) (quotations and citations omitted).

The numerous emails signed by the parties making clear their intention after April 15, 2018 to complete the transaction amended the Agreement by eliminating Article 3. *See In re Lebenthal Holdings, LLC*, 2019 Bankr. LEXIS 3673, at *22 (Bankr. S.D.N.Y. Nov. 27, 2019). Indeed, the writings signed by Defendants, the parties to be charged with the modification, and ratified by the parties' conduct, are themselves sufficient to effect such modification. *See* N.Y. Gen. Oblig. Law § 15-301(1); *Woodard v. Reliance Worldwide Corp.*, 2019 U.S. Dist. LEXIS 121624, at *13 (S.D.N.Y. July 22, 2019). Moreover, because Defendants' partial performance under the Agreement was "unequivocally referable" to the parties' oral agreement to complete the sale, the parties' conduct also modified the Agreement to render Article 3 inapplicable. *See DiStefano v. Maclay*, 102 F. App'x 188, 189-90 (2d Cir. 2004).

Article 3 is also inapplicable because Defendants, through their statements and course of conduct, waived any right to assert Article 3 by knowingly, voluntarily and intentionally abandoning it. *Williams v. Buffalo Pub. Sch.*, 758 F. App'x 59, 63 (2d Cir. 2018). Defendants affirmatively represented to Blockchain that they intended to honor their obligations under the

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
March 2, 2023
Page 3

Agreement, made payments toward the 600 Machines for months after the April 15, 2018 date in the Agreement and, tellingly, never invoked Article 3 to excuse their performance.

Defendants should also be equitably estopped from relying on Article 3 because their repeated promises to pay and payments induced Blockchain to forbear from reselling the 600 Machines for months in reliance on the fact that the parties had held Article 3 to be inapplicable. *Club Haven Inv. Co., LLC v. Capital Co. of Am., LLC*, 160 F. Supp. 2d 590, 592 (S.D.N.Y. 2001). The parties' conduct was plainly not compatible with an Agreement that became null and void as of April 15, 2018.

Alter Ego

As a matter of law, DPW is liable for Super Crypto's breach because Super Crypto is an alter ego for DPW. To establish alter ego status under Delaware law, Blockchain must show that DPW and Super Crypto operate as a single economic entity such that it would be inequitable for the Court to uphold the legal distinction between them. *NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 177 (2d Cir. 2008). The same evidence accepted by this Court in denying Defendants' motion to dismiss, reinforced by additional discovery, establishes that Super Crypto and DPW operated as a single economic entity. Defendants' witnesses admitted that Super Crypto was entirely dependent upon DPW's support to perform the Agreement. Any payments to Blockchain were either directly remitted by DPW or paid with DPW's funds. Super Crypto was insolvent throughout its existence, with balance sheets showing millions of dollars in negative balances. Super Crypto had its own bank account only for a matter of months, with all the funds contributed by DPW. DPW exercised full control of Super Crypto's finances, determining which of Super Crypto's many creditors would be paid, as well as when and how much they would be paid. Moreover, DPW's CEO was the final decisionmaker with respect to the Agreement, approving the deal, signing off on and facilitating payments, directing Super Crypto's interactions with Blockchain and directly participating in discussions with Blockchain in a manner exceeding the participation of a mere shareholder or even director. The foregoing evidence supports finding alter ego status as a matter of law. *See, e.g.*, *Soroof Trading Dev. Co. v. GE Fuel Cell Sys. LLC*, 842 F. Supp. 2d 502, 522 (S.D.N.Y. 2012).

To prove the injustice element, Blockchain need not show fraud. *NetJets Aviation*, 537 F.3d at 176. The fact that Super Crypto was intentionally undercapitalized so DPW could, whenever needed, avoid paying Super Crypto's reasonably anticipated expenses satisfies the injustice element. *See, e.g., id.* at 151-52. Super Crypto had no independent ability to meet its ongoing expenses, including its obligations under the Agreement, and sent regular reports to DPW of the various creditors which needed to be paid from DPW's funds. This allowed Defendants to make promises to vendors while having the option to avoid the consequences of non-payment. Such deliberate undercapitalization, which left Super Crypto effectively judgment proof and unable from the outset to meet any of its expenses, easily satisfies the injustice element and renders DPW equally liable for Super Crypto's contractual breach.

**Cowan, Liebowitz & Latman, P.C.**
Hon. Andrew L. Carter, U.S.D.J.
March 2, 2023
Page 4

Damages

The Court should award Blockchain damages of $1,375,955, plus prejudgment interest, attorneys' fees and costs. The damages reflect the unpaid amount of the purchase price on the last 600 Machines ($1,533,895) plus unpaid storage charges ($31,900), less the amount received by Blockchain from the resale of the 600 Machines ($189,840). Mr. Magot conceded at his deposition that he had no reason to believe that the resale price obtained by Blockchain was unreasonable given marketplace conditions at the time. Blockchain is entitled, as a matter of right under New York law, to prejudgment interest of 9% in connection with its breach of contract claim. *Careandwear II, Inc. v. Nexcha LLC*, 581 F. Supp. 3d 553, 558 (S.D.N.Y. 2022). And Article 13(h) of the Agreement provides that the prevailing part is entitled to recover its reasonable attorneys' fees and costs.

Respectfully,

*Richard S. Mandel*

Richard S. Mandel

cc: All Counsel of Record (Via ECF)