**Message**

| | |
|---|---|
| From: | Joe Kalfa - NADW [joekalfa@gmail.com] |
| Sent: | 2/25/2018 12:58:05 AM |
| To: | darren@supercrypto.com |
| Subject: | Antminer Sale Agreement |
| Attachments: | APA 2.26.18_SC.docx; Escrow Agreement Feb 26.18.docx |

Darren,

See attached as discussed on LinkedIn.
Let me know any changes..

Best Regards,
Joe Kalfa

**Mobile:** +1-410-504-6032

***** Confidentiality Disclaimer *****
This email (and any attached document) contains confidential information from Joe Kalfa. and is intended solely for the person or organization to whom it is addressed. If you have received this email in error, please notify joekalfa@gmail.com and destroy the attached message (and all attached documents) immediately. Any unauthorized distribution, copying, or other dissemination of this email is strictly prohibited.

Exhibit 9
W. Tencer
1/10/2023

DEFENDANTS_000940

ASET PURCHASE AGREEMENT

**THIS AGREEMENT** made this 26th day of February, 2018

BETWEEN:

**BLOCKCHAIN MINING SUPPLY & SERVICES LTD.**
a corporation incorporated under the laws of the Province of Ontario
(the "Vendor")

- and -

**SUPER CRYPTO, INC.**
a corporation incorporated under the laws of the State of Nevada
(the "Purchaser")

**WHEREAS** the Vendor is the owner of certain assets being 1,100 Bitmain Antminer S9 model & 1,100 PSU more fully described on Schedule I attached hereto (the "Assets");

**AND WHEREAS** the Purchaser is desirous of purchasing the Assets from the Vendor;

**NOW THEREFORE THIS AGREEMENT WITNESSETH** that in consideration of the mutual covenants and agreements set out herein, the parties respectively covenant and agree as follows.

1. **Definitions**.

    Where used in this Agreement or in any amendment, the following terms shall have the following meanings respectively:

    (a) "Agreement" means this Agreement of Purchase and Sale, including all schedules, and all instruments supplemental to or in amendment or confirmation of this Agreement;
    (b) "Assets" means 1,100 Bitmain Antminer S9 model, and 1,100 PSU;
    (c) "Escrow Funding Date:" means the 26th day of February, 2018;
    (d) "Purchase Price" means the purchase price to be paid by the Purchaser to the Vendor as described in Section 2 of this Agreement; and

2. **Purchase Price**. The purchase price payable to the Vendor by the Purchaser for the Assets shall be the sum of THREE MILLION AND FIVE HUNDRED AND SEVENTY FIVE THOUSAND ($3,575,000 USD) US DOLLARS (the "Purchase Price").

    a. **Payment of Purchase Price.** The Purchase Price shall be payable as follows:

    > THREE MILLION AND FIVE HUNDRED AND SEVENTY FIVE THOUSAND ($3,575,000 USD) US DOLLARS which shall be paid to an escrow account selected by the Purchaser on the Escrow Funding Date (the

"Escrow Funds") pursuant to the Escrow Agreement (the "Escrow Agreement) in the form attached hereto as Exhibit A; and

3. **Release of Escrow.** The Escrow Funds shall be released from escrow to Vendor at such time when the Assets are retrieved by Purchaser from its location, Toronto Pearson Airport (the "Closing Date"). Purchaser shall send written notice to the Vendor advising of such date and time when the Assets are retrieved in full. Notwithstanding, the Closing Date shall be no more than ten days (10) days from the Escrow Funding Date. If no written notice by Purchaser is sent to Vendor advising of retrieval or if Assets are not physically retrieved within ten (10) days of the Escrow Funding Date then on the eleventh (11th) day all Escrow Funds shall be released to the Vendor.

4. **Warranty.** Vendor hereby transfers and assigns to Purchaser any and all warranties with respect to the Assets provided by Bitmain to Vendor in connection with its original purchase of the Assets, and Vendor provides the Purchaser with full benefit of the warranty over the assets provided by Bitmain as published by Bitmain online. Vendor is the true and lawful owner, and has good title to, all of the Assets, free and clear of all encumbrances. The Assets owned are in good operating condition and repair and are adequate for the uses to which they are being put, ordinary wear and tear excepted. As of the Escrow Funding Date, there will be no restrictions on the Purchaser's right or ability to modify, relocate, or dispose of the Assets as the Purchaser sees fit..

5. **Title.** All right, title and interest to the Assets shall pass to Purchaser on the Closing Date by operation of law.

