UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLOCKCHAIN MINING SUPPLY AND SERVICES LTD., <br><br> Plaintiff, <br><br> –against– <br><br> SUPER CRYPTO MINING, INC. n/k/a DIGITAL FARMS, INC. and DPW HOLDINGS, INC. n/k/a AULT ALLIANCE, INC., <br><br> Defendants. | Civil Action No. 1:18-cv-11099-ALC |

# **EXHIBIT JJ**

## TO THE DECLARATION OF RICHARD S. MANDEL IN SUPPORT

## OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

31592/000/4360303

| | |
|---|---|
| Message | |
| **From**: | darren@supercrypto.com [darren@supercrypto.com] |
| **Sent**: | 3/23/2018 7:35:31 AM |
| **To**: | 'Willy Tencer' [sales@timberlane-mldg.com]; 'Shira Kalfa' [shira@kalfalaw.com] |
| **CC**: | 'Joe Kalfa - NADW' [joekalfa@gmail.com] |
| **BCC**: | todd@ault.com |
| **Subject**: | RE: shipment |
| **Attachments**: | doc03733520180323093243 fully executed.pdf |

**Exhibit 48**

Good morning Willy and Joe,

Please find the fully executed Escrow Instructions attached. I've also shared your wire instructions with the Escrow. I'm working with the team on the timing of the payment and will have updates to share as the day goes on. As we did, I'll ask that the Escrow share the wire details when it is sent.

Thank you,

Darren Magot
www.supercryptomining.com
714-887-6377

---

**From:** Willy Tencer <sales@timberlane-mldg.com>
**Sent:** Thursday, March 22, 2018 6:25 PM
**To:** darren@supercrypto.com; 'Shira Kalfa' <shira@kalfalaw.com>
**Cc:** 'Joe Kalfa - NADW' <joekalfa@gmail.com>
**Subject:** Re: shipment

Thanks. I don't see any issues. I believe your CEO will now be comfortable.

Willy Tencer
Timberlane Wood Products
200-345 Wilson Ave.
Toronto, On. Canada
M3H 5W1
Tel. 416 398 1198
Fax. 416 398 0878
sales@timberlane-mldg.com


On Thu, Mar 22, 2018 at 4:58 PM -0700, <darren@supercrypto.com> wrote:

> Hello Willy,
>
> I'm pushing for the attorneys to reply tonight. They are in NY but I expect them to reply. I'm also working with the CFO and CEO of DPW on the payment details. I'll continue to update you as this develops.
>
> Thank you,
>
> Darren Magot
> www.supercryptomining.com
> 714-887-6377

DEFENDANTS_001919

**From:** Shira Kalfa <shira@kalfalaw.com>
**Sent:** Thursday, March 22, 2018 2:59 PM
**To:** darren@supercrypto.com
**Cc:** Willy Tencer <sales@timberlane-mldg.com>; Joe Kalfa - NADW <joekalfa@gmail.com>
**Subject:** Re: shipment

Hi Darren,

I have made a few changes to the escrow agreement to further flush out the particulars of the release. As you will see, the substance remains the same. Edits were made for clarification purposes only (see exhibits A and B).

My client has signed the escrow agreement, attached.

If approved by you, kindly execute and have escrow agent execute to cause fully binding agreement.

Best,
Shira

On 22 March 2018 at 16:40, <darren@supercrypto.com> wrote:

> Thank you and please find the fully executed agreement attached.
>
> Let me know if I can do anything else to help.
>
> Darren Magot
>
> www.supercryptomining.com
>
> 714-887-6377

**From:** Shira Kalfa <shira@kalfalaw.com>
**Sent:** Thursday, March 22, 2018 1:37 PM
**To:** darren@supercrypto.com
**Cc:** Willy Tencer <sales@timberlane-mldg.com>; Joe Kalfa - NADW <joekalfa@gmail.com>
**Subject:** Re: shipment

Darren,

Received with thanks.

Can you send me a copy of the underlying purchase agreement?

Shira

On 22 March 2018 at 15:31, <darren@supercrypto.com> wrote:

> Hello Willy and Shira,
>
> Please find the Escrow agreement attached for your review.

I look forward to your feedback.

