EX-10.2 3 ex10-2.htm

**Exhibit 10.2**

## SECURITIES PURCHASE AGREEMENT

This SECURITIES PURCHASE AGREEMENT, dated as of March 16, 2020 (the "Agreement"), by and between Slinger Bag Inc., a Nevada corporation with headquarters located at 709 North Rolling Road, Suite 116, Windsor Mill, Baltimore, MD 21244 (the "Company"), and MidCity Capital Ltd. with an address at 200-345 Wilson Ave., Toronto, On. Canada M3H5W1 (the "Investor").

**WHEREAS**:

A. The Company and the Investor are executing and delivering this Agreement in reliance upon the exemption from securities registration afforded by the rules and regulations as promulgated by the United States Securities and Exchange Commission (the "**SEC**") under the Securities Act of 1933, as amended (the "**Securities Act**");

B. Investor desires to purchase and the Company desires to issue and sell, upon the terms and conditions set forth in this Agreement, a 12% promissory note of the Company, in the form attached hereto as **Exhibit A**, in the aggregate principal amount of 500,000 U.S. Dollars and Zero Cents ($500,000.00) (the "**Principal Amount**" and/or "**Purchase Price**") due and payable on March 16, 2022, together with any note(s) issued in replacement thereof or as a dividend thereon or otherwise with respect thereto in accordance with the terms thereof (the "**Note**"), and 500,000 warrants to purchase 500,000 shares of common stock (the "**Common Stock**") of the Company at a 40% discount to the market price on the date of exercise (the "**Warrants**"), upon the terms and subject to the limitations and conditions set forth in such Note; and

C. The Investor wishes to purchase, upon the terms and conditions stated in this Agreement, the Note.

**NOW THEREFORE**, the Company and the Investor severally (and not jointly) hereby agree as follows:

1. Purchase and Sale of Note and Warrants.

2. Purchase of Note and Warrants. On the Closing Date (as defined below), the Company shall issue and sell to the Investor and the Investor agrees to purchase from the Company the Note and the Warrants.

    a. Form of Payment. On the Closing Date (as defined below), (i) the Investor shall pay the Purchase Price for the Note and Warrants to be issued and sold to it at the Closing (as defined below) by wire transfer of immediately available funds to the Company, in accordance with the Company's written wiring instructions, against delivery of the Note in the Principal Amount and Warrants, and (ii) the Company shall deliver such duly executed Note and Warrants on behalf of the Company, to the Investor, against delivery of such Purchase Price.

Company Initials __

    b. <u>Closing Date</u>. The date and time of the first issuance and sale of the Note pursuant to this Agreement (the "**Closing Date**") shall be on or about March 16, 2020, or such other mutually agreed upon time. The closing of the transactions contemplated by this Agreement (the "**Closing**") shall occur on the Closing Date at such location as may be agreed to by the parties.

    3. <u>Investor's Representations and Warranties.</u> The Investor represents and warrants to the Company that:

    a. <u>Investment Purpose</u>. As of the date hereof, the Investor is purchasing the Note, the Warrants and the shares of Common Stock issuable upon exercise of the Warrants (such shares of Common Stock being collectively referred to herein as the "**Warrant Shares**" and, collectively with the Note and Warrant, the "**Securities**") for its own account and not with a present view towards the public sale or distribution thereof, except pursuant to sales registered or exempted from registration under the Securities Act; <u>provided</u>, <u>however</u>, that by making the representations herein, the Investor does not agree to hold any of the Securities for any minimum or other specific term and reserves the right to dispose of the Securities at any time in accordance with or pursuant to a registration statement or an exemption under the Securities Act.

    b. <u>Accredited Investor Status</u>. The Investor is an "accredited investor" as that term is defined under the Securities Act (an "**Accredited Investor**").

    c. <u>Reliance on Exemptions</u>. The Investor understands that the Securities are being offered and sold to it in reliance upon specific exemptions from the registration requirements of United States federal and state securities laws and that the Company is relying upon the truth and accuracy of, and the Investor's compliance with, the representations, warranties, agreements, acknowledgments and understandings of the Investor set forth herein in order to determine the availability of such exemptions and the eligibility of the Investor to acquire the Securities.

