# DECLARATION OF RICHARD S. MANDEL

# EXHIBIT 2

Page 1

1   UNITED STATES DISTRICT COURT
2   SOUTHERN DISTRICT OF NEW YORK
3   - - - - - - - - - - - - - - - - - - -x
4   BLOCKCHAIN MINING SUPPLY AND
    SERVICES LTD.,
5
                        Plaintiff,
6
                  Case No. 18-CV-11099-ALC-BCM
7
            -against-
8
    SUPER CRYPTO MINING, INC. (N/K/A DIGITAL
9   FARMS, INC.) And DPW HOLDINGS, INC.
    (N/K/A BITNILE HOLDINGS, INC.),
10
                        Defendants.
11  - - - - - - - - - - - - - - - - - - -x
12
                        January 10, 2023
13                      11:04 a.m. (EST)
14
15      DEPOSITION of WILLIAM TENCER, the
16  Plaintiff in the above-entitled action,
17  held via Zoom video conference, taken
18  before Garry J. Torres, a Stenographer and
19  Notary Public of the State of New York,
20  pursuant to the Federal Rules of Civil
21  Procedure, Notice and stipulations between
22  Counsel.
23
24            *      *      *
25

```
                                          Page 2
 1    APPEARANCES:
 2
      COWAN, LIEBOWITZ & LATMAN, P.C.
 3          Attorneys for Plaintiff
            BLOCKCHAIN MINING SUPPLY AND
 4          SERVICES LTD.
            114 West 47th Street
 5          New York, NY 10036-1525
            TEL: (212) 790-9291
 6          EMAIL: rsm@cll.com
            EMAIL: dxc@cll.com
 7    BY:   RICHARD S. MANDEL, ESQ.
            DASHA CHESTUKHIN, ESQ.
 8
 9
10    WELTZ KAKOS GERBI WOLINETZ VOLYNSKY
      LLP
11          Attorneys for Defendants
            SUPER CRYPTO MINING, INC. (N/K/A
12          DIGITAL FARMS, INC.) And DPW
            HOLDINGS, INC. (N/K/A BITNILE
13          HOLDINGS, INC.)
            170 Old Country Road, Suite 310
14          Mineola, New York 11501
            TEL: (212) 202-3178
15          EMAIL: rvolynsky@weltz.law
      BY:   ROBERT B. VOLYNSKY, ESQ.
16
17              *      *      *
18
19
20
21
22
23
24
25
```

```
 1      A.     Yeah, of course.
 2      Q.     Do you know who Leo is?
 3      A.     I think Leo is the Bitmain
 4  representative.
 5      Q.     Do you know why Mr. Kalfa is
 6  telling you that he feels super
 7  uncomfortable as of April 4th, 2018?
 8      A.     He's telling me of that because
 9  we hadn't collected all our money yet, and
10  he's uncomfortable that -- whether or not
11  we will be able to collect our money.
12      Q.     And I guess I'll ask you again:
13  Was it your understanding then, as of
14  April 4th, 2018, that by April 15, 2018,
15  this agreement could be deemed null and
16  void?
17           MR. MANDEL:  Object to the form.
18      A.     On April 4th, if I could -- if I
19  knew that, on the April 15th, the
20  agreement would be null and void?
21      Q.     Did you know that it could be
22  null and void if you didn't receive the
23  full payment?
24           MR. MANDEL:  Object to the form.
25           MR. VOLYNSKY:  It's fine.
```

Page 164

1  in section 3 of the agreement had been

2  extended to a date after July 3rd, 2018?

3      A.    Well, we were definitely coming

4  to the end of the line where the empty

5  promises, you know, had to come to an end.

6  So whatever that letter states is what it

7  was.

8      Q.    Okay.  And I don't want to know

9  any privileged communications.  And by

10 that, I mean I don't want to know about

11 any substantive communications you had

12 with counsel, but why didn't you commence

13 the lawsuit at this time?

14          MR. MANDEL:  Let me just caution

15      you, you know, to the extent you're

16      able to answer that from a business

17      perspective --

18          MR. VOLYNSKY:  Yes.

19          MR. MANDEL:  Just don't get into

20      any privileged communication you may

21      have had with your attorneys.

22          THE WITNESS:  Right.  Right.

23      A.    A lawsuit is the last thing that

24 any businessman wants.  So I think that's

25 your answer, that just -- as you can see,

Page 166

```
 1   be paid.  I don't know exactly what that
 2   date was, but there was a cutoff date
 3   where we said this isn't going anywhere.
 4   And once we decided that we're going to
 5   have to sell the machines to recover
 6   whatever we can, that's when we looked for
 7   a buyer.
 8        Q.    Did you have any objective
 9   criteria for determining when the date
10   that they -- you 100 percent were not
11   getting paid would be determined?
12        A.    I think, from an objective point
13   of view, it would be the day that the
14   notice was sent to them.
15        Q.    What notice are you referring
16   to?
17        A.    The notice that we plan to sell
18   the machines.
19        Q.    Do you recall when you provided
20   that notice?
21        A.    You'd have to follow the chain
22   of emails, but based on this email, it
23   looked like July 5th would have been a day
24   to send official notice or somewhere
25   around there.  I think that payments had
```