# REPLY DECLARATION OF RICHARD S. MANDEL

# EXHIBIT DDDDD

Page 1

```
 1   UNITED STATES DISTRICT COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3

 4   BLOCKCHAIN MINING SUPPLY AND   )
     SERVICES LTD.,                 )
 5                                  )
              Plaintiff,            )
 6                                  ) Civil Action No.
     vs.                            ) 1:18-cv-11099-ALC
 7                                  )
     SUPER CRYPTO MINING, INC.      )
 8   n/k/a DIGITAL FARMS, INC. and  )
     DPW HOLDING, INC. n/k/a AULT   )
 9   GLOBAL HOLDINGS, INC.,         )
                                    )
10            Defendants.           )
     _____)
11

12

13

14

15      REMOTE VIDEOTAPED DEPOSITION OF DARREN MAGOT,

16      INDIVIDUALLY AND AS 30(b)(6) WITNESS FOR SUPER

17      CRYPTO MINING, INC. N/K/A DIGITAL FARMS, INC.

18                   Costa Mesa, California

19                 Friday, January 20, 2023

20

21

22

23   Stenographically Reported by:

24   Tami L. Le, CSR No. 8716, RPR

25   Job No. 220470
```

Page 88

```
 1               we can make the decision as things
 2               unfold."
 3               What did you mean by buying time?
 4        A.     Giving time to review this agreement and
 5   getting comfortable with it.
 6        Q.     And when you say, "We can make the
 7   decision as things unfold," who is going to actually
 8   make the decision as to whether or not you should
 9   enter into this agreement?
10        A.     The board of Super Crypto.
11        Q.     Was DPW involved in that decision?
12               MR. VOLYNSKY:  Objection; form.
13               THE DEPONENT:  No.  Super Crypto decided
14        what to purchase when.
15   BY MR. MANDEL:
16        Q.     Well, isn't it fair to say that you
17   needed Mr. Ault to approve this agreement?
18               MR. VOLYNSKY:  Objection; form.
19               THE DEPONENT:  Yes, he's a board member
20        of Super Crypto.
21   BY MR. MANDEL:
22        Q.     And he's also the CEO of DPW; correct?
23               MR. VOLYNSKY:  Objection; form.
24               THE DEPONENT:  That is correct.
25   ///
```

1  BY MR. MANDEL:
2       Q.   And it was DPW that you were looking to
3  for financing; correct?
4       A.   Yes.  DPW's board would decide on that,
5  I imagine.
6       Q.   And you needed to be comfortable that
7  Mr. Ault was going to approve providing the funds
8  necessary to fulfill this contract; correct?
9            MR. VOLYNSKY:  Objection; form.
10           THE DEPONENT:  Yeah, I believe in open
11      communication, so I'm trying to make everyone
12      aware that this is developing.
13           MR. MANDEL:  Let's mark as Exhibit 14 a
14      document bearing Production No. DEFENDANT_979
15      to 980.
16           (Plaintiff's Exhibit 14 was
17      subsequently marked for identification.)
18 BY MR. MANDEL:
19      Q.   If you look at the top of Exhibit 14, it
20 looks like you're continuing to forward on to
21 Mr. Ault your communications with Mr. Kalfa;
22 correct?
23      A.   Yes.
24      Q.   And what was the purpose in doing that?
25      A.   Information flow, keeping him informed.

Page 110

1         money from whomever we could at Super Crypto.
2    BY MR. MANDEL:
3         Q.    Right.  You didn't intend to rely on the
4    fact that Super Crypto itself didn't have the means
5    to make this kind of payment?
6              MR. VOLYNSKY:  Objection; form.
7              THE DEPONENT:  Well, I hesitate on that
8         one because when we buy equipment, it produces
9         revenue, so it creates means.
10             So it was my hope that Super Crypto
11        would have means to generate its own revenue
12        and pay its own bills without advances.
13   BY MR. MANDEL:
14        Q.    But you weren't going to be able to take
15   access to the machines until they were paid for;
16   correct?
17             MR. VOLYNSKY:  Objection; form.
18             THE DEPONENT:  Correct.
19   BY MR. MANDEL:
20        Q.    So you weren't going to be able to
21   generate any revenues from these machines until they
22   were paid for; correct?
23        A.    Correct.
24        Q.    Do you have any understanding as of
25   March 2018 at what rate Super Crypto was generating

1  revenues itself from the other machines it had?
2      A.   I don't.  That goes back to our initial
3  discussion on revenues, I think.
4      Q.   But you do know that the revenues it was
5  generating would never have been anywhere near
6  enough to cover the kind of obligation being
7  undertaken in this agreement; correct?
8           MR. VOLYNSKY:  Objection; form.
9           THE DEPONENT:  Yes, I believe so.
10 BY MR. MANDEL:
11     Q.   You believe that's correct, my
12 statement; correct?
13     A.   I believe that's correct.
14          MR. VOLYNSKY:  Note my objection.
15          MR. MANDEL:  Let's mark as Exhibit 22 a
16     document bearing Production No. DEFENDANT_1501
17     to 1514.
18          (Plaintiff's Exhibit 22 was
19     subsequently marked for identification.)
20 BY MR. MANDEL:
21     Q.   Is the top email in Exhibit 22 an email
22 that you sent to Mr. Tencer on March 6th of 2018?
23     A.   Appears to be.
24     Q.   And in it, you say:
25              "I'm frustrated that we are