UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

BLOCKCHAIN MINING SUPPLY AND
SERVICES LTD.,

    Plaintiff,

    –against–

SUPER CRYPTO MINING, INC. n/k/a
DIGITAL FARMS, INC. and DPW
HOLDINGS, INC. n/k/a AULT ALLIANCE,
INC.,

    Defendants.

Civil Action No. 1:18-cv-11099-ALC

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL
STATEMENT OF ADDITIONAL ALLEGED MATERIAL FACTS**

229. Prior to March 8, 2018, Tencer e-mailed Kalfa stating, "Joe, when you see his email, send the original agreement and Eacrow agreement to Shira and haver work on the changes as we discussed and hopefully Daren will confirm in his email. Get her to send it to me ASAP. I'll review and if all is OK, i'll Send it off to Darren. Ask her to let me know when I should expect a draft for review." See Volynsky Supp. Decl., Ex. 52, at BMS 000975.

Response: Plaintiff disputes the materiality of the statement set forth in paragraph 229, but it does not dispute that Mr. Tencer sent the quoted email to Mr. Kalfa prior to March 8, 2018.

230. Shira Kalfa was Plaintiff's attorney. See Volynsky Supp. Decl., Ex. 35 (Kalfa Dep.), 100:23-101:12.

Response: Plaintiff disputes the materiality of the statement, but it does not dispute the

statement.

231.　Shira Kalfa provided revisions to drafts of the Agreement prior to Plaintiff and Super Crypto entering into the Agreement.  *See* <u>Volynsky Supp. Decl.</u>, Ex. 53, at BMS 001063, BMS 001085-001093.

<u>Response</u>:  Plaintiff disputes the materiality of the statement contained in paragraph 231 and also disputes the statement.  It is unclear from the cited exhibit who made the revisions shown on the cited pages, particularly inasmuch as Mr. Tencer merely asks for Ms. Kalfa to send Word versions of the attached agreements and references that Defendants' lawyers want to make changes to the agreement.  Volynsky Supp. Decl., Ex. 53, at BMS 001063, BMS 001085-001093.

232.　Shira Kalfa's practice is focused on "corporate-commercial and private M&A law, including corporate reorganizations, mergers & acquisitions, business establishment such as incorporations, partnerships or JVAs, debt and equity funding, private placements, commercial financing, secured and unsecured lending and transactional law."  *See* <u>Volynsky Supp. Decl.</u>, Ex. 45.

<u>Response</u>:  Plaintiff disputes the materiality of the statement contained in paragraph 232, but it does not dispute that the quoted statement appears on Shira Kalfa's website describing her practice.  *See* Volynsky Supp. Decl., Ex. 45.

233.　As late as March 22, 2018, Shira Kalfa was communicating directly with Magot regarding revisions to an escrow agreement.  <u>Volynsky Supp. Decl.</u>, Ex. 54.

<u>Response</u>:  Plaintiff disputes the materiality of the statement contained in paragraph 233, but it does not dispute that Ms. Kalfa communicated directly with Mr. Magot on March 22, 2018 concerning revisions to an escrow agreement.

234.  DPW's Form 10-K for the calendar year ended December 31, 2017 (the "DPW 2017 10-K"), which was filed with the Securities and Exchange Commission ("SEC"), on or about April 17, 2018, lists "Super Crypto Mining, Inc., a Delaware corporation" as one of the "Subsidiaries of the Registrant" at Exhibit 21 to the DPW 2017 10-K.  Volynsky Supp. Decl., ¶¶ 12-13, Ex. 41.

Response:  Admitted.

235.  The DPW 2017 10-K states that, "In January 2018, we formed Super Crypto Mining, Inc. ("**SCM**"), a wholly-owned subsidiary." Volynsky Supp. Decl., Ex. 40, p. 3 (emphasis in original).

Response:  Plaintiff disputes the statement contained in paragraph 235.  The cited page refers to DPW having formed "Digital Farms" (which was previously known as Super Crypto) in January 2018, but does not contain a reference to it being a "wholly-owned subsidiary." Volynsky Supp. Decl., Ex. 40.

236.  DPW's Form 10-K/A for the calendar year ended December 31, 2018, which was filed with the SEC, on or about October 16, 2019, discloses that Super Crypto generated revenue of $1,675,549 during the 2018 calendar year.  Volynsky Supp. Decl., Ex. 42, p. 49.

