UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

BLOCKCHAIN MINING SUPPLY AND
SERVICES LTD.,                                              Case No. 18-CV-11099-ALC

                Plaintiff,

      -against-

SUPER CRYPTO MINING, INC. (N/K/A DIGITAL
FARMS, INC. and DPW HOLDINGS, INC.
(N/K/A AULT AULLIANCE, INC.),

                Defendants.

------------------------------------------------------------------X

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP
1 Old Country Road, Suite 275
Carle Place, New York 11514
(516) 320-6945

*Attorneys for Defendants Super
Crypto Mining, Inc.(n/k/a Digital Farms, Inc.) and
DPW Holdings, Inc.(n/k/a Ault Alliance, Inc.)*

On the Brief:

Robert B. Volynsky, Esq. (RV-7076)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES... ..................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.       Plaintiff's Everchanging "Waiver" Theories
            Do Not Create Material Issues of Fact .....................................................................2

    II.     No Implied-In-Fact Contract Exists, Let Alone
            One that Comports with the Statute of Frauds ..........................................................5

    III.    Articles 2(a)(iii) and 3 Fix Plaintiff's
            Damages to a Forfeiture of the Deposit.....................................................................7

    IV.    Plaintiff Is Not Entitled to Expectation
            Damages under its Promissory Estoppel Claim ........................................................8

CONCLUSION...........................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*AmTrust N. Am., Inc. v. Share*,
No. 650737/2021, 2022 N.Y. Misc. LEXIS 6343
(Sup. Ct. N.Y. Cty. Nov. 3, 2022) ................................................................................3

*Clifford R. Gray v. LeChase Const. Services, LLC*,
51 A.D.3d 1169 (3d Dep't 2008) ...............................................................................12

*Bader v. Wells Fargo Home Mortg., Inc.*,
773 F. Supp. 2d 397 (S.D.N.Y. 2011) ..........................................................................9

*Bell v. Stephens*,
No. 05-CV-7182-LTS-RLE, 2007 U.S. Dist. LEXIS 27348
(S.D.N.Y. Apr. 10, 2007) ......................................................................................... 4-5

*Bloomfield Inv. Res. Corp. v. Daniloff*,
No. 17-CV-4181-VM, 2021 U.S. Dist. LEXIS 79586
(S.D.N.Y. Apr. 26, 2021) ...........................................................................................11

*Cacchillo v. Insmed, Inc.*,
551 F. App'x 592 (2d Cir. 2014) ..................................................................................6

*Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*,
963 F. Supp. 1342 (S.D.N.Y. 1997) .............................................................................7

*Catskill Assocs., LLC v. Benza*,
No. 08-CV-598-LEK-RFT, 2009 U.S. Dist. LEXIS 38886
(N.D.N.Y. May 7, 2009) ........................................................................................... 7-8

*Computerized Med. Imaging Equip., Inc. v. Diasonics Ultrasound, Inc.*,
303 A.D.2d 962 (4th Dep't 2003) ............................................................................. 5-6

*Cyberchron Corp. v. Calldata Sys. Dev.*,
47 F.3d 39 (2d Cir. 1995) .............................................................................................9

*Dallas Aero, Inc. v. CIS Air Corp.*,
352 F.3d 775 (2d Cir. 2003) .........................................................................................9

*Drummond v. Akselrad*,
No. 23-CV-179-LJL, 2023 U.S. Dist. LEXIS 75793
(S.D.N.Y. May 1, 2023) ..............................................................................................11

**Cases**                                                                                                   **Page(s)**

*Geneva Pharms. Tech Corp. v. Barr Labs*,
    2003 U.S. Dist. LEXIS 3847 (S.D.N.Y. Mar. 17, 2023) ...................................................12

*Genomma Lab USA, Inc. v. Venus Am. Corp.*,
    No. 14-CV-5831-GBD-GWG, 2017 U.S. Dist. LEXIS 59121
    (S.D.N.Y. Mar. 27, 2017) ..................................................................................................7

*Herrick v. Grindr LLC*,
    765 F. App'x 586 (2d Cir. 2019)......................................................................................10

*Kolchins v. Evolution Mkts, Inc.*,
    31 N.Y.3d 100 (2018) ........................................................................................................4

*Joshi v. Trs. of Columbia Univ. in N.Y.*,
    515 F. Supp. 3d 200 (S.D.N.Y. 2021 .................................................................................9

*JoySuds, LLC v. N.V. Labs, Inc.*,
    No. 22-CV-3781-JPC-OTW, 2023 U.S. Dist. LEXIS 57095
    (S.D.N.Y. Mar. 31, 2023) ..................................................................................................5

*Judal Indus. v. Welsbach Elec. Corp.*,
    138 A.D.2d 573 (2d Dep't 1988)......................................................................................10