6. **Risk of Loss.** All risk of loss with respect to the Assets shall remain with Vendor until the Closing Date.

7. **Duty to Insure.** Vendor shall adequately insure the Assets against loss or damage by insurable hazards to at least equal to that of the Purchase Price until the Closing Date.

8. **No taxable supply.** It is acknowledged and understood that the Assets are a taxable supply under the *Excise Tax Act, RSC 1985 C E-15* (the "ETA"), however will not be subject to excise tax of GST/HST under the *ETA* pursuant to Schedule VI (Subsection 123(1)), Part V as an exempt supply of goods for export. Purchaser confirms that upon taking title to the Assets, the Assets will immediately be exported from Canada. If Assets remain in Canada, and excise taxes under the ETA become exigible, Purchaser shall be wholly responsible for same.

9. **Representations and Warranties of Vendor:**

Vendor hereby makes the following representations and warranties, as of the date hereof, to and in favour of Purchaser, and acknowledges that Purchaser is relying upon such representations and warranties in connection with entering into this Agreement:

10.1     *Incorporation and Corporate Power of Vendor.* Vendor is a corporation incorporated, organized, validly subsisting and in good standing under the laws of the jurisdiction of its incorporation. Vendor has all requisite corporate power, authority and capacity to carry on its business as presently conducted and to execute and deliver this Agreement and all other agreements and instruments to be executed by it as contemplated herein and to perform its other obligations hereunder and under all such other agreements and instruments contemplated herein. Vendor has the corporate power, authority and capacity to own and dispose of the Assets to Purchaser.

10.2     *Authorization by Vendor.* The execution and delivery of this Agreement and all other agreements and instruments to be executed by it as contemplated herein and the completion of the transactions contemplated hereby and thereby have been duly authorized by all necessary corporate action on the part of Vendor and no further corporate action is required to be taken by the directors or shareholders to authorize the completion of the transactions contemplated herein.

10.3     *Title to Assets.* Vendor has good and marketable legal and beneficial title to the Assets, in each case, which will be free and clear of any and all liens and encumbrances. There is no agreement, option or other right or privilege outstanding in favour of any Person for the purchase from Vendor of the Assets or any part thereof.

10.4     *Regulatory Approvals.* No regulatory approval or filing with, notice to, or waiver from any governmental authority is required to be obtained or made by Vendor: (a) in connection with the execution and delivery of, and performance by Vendor of its obligations under, this Agreement or the consummation of the transactions contemplated hereby; (b) to transfer any and all rights and benefits thereunder to Purchaser; or (c) to the knowledge of the Vendor, to permit the Purchaser to operate the Assets as contemplated.

10.5     *Absence of Conflicting Agreements.* The execution, delivery and performance of this Agreement by Vendor and the completion of the transactions contemplated by this Agreement do not and will not result in or constitute any of the following:

i.   a default, breach or violation or an event that, with notice or lapse of time or both, would be a default, breach or violation of any of the terms, conditions or provisions of the articles or by-laws of Vendor;

ii.  an event which, pursuant to the terms of any contract or licence, would cause any right or interest of Vendor to come to an end or be amended in any way that is detrimental to the Assets or the business of Purchaser;

iii. the violation of any applicable law.

10.6     *Intellectual Property.* The Assets do not violate or infringe the intellectual property of any third party and Purchaser will have all rights to intellectual property (without the need to make any payments in connection therewith) required to operate the Assets in the manner currently contemplated.

DEFENDANTS_000943

*10.7*    *Warranty Matters.*  There have not been any warranty claims made against Vendor in respect of its business or sales of miners or for which Vendor was responsible in the 24 months prior to the date hereof.

**10.    Representations and Warranties of Purchaser:**

Purchaser hereby makes the following representations and warranties, as of the date hereof, to and in favour of Vendor, and acknowledges that Vendor is relying upon such representations and warranties in connection with entering into this Agreement:

*11.1*    *Incorporation and Corporate Power.* Purchaser is a corporation incorporated and organized and subsisting under the laws of the jurisdiction of its incorporation. Purchaser has the corporate power, authority and capacity to execute and deliver this Agreement and Purchaser as the requisite funds to satisfy the payment of the Purchase Price and has the authority to execute and deliver all other agreements and instruments to be executed by it as contemplated herein and to perform its obligations under this Agreement and under all such other agreements and instruments.

*11.2*    *Authorization by Purchaser.* The execution and delivery of this Agreement and all other agreements and instruments to be executed by it as contemplated herein and the completion of the transactions contemplated by this Agreement and all such other agreements and instruments have been duly authorized by all necessary corporate action on the part of Purchaser.