Darren Magot

www.supercryptomining.com

714-887-6377

---

**From:** Willy Tencer <sales@timberlane-mldg.com>
**Sent:** Thursday, March 22, 2018 9:41 AM
**To:** darren@supercrypto.com
**Cc:** 'Shira Kalfa' <shira@kalfalaw.com>; Joe Kalfa - NADW <joekalfa@gmail.com>
**Subject:** RE: shipment

OK.   Have them prepare the agreement for me  and my attorney's review. (CC'd here).   Funds are due tomorrow.  After funds are confirmed to us to be in escrow account, we will notify Stonegate  (copy you) and then Stonegate will release goods to trucking company (and copy you).  Then funds get released to us regardless of when you or the tucking company pick up the goods.

Does Stonegate know who the trucking company is?  You should let us know too.

Sound good?

Willy Tencer

Blockchain Mining Supply and Services Ltd.

200 - 345 Wilson Ave.,

Toronto, ON M3H 5W1

Tel. 416 398 1198

Fax 416 398 0878

sales@timberlane-mldg.com

---

**From:** darren@supercrypto.com [mailto:darren@supercrypto.com]
**Sent:** March 22, 2018 12:03 PM
**To:** sales@timberlane-mldg.com
**Subject:** RE: shipment

Good morning Willy,

I just spoke with Lisa and also with the NYSE attorneys (Who we originally planned to use for an Escrow). Again, I apologize since this is such overkill but I hope you understand that the CEO of the parent company (DPW traded on the NYSE) can't have any opportunity for something to go wrong (even though I know if won't). It's not a trust thing but just good business to avoid having to tell shareholders that we lost the shipment or money.

DEFENDANTS_001921

With that said, the only way I see of guaranteeing this would be to send the money to an Escrow as we originally planned with the deposit. The law firm SRFK could set up that Escrow today and receive the funds tomorrow. They would then release the funds once Lisa confirms that she released the equipment to the trucking company.

Thank you again for understanding and helping us find a solution here.

Darren Magot

www.supercryptomining.com

714-887-6377

---

**From:** Willy Tencer <sales@timberlane-mldg.com>
**Sent:** Thursday, March 22, 2018 7:03 AM
**To:** 'Lisa' <lisa@stonegatelogistics.com>
**Cc:** darren@supercrypto.com
**Subject:** RE: shipment

I thought you were handling the trucking for Darren. We normally just send a packing slip.

If you need an official BOL can you send me one and we will complete it.

Thx.

Willy Tencer

Blockchain Mining Supply and Services Ltd.

200 - 345 Wilson Ave.,

Toronto, ON M3H 5W1

Tel. 416 398 1198

Fax 416 398 0878

sales@timberlane-mldg.com

---

**From:** Lisa [mailto:lisa@stonegatelogistics.com]
**Sent:** March 22, 2018 9:59 AM
**To:** sales@timberlane-mldg.com
**Cc:** darren@supercrypto.com
**Subject:** RE: shipment

Hi Willy

Sorry I forgot to add that the driver will need to come with a BOL.

Regards

Lisa

905-671-9072 x236

905-673-8053

lisa@stonegatelogistics.com

www.stonegatelogistics.com

---

**From:** Willy Tencer [mailto:sales@timberlane-mldg.com]
**Sent:** March-22-18 9:19 AM
**To:** 'Lisa' <lisa@stonegatelogistics.com>
**Cc:** darren@supercrypto.com
**Subject:** shipment

I think my customer will be calling you.  he wants some sort of assurance that you will ship the goods to him once I call you to let you know that we have received payment.  I guess he wants to be comfortable that neither of us will run off with the goods after he pays me.

Would it be possible to give him a letter, if that's what he wants?

He is scheduled to pay tomorrow, so shipment should be tomorrow or Monday.

Hopefully, we'll get this sorted out today.

His name is Darren. He is in copy here.


Willy Tencer

Blockchain Mining Supply and Services Ltd.

200 - 345 Wilson Ave.,

Toronto, ON M3H 5W1

Tel. 416 398 1198

Fax 416 398 0878

sales@timberlane-mldg.com



--

**Shira Kalfa, BA, JD**

**Partner**

Toronto Office:

Yonge Eglinton Centre

2300 Yonge St. Suite 1600

Toronto, Ontario

M4P 1E4


Vaughan Office:

Deloitte Building

400 Applewood Crescent, Suite 100

Vaughan, Ontario

L4K 0C3


Phone: (416) 631-7227

Toll Free: (800) 631-7923

Fax: (647) 849 3974

Email: shira@kalfalaw.com


The contents of this email may be subject to solicitor-client privilege. This email, together with any attachments, is for the exclusive and confidential use of the addressee(s). Any other distribution, use or reproduction without the sender's prior consent is unauthorized and strictly prohibited. If you have received this message in error, please notify the sender by email immediately and delete the message from your computer without making any copies.