    d. <u>Information</u>. The Investor and its advisors, if any, have been, and for so long as the Note remain outstanding will, subject to applicable law and regulation, continue to be, furnished with all materials relating to the business, finances and operations of the Company and materials relating to the offer and sale of the Securities which have been requested by the Investor or its advisors. The Investor and its advisors, if any, have been, and for so long as the Note remain outstanding will continue to be, afforded the opportunity to ask questions of the Company. Notwithstanding the foregoing, the Company has not disclosed to the Investor any material nonpublic information and will not disclose such information unless such information is disclosed to the public prior to or promptly following such disclosure to the Investor. Neither such inquiries nor any other due diligence investigation conducted by Investor or any of its advisors or representatives shall modify, amend or affect Investor's right to rely on the Company's representations and warranties contained in Section 3 below. The Investor understands that its investment in the Securities involves a significant degree of risk. The Investor is not aware of any facts that may constitute a breach of any of the Company's representations and warranties made herein.

Company Initials __             2

    e. <u>Governmental Review</u>. The Investor understands that neither the SEC nor any state securities agency or any other government or governmental agency has passed upon or made any recommendation or endorsement of the Securities.

    f. <u>Transfer or Re-sale</u>. The Investor understands that (i) the sale or re-sale of the Securities has not been and is not being registered under the Securities Act or any applicable state securities laws, and the Securities may not be transferred unless (a) the Securities are sold pursuant to an effective registration statement under the Securities Act, (b) the Investor shall have delivered to the Company, at the cost of the Investor, an opinion of counsel that shall be in form, substance and scope customary for opinions of counsel in comparable transactions to the effect that the Securities to be sold or transferred may be sold or transferred pursuant to an exemption from such registration, which opinion shall be accepted by the Company, (c) the Securities are sold or transferred to an "affiliate" (as defined in Rule 144 promulgated under the Securities Act (or a successor rule) ("**Rule 144**")) of the Investor who agrees to sell or otherwise transfer the Securities only in accordance with this Section 2(f) and who is an Accredited Investor, (d) the Securities are sold pursuant to Rule 144 or other available exemption from the registration requirements of the Securities Act, or (e) the Securities are sold pursuant to Regulation S under the Securities Act (or a successor rule) ("**Regulation S**"), and the Investor shall have delivered to the Company, at the cost of the Investor, an opinion of counsel that shall be in form, substance and scope customary for opinions of counsel in corporate transactions, which opinion shall be accepted by the Company; (ii) any sale of such Securities made in reliance on Rule 144 may be made only in accordance with the terms of said Rule and further, if said Rule is not applicable, any re-sale of such Securities under circumstances in which the seller (or the person through whom the sale is made) may be deemed to be an "underwriter" (as that term is defined by Section 2(a)(11) of the Securities Act) may require compliance with some other exemption under the Securities Act or the rules and regulations of the SEC thereunder; and (iii) neither the Company nor any other person is under any obligation to register such Securities under the Securities Act or any state securities laws or to comply with the terms and conditions of any exemption thereunder (in each case). Notwithstanding the foregoing or anything else contained herein to the contrary, the Securities may be pledged as collateral in connection with a <u>bona fide</u> margin account or other lending arrangement.

    g. <u>Legends</u>. The Investor understands that the Note and, until such time as the Warrant Shares have been registered under the Securities Act or may be sold pursuant to Rule 144 or Regulation S without any restriction as to the number of securities as of a particular date that can then be immediately sold, the Warrant Shares shall bear a restrictive legend in substantially the following form (and a stop-transfer order may be placed against transfer of the certificates for such Securities):

Company Initials __          3

"NEITHER THE ISSUANCE AND SALE OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE NOR THE SECURITIES INTO WHICH THESE SECURITIES ARE EXERCISABLE HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED (I) IN THE ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR (B) AN OPINION OF COUNSEL (WHICH COUNSEL SHALL BE SELECTED BY THE HOLDER), IN A GENERALLY ACCEPTABLE FORM, THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR (II) UNLESS SOLD PURSUANT TO RULE 144 OR RULE 144A UNDER SAID ACT. NOTWITHSTANDING THE FOREGOING, THE SECURITIES MAY BE PLEDGED IN CONNECTION WITH A BONA FIDE MARGIN ACCOUNT OR OTHER LOAN OR FINANCING ARRANGEMENT SECURED BY THE SECURITIES."