Response:  Plaintiff disputes the materiality of the statement contained in paragraph 236, but it does not dispute that the form 10-K/A for the calendar year ended December 31, 2018 states that the entity Digital Farms (which was the entity formerly known as Super Crypto) recognized revenue of $1,675,549 during the 2018 calendar year.  Volynsky Supp. Decl., Ex. 42, p. 49.

237.   Exhibit 19 from the Declaration of Robert B. Volynsky, dated May 29, 2023 ("Volynsky 5/29 Decl."), was also marked as Exhibit 17 at the Kalfa Deposition (as defined in the Volynsky 5/29 Decl.).  *See* Volynsky 5/29 Decl., Ex. 19;  Volynsky Supp. Decl., Ex. 35 (Kalfa Dep.), 152:22-153:20; Ex. 34 (Tencer Dep.), 141:19-142:10.

Response:  Plaintiff disputes the materiality of the statement contained in paragraph 237, but it does not dispute the statement.

238.   Exhibit 16 from the Volynsky 5/29 Decl., was also marked as Exhibit 9 at the Kalfa Deposition (as defined in the Volynsky 5/29 Decl.).  *See* Volynsky 5/29 Decl., Ex. 16; Volynsky Supp. Decl., Ex. 35 (Kalfa Dep.), 67:17-68:24; Ex. 34 (Tencer Dep.), 65:8-66:3.

Response:  Plaintiff disputes the materiality of the statement contained in paragraph 238, but it does not dispute the statement.

239.   Exhibit 21 from the Volynsky 5/29 Decl., was also marked as Exhibit 14 at the Kalfa Deposition (as defined in the Volynsky 5/29 Decl.).  *See* Volynsky 5/29 Decl., Ex. 21; Volynsky Supp. Decl., Ex. 35 (Kalfa Dep.), 121:25-122:14; Ex. 34 (Tencer Dep.), 118:19-119:5.

Response:  Plaintiff disputes the materiality of the statement contained in paragraph 239, but it does not dispute the statement.

240.   Exhibit 22 from the Volynsky 5/29 Decl., was also marked as Exhibit 13 at the Kalfa Deposition (as defined in the Volynsky 5/29 Decl.).  *See* Volynsky 5/29 Decl., Ex. 22; Volynsky Supp. Decl., Ex. 35 (Kalfa Dep.), 119:4-120:4;  Ex. 34 (Tencer Dep.), 113:8-114:19.

Response:  Plaintiff disputes the materiality of the statement contained in paragraph 240, but it does not dispute the statement.

241. Exhibit 23 from the Volynsky 5/29 Decl., was also marked as Exhibit 15 at the Kalfa Deposition (as defined in the Volynsky 5/29 Decl.). *See* Volynsky 5/29 Decl., Ex. 23; Volynsky Supp. Decl., Ex. 35 (Kalfa Dep.), 131:2-21; Ex. 34 (Tencer Dep.), 122:1-123:20.

Response: Plaintiff disputes the materiality of the statement contained in paragraph 241, but it does not dispute the statement.

242. Exhibit 29 from the Volynsky 5/29 Decl., was also marked as Exhibit 33 at the Kalfa Deposition (as defined in the Volynsky 5/29 Decl.). *See* Volynsky 5/29 Decl., Ex. 33; Volynsky Supp. Decl., Ex. 35 (Kalfa Dep.), 181:6-25; Ex. 34 (Tencer Dep.), 214:3-214:20.

Response: Plaintiff disputes the materiality of the statement contained in paragraph 242, but it does not dispute the statement.

243. Exhibit 11 from the Volynsky 5/29 Decl., was also marked as Exhibit 11 at the Kalfa Deposition (as defined in the Volynsky 5/29 Decl.). *See* Volynsky 5/29 Decl., Ex. 11; Volynsky Supp. Decl., Ex. 35 (Kalfa Dep.), 106:7-20; Ex. 34 (Tencer Dep.), 77:16-78:8.

Response: Plaintiff disputes the materiality of the statement contained in paragraph 243, but it does not dispute the statement.

244. Plaintiff did not seek to resell the Remaining Machines after the Expiration Date because of the declining market conditions and because Plaintiff had already long decided that it would cease its operations. *See* Ds SF, ¶¶151-153; *see also* Volynsky Supp. Decl., Ex. 35, Kalfa Dep., 202:5-203:5; *id.*, Ex. 34, Tencer Dep., 125:1-5 (no prospective purchasers as of April 20, 2018); 212:22-213:1; 213:17-21.