*Lease Corp. of Am. Inc. v. Resnick*,
    288 A.D.2d 533 (3d Dep't 2001) .......................................................................................7

*LPD N.Y. LLC v. Adidas Am., Inc.*,
    No. 15-CV-6360-MKB, 2022 U.S. Dist. LEXIS 172967
    (E.D.N.Y. Sep. 24, 2022).................................................................................................10

*Mtivity, Inc. v. Office Depot, Inc.*,
    525 F. Supp. 3d 433 (E.D.N.Y. 2021) .............................................................................12

*Paper Sales Corp. v. James River Corp.*,
    No. 87-CV-7638-MBM, 1990 U.S. Dist. LEXIS 8417
    (S.D.N.Y. Jul. 9, 1990) ......................................................................................................4

*Philo Smith & Co. v. USLIFE Corp.*,
    554 F.2d 34 (2d Cir. 1977)................................................................................................8

*Pfrmf Inv. Holdings v. Interpublic Grp. Of Cos.*,
    No. 11-CV-6008-CM, 2012 U.S. Dist. LEXIS 96981
    (S.D.N.Y. Jul. 10, 2012) ....................................................................................................5

**Cases**                                                                                                    **Page(s)**

*Regal Custom Clothiers v. Mohan's Custom Tailors,*
    No. 96-CV-6320-SS, 1997 U.S. Dist. LEXIS 9288
    (S.D.N.Y. Jun. 26, 1997) .................................................................................................9

*Roelcke v. Zip Aviation, LLC,*
    571 F. Supp. 3d 214 (S.D.N.Y. 2021)..............................................................................6, 7

*Rondaeu v. Berman,*
    No. 654181/2015, 2017 N.Y. Misc. LEXIS 123
    (Sup. Ct. N.Y. Cty. Jan. 13, 2017) ...................................................................................11

*Shull v. TBTF,*
    No. 18-CV-12400-GBD, 2019 U.S. Dist. LEXIS 174833
    (S.D.N.Y. Oct. 4, 2019) ................................................................................... 3-4, 7

*Southwick Clothing LLC v. GFT (USA) Corp.,*
    No. 99-CV-10452-GBD, 2004 U.S. Dist. LEXIS 25336
    (S.D.N.Y. Dec. 13, 2004) .................................................................................................7

*Spherenomics Glob. Contact Ctrs. v. vCustomer Corp.,*
    427 F. Supp. 2d 236 (E.D.N.Y. 2006) .............................................................................11

*Twitchell v. Pittsford,*
    66 N.Y.2d 824 (1985) .......................................................................................................6

*Wolet Capital Corp. v. Walmart Inc.,*
    No. 18-CV-12380-LJL, 2021 U.S. Dist. LEXIS 13406
    (S.D.N.Y. Jan. 25, 2021)................................................................................................12

**Statute(s)**                                                                                              **Page(s)**

NYUCC §2-201(1)...........................................................................................................6, 8

NYUCC §2-309(1)..............................................................................................................4

NYUCC §2-725(1)..............................................................................................................3

## PRELIMINARY STATEMENT[1]

Plaintiff's fleeting reference to Cinderella in its opposition papers ("Opp.") is apropos –
even children's stories teach us that deadlines matter.  Notwithstanding same and Plaintiff's
haphazard, mutable fables, "in real life," SCM and Plaintiff simply never agreed that SCM would
be absolutely required to pay $3,272,500 to Plaintiff.  Indeed, SCM did not contract for such result
and Plaintiff's principals acknowledged that they understood, upon the execution of the
Agreement, that, by the Expiration Date, Plaintiff could receive only $1,651,125 and potentially
be left with the Remaining Machines that might be valued at a fraction of the contract price.  *See*
Ps Resp., ¶¶160, 167-170.  This essential element is mentioned twice in the Agreement,
underscoring its centrality.  *See* Agreement, §§2(a)(iii), 3.  Hence, Plaintiff effectively gambled on
the volatility of the cryptocurrency market and got what it bargained for – $1,651,125 and
continued possession of the Remaining Machines, which, by the Expiration Date, were worth
approximately $642,000 (or $1,070 per Remaining Machine) ("Market Value Amount").

*Now*, at summary judgment, Plaintiff asserts a scattershot of indefinite and inconsistent
arguments to try to capture that which it was never contractually entitled to – indeed, none of these
theories are asserted in the FAC.  Thus, in Ps Motion, Plaintiff contends that ***post***-expiration, the
Agreement was supposedly modified to strike Article 3.  Yet, and putting aside that an expired
contract can neither be modified nor its provisions waived, Plaintiff did not (and does not) identify
the conclusive provisions of the alleged modification or the discrete e-mails that it relies upon to
establish a meeting of the minds sufficient to overcome, *inter alia*, the strictures contained in
Articles 13(d) and 13(e) of the Agreement or the Statute of Frauds.[2]

---

[1] Unless otherwise stated herein, all emphasis is added and defined terms shall have the same meanings ascribed to
them in Ds Motion [DE 118].  Plaintiff's responses to Ds SF [DE 151] shall be referred to herein as "Ps Resp."