*11.3*    *Enforceability of Obligations.* This Agreement constitutes a valid and binding obligation of Purchaser enforceable against Purchaser in accordance with its terms.

*11.4*    *Absence of Conflicting Agreements.* The execution, delivery and performance of this Agreement by Purchaser and the completion of the transactions contemplated by this Agreement do not and will not result in or constitute any of the following:

  i.  a default, breach or violation or an event that, with notice or lapse of time or both, would be a default, breach or violation of any of the terms, conditions or provisions of the articles or by-laws of Purchaser; or

  ii. the violation of any applicable law.

**11.    General.**

  a. Confidentiality.  The parties shall hold in strictest confidence any information and material which is related to either Purchaser or Vendor's business or is designated by either Purchaser or Vendor as proprietary and confidential, herein or otherwise. Vendor further covenants not to disclose or otherwise make known to any Party nor to issue or release for publication any articles or advertising or publicity matter relating to this Agreement in which the name of Purchaser or any of its affiliates is mentioned or used, directly or indirectly, unless prior written consent is granted by the other party; provided, however, that the Purchaser shall be entitled to make any disclosures required by it as a public company under applicable law, regulation or

DEFENDANTS_000944

stock exchange rule without any consent of Vendor, including the filing of this Agreement as an exhibit thereto.

b. Force Majeure. Any delay or failure of Vendor to perform its obligations under this Agreement will be excused to the extent that the delay or failure was caused directly by an event beyond the Vendor's control, without the Vendor's fault or negligence and that by its nature could not have been foreseen by the Vendor or, if it could have been foreseen, was unavoidable (which events may include natural disasters, embargoes, explosions, riots, wars, acts of terrorism, strikes, labour stoppages or slowdowns or other industrial disturbances, and shortage of adequate power or transportation facilities).

c. Notices. All notices and other communications pertaining to this Agreement shall be in writing and shall be deemed duly to have been given if personally delivered to the other Party or if sent by certified mail, return receipt requested, postage prepaid or by Federal Express, United Parcel or other nationally recognized overnight carrier. All notices or communications between Purchaser and Vendor pertaining to this Agreement shall be addressed to the Vendor at: [ HYPERLINK "file:///C:\\Users\\Shira\\AppData\\Local\\Microsoft\\Windows\\INetCache\\Content.Outlook\\17Q9ZG6J\\joekalfa@gmail.com" ] and to the Purchaser at darren@supercrypto.com. Either Party may change its notification address by giving written notice to that effect to the other Party in the manner provided herein.

d. Waiver. Any waiver by either Party of a breach of any provision of this Agreement shall not operate as or be construed to be a waiver of any other breach of such provision or of any breach of any other provision of this Agreement. The failure of a Party to insist upon strict adherence to any term of this Agreement on one or more occasions shall neither be considered a waiver nor deprive that Party of any right thereafter to insist upon strict adherence to that term or any other term of this Agreement. Any waiver must be in writing and signed by the Party to be charged therewith.

e. Modifications. No revision or modification of this Agreement shall be effective unless in writing and executed by authorized representative of both parties.

f. Assignment. Neither party shall assign, transfer, delegate or subcontract any of its rights or obligations under this Agreement without the prior written consent of the other party. Any purported assignment or delegation in violation of this Section shall be null and void. No assignment or delegation shall relieve the other party of any of its obligations hereunder.

g. Severability. If any portion of this Agreement is held invalid, such invalidity shall not affect the validity of the remaining portions of the Agreement, and the parties will substitute for any such invalid portion hereof a provision which best approximates the effect and intent of the invalid provision.