--

**Shira Kalfa, BA, JD**
**Partner**

Toronto Office:
Yonge Eglinton Centre
2300 Yonge St. Suite 1600
Toronto, Ontario

M4P 1E4

Vaughan Office:
Deloitte Building
400 Applewood Crescent, Suite 100
Vaughan, Ontario
L4K 0C3

Phone: (416) 631-7227
Toll Free: (800) 631-7923
Fax: (647) 849 3974
Email: shira@kalfalaw.com

The contents of this email may be subject to solicitor-client privilege. This email, together with any attachments, is for the exclusive and confidential use of the addressee(s). Any other distribution, use or reproduction without the sender's prior consent is unauthorized and strictly prohibited. If you have received this message in error, please notify the sender by email immediately and delete the message from your computer without making any copies.

DEFENDANTS_001925

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this "Agreement") is made as of March 22, 2018, by and among Super Crypto Mining, Inc., a California corporation (the "Company"), Blockchain Mining Supply & Services Ltd., a Province of Ontario corporation ("Vendor"), and Sichenzia Ross Ference Kesner LLP, with an address at 1185 Avenue of the Americas, New York, NY 10036 (the "Escrow Agent").

WITNESSETH:

WHEREAS, the Company and the Vendor desires to enter into an agreement for the sale of certain equipment from the Vendor to the Company, pursuant to an asset purchase agreement dated as of March 8, 2018 (the "Purchase Agreement"); and

WHEREAS, the purchase price set out in the Purchase Agreement is the sum of THREE MILLION, TWO HUNDRED AND SEVENTY-TWO THOUSAND FIVE HUNDRED ($3,272,500 USD) US DOLLARS (the "Purchase Price"); and

WHEREAS, the Company has previously paid the Vendor a deposit of $163,625 pursuant to the Purchase Agreement;

WHEREAS, the Company and the Vendor wish the Escrow Agent to hold a portion of the Purchase Price earmarked for 500 machines and power supplies (the "Assets"), in the amount of One Million, Four Hundred and Eighty-Seven Thousand, Five Hundred ($1,487,500.00) US Dollars, pending satisfaction of certain conditions set forth in the Purchase Agreement (the "Escrow Funds");

NOW, THEREFORE, in consideration of the covenants and mutual promises contained herein and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged and intending to be legally bound hereby, the parties agree as follows:

ARTICLE I
TERMS OF THE ESCROW

1.1     The parties hereby agree to establish an escrow account (the "Escrow Account") with the Escrow Agent whereby the Escrow Agent shall hold the Escrow Funds from the Company.

1.2     Wire transfers to the Escrow Agent shall be made as follows:

> Citibank
> 153 East 53rd Street
> 23rd Floor
> New York, NY 10022
>
> A/C of Sichenzia Ross Ference Kesner LLP
> A/C#: ███████
> ABA#: ███████

SWIFT Code: ███

1.3   Payment into Escrow by Purchaser. The sum of One Million, Four Hundred and Eighty-Seven Thousand, Five Hundred ($1,487,500.00) US Dollars (the "Escrow Funds") shall be deposited into the Escrow Account of the Escrow Agent by the Company.

1.4   Notification of Receipt of Escrow Funds. Upon receipt of the Escrow Funds, the Escrow Agent shall notify the Vendor (the "Notification").

1.5   Release of Assets. Upon receipt of the Notification by Vendor, the Vendor shall direct the Assets to be released by Stonegate Logistics, Inc. ("Stonegate") to the Company's possession. Stonegate shall confirm these instructions by executing the form enclosed as Exhibit "A" hereto (the "Confirmation"). The Confirmation shall be sent to the Vendor and to the Company. Thereafter execution of the Confirmation by Stonegate, Stonegate shall only take direction or instruction from the Company as to the Assets in respect of its release or otherwise.

1.6   Notification to Escrow Agent. Upon Vendor's receipt of the Confirmation from Stonegate, the Vendor shall execute the release notice attached hereto as Exhibit "B" (the "Release Notice").