The legend set forth above shall be removed and the Company shall direct its transfer agent to issue a certificate without such legend to the holder of any Security upon which it is stamped, if, unless otherwise required by applicable state securities laws, (a) such Security is registered for resale under an effective registration statement filed under the Securities Act or otherwise may be sold pursuant to Rule 144 or Regulation S without any restriction as to the number of securities as of a particular date that can then be immediately sold and (b) such holder provides the Company with an opinion of counsel, in form, substance and scope customary for opinions of counsel in comparable transactions, to the effect that a public resale or transfer of such Security may be made without registration under the Securities Act, which opinion shall be accepted by the Company so that the sale or transfer is effected. The Investor agrees to sell all Securities, including those represented by a certificate(s) from which the legend has been removed, in compliance with applicable prospectus delivery requirements, if any. In the event that the Company does not accept the opinion of counsel provided by the Investor with respect to the transfer of Securities pursuant to an exemption from registration, such as Rule 144 or Regulation S, within 2 business days, it will be considered an Event of Default under the Note. Notwithstanding the foregoing, the Investor acknowledges and agrees that it will be required to agree any opinion of counsel with the Company's transfer agent and that so long as the Company does not instruct the transfer agent not to accept the opinion of counsel, the Company shall not be responsible or liable for any delays caused by the transfer agent.

        h. <u>Authorization; Enforcement</u>. This Agreement has been duly and validly authorized. This Agreement has been duly executed and delivered on behalf of the Investor, and this Agreement constitutes a valid and binding agreement of the Investor enforceable in accordance with its terms.

Company Initials __                                           4

     i. <u>Residency</u>. The Investor is a resident of or domiciled in the jurisdiction set forth immediately below the Investor's name on the signature pages hereto.

  4. <u>Representations and Warranties of the Company</u>. The Company represents and warrants to the Investor that:

    a. <u>Organization and Qualification</u>. The Company and each of its subsidiaries, if any, is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is incorporated, with full power and authority (corporate and other) to own, lease, use and operate its properties and to carry on its business as and where now owned, leased, used, operated and conducted.

    b. <u>Authorization; Enforcement</u>. (i) The Company has all requisite corporate power and authority to enter into and perform its obligations under this Agreement, the Note and the Warrants and to consummate the transactions contemplated hereby and thereby and to issue the Securities, in accordance with the terms hereof and thereof, (ii) the execution and delivery of this Agreement, the Note by the Company and the consummation by it of the transactions contemplated hereby and thereby (including without limitation, the issuance of the Note and the issuance of the shares of common stock issuable upon exercise of the Warrants (the "Warrant Shares") and the performance of its obligations thereunder have been duly authorized by the Company's Board of Directors and no further consent or authorization of the Company, its Board of Directors, or its shareholders is required, (iii) this Agreement has been duly executed and delivered by the Company by its authorized representative, and such authorized representative is the true and official representative with authority to sign this Agreement and the other documents executed in connection herewith and bind the Company accordingly, and (iv) this Agreement constitutes, and upon execution and delivery by the Company of the Note, each of such instruments will constitute, a legal, valid and binding obligation of the Company enforceable against the Company in accordance with its terms.

    c. <u>Issuance of Shares</u>. The Warrant Shares are duly authorized and, upon exercise of the Warrants in accordance with its respective terms, will be validly issued, fully paid and non-assessable, and free from all taxes, liens, claims and encumbrances with respect to the issue thereof and shall not be subject to preemptive rights or other similar rights of shareholders of the Company and will not impose personal liability upon the holder thereof.

    d. <u>Acknowledgment of Dilution</u>. The Company understands and acknowledges the potentially dilutive effect to the outstanding Common Stock upon the issuance of the Warrant Shares upon exercise of the Warrants. The Company further acknowledges that its obligation to issue Warrant Shares upon exercise of the Warrants in accordance with this Agreement, the Note is absolute and unconditional regardless of the dilutive effect that such issuance may have on the ownership interests of other shareholders of the Company.