Response: Plaintiff disputes the statement contained in paragraph 244. The cited

deposition excerpts do not provide any explanation for the reasons why Plaintiff did not seek to resell the final 600 Machines after April 15, 2018. The primary reason advanced by Mr. Tencer at his deposition for why Plaintiff wasn't attempting to resell the final 600 Machines was as follows: "Because we were constantly working with them and adjusting the terms. And, you know, every other day or every other week, we would you get a small wire, and they kept dragging us on. If you read the correspondence, you'll see, you know, we want the machines. Work with us." Mr. Tencer also testified that Plaintiff "didn't look for a buyer until we knew 100 percent that the bill wouldn't be paid" by Defendants despite their repeated promises that payment was forthcoming. Tencer Dep. (Volynsky SJ Moving Decl. Ex. 7; Mandel SJ Opp. Decl. Ex. 2) at 173:7-13, 165-21-166:1 (note p. 165 part of excerpt appears in Volynsky SJ Moving Decl., as Plaintiff did not re-submit pages already introduced in record).

245.    Kalfa presently sits on the Board of Directors of several companies. Volynsky Supp. Decl., Ex. 35, Kalfa Dep., 13:10-14:3.

Response: Plaintiff disputes the materiality of the statement contained in paragraph 245, but it does not dispute the statement.

246.    On or about March 16, 2020, Tencer, on behalf of MidCity Capital Ltd. ("MidCity"), entered into a Securities Purchase Agreement ("SPA"), with Slinger Bag Inc. (n/k/a Connexa Sports Technologies Inc.) ("Slinger Bag"). Volynsky Supp. Decl., ¶10, Ex. 38; id., Ex. 34, Tencer Dep., 11:13-12:1.

Response: Plaintiff disputes the materiality of the statement contained in paragraph 246, but it does not dispute the statement.

247. In connection with the SPA, on or about March 16, 2020, Slinger Bag issued a 12% Promissory Note to MidCity. Volynsky Supp. Decl., ¶9, Ex. 37; *id.*, Ex. 34, Tencer Dep., 11:13-12:1.

Response: Plaintiff disputes the materiality of the statement contained in paragraph 247, but it does not dispute the statement.

248. In connection with the SPA, on or about March 16, 2020, Slinger Bag and MidCity entered into a Warrant Agreement. Volynsky Supp. Decl., ¶11, Ex. 39; *id.*, Ex. 34, Tencer Dep., 11:13-12:1.

Response: Plaintiff disputes the materiality of the statement contained in paragraph 248, but it does not dispute the statement.

249. Kalfa testified that Super Crypto and Plaintiff extended the Expiration Date under the Agreement. Kalfa Dep. (Volynsky Supp. Decl., Ex. 35), 141:2-7.

Response: Plaintiff admits that Kalfa testified that the April 15, 2018 date for completion of payment was extended, but denies that he testified there was an extension of the date by which the agreement would be rendered null and void. He expressly denied such an extension:

> Q. So was that the agreement then, that payments would be made and section three would be extended?
>
> A. Not to my understanding, no.

Kalfa Dep. (Volynsky Supp. Decl., Ex. 35), 141:11-14; *see also id*. at 141:7-10, 15-20.

250. Tencer also testified that Super Crypto and Plaintiff extended the Expiration Date under the Agreement. Tencer Dep. (Volynsky Supp. Decl., Ex. 34), 162:16-163:23; 112:6-15.

Response: Plaintiff admits that Tencer testified that the April 15, 2018 date for completion of payment was extended, but denies that he testified that there was an extension of the date by which the agreement would be rendered null and void. The cited testimony only references Defendants' payment obligation, the date for which was repeatedly extended based on Defendants' stated intentions to purchase and pay for the final 600 Machines. Tencer Dep. (Volynsky Supp. Decl., Ex. 34), 112:6-15; *see* Tencer Decl. ¶¶ 11, 14-15.

251. On or about June 18, 2018, Plaintiff's Counsel transmitted a demand letter, dated June 18, 2018, which stated that "Super Crypto is in default of $1,561,375 due on April 15." Volynsky 5/29 Decl., Ex. 20; *see also* Mandel, Ex. ZZZZ [DE 127-104] (last sentence of stipulation).

Response: Admitted.

Dated: September 12, 2023

**COWAN, LIEBOWITZ & LATMAN, P.C.**

Attorneys for Plaintiff

By: _____

Richard S. Mandel (rsm@cll.com)
Dasha Chestukhin (dxc@cll.com)

114 West 47th Street
New York, New York 10036

(212) 790-9200