[2] Plaintiff is well aware of the reach of the Statute of Frauds, as it seeks to use same as sword when it suits its skewed
narrative.  *See* Ps Motion, p.18, fn.7.   Even there, however, Plaintiff is wrong as the Statute of Frauds would be

In its Opp., Plaintiff changes course by *now* claiming that the Agreement was allegedly modified *prior* to the Expiration Date based on a cherry-picked e-mail from Tencer referencing a "reasonable time," as well as SCM's purportedly belated payment of the Contracted-For Amount. Plaintiff's jumbled arguments, however, are contradicted by its principals' testimonies and Plaintiff's own documentary evidence. Thus, although Plaintiff now claims that the parties excised the Expiration Date altogether, Tencer testified that the Expiration Date was purportedly "extended and extended and extended many, many times." Such testimony, however, is internally inconsistent with, *inter alia*, Plaintiff's present arguments, as well as the demand letter from Plaintiff's counsel, dated June 18, 2018 ("Demand Letter"; [DE 116-20]), wherein it indicates that SCM was somehow in default as of the Expiration Date. Not surprisingly, the Demand Letter makes no mention of any such modifications or extensions, because they never occurred.

Additionally, Plaintiff also fails to establish this Court's jurisdiction for its promissory estoppel claim *at the commencement of this suit* – *Mallory v. Norfolk S. Ry. Co.* did not alter this threshold showing. Finally, stripped of the veneer of Plaintiff's inapposite labels, it is clear that its promissory estoppel claim is nothing more than a circumvention of the requirements of the Statute of Frauds and the record further established that Plaintiff's injury (if any) in connection with its equitable claim, is not "unconscionable," thereby negating the extraordinary remedy sought. Accordingly, the Court should grant Ds Motion, in its entirety.

## ARGUMENT

### I.      Plaintiff's Everchanging "Waiver" Theories Do Not Create Material Issues of Fact

The common denominator in all of Plaintiff's haphazard theories is that Plaintiff *still* cannot answer the most basic questions concerning the purported modification – "What are the

---

applicable based on Plaintiff's inability to identify a definitive end date for its conjured-up indefinite, standalone "storage" agreement. *See Robins v. Zwirner*, 713 F. Supp. 2d 367, 375-76 (S.D.N.Y. 2010).

terms of such modification?" and "What writings memorialize such terms?" [3]  Thus, although Tencer testified that the Expiration Date was purportedly "extended and extended and extended many, many times" ([DE 141-3], Tencer Dep., 112:11-15; *see also* 163:10-23 ("no specific date")), Plaintiff still does not identify any of the numerous successions of dates that the Expiration Date was purportedly extended to.  This is fatal to Plaintiff's claim.[4]  *See AmTrust N. Am., Inc. v. Share*, No. 650737/2021, 2022 N.Y. Misc. LEXIS 6343, at *13-14 (Sup. Ct. N.Y. Cty. Nov. 3, 2022); *see also* [DE 141-3], Tencer Dep., 142:22-25 (further inconsistent testimony by Tencer stating that SCM was purportedly in default as of May 7, 2018 despite the numerous purported extensions).

Nor does Plaintiff reconcile Tencer's testimony with the Demand Letter [DE 116-20], which implies that the Expiration Date was not modified, and that SCM was somehow in default under the Agreement as of the Expiration Date.  Ps Resp., ¶184.  Plaintiff cannot have it both ways – it cannot claim (as it did on June 18, 2018) that SCM was in default as of the Expiration Date and also claim that SCM and Plaintiff had also purportedly extended the Expiration Date to a "reasonable time," pursuant to Tencer's passing reference in an April 9, 2018 e-mail.[5]  *See* Mandel, Ex. SS ("Ex. SS E-mail"); *Shull v. TBTF*, No. 18-CV-12400-GBD, 2019 U.S. Dist. LEXIS 174833, at *48 (S.D.N.Y. Oct. 4, 2019) ("Counsel said yes and no.  Such uncertainty clearly denotes that

---

[3] Plaintiff's insistence that "Super Crypto had already breached the contract before the April 15, 2018 date ever arrived" has no bearing here. *See* Opp., p.3-4.  Indeed, there is no claim in the FAC that SCM breached the Agreement in connection with the Contracted-For Machines, and, to the extent that Plaintiff may now be seeking to assert an entirely new breach (which it would not have needed discovery for), SCM submits that any such claim is now time-barred. *See* NYUCC §2-725(1) (NYUCC breach of contract claims governed by a four-year statute of limitations).