h. <u>Construction and Jurisdiction</u>.  This Agreement, the legal relations between the parties and any action, whether contractual or non-contractual, instituted by any party with respect to any matter arising between the parties, including but not limited to matters arising under or in connection with this Agreement, such as the negotiation, execution, interpretation, coverage, scope, performance, breach, termination, validity, or enforceability of this Agreement, shall be governed by and construed in accordance with the internal laws of the State of New York without reference to principles of conflicts of laws.  The parties hereto hereby irrevocably submit to the exclusive jurisdiction of the courts of the State of New York and the Federal Courts of the United States of America located within the Eastern or Southern District of New York with respect to any matter arising between the parties, and hereby waive, and agree not to assert, as a defense in any action, suit or proceeding for the interpretation or enforcement hereof or thereof, that it is not subject thereto or that such action, suit or proceeding may not be brought or is not maintainable in said courts or that the venue thereof may not be appropriate or that this Agreement or any such document may not be enforced in or by such courts, and the parties hereto irrevocably agree that all claims with respect to such action or proceeding shall be heard and determined in such a New York State or Federal court.  The parties hereby consent to and grant any such court jurisdiction over the person of such parties and over the subject matter of such dispute and agree that mailing of process or other papers in connection with any such action or proceeding in any manner as may be permitted by applicable law, shall be valid and sufficient service thereof. With respect to any particular action, suit or proceeding arising between the parties, including but not limited to matters arising under or in connection with this Agreement, venue shall lie solely in any New York County or any Federal Court of the United States of America sitting in the Eastern or Southern District of New York.  The prevailing party in any dispute arising out of this Agreement shall be entitled to his or its reasonable attorney's fees and costs.

i. <u>Headings</u>.  The paragraph titles of this Agreement are for conveniences only and shall not define or limit any of the provisions hereof.

j. <u>Entire Agreement</u>.  This Agreement, all schedules attached hereto and the Escrow Agreement, is intended as the complete and exclusive statement of the agreement between Purchaser and Vendor with respect to the subject matter hereof, and supersede all prior agreements and negotiations related thereto.

k. <u>Binding Effect</u>.  The provisions hereof shall be binding upon and shall inure to the benefit of Purchaser and Vendor, their respective successors, and permitted assigns.

l. <u>Counterparts</u>.  Provided that all parties hereto execute a copy of this Agreement, this Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Executed copies of this Agreement may be delivered by facsimile transmission or other comparable means.  This Agreement shall be deemed fully executed and entered into on the date of execution by the last signatory required hereby.

**[SIGNATURES APPEAR ON FOLLOWING PAGES AND ARE SIGNED IN COUNTERPART]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

By the Purchaser

**SUPER CRYPTO, INC.**

Per: _____
Name:  Darren Magot
Title:
*I have authority to bind the corporation*

By the Vendor

**BLOCKCHAIN MINING SUPPLY & SERVICES LTD.**

Per: _____
Name:  Joe (Yonah) Kalfa
Title:   President
*I have authority to bind the corporation*

[PAGE \* MERGEFORMAT]

Schedule "A"

DEFENDANTS_000948

EXHIBIT A

[PAGE \* MERGEFORMAT]

DEFENDANTS_000949

## ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** (the "Agreement") made this 26th day of February, 2018

**BETWEEN:**

**BLOCKCHAIN MINING SUPPLY & SERVICES LTD.**
a corporation incorporated under the laws of the Province of Ontario
(the "Vendor")

- and -

**SUPER CRYPTO, INC.**
a corporation incorporated under the laws of the State of California
(the "Purchaser")

-and-

**ROSEN AND KIRSHEN PROFESSIONAL CORPORATION**
a professional corporation incorporated under the laws of the Province of Ontario
(the "Escrow Agent")

## RECITALS

**WHEREAS** pursuant to the provisions of the Asset Purchase Agreement dated as at February 26, 2018 (the "Asset Purchase Agreement"), among the Vendor and the Purchaser, the Purchaser has agreed to purchase from the Vendor certain assets being 1,100 Bitmain Antminer S9 model & 1,100 PSU more fully described on Schedule I to the Asset Purchase Agreement (the "Assets");

**AND WHEREAS** under the terms of the Asset Purchase Agreement, the sum of THREE MILLION FIVE HUNDRED AND SEVENTY FIVE THOUSAND ($3,575,000 USD) US DOLLARS of the Purchase Price as defined in the Asset Purchase Agreement (the "Escrow Amount") is to be deposited in an escrow account with the Escrow Agent;

**AND WHEREAS** the Asset Purchase Agreement provides that the Escrow Agent shall hold and administer the Escrow Amount in accordance with the terms of this Agreement;

**AND WHEREAS** the execution and delivery of this Agreement is a condition precedent to the obligations under the Asset Purchase Agreement.

**NOW THEREFORE THIS AGREEMENT WITNESSETH** that in consideration of the mutual covenants and agreements set out herein, the parties respectively covenant and agree as follows.

[PAGE \* MERGEFORMAT]

## 1. Delivery of Escrow Amount

On February 26, 2018, the Purchaser shall deposit the Escrow Amount in escrow with the Escrow Agent, to be held and administered in accordance with the terms and conditions of this Agreement.