1.7   Release of Escrow Funds. The Escrow Funds shall be released from the Escrow Agent to Vendor upon Escrow Agent's receipt of the fully executed Release Notice by Vendor and the fully executed Confirmation by Stonegate, the combined effect of which confirms that all condition precedent in the Purchase Agreement in respect of the Assets have been satisfied. The Escrow Agent shall pay the Escrow Funds to the Vendor to the same account into which the Company deposited the initial deposit funds in the Purchase Agreement, on the same day of its receipt of the Vendor's Release Notice and Stonegate's Confirmation.

ARTICLE II
MISCELLANEOUS

2.1   No waiver or any breach of any covenant or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof, or of any other covenant or provision herein contained.  No extension of time for performance of any obligation or act shall be deemed an extension of the time for performance of any other obligation or act.

2.2   Any and all notices or other communications or deliveries required or permitted to be provided hereunder shall be in writing and shall be deemed given and effective on the earliest of (a) the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number set forth on the signature pages attached hereto (and on the first page in the case of the Escrow Agent) prior to 5:30 p.m. (Eastern Time) on a Business Day, (b) the next Business Day after the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number set forth on the signature pages attached hereto (or the first page of this agreement in the case of the Escrow Agent) on a day that is not a Business Day or later than 5:30 p.m. (Eastern Time) on any business Day, (c) the 2nd business Day following the

2

date of mailing, if sent by U.S. nationally recognized overnight courier service, or (d) upon actual receipt by the party to whom such notice is required to be given. As used herein, "Business Day" shall mean any day other than Saturday, Sunday or other day on which commercial banks in the City of New York are authorized or required by law to remain closed. The address for such notices and communications shall be as set forth above in the case of the Escrow Agent and on the signature pages attached hereto, in the case of the Company and the Vendor, until changed by notice given in accordance with this Section.

    2.3    This Escrow Agreement shall be binding upon and shall inure to the benefit of the permitted successors and permitted assigns of the parties hereto.

    2.4    This Escrow Agreement is the final expression of, and contains the entire agreement between, the parties with respect to the subject matter hereof and supersedes all prior understandings with respect thereto. This Escrow Agreement may not be modified, changed, supplemented or terminated, nor may any obligations hereunder be waived, except by written instrument signed by the parties to be charged or by its agent duly authorized in writing or as otherwise expressly permitted herein.

    2.5    Whenever required by the context of this Escrow Agreement, the singular shall include the plural and masculine shall include the feminine. This Escrow Agreement shall not be construed as if it had been prepared by one of the parties, but rather as if all parties had prepared the same. Unless otherwise indicated, all references to Articles are to this Escrow Agreement.

    2.6    The parties hereto expressly agree that this Escrow Agreement shall be governed by, interpreted under and construed and enforced in accordance with the laws of the State of New York. Any action to enforce, arising out of, or relating in any way to, any provisions of this Escrow Agreement shall only be brought in a state or Federal court sitting in New York City.

    2.7    The Escrow Agent's duties hereunder may be altered, amended, modified or revoked only by a writing signed by the Company, the Vendor and the Escrow Agent.

    2.8    The Escrow Agent shall be obligated only for the performance of such duties as are specifically set forth herein and may rely and shall be protected in relying or refraining from acting on any instrument reasonably believed by the Escrow Agent to be genuine and to have been signed or presented by the proper party or parties. The Escrow Agent shall not be personally liable for any act the Escrow Agent may do or omit to do hereunder as the Escrow Agent while acting in good faith and in the absence of gross negligence, fraud and willful misconduct, and any act done or omitted by the Escrow Agent pursuant to the advice of the Escrow Agent's attorneys-at-law shall be conclusive evidence of such good faith, in the absence of gross negligence, fraud and willful misconduct.

    2.9    The Escrow Agent is hereby expressly authorized to disregard any and all warnings given by any of the parties hereto or by any other person or corporation, excepting only orders or process of courts of law and is hereby expressly authorized to comply with and obey orders, judgments or decrees of any court. In case the Escrow Agent obeys or complies with any such order, judgment or decree, the Escrow Agent shall not be liable to any of the parties hereto

3

or to any other person, firm or corporation by reason of such decree being subsequently reversed, modified, annulled, set aside, vacated or found to have been entered without jurisdiction.

2.10   The Escrow Agent shall not be liable in any respect on account of the identity, authorization or rights of the parties executing or delivering or purporting to execute or deliver the Subscription Agreement or any documents or papers deposited or called for thereunder in the absence of gross negligence, fraud and willful misconduct.