Company Initials __            5

e. <u>No Conflicts</u>. The execution, delivery and performance of this Agreement, the Note by the Company and the consummation by the Company of the transactions contemplated hereby and thereby (including, without limitation, the issuance of the Warrant Shares) will not (i) conflict with or result in a violation of any provision of the Certificate of Incorporation or By-laws, or (ii) violate or conflict with, or result in a breach of any provision of, or constitute a default (or an event which with notice or lapse of time or both could become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture, patent, patent license or instrument to which the Company or any of its subsidiaries is a party, or (iii) result in a violation of any law, rule, regulation, order, judgment or decree (including federal and state securities laws and regulations and regulations of any self-regulatory organizations to which the Company or its securities are subject) applicable to the Company or any of its subsidiaries or by which any property or asset of the Company or any of its subsidiaries is bound or affected (except for such conflicts, defaults, terminations, amendments, accelerations, cancellations and violations as would not, individually or in the aggregate, have a material adverse effect). All consents, authorizations, orders, filings and registrations which the Company is required to obtain pursuant to the preceding sentence have been obtained or effected on or prior to the date hereof. The Company is not in violation of the listing requirements of the Over-the-Counter Quotations Bureau (the "**OTC**") and does not reasonably anticipate that the Common Stock will be delisted by the OTC in the foreseeable future, nor are the Company's securities "chilled" by DTC. The Company and its subsidiaries are unaware of any facts or circumstances, which might give rise to any of the foregoing.

f. <u>Absence of Litigation</u>. Except as disclosed in the Company's public filings, there is no action, suit, claim, proceeding, inquiry or investigation before or by any court, public board, government agency, self-regulatory organization or body pending or, to the knowledge of the Company or any of its subsidiaries, threatened against or affecting the Company or any of its subsidiaries, or their officers or directors in their capacity as such, that could have a material adverse effect. Schedule 3(f) contains a complete list and summary description of any pending or, to the knowledge of the Company, threatened proceeding against or affecting the Company or any of its subsidiaries, without regard to whether it would have a material adverse effect. The Company and its subsidiaries are unaware of any facts or circumstances, which might give rise to any of the foregoing. As used herein, "knowledge" or any other similar knowledge qualification, means the actual or constructive knowledge of any director or officer of the Company, after due inquiry.

g. <u>Acknowledgment Regarding Investor' Purchase of Securities</u>. The Company acknowledges and agrees that the Investor is acting solely in the capacity of arm's length purchasers with respect to this Agreement and the transactions contemplated hereby. The Company further acknowledges that the Investor is not acting as a financial advisor or fiduciary of the Company (or in any similar capacity) with respect to this Agreement and the transactions contemplated hereby and any statement made by the Investor or any of its respective representatives or agents in connection with this Agreement and the transactions contemplated hereby is not advice or a recommendation and is merely incidental to the Investor' purchase of the Securities. The Company further represents to the Investor that the Company's decision to enter into this Agreement has been based solely on the independent evaluation of the Company and its representatives.

Company Initials __                                                                                              6

    h. <u>No Integrated Offering</u>. Neither the Company, nor any of its affiliates, nor any person acting on its or their behalf, has directly or indirectly made any offers or sales in any security or solicited any offers to buy any security under circumstances that would require registration under the Securities Act of the issuance of the Securities to the Investor. The issuance of the Securities to the Investor will not be integrated with any other issuance of the Company's securities (past, current or future) for purposes of any shareholder approval provisions applicable to the Company or its securities.

    i. <u>Title to Property</u>. Except as disclosed in the Company's public filings, the Company and its subsidiaries have good and marketable title in fee simple to all real property and good and marketable title to all personal property owned by them which is material to the business of the Company and its subsidiaries, in each case free and clear of all liens, encumbrances and defects except such as are described in Schedule 3(i) or such as would not have a material adverse effect. Any real property and facilities held under lease by the Company and its subsidiaries are held by them under valid, subsisting and enforceable leases with such exceptions as would not have a material adverse effect.

    j. <u>Bad Actor</u>. None of the Company, or any its predecessors or any affiliate issuer, any director, executive officer or other officer of the Company, any beneficial owner (as that term is defined in Rule 13d-3 under the Exchange Act) of 20% or more of the Company's outstanding voting equity securities, calculated on the basis of voting power, nor any promoter (as that term is defined in Rule 405 under the Securities Act) connected with the Company in any capacity at the time of sale of any securities (each, an "**Covered Person**" and, collectively, "**Covered Persons**") is subject to any of the "Bad Actor" disqualifications described in Rule 506(d)(1)(i) to (viii) under the Securities Act (a "**Disqualification Event**"), except for a Disqualification Event covered by Rule 506(d)(2) or (d)(3) under the Securities Act. The Company has exercised reasonable care to determine (i) the identity of each person that is a Covered Person; and (ii) whether any Covered Person is subject to a Disqualification Event.

    k. <u>Breach of Representations and Warranties by the Company</u>. If the Company breaches any of the representations or warranties set forth in this Section 3, and in addition to any other remedies available to the Investor pursuant to this Agreement, it will be considered an Event of default under the Note.