[4] Kalfa, for his efforts, claimed that the Expiration was purportedly "extended verbally in our discussions. [DE 141-4], Kalfa Dep., 141:2-16.  Such bare assertion is only further undermined by the Statute of Frauds and Article 13(e).

[5] This is not the first time that Plaintiff's counsel and Plaintiff's interpretations of the Agreement's terms have been discordant.  Thus, when Tencer provided inconsistent testimony during his deposition, Plaintiff's counsel immediately sought to amend its Requests for Admissions to comport with Tencer's testimony. *Compare* Volynsky 9/11 Decl., Ex. 54, Tencer Dep., 38:22-39:23; 103:12-106:21 *with* [DE 102; 103] *and* Volynsky 9/11 Decl., Ex. 55.

there was no manifestation of mutual assent, and no inferences that could 'be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct.'").

These are *facts* which are borne out of Plaintiff's own documents, not Defendants' legal Arguments . Thus, the Ex. SS E-mail itself can hardly be considered an enforceable contract, let alone an unequivocal offer by Plaintiff to modify the Agreement. Indeed, Tencer couches his statement therein as his present "position" and further concludes the email with a demand for "Drop Dead" dates for payment. <u>Mandel</u>, Ex. SS. Such ambivalent statements, however, hardly establish a "definite offer such that its unequivocal acceptance will give rise to an enforceable contract." *Kolchins v. Evolution Mkts, Inc.*, 31 N.Y.3d 100, 106 (2018). Not surprisingly then, Plaintiff does not even attempt to establish SCM's purported unequivocal acceptance of the Ex. SS E-mail. *See Paper Sales Corp. v. James River Corp.*, No. 87-CV-7638-MBM, 1990 U.S. Dist. LEXIS 8417, at *10 (S.D.N.Y. Jul. 9, 1990) ("Regardless of whether a contract is implied or express, the parties must agree upon identical definite terms. A general willingness to contract or a mere expression of intent to contract does not constitute a contract."). Furthermore, Tencer's after-the-fact communications also demonstrate that Tencer, himself, did not believe that the Ex. SS E-mail served as a modification of the Agreement's terms. *See* <u>Magot 9/4 Decl.</u>, Ex. 13 (e-mail from Tencer, dated April 13, 2018, claiming that SCM is in default for "both payments").

Notwithstanding, as of April 9, 2018, the Agreement had not yet expired and, thus, the Expiration Date remained the controlling date for payment of the Remaining Machines, subject to the provisions set forth in Articles 2(a)(iii) and 3 therein. Plaintiff cannot now seek to exploit NYUCC §2-309(1) to rewrite the Agreement's conclusive and unambiguous provisions concerning the Remaining Machines. Opp., pp.9-10. That is not the purpose of NYUCC §2-309(1). *See Bell*

*v. Stephens*, No. 05-CV-7182-LTS-RLE, 2007 U.S. Dist. LEXIS 27348, at *2 (S.D.N.Y. Apr. 10, 2007) ("The 'reasonable time' provisions of [NYUCC] 2-309 only apply when the relevant time ***has not been 'agreed upon.'***").[6]

Concisely, Plaintiff has not pointed to any e-mails wherein SCM affirmatively and unequivocally states that it is waiving the ***entirety*** of Article 3's bargained-for protections. *Pfrmf Inv. Holdings v. Interpublic Grp. Of Cos.*, No. 11-CV-6008-CM, 2012 U.S. Dist. LEXIS 96981, at *27 (S.D.N.Y. Jul. 10, 2012) ("[W]aiver will not be inferred where the condition allegedly waived is central to the bargain that gave rise to the right purportedly waived."). To that end, Plaintiff's repeated insistence that neither party expressly referenced Article 3 during their communication perhaps serves as the best evidence that SCM could not have unambiguously waived this central provision. *Id.*; Ps Resp. ¶187. As such, the Court should grant Ds Motion, in its entirety.