## 2. Administration

The Escrow Agent shall hold and safeguard the Escrow Amount, until the Termination Date (as defined below), and shall administer, hold and dispose of such Escrow Amount only in accordance with the terms of this Agreement.

## 3. Payment of Escrow Amount

The Escrow Amount shall be payable by the Purchaser to the account of the Escrow Agent (the "Escrow Account") set out in Schedule "A" to this Agreement.

## 4. Termination of Escrow Agreement and Release of Funds

The Escrow Funds shall be released from the Escrow Agent to Vendor at such time when the Assets are retrieved by Purchaser from Toronto Pearson Airport. Purchaser shall send written notice to the Vendor advising of such date and time when the Assets are retrieved in full. Notwithstanding, the release of the Escrow Amount shall be no more than ten (10) days from the date of February 26, 2018. If no written notice by Purchaser is sent to Vendor advising of retrieval or if Assets are not physically retrieved within ten (10) days of the February 26, 2018 then on the eleventh (11th) day the Escrow Funds shall be released from Escrow Agent to the Vendor.

## 5. Provisions Regarding the Escrow Agent

5.1   In performing any duties under this Agreement, the Escrow Agent shall not be liable to any party for damages, losses, or expenses, except for gross negligence or willful misconduct on the part of the Escrow Agent. The Escrow Agent shall not incur any liability for (i) any act or failure to act made or omitted in good faith or (ii) any action taken or omitted in reliance on any instrument, including any written statement or affidavit provided for in this Agreement that the Escrow Agent shall, in good faith, believe to be genuine, nor will the Escrow Agent be liable or responsible for forgeries, fraud, impersonations, or determining the scope of any representative authority, provided that the Escrow Agent believed, in good faith, that such forgeries, fraud, or impersonations were genuine and acted without gross negligence or willful misconduct. In addition, the Escrow Agent may consult with legal counsel in connection with the Escrow Agent's duties under this Agreement and shall be fully protected in any act taken, suffered, or permitted by it in good faith and in accordance with the advice of counsel. The Escrow Agent is not responsible for determining and verifying the authority of any person acting or purporting to act on behalf of any party to this Agreement.

DEFENDANTS_000951

5.2    If any controversy arises between the parties to this Agreement, or with any other party, concerning the subject matter of this Agreement, its terms or conditions, the Escrow Agent will not be required to determine the controversy or to take any action regarding it. The Escrow Agent may hold all documents and funds and may wait for settlement of any such controversy. The Escrow Agent is authorized to deposit with the arbitrator or any court of competent jurisdiction, as applicable, all documents and funds held in escrow, except all costs, expenses, charges, and reasonable attorneys' fees incurred by the Escrow Agent due to the action. Upon initiating such action, the Escrow Agent shall be fully released and discharged of and from all obligations and liability imposed by the terms of this Agreement.

5.3    The Vendor and the Purchaser agree, jointly and severally, to indemnify and hold the Escrow Agent harmless against any and all losses, claims, damages and liabilities, including reasonable costs of investigation, attorneys' fees, and disbursements that may be imposed on the Escrow Agent or incurred by the Escrow Agent in connection with the performance of its duties under this Agreement, including, but not limited to, any litigation arising from this Agreement or involving its subject matter, unless such loss, liability, claim or expense shall have been determined by a court of competent jurisdiction to be a result of the Escrow Agent's gross negligence or willful misconduct. Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, punitive, indirect, or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such damages and regardless of the form of action. The obligations to indemnify the Escrow Agent under this section shall survive termination of this Agreement.

## 6. General

a.  Notices. All notices and other communications pertaining to this Agreement shall be in writing and shall be deemed duly to have been given if personally delivered to the other Party or if sent by certified mail, return receipt requested, postage prepaid or by Federal Express, United Parcel or other nationally recognized overnight carrier. All notices or communications between Purchaser and Vendor pertaining to this Agreement shall be addressed to the Vendor at: [ HYPERLINK "file:///C:\\Users\\Shira\\AppData\\Local\\Microsoft\\Windows\\INetCache\\Content.Outlook\\17Q9ZG6J\\joekalfa@gmail.com" ] and to the Purchaser at [ HYPERLINK "mailto:darren@supercrypto.com" ] and to the Escrow Agent at shira@rktaxlaw.com. Either Party may change its notification address by giving written notice to that effect to the other Party in the manner provided herein.

b.  Assignment. Neither party shall assign, transfer, delegate or subcontract any of its rights or obligations under this Agreement without the prior written consent of the other party. Any purported assignment or delegation in violation of this Section shall be null and void. No assignment or delegation shall relieve the other party of any of its obligations hereunder.