2.11   The Escrow Agent shall be entitled to employ such legal counsel and other experts as the Escrow Agent may deem necessary properly to advise the Escrow Agent in connection with the Escrow Agent's duties hereunder, may rely upon the advice of such counsel, and may pay such counsel reasonable compensation; provided that the costs of such compensation shall be borne by the Escrow Agent.

2.12   The Escrow Agent's responsibilities as escrow agent hereunder shall terminate if the Escrow Agent shall resign by giving written notice to the Company and the Vendor.  In the event of any such resignation, the Company and the Vendor shall appoint a successor Escrow Agent and the Escrow Agent shall deliver to such successor Escrow Agent any escrow funds held by the Escrow Agent.

2.13   If the Escrow Agent reasonably requires other or further instruments in connection with this Escrow Agreement or obligations in respect hereto, the necessary parties hereto shall join in furnishing such instruments.

2.14   It is understood and agreed that should any dispute arise with respect to the delivery and/or ownership or right of possession of the documents (if any) or the escrow funds held by the Escrow Agent hereunder, the Escrow Agent is authorized and directed in the Escrow Agent's sole discretion (1) to retain in the Escrow Agent's possession without liability to anyone all or any part of said documents or the escrow funds until such disputes shall have been settled either by mutual written agreement of the parties concerned by a final order, decree or judgment or a court of competent jurisdiction after the time for appeal has expired and no appeal has been perfected, but the Escrow Agent shall be under no duty whatsoever to institute or defend any such proceedings or (2) to deliver the escrow funds and any other property and documents held by the Escrow Agent hereunder to a state or Federal court having competent subject matter jurisdiction and located in the City of New York in accordance with the applicable procedure therefore.

2.15   The  Company and the Vendor agree jointly and severally to indemnify and hold harmless the Escrow Agent and its partners, employees, agents and representatives from any and all claims, liabilities, costs or expenses in any way arising from or relating to the duties or performance of the Escrow Agent hereunder or the transactions contemplated hereby or by the Subscription Agreement other than any such claim, liability, cost or expense to the extent the same shall have been determined by final, unappealable judgment of a court of competent jurisdiction to have resulted from the gross negligence, fraud or willful misconduct of the Escrow Agent.

DEFENDANTS_001929

2.16    The Escrow Agent shall be permitted to act as counsel for the Company in any transaction and/or dispute including any dispute between the Company and the Vendor, whether or not the Escrow Agent is then holding the escrow funds held by the Escrow Agent hereunder.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK*

5

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement as of date first written above.

COMPANY:

SUPER CRYPTO MINING, INC.

By: *Darren M. Magot*
Darren Magot,
CEO

ESCROW AGENT:
SICHENZIA ROSS FERENCE KESNER LLP

By: *Thomas A. Rose*
Thomas A. Rose,
Partner

VENDOR:

BLOCKCHAIN MINING SUPPLY & SERVICES LTD.

By: _____
Yonah Kalfa – ASO

6

## EXHIBIT A

## CONFIRMATION

STONEGATE LOGISTICS, INC. ("Stonegate") hereby confirms that it is in possession of the Assets as defined in the Escrow Agreement, being 500 machines and power supplies. Stonegate hereby confirms that it has received instruction from Blockchain Mining Supply & Services Ltd. to release the Assets to Super Crypto Mining, Inc. Stonegate confirms that by executing the herein notice, it shall only take instructions from Super Crypto Mining, Inc. and its authorized officers, as to the release of the Assets henceforth.

STONEGATE LOGISTICS, INC.

By:_____
   Name:
   Title:

DEFENDANTS_001932

## EXHIBIT B

## RELEASE NOTICE

BLOCKCHAIN MINING SUPPLY & SERVICES LTD., pursuant to the Escrow Agreement, dated as of March___, 2018, among Super Crypto Mining, Inc., (the "Company"), Blockchain Mining Supply & Services Ltd. (the "Vendor"), and Sichenzia Ross Ference Kesner LLP, as Escrow Agent (the "Escrow Agreement"); capitalized terms used herein and not defined shall have the meaning ascribed to such terms in the Escrow Agreement), hereby notifies the Escrow Agent that each of the conditions precedent to the purchase and sale of the Assets set forth in the Purchase Agreement have been satisfied. The Vendor hereby authorizes the release by the Escrow Agent of the funds.

IN WITNESS WHEREOF, the undersigned have caused this Confirmation to be duly executed and delivered as of this ___ day of March, 2018.

BLOCKCHAIN MINING SUPPLY & SERVICES LTD.

By: _____
Yonah Kalfa – ASO

8