  5. <u>Covenants</u>.

    a. <u>Expenses</u>. Each party to this Agreement will bear its own expenses.

    b. <u>Listing</u>. The Company shall promptly secure the listing of the Warrant Shares upon each national securities exchange or automated quotation system, if any, upon which shares of Common Stock are then listed (subject to official notice of issuance) and, so long as the Investor owns any of the Securities, shall maintain, so long as any other shares of Common Stock shall be so listed, such listing of all Warrant Shares from time to time issuable upon exercise of the Warrants. The Company will obtain and, so long as the Investor owns any of the Securities, maintain the listing and trading of its Common Stock on the OTC or any equivalent replacement exchange, the Nasdaq National Market ("**Nasdaq**"), the Nasdaq SmallCap Market ("**Nasdaq SmallCap**"), the New York Stock Exchange ("**NYSE**"), or the American Stock Exchange ("**AMEX**") and will comply in all respects with the Company's reporting, filing and other obligations under the bylaws or rules of the Financial Industry Regulatory Authority ("**FINRA**") and such exchanges, as applicable. The Company shall promptly provide to the Investor copies of any notices it receives from the OTC and any other exchanges or quotation systems on which the Common Stock is then listed regarding the continued eligibility of the Common Stock for listing on such exchanges and quotation systems.

Company Initials __              7

c. <u>Corporate Existence</u>. So long as the Investor beneficially owns any Note, the Company shall maintain its corporate existence and shall not sell all or substantially all of the Company's assets, except in the event of a merger or consolidation or sale of all or substantially all of the Company's assets, where the surviving or successor entity in such transaction (i) assumes the Company's obligations hereunder and under the agreements and instruments entered into in connection herewith and (ii) is a publicly traded corporation whose Common Stock is listed for trading on the OTC, Nasdaq, Nasdaq SmallCap, NYSE or AMEX.

d. <u>No Integration</u>. The Company shall not make any offers or sales of any security (other than the Securities) under circumstances that would require registration of the Securities being offered or sold hereunder under the Securities Act or cause the offering of the Securities to be integrated with any other offering of securities by the Company for the purpose of any stockholder approval provision applicable to the Company or its securities.

e. <u>Breach of Covenants</u>. If the Company breaches any of the covenants set forth in this Section 4, and in addition to any other remedies available to the Investor pursuant to this Agreement, it will be considered an event of default under the Note.

6. <u>Governing Law; Miscellaneous</u>.

a. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of laws. Any action brought by either party against the other concerning the transactions contemplated by this Agreement shall be brought only in the state courts of New York or in the federal courts located in the state and county of New York. The parties to this Agreement hereby irrevocably waive any objection to jurisdiction and venue of any action instituted hereunder and shall not assert any defense based on lack of jurisdiction or venue or based upon forum non conveniens. The Company and Investor waive trial by jury. The prevailing party shall be entitled to recover from the other party its reasonable attorney's fees and costs. In the event that any provision of this Agreement or any other agreement delivered in connection herewith is invalid or unenforceable under any applicable statute or rule of law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such statute or rule of law. Any such provision, which may prove invalid or unenforceable under any law, shall not affect the validity or enforceability of any other provision of any agreement. Each party hereby irrevocably waives personal service of process and consents to process being served in any suit, action or proceeding in connection with this Agreement or any other Transaction Document by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Agreement and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any other manner permitted by law.