## II.    No Implied-In-Fact Contract Exists, Let Alone One that Comports with the Statute of Frauds

Plaintiff's footnoted implied-in-fact contract argument (*see* Opp., p.9, fn.5) is likewise deficient. Thus, and putting aside that Plaintiff does not plead an implied-in-fact contract in the FAC (*see infra*, pp.6-7), Plaintiff cannot establish any purported after-the-fact conduct that substantially comports with the Agreement's terms, *to wit*, unscheduled and irregular payment amounts were wired to Plaintiff, which Plaintiff then unilaterally determined would apply in part, to storage charges, and, in part, towards the Remaining Amount – none of which are reflected in the Agreement. *See Computerized Med. Imaging Equip., Inc. v. Diasonics Ultrasound, Inc.*, 303 A.D.2d 962, 963-64 (4th Dep't 2003) ("[T]he ongoing dealings of the parties following the

---

[6] Plaintiff's reliance on *JoySuds, LLC v. N.V. Labs, Inc.*, No. 22-CV-3781-JPC-OTW, 2023 U.S. Dist. LEXIS 57095 (S.D.N.Y. Mar. 31, 2023), at Opp., p.11, is puzzling, as that case stands for the proposition that the alleged breaching party may assert that its "breach of contract may be waived by the non-breaching party" despite a no-waiver provision. *See id.*, at *29. However, SCM is not claiming that Plaintiff waived a prior breach. Rather, SCM contends that it never breached to begin with as the Agreement had automatically expired in accordance with its terms.

expiration of the prior written contract and during their attempts to negotiate a replacement written contract do not establish that there was an implied-in-fact agreement….").

Even more egregious, Plaintiff also seemingly decided that this unsystematic system would have no temporal limitation and would continue until Plaintiff unilaterally determined that there was no more "hope."  *See* [DE 116-7], <u>Tencer Dep.</u>, 165:5-8.  Thus, according to Plaintiff, SCM purportedly agreed to be absolutely obligated for the Remaining Amount until some indeterminate date that would be decided in Plaintiff's sole discretion.  Plaintiff's absurd arguments are baseless.

Significantly, Plaintiff proffers no explanation as to why any such implied-in-fact contract (if any) would not have simply meant that a new cutoff date for Article 3 was established – the same date which Tencer testified had allegedly been "extended and extended and extended many, many times"  ([DE 141-3], <u>Tencer Dep.</u>, 112:11-15) – without divesting SCM of a critical protection that it had already paid $1,651,125 for.  *See Twitchell v. Pittsford*, 66 N.Y.2d 824, 825 (1985) ("[T]he mere conduct of the town in continuing to use the skating rink [after expiration] was insufficient to create a contract for indemnification, and that the trial court's finding of implied indemnification was error.").    Indeed, ***that*** unfavorable interpretation would more so "substantially" align with the "terms ***and conditions***" embodied in the Agreement.[7]

Additionally, Plaintiff also fails to allege the essential terms of such new agreement or the specific provision upon which liability is predicated.  *See Roelcke v. Zip Aviation, LLC*, 571 F. Supp. 3d 214, 230 (S.D.N.Y. 2021) ("The party asserting the existence  of an implied-in-fact contract must supply 'in nonconclusory language, the essential terms of the parties' contract,

---

[7] The authorities which Plaintiff relies upon (*Watts* and *Andrews*), at Opp., p.9, fn.5, are not only factually distinguishable, but, as more pertinent here, are legally inapposite as the alleged implied-in-fact contracts are outside the Statute of Frauds' strictures.  Here, any such "new" agreement would necessarily need to comport with the Statute of Frauds, as the alleged new agreement concerns the sale of goods valued at more than $500.  *See* NYUCC §2-201(1); *Cacchillo v. Insmed, Inc.*, 551 F. App'x 592, 594 (2d Cir. 2014) ("Even if we assume, without deciding, that there was a contract implied-in-fact, Cacchillo's claim still fails to satisfy the requirements of New York's Statute of Frauds.").

including those specific provisions of the contract upon which liability is predicated…'"); *id.* (dismissing breach of contract claim at summary judgment and noting that "[t]he claim that the defendants breached an implied-in-fact contract is absent from the [operative pleading] and was raised for the first time in plaintiff's opposition brief."); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-CV-10452-GBD, 2004 U.S. Dist. LEXIS 25336, at *20-21 (S.D.N.Y. Dec. 13, 2004) (dismissing claim where plaintiff had knowledge of another agreement but failed to allege its existence in the Complaint).[8]  Moreover, FRCP 8 also does not allow a litigant to conjure up new agreements and new claims in brief oppositions to summary judgment motion.  *See, e.g., Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997).