DEFENDANTS_000952

c. <u>Entire Agreement</u>. This Agreement, all schedules attached hereto and the Escrow Agreement, is intended as the complete and exclusive statement of the agreement between Purchaser, Vendor, and the Escrow Agent with respect to the subject matter hereof, and supersede all prior agreements and negotiations related thereto.

d. <u>Modification and Waiver.</u> Neither this Agreement nor any of its provisions may be modified, amended, discharged or terminated except in writing signed by the party against which the enforcement of such modification, amendment, discharge or termination is sought, and then only to the extent set forth in such writing. No failure of a party to insist upon strict performance by the other party of any of the terms and conditions of this Agreement shall constitute or be deemed to be a waiver of any such term or condition, or constitute an amendment or waiver of any such term or provision by course of performance, and each party, notwithstanding any failure to insist upon strict performance, shall have the right thereafter to insist upon strict performance by the other party of any and all of the terms and conditions of this Agreement. Any party may, in its sole and absolute discretion, waive, only in writing, any condition set forth in this Agreement to such party's obligations under this Agreement which is for the sole benefit of the waiving party, in which event the non-waiving party or parties shall be obligated to close the transaction upon all of the remaining terms and conditions of this Agreement.

e. <u>Governing Law.</u> This Agreement shall be governed for all purposes by the laws of the Province of Ontario. Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and whenever there is any conflict between any provision contained in this Agreement and any present or future statute or law, ordinance or regulation or judicial ruling or governmental decision with the force of law contrary to which the parties have no legal right to contract, the latter shall prevail, but the provision of the Agreement which is affected shall be limited only to the extent necessary to bring it within the requirements of such law, ruling or decision without invalidating or affecting the remaining provisions of the Agreement.

f. <u>Severability</u>. If any portion of this Agreement is held invalid, such invalidity shall not affect the validity of the remaining portions of the Agreement, and the parties will substitute for any such invalid portion hereof a provision which best approximates the effect and intent of the invalid provision.

g. <u>Counterparts</u>. Provided that all parties hereto execute a copy of this Agreement, this Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Executed copies of this Agreement may be delivered by facsimile transmission or other comparable means. This Agreement shall be deemed fully executed and entered into on the date of execution by the last signatory required hereby.

h. <u>Waiver</u>. Any waiver by either Party of a breach of any provision of this Agreement shall not operate as or be construed to be a waiver of any other breach of such provision or of any breach of any other provision of this Agreement. The failure of a Party to insist upon strict adherence to any term of this Agreement on one or more occasions shall neither be considered a waiver nor deprive that Party of any right thereafter to insist upon strict

DEFENDANTS_000953

adherence to that term or any other term of this Agreement. Any waiver must be in writing and signed by the Party to be charged therewith.

i. <u>Headings</u>. The paragraph titles of this Agreement are for conveniences only and shall not define or limit any of the provisions hereof.

j. <u>Binding Effect</u>. The provisions hereof shall be binding upon and shall inure to the benefit of Purchaser, Vendor and Escrow Agent, their respective successors, and permitted assigns.

*The remainder of this page is intentionally left blank*

**[SIGNATURES APPEAR ON FOLLOWING PAGES AND ARE SIGNED IN COUNTERPART]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

By the Purchaser

**SUPER CRYPTO, INC.**

Per: _____
Name:  Darren Magot
Title:
*I have authority to bind the corporation*

By the Vendor

**BLOCKCHAIN MINING SUPPLY & SERVICES LTD.**

Per: _____
Name:  Joe (Yonah) Kalfa
Title:   President
*I have authority to bind the corporation*

By the Escrow Agent

**ROSEN AND KIRSHEN PROFESSIONAL CORPORATION**

[PAGE \* MERGEFORMAT]

Per: _____
Name:  Jason Rosen
Title:   Partner
*I have authority to bind the corporation*

## Schedule "A"

Beneficiary Name: ROSEN & KIRSHEN PROFESSIONAL CORPORATION
Beneficiary Address: 375 UNIVERSITY AVENUE, SUITE 801, TORONTO, ON. M5G 2J5
Beneficiary Account: ███████████
Bank Name: RBC ROYAL BANK
Bank Address: 443 UNIVERSITY AVENUE, TORONTO, ONTARIO M5G 2H6
Swift Code: ███████████
Fedwire ABA Routing Number: ███████

Intermediary Bank Name: JP Morgan Chase
Institution Code: 0003

DEFENDANTS_000957