Company Initials __                                                                 8

    b. <u>Counterparts; Signatures by Facsimile</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party. This Agreement, once executed by a party, may be delivered to the other party hereto by facsimile transmission of a copy of this Agreement bearing the signature of the party so delivering this Agreement.

    c. <u>Headings</u>. The headings of this Agreement are for convenience of reference only and shall not form part of, or affect the interpretation of, this Agreement.

    d. <u>Severability</u>. In the event that any provision of this Agreement is invalid or unenforceable under any applicable statute or rule of law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such statute or rule of law. Any provision hereof which may prove invalid or unenforceable under any law shall not affect the validity or enforceability of any other provision hereof.

    e. <u>Entire Agreement; Amendments</u>. This Agreement and the instruments referenced herein contain the entire understanding of the parties with respect to the matters covered herein and therein and, except as specifically set forth herein or therein, neither the Company nor the Investor makes any representation, warranty, covenant or undertaking with respect to such matters. No provision of this Agreement may be waived or amended other than by an instrument in writing signed by the majority in interest of the Investor.

    f. <u>Notices</u>. All notices, demands, requests, consents, approvals, and other communications required or permitted hereunder shall be in writing and, unless otherwise specified herein, shall be (i) personally served, (ii) deposited in the mail, registered or certified, return receipt requested, postage prepaid, (iii) delivered by reputable air courier service with charges prepaid, or (iv) transmitted by hand delivery, telegram, or facsimile, addressed as set forth below or to such other address as such party shall have specified most recently by written notice. Any notice or other communication required or permitted to be given hereunder shall be deemed effective (a) upon hand delivery or delivery by facsimile, with accurate confirmation generated by the transmitting facsimile machine, at the address or number designated below (if delivered on a business day during normal business hours where such notice is to be received), or the first business day following such delivery (if delivered other than on a business day during normal business hours where such notice is to be received) or (b) on the second business day following the date of mailing by express courier service, fully prepaid, addressed to such address, or upon actual receipt of such mailing, whichever shall first occur. The addresses for such communications shall be:

Company Initials __               9

If to the Company, to:

Slinger Bag Inc.
709 North Rolling Road, Suite 116
Windsor Mill
Baltimore, MD 21244

Attn: Mike Ballardie, CEO

With a copy to Mark Radom, general counsel, at mark.radom@slingerbag.com.

If to the Investor:

MidCity Capital Ltd.
200-345 Wilson Ave.
Toronto, On. Canada
M3H5W1

Attn: Willy Tencer

Each party shall provide notice to the other party of any change in address.

g. <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the parties and their successors and assigns. Neither the Company nor the Investor shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other. Notwithstanding the foregoing, the Investor may assign its rights hereunder to any person that purchases Securities in a private transaction from the Investor or to any of its "affiliates," as that term is defined under the 1934 Act, without the consent of the Company.

h. <u>Third Party Beneficiaries</u>. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns, and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

i. <u>Survival</u>. The representations and warranties of the Company and the agreements and covenants set forth in this Agreement shall survive the closing hereunder notwithstanding any due diligence investigation conducted by or on behalf of the Investor. The Company agrees to indemnify and hold harmless the Investor and all their officers, directors, employees and agents for direct loss or damage arising as a direct result of or directly related to any breach or alleged breach by the Company of any of its representations, warranties and covenants set forth in this Agreement or any of its covenants and obligations under this Agreement, in each case, as proven in a final, non-appealable decision of a court of competent jurisdiction.

Company Initials __                                    10

j. <u>Further Assurances</u>. Each party shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments and documents, as the other party may reasonably request in order to carry out the intent and accomplish the purposes of this Agreement and the consummation of the transactions contemplated hereby.

k. <u>No Strict Construction</u>. The language used in this Agreement will be deemed to be the language chosen by the parties to express their mutual intent, and no rules of strict construction will be applied against any party.

l. <u>Remedies</u>. The Company acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Investor by vitiating the intent and purpose of the transaction contemplated hereby. Accordingly, the Company acknowledges that the remedy at law for a breach of its obligations under this Agreement will be inadequate and agrees, in the event of a breach or threatened breach by the Company of the provisions of this Agreement, that the Investor shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, preventing or curing any breach of this Agreement and to enforce specifically the terms and provisions hereof, without the necessity of showing economic loss and without any bond or other security being required.

[SIGNATURE PAGE FOLLOWS]

Company Initials __                                    11

**IN WITNESS WHEREOF**, the undersigned Investor and the Company have caused this Agreement to be duly executed as of the date first above written.

| | |
|---|---|
| ***Company:*** | **SLINGER BAG INC.** |
| | By: _____ |
| | Name: Mike Ballardie |
| | Title:  Chief Executive Officer |
| ***Investor:*** | **MIDCITY CAPITAL LTD.** |
| | By: _____ |
| | Name: Willy Tencer |
| | Title:  Authorized Signatory |

12

# EXHIBIT A

[$500,000 12% Promissory Note]

13