**III.     Articles 2(a)(iii) and 3 Fix Plaintiff's Damages to a Forfeiture of the Deposit**

Furthermore, Articles 2(a)(iii) and 3 are bargained-for provisions that fix Plaintiff's damages to a forfeiture of the Deposit, in the event that the Remaining Amount is not paid on or before the Expiration Date. *Lease Corp. of Am. Inc. v. Resnick*, 288 A.D.2d 533, 534-35 (3d Dep't 2001) (noting that the lack of a "liquidated damages" label not dispositive and that "[w]hile defendants, with the benefit of hindsight, may have made a bad bargain, it is not the function of this Court to rewrite the parties' agreement.").  Plaintiff cannot now seek to exploit Article 2(a)(iii) as a starting point in its crusade to pry excess damages that it and SCM painstakingly contracted around.[9]  *See* Opp., pp.13-14, fn.8; *Catskill Assocs., LLC v. Benza*, No. 08-CV-598-LEK-RFT,

---

[8] Had Plaintiff truly believed that a ***new*** implied-in-fact agreement had been formed after the Expiration Date, the FAC would have necessarily pled the existence of such supposed superseding agreement and not tethered the promissory estoppel claim to the enforceability of the Agreement. *Genomma Lab USA, Inc. v. Venus Am. Corp.*, No. 14-CV-5831-GBD-GWG, 2017 U.S. Dist. LEXIS 59121, at *6-7 (S.D.N.Y. Mar. 27, 2017) ("Venus can allege alternative legal theories, but it cannot allege alternative facts… These are alternative facts – either the parties entered into the January 2013 Agreement superseding the July 2012 Agreement or they did not."); *Shull*, 2019 U.S. Dist. LEXIS 174833, at *48 ("[I]f Shull believed that Defendants intended to contract with her, she would have pleaded as such.").

[9] Plaintiff's new-found interpretation of the interplay between Articles 2(a)(iii) and 3 is also at odds with the Tencer's testimony.  Indeed, Tencer testified that, at the time Plaintiff entered into the Agreement, it understood that, as to the Remaining Machines, all that it might receive was the Deposit.  *See* Ps Resp., ¶¶167-168.  Thus, if, as Plaintiff now

2009 U.S. Dist. LEXIS 38886, at *12-13 (N.D.N.Y. May 7, 2009) ("If Plaintiff is determined to have breached the contract, Defendant can retain the deposit, and thus would receive the benefit of the bargain she entered into with Plaintiff. However, Defendant cannot seek damages beyond what she bargained for in the contract."). As such, the Court should grant Ds Motion, in its entirety.

## IV. Plaintiff Is Not Entitled to Expectation Damages under its Promissory Estoppel Claim[10]

Plaintiff attempts to justify its windfall request for expectation damages under the doctrine of promissory estoppel by claiming that it pled such claim as a "substitute for consideration." Opp., p.18. It did not, and, notwithstanding the hodgepodge of distractions lodged by Plaintiff, at base, Plaintiff is attempting to use promissory estoppel to circumvent the Statute of Frauds, which requires a heightened showing of an "unconscionable" injury.[11]

Thus, the promissory estoppel claim is effectively a claim that the parties purportedly had a different agreement related to the Remaining Machines, in the event that "the Agreement is found to be null, void, or unenforceable, *in whole or in part.*" *See* FAC, ¶83. Any such "new" agreement, however, would need to comply with the Statute of Frauds, given that it would involve the sale of goods valued at more than $500. *See* NYUCC §2-201(1). Plaintiff cannot escape this reality by

---

asserts, Article 2(a)(iii) supposedly permits Plaintiff to retain the Deposit **and** pursue SCM for excess damages, then Plaintiff is effectively admitting that, from the outset, Articles 2(a)(iii) and 3 were internally inconsistent.

[10] With regard to DPW's jurisdictional arguments, DPW relies upon the legal authorities cited in Ds Motion and further notes that Plaintiff's reliance on *Mallory* is misguided as Plaintiff still fails to establish this Court's jurisdiction over DPW **on November 28, 2018**, the commencement date of this action. *See* Ps Resp., ¶¶218-225.

[11] *See* Ds Motion, fn.19 ("Defendants do not concede or waive any arguments, objections, or defenses with respect to the remaining elements."); *see also Philo Smith & Co. v. USLIFE Corp.*, 554 F.2d 34, 36 (2d Cir. 1977) ("The strongly held public policy reflected in New York's Statute of Frauds would be severely undermined if a party could be estopped from asserting it every time a court found that some unfairness would otherwise result. For this reason, the doctrine of promissory estoppel is properly reserved for that limited class of cases where 'the circumstances are such as to render it *unconscionable* to deny' the promise upon which the plaintiff has relief." (Emphasis in original)).

distorting its promissory estoppel claim as a purported "substitute for consideration" claim.  Opp., pp.18-20; *see Joshi v. Trs. of Columbia Univ. in N.Y.*, 515 F. Supp. 3d 200, 223 (S.D.N.Y. 2021).[12]

Equity simply does not dictate that Plaintiff should be permitted to recover that which it and SCM purposefully contracted around through comprehensive terms in the Agreement, especially since Plaintiff never even delivered a single Remaining Machine to SCM.  *See supra*, fn.11.  Indeed, by April 20, 2018 (the first alleged promise in the FAC (*see* FAC, ¶26)), Plaintiff had received $1,651,125 under the Agreement; the Deposit had been forfeited; Plaintiff had long decided that it was out of this business line;[13] and Plaintiff had possession of the Remaining Machines, which it was free to resell. [14] Ps Resp., ¶¶157, 159, 192, 210; Ds Supp. SF, ¶244; [DE 141-1] Magot Dep., 48:24-49:10; 185:2-8.  Unfortunately, and through no fault of Plaintiff or SCM, by that time, the market value of the Remaining Machines was the Market Value Amount.  *See* Ps Resp., ¶¶160, 167-170.  This was a risk that Plaintiff knowingly bore when it entered into the Agreement and foreseeable disappointing circumstance ended up panning out.  *See id.*  Thus, Plaintiff did not "detrimentally rely" on anything beyond the Agreement's provisions when it

---

[12] Plaintiff's "partial performance" argument is a red herring.  Pursuant to the NYUCC, the "partial performance" exception (assuming it even applies) is limited to those goods for which payment has been made and accepted and must further involve "mutual participation by the parties."  *See Regal Custom Clothiers v. Mohan's Custom Tailors,* No. 96-CV-6320-SS, 1997 U.S. Dist. LEXIS 9288, at *15 (S.D.N.Y. Jun. 26, 1997); *Dallas Aero, Inc. v. CIS Air Corp.*, 352 F.3d 775, 782 (2d Cir. 2003) ("[P]artial performance of contractual obligations validates a contract, **but only to the extent of such partial performance**.").  Here, Plaintiff **did not** even deliver a single Remaining Machine to SCM.

[13] Incredibly, the reason that SCM continued to try to negotiate a resolution and foster a relationship with Plaintiff was because Plaintiff had created the illusion that there could be future business between the parties.  *See* Magot 5/29 Decl., ¶¶18, 20; *see also* Ps Resp., ¶210; Volynsky 9/11 Decl., Ex. 56 (e-mail from Kalfa, dated April 25, 2018, providing quotes for "L3" cryptocurrency mining machines).

[14] Plaintiff's promissory estoppel must, necessarily be circumscribed to those communications that postdate the Expiration Date of the Agreement, as, *inter alia*, it is well settled that "where the terms of an unambiguous contract are inconsistent with the statements that form the basis of the claim, the claiming party could not have *reasonably* relied on those statements as a matter of law."  *See Bader v. Wells Fargo Home Mortg., Inc.*, 773 F. Supp. 2d 397, 415 (S.D.N.Y. 2011); *Cyberchron Corp. v. Calldata Sys. Dev.*, 47 F.3d 39, 45 (2d Cir. 1995) ("We reject, however, Cyberchron's arguments that promissory estoppel recovery should be extended to the periods prior to mid-July 1990 [(*i.e.*, prior to the date of the alleged promises in the Complaint)]").

agreed to enter into this arrangement with SCM.[15]  *See Herrick v. Grindr LLC*, 765 F. App'x 586, 592 (2d Cir. 2019) (noting that "a plaintiff must also establish causation between its purported detrimental reliance and the claimed injury").

Notwithstanding, and, assuming, *arguendo*, that such claim is not deemed to be an end-run to the Statute of Frauds (which it is), the record also does not establish a meeting of the minds regarding the essential terms or, more specifically, which purported promises form the basis for such purported terms.  *See LPD N.Y. LLC v. Adidas Am., Inc.*, No. 15-CV-6360-MKB, 2022 U.S. Dist. LEXIS 172967, at *46 (E.D.N.Y. Sep. 24, 2022) ("The promises Plaintiff relies on lack essential terms, and Plaintiff is therefore limited to reliance damages.");  *Judal Indus. v. Welsbach Elec. Corp.*, 138 A.D.2d 573, 574 (2d Dep't 1988) ("In a contract for the sale of goods, the essential terms are quantity, price, and time and manner of delivery.").  Plaintiff also cannot disingenuously attempt to bootstrap this claim to the NYUCC's gap-fillers (as it incredulously seeks to do in connection with the breach of contract claim) as promissory estoppel claim presupposes that no agreement exists.

Moreover, Plaintiff also bizarrely advances a footnoted argument that "the putative unavailability of third-party buyers" has no bearing on its claim that is purportedly forbore from reselling the Remaining Machines. Opp., p.20.  Plaintiff is wrong as the depressed market price as of April 20, 2018 (the date of the first alleged promise), coupled with Plaintiff's inability to demonstrate what it could have actually sold the Remaining Machines for during such time, necessitate a circumscription that the damages for promissory estoppel (if any) must be limited to

---

[15] In a similar vein, this is the second time that Plaintiff has stated that it forbore from reselling the Remaining Machines, or, more emphatically that it "repeatedly informed Defendants of same." *See* Opp., p.19; Ps Motion, p.14. Plaintiff, however, provides no declaration, cites to no testimony, identifies no prospective purchases, and points to no writings or agreements that support this self-serving statement. Consequently, Plaintiff's unadorned statements are of no probative value. *See also* [DE 141-1], Magot Dep., 48:24-49:10; 185:2-8; Ds Resp., ¶94.

reliance damages. *See Drummond v. Akselrad*, No. 23-CV-179-LJL, 2023 U.S. Dist. LEXIS 75793, at \*36 (S.D.N.Y. May 1, 2023) ("As opposed to a breach of contract, the 'wrong' in a promissory estoppel claim is not primarily in depriving the plaintiff of the promised reward but in causing the plaintiff to change position to his detriment") (internal quotations and citations omitted); *see also Spherenomics Glob. Contact Ctrs. v. vCustomer Corp.*, 427 F. Supp. 2d 236, 253 (E.D.N.Y. 2006) ("Because Spherenomics cannot show that it would otherwise have secured the Fingerhut account, it has failed to establish that it was actually harmed by VCC's broken promise. The lack of evidence on this score prevents it from recovering for VCC's clear breach of this promise, whether the promise is framed as a contractual one or an equitable one."); *Bloomfield Inv. Res. Corp. v. Daniloff*, No. 17-CV-4181-VM, 2021 U.S. Dist. LEXIS 79586, at \*18 (S.D.N.Y. Apr. 26, 2021) (dismissing promissory estoppel claim and noting that "[w]hile Daniloff has alleged that 'he would have sought other investors,' there are no allegations that he actually did forego any alternative offers."); *Rondaeu v. Berman*, No. 654181/2015, 2017 N.Y. Misc. LEXIS 123, at \*10-11 (Sup. Ct. N.Y. Cty. Jan. 13, 2017) (dismissing plaintiff's promissory estoppel claim and noting that "[t]he injury alleged was simply that Plaintiff did not approach other news outlets. Plaintiff further asserts, without any supporting evidence, that his inability to approach other news outlets contributed to his ongoing financial struggle… In the absence of any quantifiable and identifiable injury, the second element of the promissory estoppel claim fails.").

To that end, Plaintiff's claimed injury – "the difference between the contract price and the resale price" – is, at best, "an injury [that] is 'solely a result of the non-performance of a void agreement,' [which] does not fall within the unconscionability exception to a promissory estoppel

11

claim." *See Wolet Capital Corp. v. Walmart Inc.*, No. 18-CV-12380-LJL, 2021 U.S. Dist. LEXIS 13406, at *43 (S.D.N.Y. Jan. 25, 2021).[16]

Succinctly, Plaintiff was in the exact position that it bargained-for at the outset of the Agreement. That a significant delta may exist between the Market Value Amount and the Remaining Amount neither alters this conclusion nor grants Plaintiff a license to seek that which was purposefully carved out the Agreement through comprehensive provisions. *See Mtivity, Inc. v. Office Depot, Inc.*, 525 F. Supp. 3d 433, 442 (E.D.N.Y. 2021) (because the damages in excess of $652,000 "are 'lost profits' that Mtivity intended to reap from the Agreement, they are expectation damages, and expectation damages are not available as equitable relief.'"); *see also Mtivity,* fn.6.

## CONCLUSION

For the foregoing reasons, the Court should grant Ds Motion, in its entirety.

Dated:  Carle Place, New York
        September 12, 2023

Respectfully submitted,

WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP

By:___*/s/ Robert Volynsky*_____
    Robert B. Volynsky
1 Old Country Road, Suite 275
Carle Place, New York 11514
Tel: (516) 320-6945 | E-mail: rvolynsky@weltz.law
*Attorneys for Defendants*

---

[16] Plaintiff's reliance on *Geneva Pharms. Tech Corp. v. Barr Labs*, 2003 U.S. Dist. LEXIS 3847 (S.D.N.Y. Mar. 17, 2023) is unavailing, as the *Geneva* Court analyzed promissory estoppel under **_New Jersey_** law, and, nevertheless ultimately held that "Geneva is not entitled to the benefit of the bargain, because there was no bargain." *See id.*, at *12. Furthermore, *Clifford R. Gray v. LeChase Const. Services, LLC*, 51 A.D.3d 1169 (3d Dep't 2008) (cited at Opp., p.18) actually supports Defendants' argument as the Court there limited the damages under promissory estoppel to reliance damages where a subcontractor purportedly forbore from working with other general contractors, based on the general contractor's promise to hire the subcontractor upon a successful bid for a design contract. *See id.*, at 1170-71. So too should this Court limit any such damages (if any) to reliance damages.